# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 99-4451 L
c/w 04-277 L, 05-1353 L, 05-1381 L, 06-72 L

JOHN H. BANKS, MARY E. BANKS, et. al.
Plaintiffs,
v.
THE UNITED STATES OF AMERICA
Defendant.

NO. 99-4451 L
Judge Emily C. Hewitt

STONE ERROL L. & SUSAN H.
as trustees of the Susan H. Stone Trust,
Plaintiffs,
v.
UNITED STATES OF AMERICA,
Defendant.

No. 04-277 L
Consolidated

EUGENE J. FRETT, Individually and as Trustee of the Victor J. Horvath and Frances B. Horvath Trust,
Plaintiff,
v.
THE UNITED STATES,
Defendant.

No. 05-1353 L
Consolidated

PLAINTIFFS' 2ND REPLY IN THE MATTER
OF THEIR MOTION TO STRIKE
DR. ROBERT B. NAIRN'S REPORT
(Pursuant to Court Order January 10, 2007)

# TABLE OF CONTENTS


| | |
|---|---|
| Introduction | 1 |
| Testing, Validation, Good Grounds, Reliability | 3 |
| Peer Review | 4 |
| Coauthors Are Peers | 4 |
| Error Rates | 4 |
| Ten Times -55% to +578% | 5 |
| General Acceptance? | 5 |
| Thermal and Fetch Limited | 6. |
| Velocity | 6 |
| Angle of Wave to Shore - More Inaccuracy | 7 |
| The Expert in Kumho | 7 |
| Dredging | 8 |
| Summary Kumho (P.149, 150) | 9 |

PLAINTIFFS' 2ND REPLY IN THE MATTER
OF THEIR MOTION TO STRIKE
DR. ROBERT B. NAIRN'S REPORT

INTRODUCTION

NOW COME THE PLAINTIFFS (all), by their attorney, John B. Ehret, and for their 2ND REPLY to Dr. Robert B. Nairn's (Nairn) Report of 2006 state as follows:

1. This 2ND REPLY is to be confined to the case law of Daubert v. Merrell Dow, 509 U.S. 579 (1993) and Kumho Tire Co. vs. Carmichael 526 U.S. 137 (1999) plus the Federal Rule of Evidence No. 702 which states as follows:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise.

2. Kumho is a revisit in 1999 to Rule 702 by almost the same Supreme Court as ruled in 1993 on Daubert. The first thing the Kumho Court did was to announce, at 148, that the Daubert four factors (testing, peer review, error rates and acceptability in the relevant scientific community) "may apply to the testimony of engineers and other experts who are not scientists".

3. The Kumho Court's extended discussion in the matter seems clearly to include Nairn by saying:

> In Daubert, the Court specified that it is the Rule's word "knowledge," not the words (like scientific) that modify that word, that "establishes a standard of evidentiary reliability." 509 U.S. at589. Hence, as a matter of language, the Rule applies its reliability standard to all "scientific," "technical," or 'other specialized" matters within its scope.

In defendant's Response at page 30 Attorney Petrie recites "how two of his colleagues failed to list input data used in some models". While the above quoted language from Daubert includes Nairn type reports, his failure to be cognizant of the quality of his sources should not only trigger the scrutiny of Rule 37(c)(1), as Attorney Petrie admits, but it should cause the Court to be concerned about Rule 702 reliability. The old cliche springs irresistibly to mind. "Garbage in, garbage out".

4. By this discussion at page 148, the Kumho Court might seem to allow reports such as Nairn's 2006 modeling of weather to determine wave transportation of sand along the shore of Lake Michigan at St. Joseph (LST). However, by so doing, Nairn is not exempt from the reliability tests imposed by Daubert and Rule 702/703.

5. Applying the tests of Daubert leads to the conclusion that although Nairn's Report may be acceptable in the rule of thumb, cut and try community of beach nourishment engineers, it is an abject failure in his attempt to pioneer his way into the field of government appropriation of private property. Put

differently,, the Daubert test of "acceptability in the relevant scientific community" cannot be passed because there is no relevant scientific community.

## TESTING
## VALIDATION, GOOD GROUNDS, RELIABILITY

6.Daubert, at 590 FN9, focuses on the question "does application of the principle produce consistent results?" Obviously not! Nairns results are not consistent from 1996 (JR1073, 1106:), 1997 (JR1188) to 2006 (JR032,074,075, and 076). From JR1073 where he adopts the fundamentally accepted fact that the entire southeastern Lake Michigan shore and lake bed are glacial till covering sand to JR032 where he says "that the shoreline south of St. Joseph cannot be classified as a predominantly cohesive shore" he makes a giant departure from the relevant scientific community.

Then from JR1188 to JR 074, 5 & 6 Nairn makes another giant departure from his own COSMOS results on LST calculations. Paragraph 23 of plaintiffs' Reply dated January 4, 2007 quotes some of the Nairn 1997 LST model calculation results as 375,328 $m^3$, 170,794 $m^3$, 159,500 $m^3$ and 79,900 $m^3$. No change from the 84,000 $m^3$/yr (110,000 cy/yr) nourishment plan was announced.

PEER REVIEW

7. There has been no peer review because there has been no publishing of the 2006 Report. Plaintiff's geologists, Shabica and Chrzastowski expressed approval but saw no more than the plaintiffs' attorneys saw, when they finally were shown the Report for the first time at deposition time. No one has seen the model (formula, equation etc. ) yet, if there is one.

COAUTHORS ARE PEERS

8. Larry E. Parson and Dr. Andrew Morang are coauthors in Nairn's 1996 (JR1066) and 1997 (JR1171) Reports. They did not join in his 2006 Report (JR001), so the 1997 totals still stand with that scientific community. They also still stand with the the legal community of the Federal Circuit, Banks v. USA 314 F.3d 1304 at 1310 where they say "The statute of limitations did not begin to run until the Corps issued the 1996, 1997 and 1999 Reports." Parson and Morang are Corps employees from the Waterways Experiment Station. There is no known attempt to have the courts receive and accept such weather related modeling as evidence in 5th Amendment litigation.

ERROR RATES

9. Kumho at 149, 150 repeats the 3rd Daubert factor as to whether there is a known or potental rate of error and whether there are standards controling the technique's operation. According to Nairn (ipsi dixit) the potential ereor is =/- 25%

compared to actual rates and perhaps no better than a factor of two from the actual rates (JR039). This is the actual language used by Nairn. It says "no better than a factor of 2 from the actual rates." That means the model could be much worse than 2 times the actual. The "actual rates" would be the controlling standard but there is no established method for determining the actual LST.

TEN TIMES?
-55% to +578%

10. These are error or accuracy factors which the defendant Army Corps admits to in their Engineer Research and Development Center in Vicksburg, MS. They recommend using two formulae (p. 37 of Plaintiffs' Motion to Strike). One formula would be for storms and one for waves less than one meter in height (39.37 inches).

GENERAL ACCEPTANCE?

11. Kumho at 150 describes the 4th Daubert factor as: "Whether the theory or technique enjoys general acceptance within a relevant scientific community." There is no question that there are a large number of Nairn models sold and used by governmental or beach communities. But their acceptance has been for nourishment appropriations and planning. They are always wrong, but that does no harm except for the waste of money. They are just another effort at "cut and try" or "rule of thumb" engineering.

THERMAL AND FETCH LIMITED

12. The Corps model which Nairn relies upon for wave hindcasting, warns that small bodies of water are not appropriate for this type of model (APP0226 and PA21): "... wind near the surface has little relation to the wind estimate determined from a synoptic weather chart."

VELOCITY

13. Nairn's model will only address annual average volume of LST, not velocity. Storm movement of sand can be 3 feet per sec. (P15 Reply in Motion to Strike, PA59 of Larson's deposition), or 1 foot per sec. (P46 Motion to Strike) or 0.45 feet per sec. (Reply in MTS PA10). While these velocities seem very slow, a 1 ft/sec velocity directed northward would move sand from Bunker (the southernmost plaintiff) to St. Joseph Harbor (42,000 feet north) in 42,000 sec. or about 12 hours. Some of the sand is moving faster and some of it would be moving slower. ONCE THE SAND IS AT ST. JOSEPH IT WOULD BE DIVERTED TO DEEP WATER AND LOST OR "TAKEN" FROM THE LITTORAL ZONE FOREVER. This will not be in Nairn's computer model. He is doing Net not Gross LST.

14. Since Nairn's 2006 model does not include this velocity loss it will be irrelevant and unreliable for the purpose of determining liability here in this litigation.

ANGLE OF WAVE TO SHORE
MORE INACCURACY

15. Dr. Orrin Pilkey states that "the strongest current is formed when waves strike the shoreline at a $30^{\circ}$ angle. If the wave power is X the longshore component of that power will be X times the sine of $30^{\circ}$ or .5X. (PA18)

16. According to the Indiana Environmental Impact Statement, if the wave is at $45^{\circ}$ the strongest current along the shore is created. If the wave power is X, the long shore component of that power will be X times sine $45^{\circ}$ or .707X. (PA12)

17. The ratio of Indiana's EIS to Pilkey's is therefore .707 divided by .5 equals 1.41. So within the engineering community there is a 41% variation. Hardly acceptable accuracy to be reliable method of determining property rights for the Court to rely on under Rule 702.

18. Nairn's model will probably just average the wave angle. That is additional inaccuracy and should not be considered reliable under Rule 702.

THE EXPERT IN KUMHO

19. Kumho's tire expert tried to opine that the fatal tire blow out was caused by abusive treatment, not manufacturing defect. Like Nairn, the tire expert had signed an earlier

report (page 155) which favored the plaintiff owner in that there were no signs of overloading or underinflation. This is akin to Nairn's report in 1997 having 375,328 $m^3$/yr LST (supra para. 6). But the tire expert claimed his visual tactile method was accurate (p157) while Nairn admits at best 2:1 chance against accuracy (JR039 MTS Para 5a). By comparison to Kumho, Nairn should be struck based on accuracy alone.

DREDGING

20. There is no dispute that the Corps has dredged and deep dumped at least 7,000,000 cubic yards of good sand during the 1900s. Nairn does not take those actions in consideration in any of his modeling. If he did there would be plenty of sand and no need for him to hedge his calculation results with the word POTNETIAL long shore sand transport (LST).

SUMMARY KUMHO (P.149,150)

21. Nairn's method cannot stand testing in the southeastern Lake Michigan environment because the hindcast system requires large water bodies, long duration fetch, stable water temperatures and data collected over the water year round, not just spring, summer and fall.

22 There can be no peer review because no so called expert has employed models to reach a judicially determined 5th Amendment, Just Compensation liability result.

23. There are no standards to control the technique's operation, which makes it impossible to know the potential error rate. The Best Evidence of actuality is repeated from the 1973 Detailed Project Report surveys (Motion to Strike Page 9 and JR0744,5 Page 25 para.45). Nairn 1997 is not consistent with Nairn 2006. Thus he fails the reliability test of Daubert 509 US 590 at FN9.

24. The model does not enjoy general acceptance within any relevant scientific community because the method is used only for beach nourishment. The results he gets do not reflect defendant's/his statement that all sand is trapped by the piers regardless of whether it is northbound sand or southbound sand. Trapping includes diverting to deep water.

Respectfully submitted,

John B. Ehret
Plaintiffs Attorney

Dated: January 15, 2007

20860 Greenwood Drive
Olympia Fields, IL 60461
P. 708-748-8975
F. 708-748-7661
Email: jbehret@covad.net

CERTIFICATE OF SERVICE

I, the attorney, do hereby certify that on the 15th day of January, 2007 did serve a copy of the aforegoing PLAINTIFFS' 2ND REPLY IN THE MATTER OF THEIR MOTION TO STRIKE DR. ROBERT B. NAIRN'S REPORT BY FAX on the below listed attorneys of record:

Terry M. Petrie
U. S. Dept. of Justice
ENRD
a961 Stout Street
8th Floor
Denver, CO 80294
P. 303-844-1369
F. 303-844-1350

Drew William Marrocco. Attorney
SONNENSCHEIN, NATH & ROSENTHAL.LLP
1301 K Street, NW
Suite 600., East Twr.
Washington DC 20005
P. 202-408-6387
F. 202-408-6399

Eugene J. Frett
Sperling & Slater
55 West Monroe Street
Suite 3200
Chicago, IL 60603
P. 312-641-3200
F. 312-641-6492

John B. Ehret
John B. Ehret
Attorney for Plaintiffs
20860 Greenwood Dr.
Olympia Fields, Il 60461
P. 708-748-8975
F. 708-748-7661

Date: January 15, 2007