**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JOHN H. and MARY E. BANKS, et al.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 99-4451 L**<br>**Judge Emily C. Hewitt** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |
| **STONE, ERROL L. & SUSAN H., In their own right and as Trustees of the Susan H. Stone Trust and the Errol L. Stone Trust** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 04-277 L**<br>**Judge Emily C. Hewitt** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |
| **EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and** | ) | |
| **DONNA P. FRETT,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 05-1353 L**<br>**Judge Emily C. Hewitt** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**RESPONSE TO PLAINTIFFS' SECOND REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO STRIKE DR. NAIRN'S EXPERT REPORT**

In response to plaintiffs' earlier filings to support its motion to strike Dr. Robert B. Nairn's expert report,[1/] the Court directed plaintiffs' to file an "additional briefing that delineates their legal arguments." See Order filed January 10, 2007. (Document No. 162). The Court stated that "Plaintiffs' motion and reply argue facts, not law, in support of their motion to strike Dr. Nairn's report." Id. The Court further stated that

> "[s]pecifically, plaintiffs shall frame their arguments according to the guidelines provided by Rule 702 of the Federal Rules of Evidence, Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993), and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999)."

Id. In response to the Order, Plaintiffs' filed a "Plaintiffs 2nd Reply in the Matter of Their Motion to Strike Dr. Robert B. Nairn's Report" (hereinafter, "Plaintiffs' Second Reply"). Per the Court's Order, defendant files this response to plaintiffs' Second Reply. Id.

In "Defendant's Response to Plaintiffs' Motion to Strike Dr. Robert B. Nairn's Expert Report" ("Defendant's First Response"), we demonstrated that the Court should deny plaintiffs' motion because (a) Dr. Nairn, one of the foremost experts in his field, is superbly qualified to offer expert opinions on the erosion and mitigation issues in this case; (b) Dr. Nairn's report and the opinions formed are well-grounded in facts and based on reliable principles and methodology; and (c) excluding Dr. Nairn's report would contravene the plain language of Fed. R. Evid. 702 and related case law, all of which are designed to govern admissibility of scientific and expert testimony which is relevant and helpful to the trier of fact. Confronted by defendant's evidence, and directed by the Court to frame its arguments in keeping with the

[1/] See "Plaintiffs' Rule 26(a)(2)(B) Motion to Strike Dr. Robert B. Nairn's (Nairn) Expert Report" (hereinafter, "Motion"), dated November 17, 2006, and "Plaintiffs' Reply in the Matter of Their Motion to Strike Dr. Robert B. Nairn's Report (hereinafter, "First Reply"), dated January 4, 2007.

relevant legal standards, Plaintiffs' Second Reply appears to focus on the first prong of the Daubert test. Plaintiffs do not appear to question whether Dr. Nairn's report meets the second prong of the Daubert test nor do they challenge whether Dr. Nairn meets Fed. R. Evid. 702's requirement that he be an expert on the matters in dispute by his "knowledge, skill, experience, training or education."[2] We demonstrate below the lack of merit in plaintiffs' arguments regarding the first prong of the Daubert test.[3]

In Daubert, the Supreme Court established a two-pronged test for the admissibility of expert evidence. The first prong of the Daubert test assesses the reliability of the methodology or reasoning underlying the expert evidence. Id. at 509 U.S. at 592-93. The Supreme Court suggested factors to consider in making this assessment: (1) whether it can be (and has been) tested, (2) whether the theory has been subjected to peer review and publication, (3) any known or potential rate of error, and (4) general acceptance of the methodology within the community. Id. at 593-94. These factors do not constitute an exhaustive checklist. Kumho Tire Co., 526 U.S. at 150. Trial courts have broad discretion in deciding whether a witness qualifies as an

---

[2] Both Dr. Nairn's curriculum vitae (see Joint Record ["JR"] at 0442-0453) and plaintiffs' own experts (see Defendant's First Response at 20) attest unmistakably to Dr. Nairn's capabilities as an expert in this litigation. Plaintiffs' experts, Dr. Chrzastowski and Dr. Meadows, respectively praised Dr. Nairn's abilities. Dr. Chrzastowski views Dr. Nairn as one of the best coastal engineers in the country. Defendant's First Response, Exh. 4 at 83:1-4. Dr. Meadows could not identify anyone whom he would rate ahead of Dr. Nairn in the Great Lakes area for his professional expertise generally as a coastal engineer. (Defendant's First Response, Exh. 5 at 85:2-12). He believes that Dr. Nairn is probably the top modeler in the Great Lakes region and he could not "think offhand of anyone in the near shore sediment dynamics area who has done more or accomplished more." Defendant's First Response, Exh. 5 at 84:17-21.

[3] Plaintiffs' misapply the "Garbage in, garbage out" analogy to reliability under Fed. R. Evid. 702. See Plaintiffs' Second Response at page 2, paragraph 3. It does not logically follow that because two of Dr. Nairn's colleagues failed to list input data used in some of the models that the data itself is unreliable.

expert. Hamling v. United States, 418 U.S. 87, 108 (1974); United States v. Bourgeois, 950 F.2d 980, 986-87 (5th Cir. 1992). The second Daubert prong requires an analysis of whether the opinion is relevant to the facts at issue. Daubert, 509 U.S. at 591-92. This requirement mandates a "fit" between testimony and the issue to be resolved by trial. Daubert, 509 U.S. at 591. In other words, whether "'[the] reasoning or methodology properly can be applied to the facts in issue.'" McKenzie v. Benton, 388 F.3d 1342, 1351 (10th Cir. 2004), cert. denied, 544 U.S. 1048 (2005), quoting Daubert, 509 U.S. at 593.

The first of the four factors enumerated by the Supreme Court in Daubert for the reliability prong relates to whether the methodology can be (and has been) tested. 509 U.S. at 593. Dr. Nairn's methodology and use of a sediment budget in conjunction with computer modeling to assess various erosion processes (such as long shore transport rates and recession rates) is well-settled. Not only did Dr. Nairn provide evidence of that through his declaration (see Defendant's First Response, Exh. 6 at 2, 11, 15, 22), but plaintiffs' own experts endorsed the use of a sediment budget and computer modeling. Plaintiffs' experts agreed with Dr. Nairn's use of a sediment budget,[4/] methodology of calculating long shore transport rate[5/] and recession rates,[6/] and the use of computer modeling.[7/]

In response, plaintiffs argue two points. First, plaintiffs claim Dr. Nairn's results are not consistent over time in several respects. Second Response at page 3, paragraph 6. We disagree.

---

[4/] See Defendant's First Response, Exh. 4 at 119:23-120:12 and Exh. 5 at 90:19-23, 93:18-25.

[5/] See Defendant's First Response, Exh. 4 at 163:21-165:15 and Exh. 5 at 46:21-47:14.

[6/] See Defendant's First Response, Exh. 5 at 88:10-18.

[7/] See Defendant's First Response, Exh. 4 at 30:8-31:6, 31:23-32:6, 165:16-19 and Exh. 5 at 64:10-19, 65:3-15.

Plaintiffs ignore Dr. Nairn's detailed explanation that addresses this very issue both in his report (JR at 032, 038, 039, 075, 077-078) and in his declaration (Defendant's First Response, Exh. 6 at 21-22). He explains very clearly the differences in available information, scope of his charge in each situation, the additional work undertaken for purposes of his investigation for this litigation, and the corroboration through peer-review of different elements of his work today. Id. Plaintiffs' charge does not affect reliability of Dr. Nairn's methodology; rather it relates to whatever use plaintiffs may want to make of it for attacking Dr. Nairn's credibility. Courts reject this kind of challenge to an expert's qualifications under Daubert. See, e.g., Marvin Lumber & Cedar Co. v. PPG Indust., Inc., 401 F.3d 901, 916 (8th Cir. 2005) (complaints that expert's studies were done in anticipation of litigation and other challenges to factual basis of the expert's understanding goes to the credibility and weight to be given the testimony, not the admissibility); Children's Broadcasting Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004) (recognizing that challenges to the factual basis of an expert's opinion do not generally affect its admissibility); see also Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

Plaintiffs also suggest that Dr. Nairn's "method cannot stand testing" in the Lake Michigan environment because the size of the lake and its conditions are not compatible with the model he used. Plaintiffs' Second Response at page 6, paragraph 12, and page 9, paragraph 21. Plaintiffs have either misinterpreted the statements at APP0226 and PA21 or misunderstood the application of the Baird Wave Hindcast Model. The content of the documents located at APP0226 and PA21 discuss the use of synoptic weather charts to determine over water wind speeds for hindcasting waves. It warns that this may not be appropriate for the Great Lakes

where large temperature differences between the water and the air can render the method of relying on synoptic weather charts inaccurate. On this point, the article concludes that "[f]or these exceptional cases, there is no valid substitute for wind observations." See Defendant's First Response, Exh. 6 at App0226 (page 3-27). As described at JR 0243 of Dr. Nairn's expert report and in more detail in his declaration (see Defendant's First Response, Exh. 6 at pages 15-18, Dr. Nairn uses land and over water based wind observations and not synoptic charts, fully in line with the recommendations of the article quoted by plaintiffs at APP0226. Dr. Nairn goes further and calibrates the land-based wind measurements against over-water measurements to directly represent the winds over the water. Finally, Dr. Nairn tests the result of developing these representative winds by comparing the predicted waves to the measured waves and showing very good agreement. Further, Dr. Meadows, plaintiff's own expert, opined that Dr. Nairn used very good models in his calculations and that he is not aware of any further advances that supersede the models used by Dr. Nairn. Defendant's First Response, Exh. 5 at 67:21-68:7.

The second factor suggested by the Daubert opinion for assessing reliability considers whether the expert's methodology has been subjected to peer review and publication. Daubert, 509 U.S. at 593-94. In essence, plaintiffs contend that Dr. Nairn's methodologies have not been peer reviewed because "there has been no publishing of the 2006 report."[8/] Plaintiffs' Second

---

[8/] Plaintiffs also mislead regarding the timing of review of Dr. Nairn's report. Implying that they had no opportunity, plaintiffs' suggest their two geologists, Dr. Chrzastowski and Dr. Shabica, finally saw Dr. Nairn's report "for the first time at deposition time." Plaintiffs' Second Response at page 4, paragraph 7. The truth suggests a different and fuller picture. Dr. Chrzastowski testified explicitly at his deposition that he had, in fact, reviewed Dr. Nairn's report before he was deposed. See Exhibit 1 at 6:14-8:5. As for Dr. Shabica, apparently plaintiffs' counsel elected not to provide Dr. Nairn's report to him before he was deposed. See Exhibit 2 at 83:12-21. After Dr. Shabica's deposition had commenced but had been adjourned to be continued at a later date, plaintiffs informed defendant that Dr. Shabica would no longer be used as an expert witness. See Defendant's First Response at page 1, fn. 1.

Reply at page 4, paragraphs 7 and 8. Plaintiffs completely miss the mark and cite no case law supporting the proposition that an expert report must be published in order to meet Daubert scrutiny. The point is that the methodologies used by Dr. Nairn have been peer reviewed.[9] Defendant has also demonstrated that Dr. Nairns methodologies have been subjected to ample peer review and publication. Defendant's First Response, Exh. 6 at 11-20, 22-23.

The third factor in the reliability assessment mentioned by the Supreme Court in Daubert considers any known or potential rate of error. Daubert, 509 U.S. at 593-94. To attempt to make headway on this point, plaintiffs take Dr. Nairn's comments about the accuracy of the long shore transport rate ("LST") predictions out of context. See Plaintiffs' Second Reply at pages 4-5, paragraphs 9 and 10, and page 8, pargraph 19. Dr. Nairn explains, however, in the first paragraph on page 21 of his declaration that the +/-25 percent is the expected accuracy of COSMOS prior to calibration/verification. Defendant's First Response, Exh. 6 at page 21. In the application of COSMOS to this case, as noted at the end of the same paragraph, the predicted net LST rates compared very well to the observed trapping of sand (providing the measure of the net long shore transport rates - following commonly accepted procedures, as noted by Komar - see Defendant's First Response, Exh. 6 at page 34). Therefore, COSMOS estimates in this application were validated or verified, and did not require calibration to match the measured rates.

Further, Dr. Nairn's report not only considered and approximated a rate of error for the

---

[9] As for Dr. Nairn's report, plaintiffs' experts had glowing remarks. Dr. Chrzastowski characterized Dr. Nairn's report as "excellent." Defendant's First Report, Exh. 4 at 276:6-278:10. Dr. Meadows was impressed with the thoroughness and extent of Dr. Nairn's sediment budget (Defendant's First Response, Exh. 5 at 92:11-19) and he personally had never created a sediment budget approaching the thoroughness of Dr. Nairn's, nor could he recall anyone that had (Defendant's First Response, Exh. 5 at 92:20-93:3).

methodologies employed in his calculation of a long shore transport rate of 40,000-50,000 cubic yards/year, but he used no fewer than five different approaches or methods to calculate it. See JR 039, 074-076 and Defendant's First Response, Exh. 6 at 20-21. Four of those five methods yielded results that ranged from 40,000 to 50,000 cubic yards/year with one calculating the rate at 71,000 cubic yards/year. Id. He settled upon 40,000- 50,000 cubic yards/year as the best estimate based upon the collective results of these approaches with an accuracy of plus or minus 25 percent. JR 039.

Moreover, Dr. Meadows' work for the University of Michigan corroborates the accuracy of Dr. Nairn's calculation. Dr. Meadows testified in a December 2000 deposition in this case before being retained by plaintiffs. During that deposition, Dr. Meadows testified about a long shore transport rate 50,000 - 60,000 cubic yards for the St. Joseph region which was calculated in a series of wave analysis studies conducted by the Ocean Engineering Laboratory at the University of Michigan (Defendant's First Response, Exh. 5 at 41:16-42:13) under a grant from the Michigan Department of Environmental Quality (id. at 43:4-15). These studies were produced annually from 1988 until approximately 2004. Id. at 43:4-11; 44:13-17. Dr. Meadows recalled that six, and maybe as many as seven, of these studies dealt with the St. Joseph Harbor region and south of the harbor. Id. at 42:22-23; 45:4-15. Dr. Meadows was the project director on these studies, participating in the field data collection and report writing analyses. Id. at 46:1-10. He believes the studies were conducted properly and that the results were valid. Id. at 46:11-15.

Plaintiffs also attempt to cast doubt upon the accuracy of Dr. Nairn's efforts by discussions about velocity (Plaintiffs' Second Response at page 6 at paragraphs 13-14) and angle of wave to shore (Id. at page 7 at paragraphs 15-18). Plaintiffs' attempt fails for two reasons.

Dr. Nairn addresses the subject of velocity in his declaration Defendant's First Response, Exh. 6 at 24-28, 33, 36-37. Regarding the question about angle of wave to shore, plaintiffs are incorrect. Dr. Nairn does not "just average the wave angle." Plaintiffs' Second Response at page 7 at paragraph 18. Southgate and Nairn (1993) and Nairn and Southgate (1993) provide the various relationships between wave approach angle and long shore sand transport (see JR250 to JR319). The greek letter alpha is the wave orthogonal angle (the angle formed between the wave approach direction and a perpendicular line to the shoreline at the calculation point of interest). The wave approach angle and the manner in which the angle changes as the wave continue to refract as they approach the shore is fundamental to the generation of a long shore current (u with an overbar) and to the angle of the wave orbital velocity (u subscript m) in the long shore sand transport equation presented in Nairn and Southgate (1993) and explained further in Point 6a of Nairn's affidavit. See Defendant's First Response, Exh. 6 at 23-25.

Second, both of these items – velocity and angle of wave to shore – are topics in which plaintiffs simply disagree with Dr. Nairn's conclusions. Plaintiffs create no doubt about the scientific validity of Dr. Nairn's approach. Instead plaintiffs are free to cross-examine Dr. Nairn on these issues.

Finally, plaintiffs attempt to suggest there has not been a general acceptance of Dr. Nairn's methodologies within the community. See Daubert, 509 U.S. at 594. Plaintiffs make statements that Dr. Nairn's report cannot meet the Daubert test of acceptability because "there is no relevant scientific community" (Plaintiffs' Second Reply at page 3, paragraph 5), that Dr. Nairn's models "are always wrong, but that just does no harm except for the waste of money" (Plaintiffs' Second Reply at page 5, paragraph 11), that Dr. Nairn's models "are just another effort at 'cut and try' or 'rule of thumb' engineering" (Plaintiffs' Second Reply at page 5,

paragraph 11), and that Dr. Nairn's "model does not enjoy general acceptance within any relevant scientific community because the method is used only for beach nourishment" (Plaintiffs' Second Reply at page 9, paragraph 24). Plaintiffs' statements are made without support. Interestingly enough plaintiffs do acknowledge that "there are a large number of Nairn models sold and used by governmental or beach communities." (Plaintiffs' Second Reply at page 5, paragraph 11). That fact by itself certainly indicates acceptance within the using community. Further, as discussed above and in Defendant's First Response, we have discussed amply the peer-reviewed confirmation of Dr. Nairn's methodologies and supporting corroboration by plaintiffs' experts.

In sum, reliability is determined by examining "whether the reasoning or methodology underlying the testimony is scientifically valid." McKenzie v. Benton, 388 F.3d at 1351 (10th Cir. 2004) (quotation marks and citations omitted). Plaintiffs take exception with Dr. Nairn's opinions. In doing so, they fail to present a persuasive case that demonstrates the lack of scientific validity of his reasoning or methodology. Plaintiffs' labor and ultimately fail because, consistent with defendant's evidence as demonstrated in our First Response as well as in this Second Response, plaintiffs' own experts vouch for the reasoning and methodology employed by Dr. Nairn. At bottom, plaintiffs just don't like Dr. Nairn's opinions because he provides a different result than they want. As Dr. Meadows testified, he thinks he and Dr. Nairn "don't agree on the magnitude of impact that the Federal navigation structures have had on the shoreline to the south." Defendant's First Response, Exh. 5 at 96:10-17. Where we have factual or expert opinion disagreements, trial remains the appropriate place to air those differences.

**CONCLUSION**

For the reasons discussed in this response and Defendant's First Response, we

respectfully ask the Court to deny plaintiffs' motion.

Dated: January 18, 2007

Respectfully submitted,

*s/Terry M. Petrie*
TERRY M. PETRIE
Environment and Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294
Tele: 303-844-1369
Fax: 303-844-1350
Terry.Petrie@usdoj.gov

HEIDE L. HERRMANN
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: 202-305-3315
Facsimile: 202-305-0274
Heide.Herrmann@usdoj.gov

Attorneys for Defendant

OF COUNSEL

Gary W. Segrest, Esq.
Office of Counsel
U.S. Army Corps of Engineers
477 Michigan Avenue, Room 659
Detroit, MI 48226

**CERTIFICATE OF SERVICE**

I certify that I have served a copy of the "Response to Plaintiffs' Second Reply to Defendant's Opposition to Motion to Strike Dr. Nairn's Expert Report" by electronic filing with the United States Court of Federal Claims on the 18th day of January, 2007 on:

John Ehret, Esq.
20860 Greenwood Drive
Olympia Fields, IL 60461

Counsel for *Banks* Plaintiffs

****************
Drew Marrocco, Esq.
Sonnenschein Nath & Rosenthal LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005

Counsel for *Stone* Plaintiffs

****************

Eugene J. Frett, Esq.
Sperling & Slater, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603

Counsel for *Frett* Plaintiffs

****************

*s/Terry M. Petrie*
TERRY M. PETRIE