Page 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JOHN H. and MARY E. BANKS, )
ERROL L. and SUSAN H. STONE, )
as Trustees of the SUSAN H. )
STONE TRUST, et al., )
Plaintiffs, ) No. 99-4451
vs. ) Consolidated with
UNITED STATES OF AMERICA, ) No. 04-277L
Defendant. )

The deposition of CHARLES W. SHABICA, taken pursuant to the Rules of the United States Court of Federal Claims pertaining to the taking of depositions, taken before LINDA SNODGRASS SABOR, a Notary Public within and for the County of Cook, State of Illinois, and a Certified Shorthand Reporter, CSR No. 84-1850, of said state, at Suite 1000, 155 North Wacker Drive, Chicago, Illinois, on the 13th day of July, 2006, at 10:00 a.m.

Page 2

PRESENT:
MR. JOHN B. EHRET,
(5986 Dunham Avenue,
Stevensville, Michigan 49127,
Phone 269/465-5857),
appeared on behalf of Plaintiff
John H. and Mary E. Banks;

MR. TERRY M. PETRIE,
UNITED STATES DEPARTMENT OF JUSTICE,
Environment & Natural Resources Division,
General Litigation Section,
(1961 Stout Street, Suite 800,
Denver, Colorado 80294,
Phone 303/844-1369),
-and-
MR. GARY W. SEGREST,
Assistant District Counsel,
U.S. ARMY CORPS OF ENGINEERS,
Detroit District,
(477 Michigan Avenue, Suite 659,
Detroit, Michigan 48231,
Phone 313/226-2215),
appeared on behalf of the Defendant.

Page 3

PRESENT VIA TELEPHONE:
SONNENSCHEIN, NATH & ROSENTHAL,
(1301 K Street, NW,
Washington, DC 20005,
Phone 202/408-6387), by:
MR. DREW W. MARROCCO,
appeared on behalf of Plaintiffs
Errol L. and Susan H. Stone, as
Trustees of the Susan H. Stone Trust.

ALSO PRESENT:
DR. GRAHAME J. LARSON,
Michigan State University;

DR. ROBERT B. NAIRN,
Baird & Associates;

DR. JAMES P. SELEGEAN,
Army Corps of Engineers.

REPORTED BY: LINDA SNODGRASS SABOR, RMR, CRR,
CSR No. 84-1850.

Page 4

(WHEREUPON, the witness was duly sworn.)
CHARLES W. SHABICA,
called as a witness herein, having been first duly sworn, was examined and testified as follows:
EXAMINATION
BY MR. PETRIE:
Q. Good morning, Dr. Shabica. How are you?
A. I'm fine, sir. Thank you.
Q. Good.
I am glad you could make it this morning. I appreciate your time.
Sir, have you ever been deposed before?
A. Yes.
Q. How many times?
A. I am going to have to guess.
Maybe three or four times.
Q. When was the last time?
A. This is another guess.
Probably three or four years ago.
Q. What was that deposition about?
A. I can't remember.
Q. Were you --
A. I can remember a variety of depositions.





Exhibit 2

Page 81

supplemental report by Dr. Meadows dated 6 July, 2006.
Have you seen that, sir?
A. No.
Q. So, then, when we look at Exhibit 2, with that warning, or the reminder, the statement that it's important not to let recently acquired information influence what you think you knew in the past, you took that to mean what again?
A. I think my -- Grahame's response and my response to his response, that's what I saw that meaning.
Q. Why is that, that you took it that way?
When you got the language "influence" --
A. Because that's what I thought -- that was the information -- the new information.
Q. Don't you think you have an obligation as an expert to evaluate all of the relevant information?
A. I had already looked at those things.
When John said don't let that recently acquired information, that material, influence you, I took that to mean don't reread those things. They are certainly things that I have read in the past,

Page 82

but --
Q. Would you agree that the way you took it is inconsistent with the language itself in this letter?
A. No.
It said don't let that influence you. My conclusion was you don't have to read it.
Q. So in some manner are you saying you did or did not retain independent judgment of your own about the value, the merits, of Dr. Larson's supplemental report?
A. Oh, sure.
I mean, you can ask me about the supplemental report. I just didn't reread it for this deposition.
Q. So you think that Mr. Ehret in his advice to you not to let it influence really meant don't waste time reading it.
A. Yes.
Would you like to know why?
Q. Sure.
A. Okay. I found Grahame's report really interesting, but I didn't think it was really apropos to this case, you know, the whole -- the

Page 83

question about the wood, that's very interesting to all of us, and, you know, whether it was peat or not seemed relatively immaterial to me.
What was important was that those things, whether it was peat or soil, were materials that once eroded couldn't be then redeposited to protect the shore.
Q. Okay.
A. So I thought that -- that was a key issue that those things really didn't illuminate in any way.
Q. Okay. We have also got -- and I didn't mention them earlier -- Dr. Nairn's reports. He has got two, as well. One is dated May, 2006.
And I gather from what you were saying earlier that you have not seen this before.
A. No. I would love to see it.
Q. Did you ask to see it?
A. I didn't know it existed.
Q. You didn't know it existed?
A. No.
Q. Did you know that Dr. Nairn was on the case?
A. Oh, sure.

Page 84

Q. You knew that the parties were going to submit expert reports?
A. Actually, I didn't think about it. I know Rob had studied the shore for a long time, his 1997 paper was really cool, so --
Q. Did you expect Dr. Nairn to submit an expert report?
A. I didn't think about it.
Q. You didn't think about it?
A. No.
Q. Even though you, I suspect, hold a good opinion of Dr. Nairn's abilities.
A. Yes.
Q. You know his firm and his reputation?
A. Sir, I'm very busy, and if somebody says you don't need to pay attention to it, and it's my employer, I won't.
Q. So are you saying, then, the reason you didn't think about Dr. Nairn's -- not Dr. Larson's, but Dr. Nairn's reports is because your employer here, Mr. Ehret, told you, as well, not to worry about Dr. Nairn's reports?
A. No.
Q. Then what is it?





Exhibit 2