**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **JOHN H. and MARY E. BANKS, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 99-4451 L**<br>**Judge Emily C. Hewitt** |
| **STONE, ERROL L. & SUSAN H.,**<br>**In their own right and as Trustees of the Susan H. Stone Trust and the Errol L. Stone Trust**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 04-277 L**<br>**Judge Emily C. Hewitt** |
| **EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and**<br><br>**DONNA P. FRETT,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | **No. 05-1353 L**<br>**Judge Emily C. Hewitt** |

**PROTECTIVE ORDER**

1. Scope. This Protective Order ("Protective Order" or "Order") governs the use and dissemination of all information that is designated as "Protected Information" and that is

produced within this action.

2. Document Defined. The term "document" or "documents," as used in this Protective Order, shall have the same meaning as contemplated by the Rules of the United States Court of Federal Claims, and shall include all written, recorded, or graphic material whatsoever, such as responses to requests for production of documents or things, documents or things produced herein, interrogatory answers, requests for admission and responses thereto, briefs, memoranda, affidavits, exhibits, and deposition transcripts.

3. Protected Information Defined. "Protected Information" includes information that a party to this litigation asserts is subject to protection from disclosure pursuant to the Privacy Act, 5 U.S.C. § 552(b)(4), the Trade Secrets Act, 18 U.S.C. § 1905, or any other confidential research, development, or commercial information otherwise entitled to protection under Rule 26(c)(7) of the Rules of the United States Court of Federal Claims.

4. Trade Secret Defined. The term "Trade Secret," as used in this Protective Order, means information as defined under the Uniform Trade Secrets Act: Information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

5. United States' Protected Information. Protected Information of the United States includes information pursuant to any and all applicable federal statutes or regulations.

6. Publicly Available Information. Information that is publicly available is not entitled to treatment as Protected Information under this Order. Prior to designating any information as

Protected Information subject to this Order, the Party so designating shall make a good faith determination that the information is not publicly available. The Party shall not designate information as Protected Information if it learns that the information is publicly available.

7. Legend To Be Used. Any party involved in this litigation, or counsel for such party, may designate as Protected Information any Document that it produces in this case which meets the definition set forth in this Order by stamping the legend "PROTECTED INFORMATION – DO NOT DISCLOSE – BANKS V. UNITED STATES, NO. 99-4451 L (CONSOLIDATED)" on the face of the information that a party in good faith believes to meet the definition set forth in this Order.

8. Deposition Testimony. A party may designate specific lines and pages of deposition testimony as Protected Information by advising the court reporter to include the following designation on each line and page of the transcript where confidential information has been disclosed: "PROTECTED INFORMATION – DO NOT DISCLOSE – BANKS V. UNITED STATES, NO. 99-4451 L (CONSOLIDATED)"

9. Withdrawal. Any party may withdraw a designation of confidentiality at any time for any reason and shall notify counsel for all parties in writing, identifying with specificity the information to which this Order shall no longer apply.

10. Use of Protected Information. Information designated as Protected Information by a party may be used by any party for any purpose related to this case; but shall not be used for any other purpose except as permitted under this Order. Any notes or dictation tapes made in using or reviewing the Protected Information, which contain information regarding the Protected material, will be stamped "PROTECTED INFORMATION – DO NOT DISCLOSE – BANKS V. UNITED STATES, NO. 99-4451 L (CONSOLIDATED)," and are subject to the same provisions

as copies of the material.

11. Who May Have Access. Protected Information that is covered by this Order may be disclosed to the following individuals:

(a) The Court and its personnel including any appeal herein;

(b) Counsel of record and employees of such counsel who have functional responsibilities relating to the preparation and trial of this action;

(c) Employees of a party who are assisting counsel in the preparation and trial of this action;

(d) Contractors, consultants, investigators, and experts retained by the parties or counsel to assist (whether designated as trial witnesses or not) in the preparation and trial of this action;

(e) Deponents in connection with preparation for or during the course of a deposition;

(f) Court reporters engaged for depositions, and employees or contractors of such court reporters reasonably necessary for the transcription of depositions;

(h) any other person or entity to whom counsel for the party producing the Protected Information agree in writing, or whom the Court directs to have access to such information.

12. Conditions of Access.

(a) Individuals who may have access to Protected Information shall sign the Certification at Attachment A to this Order. Information designated as Protected Information and provided by a party to another individual covered by this Order, shall be used by that other individual solely for the purposes of investigation or litigation involving similar issues to this action, and not for any other purpose.

Before any Protected Information is provided to individuals covered by this Order, the party that provided such information shall obtain from an authorized representative of the recipient(s) the signed written Certification at Attachment A to this Order. The providing party shall keep and maintain as an officer of the Court, in a secure place, the originals of all such executed consent forms. At any request of the Court, copies of any signed certification shall be made available to the Court as may be required for the enforcement of this Order.

(b) It shall be the responsibility of the attorneys of record in this action to employ, consistent with this Order, reasonable measures to control duplication of, access to, and distribution of the Protected Information.

13. Objection to Designation. Any party may at any time object to another party's designation of Protected Information. No party shall be obligated to challenge the propriety of any designation and failure to do so shall not preclude a subsequent challenge on the propriety of such designation. In the event that a party disputes the designation of a document or documents as protected under federal law or as confidential business information, the objecting party will notify the other party in writing of its grounds for disputing the designation, and, within 30 days after such notification (or additional time if the parties agree), the parties will discuss and attempt to resolve the dispute. If the parties do not resolve the dispute within 30 days or the extension thereof, the objecting party may file a motion to seek a ruling from the Court related to the designation of a document or documents as protected under federal law or as confidential business information. In the meanwhile the objecting party will continue to treat the materials as Protected Information pending a ruling by the Court on such a motion.

14. Filings with the Court. Protected Information materials shall be filed under seal by the

Clerk of Court in the event that such documents are filed into the record as evidence or exhibits or for any other purpose. The parties shall not file with the Court at any time any pretrial motion, brief, pleading, or other filing in this action, quoting or referring to a Protected Information document or containing information obtained from a Protected Information document, unless any Protected Information portion of such motion, brief, pleading, or other filing is filed under seal with the Clerk of the Court. Materials or pleadings filed under seal shall be filed in a sealed envelope or other appropriate sealed container on which shall be endorsed the title to the action, an indication of the nature of the contents of such sealed envelope or other container, the phrase "PROTECTED INFORMATION – DO NOT DISCLOSE – BANKS V. UNITED STATES, NO. 99-4451 L (CONSOLIDATED)," and a statement substantially in the following form:

> This envelope or container is sealed and contains confidential information filed in this case by [name of party] and is not to be opened or the contents thereof displayed or revealed except by order of the Court or pursuant to written stipulation of the parties to this action. This envelope or container shall not be opened without order of the Court, except by officers of the Court or counsel of record, who, after reviewing the contents, shall return them to the clerk in a sealed envelope or container.

Any filing of documents under seal shall include a copy of this Stipulation of Confidentiality and Protective Order.

18. Destruction. Within ninety (90) days after the conclusion of this litigation, including all appeals, all individuals to whom documents or copies which are subject to this Order are disclosed shall return or destroy any and all documents, copies, and notes in their possession to counsel for the party that provided such Protected Information. The obligation to return or destroy shall occur prior to the termination of this litigation when an individual or entity is no longer a party or when an attorney or expert is no longer retained to work on this case, whichever

comes earlier. Individuals returning or destroying documents, copies, and notes under any circumstance shall provide a statement and certify in writing that the documents, copies and notes have been returned or have been destroyed.

IT IS SO ORDERED THIS ____ DAY OF ___________, 2007.

_______________________________
JUDGE EMILY C. HEWITT

EXHIBIT "A"

AFFIDAVIT OF CONFIDENTIALITY

STATE OF ____________________,

1. My name is ____________. I live at ____________. I am serving as (counsel) (an expert) (____________) on behalf of ____________ in the above-captioned proceeding.

2. I certify that I have fully read and completely understand the Stipulation of Confidentiality attached and incorporated herewith as Exhibit "A." I undertake and agree to abide fully and completely by its terms.

3. In particular, and without limitation of the foregoing, I recognize that Protected Information documents may contain information protected from disclosure pursuant to the Privacy Act, 5 U.S.C. § 552(b)(4), the Trade Secrets Act, 18 U.S.C. § 1905, or any other confidential research, development, or commercial information otherwise entitled to protection under Rule 26(c)(7) of the Rules of the United States Court of Federal Claims; I agree to keep confidential the information in Protected Information documents; I shall not disclose to, reveal, or discuss in any way any confidential material or the facts and information contained therein with any person other than as authorized by the attached Stipulation of Confidentiality; and I shall not use confidential information for any purpose, except for the preparation and presentation of this case for trial or appeal.

4. I understand that, if I disclose any confidential material or information derived from any confidential material in violation of this Stipulation of Confidentiality, I may be subject to all applicable sanctions, including the penalties imposed by the Court for contempt.

______________________________
AFFIANT

SWORN TO AND SUBSCRIBED BEFORE ME,
THIS ___________ DAY OF ________________, 2002.

______________________________
NOTARY PUBLIC

**U.S. Department of Justice**

Environment and Natural Resources Division

Terry *M. Petrie, Attorney*
*Denver Field Office*
***1961 Stout Street, 8th floor***
***Denver, CO 80294***

*Telephone (303) 844-1369*
*Facsimile (303) 844-1350*

January 22, 2007

**BY FEDERAL EXPRESS**

John Ehret, Esq.
20860 Greenwood Drive
Olympia Fields, IL 60461

Drew W. Marrocco, Esq.
Sonnenschein Nath & Rosenthal LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005

Eugene J. Frett, Esq.
Sperling & Slater, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603

RE: Banks, et al. v. United States, No. 99-4451 L; Stone, et al. v. United States, No. 04-277 L; Frett, et al. v. United States, No. 05-1351 L

Gentlemen:

I write for several reasons.

1. Regarding production of computer modeling data which plaintiffs sought in conjunction with their "Plaintiffs' Rule 26(a)(2)(B) Motion to Strike Dr. Robert B. Nairn's Expert Report," I have included the data on a set of 14 DVDs which the United States described as Group A and Group B in our January 16, 2007 filing with the Court titled "Defendant's Response to Order filed January 10, 2007."

A. Regarding the DVDs:

(1) They are labeled as follows:

(A) DVD A1 - COSMOS INPUT/OUTPUT
(B) DVD A2-A - HYDROSED INPUT/OUTPUT Bypassing
(C) DVD A2-B - HYDROSED/STWAVE Large Domain
(D) DVD A3 - BAIRD WAVE HINDCAST INPUT/OUTPUT
(E) DVD A5-A RMA2 - SED2D
(F) DVD A5-B RMA2 - SED2D
(G) DVD A5-C EMA2 - SED2D
(H) DVD A5-D RMA2 - SED2D
(I) DVD A5-E EMA2 - SED2D
(J) DVD A5-F RMA2 - SED2D
(K) DVD A5-G RMA2 - SED2D
(L) DVD A5-H RMA2 - SED2D
(M) DVD B RAW DATA
(N) DVD A4 SWAT INPUT/OUTPUT

(2) The data for each DVD is fairly self-explanatory. Regarding the data within the specific DVD labeled "DVD B RAW DATA," it contains:

(A) USACE Monthly Lake Levels (1865-2002)
(B) NDBC Buoy 45007 Wave and Wind Data (1981-2002)
(C) B3-1930 and 1948 bathymetry data sets
(D) Flow data for the following USGS gages (1991 to 1995)
(E) Sediment data for the following USGS gage (1979 to 1995)
(F) NOAA Precipitation Data (1987 to 1995)
(G) NOAA Temperature Data from the following stations (1987 to 1995)

B. To open the DVDs, I have been informed that they contain text files which can be opened with Word or Word Pad. If you open in Word:

(1) Go to "file"
(2) Go to "Open"
(3) At the very bottom of the open screen appears "Files of Type." To the right of that appears a down arrow which should be clicked on and which will then provide several options. Choose "Selected All Files."

C. <u>PLEASE be advised</u> that I have been informed today that some <u>additional</u> raw data (files for topography, land cover/use and soils) for the SWAT model was overlooked in the DVDs that were sent to me. I understand that Baird hopes to have this data sent to me by Wednesday, January 24. I will provide it to you immediately. I also understand that these files require use of GIS software by ESRI to be able to use the data. The software is known as Arc View 3.x.

2. In our January 16, 2007 filing with the Court titled "Defendant's Response to Order filed January 10, 2007," we also listed those documents set forth in sections 5.1, References Cited, and 5.2, References Considered, of Dr. Nairn's report, not previously produced through the course of earlier discovery. Plaintiffs have not requested any of the remaining documents.

   A. These documents were set forth in Dr. Nairn's report pursuant to the parties' agreement to have experts list – and not provide – the information considered in reaching their opinions to meet the disclosure requirement of Rule 26(a)(2)(B). We listed them in our "Defendant's Response to Order filed January 10, 2007," even though they were not the sought after computer modeling data in order to ensure no confusion in responding fully to the Court's January 10 order.

   B. We are prepared to produce them as we indicated in our court filing and Dr. Nairn is obtaining copies of those documents not within his possession. However, because of the volume involved, please advise whether you desire us to produce the remaining documents. I spoke with John Ehret briefly about this matter this morning. If it will assist you in deciding, we would be glad to provide you those documents, if any, from Sections 5.1 and 5.2 which we would use as exhibits at trial. Or, we will produce all of the documents from Sections 5.1 and 5.2. I would appreciate your assistance on this matter.

3. This morning I also spoke with John about copies of models used by Dr. Nairn. Drew Marrocco had originally asked we "provide a copy of the COSMOS program and any other proprietary programs" used by Dr. Nairn (see August 28, 2006 letter at Joint Record 1283) and eventually the focus became the documents ("detailed information and data used by Dr. Nairn in coming up with the opinions in his expert report" – see September 8, 2006 letter at JR 1295) to be agreed upon between Mr. Ehret and myself. In subsequent correspondence, the parties looked only towards the computer modeling data (which I addressed above in paragraph 1) and the COSMOS formulas to calculate the long shore transport rate.

   A. As you know, Dr. Nairn used six models in assisting him at arriving at his expert opinions. Please let me know as soon as possible if you desire copies of the models and, if so, which ones.

   B Three of the models are proprietary. They are the COSMOS, Baird Wave Hindcast, and Hydrosed. In coordination with Dr. Nairn, we can prepare a proposed protective order governing use of these models. I will begin work on that immediately, assuming you want some or all of them. Again, however, please advise me as soon as possible which models, if any, you desire.

C. Please advise too whether you seek the source code and/or executable code for the models you desire.

Sincerely,

Terry M. Petrie

Terry M. Petrie
Trial Attorney

**JOHN B. EHRET**
**20860 GREENWOOD DRIVE**
**OLYMPIA FIELDS, IL 60461**
**PHONE: 708-748-8975**
**FAX: 708-748-7661**

SPRING
**SUMMER**
FALL
**5986 DUNHAM AVE.**
**STEVENSVILLE, MI 49127**
P. 269-465-5857
F. 269-465-3736

Date: January 24, 2007

Attorney Terry M. Petrie
Environment & Natural Resources Division
U. S. Department of Justice
1961 Stout Street 8th Floor
Denver, CO 80294
P. 303-844-1369
F. 303-844-1350

Subject: Banks et al v. U. S. A. No. 99-4451L
Reference your January 22, 2007 letter

Dear Attorney Petrie:

1. As I understand it now, you will be visiting Michigan during the week of February 5, 2006 with a new DOJ Attorney, Heide Herrman. I plan to be there to help assure a safe tour. My client alert letter is going out today.

2. The weather forecast looking ahead two weeks is about average - 0°F with winds and snow - at least flurries. Michigan has about 10 inches of snow now. The water's edge is visible because there is only about 2 inches on the sand.

3. Since the NOAA Data Buoy 45007 has been retrieved from Lake Michigan, I'd like to pay it a visit with you and MS. Herrman when you are here. Will you make the arrangements? I don't think it is proper for me to do it! I don't know where it is being kept.

4. Enclosed is an article by Tom Skilling about Lake Michigan temperatures, thermal induced currents and inversions. From bluffwe have a clear view of tall structures in Chicago and Michigan City, Indiana during temperature inversions.

5. I really can't see how Nairn considers COSMOS proprietary. Is it patented? Is the name copyrightable? Do you really want to use COSMOS? At a factor of two times actuality, the government could end up with twice the actual liability (whatever that is).

Very truly yours,

John B. Ehret
John B. Ehret
Plaintiffs' Attorney

cc: Marrocco & Frett

1-24-07
PETRIE

# Lake temperature profile nearly isothermal at 39°

As winter sets in, Lake Michigan waters are pretty well mixed in their most dense form at 39° F. As winter progresses, the topmost less dense layer will continue to cool until ice forms at or just below 32°. In spring, once the surface layer is heated to 39°, it will "turn over" due to the density differential (most dense water on top sinks, pushing less dense cooler water to the top). Warming at the surface repeats the process. Strong winds also aid in the mixing of this top layer with the extensive 39° layer below. During summer, surface waters are warmed considerably. This upper layer in the Great Lakes could be from 30-50 feet deep, while in smaller lakes more in the order of 10-20 feet. Warming translates to deeper levels, and a more stable condition develops. A middle "transition" layer forms, displaying a rapid temperature transition zone from the warm waters above to the dense 39° waters below. In the fall, the top layer cools rapidly and "turns over" when the denser water sinks and warmer less dense water rises. This process repeats, aided by strong winds which will also cause displaced surface waters to be replaced by cooler water below. Finally, the entire body of water becomes nearly isothermal at 39°, and the seasonal process repeats. This annual layering and turnover of water is important not only for water quality but also for the sustaining of algae and fish life. It enables oxygen-poor water in deeper portions of the lake to be at least partially mixed with water containing more dissolved oxygen.

TOM SKILLING
CHICAGO TRIBUNE
1/22/07

**TYPICAL WATER TEMPERATURE PROFILES FOR LAKE MICHIGAN**



**JOHN B. EHRET**
**20860 GREENWOOD DRIVE**
**OLYMPIA FIELDS, IL 60461**
**PHONE: 708-748-8975**
**FAX: 708-748-7661**

SPRING
SUMMER
FALL
**5986 DUNHAM AVE.**
**STEVENSVILLE, MI 49127**
P. 269-465-5857
F. 269-465-3736

Friday
Date: January 26, 2007

Attorney Terry M. Petrie
Environment & Natural Resources Division
U. S. Department of Justice
1961 Stout Street 8th Floor
Denver, CO 80294
P. 303-844-1369
F. 303-844-1350 ✓

Subject: Banks et al v. U. S. A. No. 99-4451L
Reference your letter of January 25, 2007

Dear Attorney Petrie:

Regarding your 1-25-07 letter forwarding additional input data for models we still don't have, the data is useless without the models. Cart won't go before the horse.

While you say the COSMOS is proprietary, I think that is just a conclusory representation by Nairn (or Baird?).

Anyway, our position is the same. The data is of no help without the models. We are entitled to the models.

Look forward to seeing your entourage during the week of February 5th, 2007. I await your advice as to exact time and place. Since our house is closed up, I suggest we rendezvous at Dale's Doughnut Factory or your hotel (?) before setting out for the viewing.

Very truly yours,

John B. Ehret
Plaintiffs' Attorney

cc: Marrocco & Frett

**U.S. Department of Justice**

Environment and Natural Resources Division

Terry *M. Petrie, Attorney*
*Denver Field Office*
***1961 Stout Street, 8th floor***
***Denver, CO 80294***

*Telephone (303) 844-1369*
*Facsimile (303) 844-1350*

January 30, 2007

**BY FEDERAL EXPRESS and FACSIMILE**

John Ehret, Esq.
20860 Greenwood Drive
Olympia Fields, IL 60461

RE: Banks, et al. v. United States, No. 99-4451 L; Stone, et al. v. United States, No. 04-277 L; Frett, et al. v. United States, No. 05-1351 L

Dear John:

My January 22, 2007, and January 25, 2007 letters requested that you advise whether you wanted a copy of the models used by Dr. Nairn in arriving at his opinions set forth in his May 2006 report. Your January 26, 2007 letter indicates you do want me to provide those models.

To that end, as mentioned before, Dr. Nairn used six models of which three – the SWAT, STWAVE, and RMA2-SED2D – are non-proprietary, public-domain models. I have included a DVD containing those three models with executable code to run the programs. If it will assist, please be advised that data processing tools, such as the Surface-water Modeling System (SMS), will help you review the results of these programs. However, the SMS is proprietary and would require you to obtain a license from a vendor that sells the SMS.

The other three models – COSMOS, HYDROSED, and Baird Wave Hindcast – used by Dr. Nairn are proprietary. We can produce you copies of those computer programs immediately after a protective order is in place. I have attached a proposed protective order for your consideration. If you have suggested changes, please advise. I hope we can agree immediately and request Judge Hewitt to issue a protective order in keeping with the parties' agreement. Please advise at your earliest convenience.

Finally, I wanted to advise you that plans have changed and we no longer plan to visit the shoreline south of the St. Joseph Harbor next week. Thank you, though, for your willingness to

accommodate us on that visit.

Sincerely,

Terry M. Petrie

Terry M. Petrie
Trial Attorney

Atchs: DVD
Proposed confidentiality stipulation

cc: Drew W. Marrocco, Esq. (with enclosures)
Eugene J. Frett, Esq. (with enclosures)

**DRAFT**
**1/30/07**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **JOHN H. and MARY E. BANKS, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 99-4451 L**<br>**Judge Emily C. Hewitt** |
| **STONE, ERROL L. & SUSAN H., In their own right and as Trustees of the Susan H. Stone Trust and the Errol L. Stone Trust**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 04-277 L**<br>**Judge Emily C. Hewitt** |
| **EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and**<br><br>**DONNA P. FRETT,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | **No. 05-1353 L**<br>**Judge Emily C. Hewitt** |

**<u>STIPULATION OF CONFIDENTIALITY AND PROPOSED PROTECTIVE ORDER</u>**

**DRAFT**
**1/30/07**

1. Scope. This Stipulation and Protective Order ("Protective Order" or "Order") governs the use and dissemination of all information that is designated as "Protected Information" and that is produced within this action.

2. Document Defined. The term "document" or "documents," as used in this Protective Order, shall have the same meaning as contemplated by the Rules of the United States Court of Federal Claims, and shall include all written, recorded, or graphic material whatsoever, such as responses to requests for production of documents or things, documents or things produced herein, interrogatory answers, requests for admission and responses thereto, briefs, memoranda, affidavits, exhibits, and deposition transcripts.

3. Protected Information Defined. "Protected Information" includes information that a party to this litigation asserts is subject to protection from disclosure pursuant to the Privacy Act, 5 U.S.C. § 552(b)(4), the Trade Secrets Act, 18 U.S.C. § 1905, or any other confidential research, development, or commercial information otherwise entitled to protection under Rule 26(c)(7) of the Rules of the United States Court of Federal Claims.

4. Trade Secret Defined. The term "Trade Secret," as used in this Protective Order, means information as defined under the Uniform Trade Secrets Act: Information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

5. United States' Protected Information. Protected Information of the United States

**DRAFT**
**1/30/07**

includes information pursuant to any and all applicable federal statutes or regulations.

6. Publicly Available Information. Information that is publicly available is not entitled to treatment as Protected Information under this Order. Prior to designating any information as Protected Information subject to this Order, the Party so designating shall make a good faith determination that the information is not publicly available. The Party shall not designate information as Protected Information if it learns that the information is publicly available.

7. Legend To Be Used. Any party involved in this litigation, or counsel for such party, may designate as Protected Information any Document that it produces in this case which meets the definition set forth in this Order by stamping the legend "PROTECTED INFORMATION – DO NOT DISCLOSE – BANKS V. UNITED STATES, NO. 99-4451 L (CONSOLIDATED)" on the face of the information that a party in good faith believes to meet the definition set forth in this Order.

8. Deposition Testimony. A party may designate specific lines and pages of deposition testimony as Protected Information by advising the court reporter to include the following designation on each line and page of the transcript where confidential information has been disclosed: "PROTECTED INFORMATION – DO NOT DISCLOSE – BANKS V. UNITED STATES, NO. 99-4451 L (CONSOLIDATED)"

9. Withdrawal. Any party may withdraw a designation of confidentiality at any time for any reason and shall notify counsel for all parties in writing, identifying with specificity the information to which this Order shall no longer apply.

10. Use of Protected Information. Information designated as Protected Information by a party may be used by any party for any purpose related to this case; but shall not be used for any

**DRAFT**
**1/30/07**

other purpose except as permitted under this Order. Any notes or dictation tapes made in using or reviewing the Protected Information, which contain information regarding the Protected material, will be stamped "PROTECTED INFORMATION – DO NOT DISCLOSE – BANKS V. UNITED STATES, NO. 99-4451 L (CONSOLIDATED)," and are subject to the same provisions as copies of the material.

11. Who May Have Access. Protected Information that is covered by this Order may be disclosed to the following individuals:

(a) The Court and its personnel including any appeal herein;

(b) Counsel of record and employees of such counsel who have functional responsibilities relating to the preparation and trial of this action;

(c) Employees of a party who are assisting counsel in the preparation and trial of this action;

(d) Contractors, consultants, investigators, and experts retained by the parties or counsel to assist (whether designated as trial witnesses or not) in the preparation and trial of this action;

(e) Deponents in connection with preparation for or during the course of a deposition;

(f) Court reporters engaged for depositions, and employees or contractors of such court reporters reasonably necessary for the transcription of depositions;

(h) any other person or entity to whom counsel for the party producing the Protected Information agree in writing, or whom the Court directs to have access to such information.

12. Conditions of Access.

**DRAFT**
**1/30/07**

(a) Individuals who may have access to Protected Information shall sign the Certification at Attachment A to this Order. Information designated as Protected Information and provided by a party to another individual covered by this Order, shall be used by that other individual solely for the purposes of investigation or litigation involving similar issues to this action, and not for any other purpose. Before any Protected Information is provided to individuals covered by this Order, the party that provided such information shall obtain from an authorized representative of the recipient(s) the signed written Certification at Attachment A to this Order. The providing party shall keep and maintain as an officer of the Court, in a secure place, the originals of all such executed consent forms. At any request of the Court, copies of any signed certification shall be made available to the Court as may be required for the enforcement of this Order.

(b) It shall be the responsibility of the attorneys of record in this action to employ, consistent with this Order, reasonable measures to control duplication of, access to, and distribution of the Protected Information.

13. Objection to Designation. Any party may at any time object to another party's designation of Protected Information. No party shall be obligated to challenge the propriety of any designation and failure to do so shall not preclude a subsequent challenge on the propriety of such designation. In the event that a party disputes the designation of a document or documents as protected under federal law or as confidential business information, the objecting party will notify the other party in writing of its grounds for disputing the designation, and, within 30 days after such notification (or additional time if the parties agree), the parties will discuss and

**DRAFT**
**1/30/07**

attempt to resolve the dispute. If the parties do not resolve the dispute within 30 days or the extension thereof, the objecting party may file a motion to seek a ruling from the Court related to the designation of a document or documents as protected under federal law or as confidential business information. In the meanwhile the objecting party will continue to treat the materials as Protected Information pending a ruling by the Court on such a motion.

14. Filings with the Court. Protected Information materials shall be filed under seal by the

Clerk of Court in the event that such documents are filed into the record as evidence or exhibits or for any other purpose. The parties shall not file with the Court at any time any pretrial motion, brief, pleading, or other filing in this action, quoting or referring to a Protected Information document or containing information obtained from a Protected Information document, unless any Protected Information portion of such motion, brief, pleading, or other filing is filed under seal with the Clerk of the Court. Materials or pleadings filed under seal shall be filed in a sealed envelope or other appropriate sealed container on which shall be endorsed the title to the action, an indication of the nature of the contents of such sealed envelope or other container, the phrase "PROTECTED INFORMATION – DO NOT DISCLOSE – BANKS V. UNITED STATES, NO. 99-4451 L (CONSOLIDATED)," and a statement substantially in the following form:

> This envelope or container is sealed and contains confidential information filed in this case by [name of party] and is not to be opened or the contents thereof displayed or revealed except by order of the Court or pursuant to written stipulation of the parties to this action. This envelope or container shall not be opened without order of the Court, except by officers of the Court or counsel of record, who, after reviewing the contents, shall return

**DRAFT**
**1/30/07**

them to the clerk in a sealed envelope or container.

Any filing of documents under seal shall include a copy of this Stipulation of Confidentiality and Protective Order.

18. Destruction. Within ninety (90) days after the conclusion of this litigation, including all appeals, all individuals to whom documents or copies which are subject to this Order are disclosed shall return or destroy any and all documents, copies, and notes in their possession to counsel for the party that provided such Protected Information. The obligation to return or destroy shall occur prior to the termination of this litigation when an individual or entity is no longer a party or when an attorney or expert is no longer retained to work on this case, whichever comes earlier. Individuals returning or destroying documents, copies, and notes under any circumstance shall provide a statement and certify in writing that the documents, copies and notes have been returned or have been destroyed.

Dated: __________, 2007 Respectfully submitted,

**DRAFT**
**1/30/07**

EXHIBIT "A"

AFFIDAVIT OF CONFIDENTIALITY

STATE OF ____________________,

1. My name is ___________. I live at ___________. I am serving as (counsel) (an expert) (___________) on behalf of ___________ in the above-captioned proceeding.

2. I certify that I have fully read and completely understand the Stipulation of Confidentiality attached and incorporated herewith as Exhibit "A." I undertake and agree to abide fully and completely by its terms.

3. In particular, and without limitation of the foregoing, I recognize that Protected Information documents may contain information protected from disclosure pursuant to the Privacy Act, 5 U.S.C. § 552(b)(4), the Trade Secrets Act, 18 U.S.C. § 1905, or any other confidential research, development, or commercial information otherwise entitled to protection under Rule 26(c)(7) of the Rules of the United States Court of Federal Claims; I agree to keep confidential the information in Protected Information documents; I shall not disclose to, reveal, or discuss in any way any confidential material or the facts and information contained therein with any person other than as authorized by the attached Stipulation of Confidentiality; and I shall not use confidential information for any purpose, except for the preparation and presentation of this case for trial or appeal.

4. I understand that, if I disclose any confidential material or information derived from any confidential material in violation of this Stipulation of Confidentiality, I may be subject to all applicable sanctions, including the penalties imposed by the Court for contempt.

**DRAFT**
**1/30/07**

______________________________
AFFIANT

SWORN TO AND SUBSCRIBED BEFORE ME,
THIS ___________ DAY OF ________________, 2002.

______________________________
NOTARY PUBLIC

**JOHN B. EHRET**
**20860 GREENWOOD DRIVE**
**OLYMPIA FIELDS, IL 60461**
**PHONE: 708-748-8975**
**FAX: 708-748-7661**

SPRING
**SUMMER**
FALL
**5986 DUNHAM AVE.**
**STEVENSVILLE, MI 49127**
P. 269-465-5857
F. 269-465-3736

Date: 1-31-07

Attorney Terry M. Petrie
Environment & Natural Resources Division
U. S. Department of Justice
1961 Stout Street 8th Floor
Denver, CO 80294
P. 303-844-1369
F. 303-844-1350

Subject: Banks et al v. U. S. A. No. 99-4451L

Dear Attorney Petrie:

I can't lend credence to the idea that COSMOS rises to the level of a valuable trade secret.

Nor does the Rule 26(a)(2)(B) impose or allow the imposition of conditions.

Beach nourishment is a simple cut and try practice which depends on the weather for success or failure.

So, please give us the models required, without our signing a protective order.

Very truly yours,

John B. Ehret
Plaintiffs' Attorney

cc: Marrocco and Frett

PS Any luck with finding 45007 - the data buoy.

**U.S. Department of Justice**

Environment and Natural Resources Division

Terry M. Petrie, Attorney
Denver Field Office
1961 Stout Street, 8th floor
Denver, CO 80294

Telephone (303) 844-1369
Facsimile (303) 844-1350

February 1, 2007

**BY FACSIMILE**

John Ehret, Esq.
20860 Greenwood Drive
Olympia Fields, IL 60461

RE: Banks, et al. v. United States, No. 99-4451 L; Stone, et al. v. United States, No. 04-277 L; Frett, et al. v. United States, No. 05-1351 L

Dear John:

I received your January 31, 2007 facsimile this morning. Though limited to Dr. Nairn's COSMOS model (one of three that are proprietary), you express your unwillingness to enter a stipulation for an order that will protect the proprietary nature of three models used by Dr. Nairn in arriving at the opinions set forth in his May 2006 report. You mention nothing about the other two models – HYDROSED and Baird Wave Hindcast – which I previously brought to your attention. Your bottom line is clear, however, when you state that we are to provide the models without a protective order. Unfortunately, you force unnecessary litigation and expenditure of time to obtain the appropriate protection for the release of these three proprietary models. I anticipate filing a motion for a protective order early next week.

On another item, you ask if we have located the NOAA buoy 45007. Your timing is good. Jim Selegean made a number of phone calls over the last week and has located the buoy. He was informed yesterday that the buoy is stored in Cheboygan, Michigan, at the Coast Guard station. The phone number provided to Mr. Selegean is (231) 597-2030.

Sincerely,

Terry M. Petrie

Terry M. Petrie
Trial Attorney

cc: Drew W. Marrocco, Esq.
Eugene J. Frett, Esq.

**JOHN B. EHRET**
**20860 GREENWOOD DRIVE**
**OLYMPIA FIELDS, IL 60461**
**PHONE: 708-748-8975**
**FAX: 708-748-7661**

SPRING
**SUMMER**
FALL
**5986 DUNHAM AVE.**
**STEVENSVILLE, MI 49127**
P. 269-465-5857
F. 269-465-3736

Date: February 4, 2007

Attorney Terry M. Petrie
Environment & Natural Resources Division
U. S. Department of Justice
1961 Stout Street 8th Floor
Denver, CO 80294
P. 303-844-1369
F. 303-844-1350

Subject: Banks et al v. U. S. A. No. 99-4451L
Lost (Dr. Larson) and Found(Buoy 45007).
Protective Order, Motion to Compel or Motion to Strike

Dear Attorney Petrie:

I see you have lost Dr. Larson but you have found 45007 way up in the northern most tip of the mit of Michigan (CHEBOYGAN).

Carole and I were about half way there but the snow conditions were too threatening so we returned to Olympia Fields after the February 1st meeting in Saugatuck of the Coal ition. I wonder if the Coast Guard Navigation Aids Group or NOAA has a report on the buoy's condition and/or maintenance budget.

I iterated the CORPS' reasons for limiting the use of the likes of COSMOS on Lake Michigan but I'll do them again here (not all inclusively):

Sand supply limited
Fetch limited
Rotating angle of winds/fetch
Land based weather reporting station
Lake based data buoy
No winter data from 45007
Winter energy proportional to square of wave height
Small lake temperature inversions void synoptic weather corolation
Dredging sand loss to equlibrium beach infrastructure
Grossly disoriented PORs (Periods of Record)
Sand diversion factor at piers
Federal River Dams sand trapping
River bed load plus suspended load
Using 50 year average for specific actual year
Using 50 year lake data with 2 year river data
Using two formulae - one for over 1 meter & one for under 1 meter

Taking river sand for private benefit economic project

To acquiesce in your protective order would be to contradict my Motion to Strike.

My experience with alleged trade secrets is that the burden is on the claimant not only to prove the fact that he has some secret knowledge but that his knowledge has some commercial value. Guess work does not constitute secret knowledge with commercial value. Guess work which is no better than 2:1 accurate has no value - even in the guess work world of beach nourishment.

It certainly has no place in the 5th Amendment world of Takings. The Daubert Court seemed to foresee an attempt like Nairn's Report:

> Scientific validity for one purpose is not necessarily scientific validity for another unrelated purpose..... Rule 702's helpfullness standard requires a related scientific connection to the pertinent inquiry as a precondition to admissibillity.
>
> Daubert 509 US 579 at 591,2.

I take umbrage with your February 1, 2007 letter's assertion that I am forcing unnecessary litigation. I'm sure you will be quick to say that my going along with a protective order indicates my belief that Nairn has some valuable secret hidden in his unseen algorithms. My stand against COSMOS is to emphasize the opposite.

My July 16, 2001 Answers to Defendant's Second Set of Interrogatories and Request for Production with Expanded Answers and Document Appendix will give far more accurate volumetric takings calculations than Nairn's "no better than a factor of 2."

In addition, I have provided you for some time my plaintiff by plaintiff calculations based on the 1958 Berrien County Erosion Board's finding of about 4 cubic yards per front foot per year.

Both of the above are supported by direct evidence, complete dimensions, geometric sketches and legally proper fast land location testimony with surveys and photos.

While you still have the cart before the horse you now have the shoe on the other foot.

Very truly yours,

John B. Ehret
John B. Ehret
Plaintiffs' Attorney

cc: Marrocco & Frett

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOHN H. and MARY E. BANKS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 99-4451 L<br>Judge Emily C. Hewitt |
| STONE, ERROL L. & SUSAN H.,<br>In their own right and as Trustees of the Susan H. Stone Trust and the Errol L. Stone Trust<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-277 L<br>Judge Emily C. Hewitt |
| EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and<br><br>DONNA P. FRETT,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 05-1353 L<br>Judge Emily C. Hewitt |

DECLARATION BY DR. ROBERT B. NAIRN

I. I am a Principal and Senior Coastal Consultant with Baird & Associates, an Engineering, Science, and Planning firm from Ontario, Canada and Madison, Wisconsin.

II. I have been asked to comment on the proprietary nature of three of the six numerical models that were applied to support the expert report I wrote on "Assessment of the Causes of Erosion in the Vicinity of St. Joseph Harbor, Michigan".

1. The COSMOS Model
   a) This program or numerical model is a processed-based model for predicting longshore and cross-shore sediment sand transport. The model simulates from a theoretical basis: wave transformation processes (including shoaling, refraction, losses due to friction, breaking, wave decay, runup and overtopping), hydrodynamics (including longshore and cross-shore steady currents generated by waves in addition to orbital velocities), sediment transport (including bed load and suspended load transport in the longshore and cross-shore directions) and morphologic change (due to cross-shore transport resulting in profile change). The model was originally developed and extensively tested against laboratory and field data by me as part of his PhD work between 1987 and 1991. Several papers have been published in peer-reviewed journals on the development, testing and application of *COSMOS*. Further description is provided in my expert report (JR00219 to JR00220 and JR00249 to JR00319).
   b) Baird & Associates acquired the ownership of the model when I joined Baird in 1993. Since that time myself and others at Baird have further developed and tested some aspects of the model. For many years the COSMOS model did not have a direct counterpart in North America where less physically-based models were typically applied. As explained in my Daubert Challenge Declaration at APP0085, the COSMOS model is internationally recognized in peer-reviewed journals as one of the leading models of its kind comparable to one or two European models.
   c) Baird have applied and tested the COSMOS model or program on many engineering projects throughout the world. As noted in (b), this type of physical process-based model of longshore and cross-shore transport is unique to North America and comparable to only one or two others worldwide. Therefore, it provides a competitive advantage to Baird when

bidding on scientific studies or engineering projects that involve sand transport.

d) Baird derives direct independent value from the model by charging our clients $150 each day of run time with the COSMOS model; this would not be possible if the model was widely and freely distributed as a public domain model. Baird also derives indirect economic advantage through competitive advantage the COSMOS model lends to Baird when bidding on scientific and engineering contracts.

e) Baird has never released the COSMOS model to any party outside the employees of Baird without a software license strictly controlling the use of the model by the licensee, and particularly prohibiting the disclosure or transfer of the model to third parties. Baird (and me as the predecessor owner) has only entered 4 or 5 such license agreements for COSMOS; in all recent cases the transfer was part of the delivery of customized management systems for clients.

f) The COSMOS model is not available in the public domain.

g) As noted under (e) licensing of the model has been an unusual circumstance and when it has occurred there are strict controls on confidentiality of the information provided to the licensee. Each and every employee of Baird signs a confidentiality agreement upon joining the firm to protect and respect the confidentiality all proprietary information of the company including any proprietary models.

2. The *HYDROSED* Model

a) This model was developed and tested by Dr. Dibajnia of Baird & Associates during his PhD and subsequent 10 years of research and development in Japan. Several papers have been published in peer-reviewed journals on the development, testing and application of *HYDROSED*. Baird are currently engaged in a lease to own agreement for the *HYDROSED* model with Dibajnia.

b) Baird use the *HYDROSED* model or program on many scientific or engineering projects each year and the availability and use of this model provide us with a competitive advantage in bidding on projects. For several years this model was completely unique within the North American market and matched only by two or three models worldwide. Even now as models of the same type are being developed and applied in North America, *HYDROSED* continues to have unique features (such as its incorporation of undertow within a 2D models) and it has a much longer track record than the newer models of this type now being applied, track record is a key measure of the likely robustness and reliability of the results of a model.

c) Baird derives direct independent value from the model by charging our clients $250 each day of run time with the *HYDROSED* model; this would

not be possible if the model was widely and freely distributed as a public domain model. Baird also derives indirect economic advantage through competitive advantage the *HYDROSED* model lends to Baird when bidding on scientific and engineering contracts.

d) Baird and Dibajnia have never released the *HYDROSED* model to any party outside the employees of Baird.

e) The *HYDROSED* model or program is not available in the public domain.

f) As noted under (e) the *HYDROSED* model has never been released to a party other than Dibajnia and Baird. Each and every employee of Baird signs a confidentiality agreement upon joining the firm to protect and respect the confidentiality of all proprietary information of the company including any proprietary models.

-3. The Baird Wave Hindcast Model

a) This program or numerical model or program is a one-dimensional parametric wave hindcast model based on the Sverdrup-Munk-Bretschneider (SMB) equations. More technical details on the model are presented in my Expert report (JR00243) and his Daubert Challenge Declaration (APP080 to APP084).

b) Baird & Associates have a long history with the development of this model, dating back to the late 1970's. Mr. W.F. Baird was involved in the original development of the model. This model was one of the first wave hindcast models with widespread application on the Great Lakes (and other inland water bodies) by the coastal science and engineering community.

c) Baird have applied and tested the Baird Wave Hindcast model on many scientific and engineering projects each year since its development. Baird strive to be leaders in the development of wave climates for the coastal engineering community. There may be only one other firm in North America that derives as much income from the development of wave climates worldwide; that firm is not an engineering firm but instead, a provider of information. Therefore, our wave hindcasting capabilities, including the use of the Baird Wave Hindcast model, give Baird a unique competitive advantage.

d) Baird derives direct independent value from the model by charging our clients a fixed fee for the development of a site specific wave climate with the model; this would not be possible if the model was widely and freely distributed as a public domain model. Baird also derives indirect economic advantage through competitive advantage the Baird Wave Hindcast model lends to Baird when bidding on scientific and engineering contracts.

e) Baird have only released the Baird Wave Hindcast model to third parties on 2 or 3 occasions and in each case it was protected by a software license

agreement; in each case the transfer was part of the delivery of customized management systems for clients.

f) The Baird Wave Hindcast model or program is not available in the public domain.

g) As noted under (e) licensing of the model has been an unusual circumstance and when it has occurred there are strict controls on confidentiality of the information provided to the licensee. Each and every employee of Baird signs a confidentiality agreement upon joining the firm to protect and respect the confidentiality all proprietary information of the company including any proprietary models.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 5 Feb 2007

Robert B. Nairn, Ph.D., P.Eng.