# In the United States Court of Federal Claims

No. 99-4451 L
c/w 99-4453L, 99-4454L, 99-4455L, 99-4456L, 99-4457L, 99-4458L, 99-4459L, 99-44510L, 99-44511L, 99-44512L, 00-365L, 00-379L, 00-380L, 00-381L, 00-382L, 00-383L, 00-384L, 00-385L, 00-386L, 00-387L, 00-388L, 00-389L, 00-390L, 00-391L, 00-392L, 00-393L, 00-394L, 00-395L, 00-396L, 00-398L, 00-399L, 00-400L, 00-401L, 04-277L, 05-1353L, 05-1381L, 06-72L
(E-Filed: February 12, 2007)

JOHN H. BANKS, ET AL.,

Plaintiffs, — 99-4451 L

v.

THE UNITED STATES,

Defendant.

Takings; Pre-trial; Rule 26(a)(2)(B); Motion in Limine to Strike Expert Witness Report.

STONE, ERROL L. and SUSAN H.
As Trustees of the Susan H. Stone Trust,

Plaintiffs, — 04-277 L

v.

THE UNITED STATES,

Defendant.

EUGENE J. FRETT, Individually and
as Trustee of the Victor J. Horvath
and Frances B. Horvath Trust,

| | | |
|---|---|---|
| v. | ) | |
| Plaintiff, | ) | 05-1353 L |
| | ) | |
| | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| ________________________________ | ) | |

ORDER

Before the court are plaintiffs' Rule 26(a)(2)(B) Motion to Strike Dr. Robert B. Nairn's . . . Expert Report (Pls.' Mot. or motion), defendant's Response to Plaintiffs' Motion to Strike Dr. Robert B. Nairn's Expert Report (Def.'s Resp. or response), and plaintiffs' Reply in the Matter of Their Motion to Strike Dr. Robert B. Nairn's Report (Pls.' Reply or reply). The court also requested and received briefing concerning a listing of the missing information that defendant planned to provide to plaintiffs and plaintiffs' legal arguments for their motion, see Order of January 10, 2007: plaintiffs' 2[]d Reply in the Matter of Their Motion to Strike Dr. Robert B. Nairn's Report (Pls.' 2d Reply or 2d reply), defendant's Response to Order Filed January 10, 2007 (Def.'s List), plaintiffs' Response to Defendant's January 16, 2007 Filing (Pls.' Resp. or response), and defendant's Response to Plaintiffs' Second Reply to Defendant's Opposition to Motion to Strike Dr. Nairn's Expert Report (Def.'s 2d Resp. or 2d response). The court held an oral argument on the motion on January 19, 2007. For the reasons stated below, plaintiffs' motion is DENIED.

I. Background

Plaintiffs are several dozen owners of property in Michigan "along a four and one-half mile stretch of the eastern shoreline of Lake Michigan south of St. Joseph's Harbor." Banks v. United States, 314 F.3d 1304, 1306 (Fed. Cir. 2003) (Banks II). Plaintiffs allege that the United States Army Corps of Engineers (Corps), by its construction and maintenance of certain jetties at St. Joseph Harbor, "ha[s] interfered with the natural littoral flow of sand and river sediment and caused damage to the lakebed," which has effected "'a gradual and continued taking'" of plaintiffs' shoreline property. Id.

The activities of the Corps affecting St. Joseph Harbor and shoreline began in the 1830s. Id. In 1903, the Corps completed construction of the St. Joseph Harbor jetties. Id. "Between 1950 and 1989, the Corps installed sandtight steel sheet piling to the jetties." Id. The parties agree that the harbor jetties exacerbate the naturally occurring erosion of the shorelines along the Great Lakes. Id. In particular, the jetties in St. Joseph Harbor have "'significantly increased the annual rate of shoreline erosion,' which, without human intervention, occurs naturally at a rate of approximately one foot per year." Id. (quoting Banks v. United States, 49 Fed. Cl. 806, 815-16, 818 (2001) (Banks I)). Since the mid-1970s, the Corps has "'acknowledged the longstanding and significant exacerbation of erosion caused by its harbor jetties.'" Id. (quoting Banks I, 49 Fed. Cl. at 817).

Pursuant to Section 111 of the River and Harbor Act of 1968, 90 Pub. L. No. 90-483, 82 Stat. 731, 735 (1970),[1] the Corps prepared a proposal in 1974 to mitigate the shoreline erosion attributable to the jetties in St. Joseph Harbor. Banks II, 314 F.3d at 1306. The Corps' mitigation efforts included: (1) more than fifteen years of providing fine sand for "feeder beaches 'to nourish the areas suffering shore damage,'" id., (2) depositing coarser sediments with longer retention time on the St. Joseph shoreline at least five times between 1986 and 1993, see id., and (3) "placing barge-loads of large rocks into the lake in 1995," id. at 1307. Three technical reports prepared by the Corps and issued in 1996, 1997, and 1999 respectively addressed the progress of the Corps' mitigation efforts in St. Joseph and "collectively indicate[d] that the [shoreline] erosion was permanent and irreversible." Id. at 1307.

On appeal of a determination that plaintiffs' claims were time-barred, the Federal Circuit found that "[w]ith the mitigation efforts underway, the accrual of plaintiffs' claims remained uncertain until the Corps' 1996 Report, 1997 Report and 1999 Report collectively indicated . . . the permanence of the [shoreline erosion]." Id. at 1310. Accordingly, the Court of Appeals concluded that, because "[t]he statute of limitations did not begin to run until the Corps issued the 1996, 1997, and 1999 Reports[,] . . . plaintiffs['] . . . complaints . . . [were] timely." Id. (reversing the trial court's decision in Banks I, 49 Fed. Cl. at 825, that the plaintiffs' claims accrued no later than 1989).

The case is now being prepared for trial of liability. Plaintiffs move the court to strike the report prepared by one of defendant's experts, Dr. Robert B. Nairn. See Pls.' Mot. 1. Plaintiffs claim that Dr. Nairn's report should be struck from the record because:

---

[1]Section 111 authorizes the Secretary of the Army "to investigate, study, and construct projects for the prevention or mitigation of shore damages attributable to Federal navigation works." The River and Harbor Act of 1968, 90 Pub. L. No. 90-483, § 111, 82 Stat. 731, 735 (1970).

1) his model equations and parametric input have not been made known to plaintiffs; 2) various factors may not have been considered by Dr. Nairn, or may have been improperly considered; 3) Dr. Nairn is not a lawyer and may not interpret Section 111 of the River and Harbor Act of 1968; and 4) Dr. Nairn, who is not a geologist, improperly incorporated geology into his report. Pls.' Mot. 1-2. Defendant argues that plaintiffs' motion should be denied because: 1) Dr. Nairn is qualified to offer expert opinions on the erosion and mitigation issues in the case; 2) the report and opinions formed by Dr. Nairn are based on reliable methodologies; and 3) excluding the report would contravene rule 702 of the Federal Rules of Evidence (FRE) and related case law. Def.'s Resp. 1. Defendant also states that Dr. Nairn's failure to disclose some of the data he used for his computer models "was an honest mistake" and one that "the United States has been attempting to rectify." Id. For the following reasons, plaintiffs' motion is DENIED.

## II. Standards of Review

FRE 702, governing the admissibility of expert testimony, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2004). The Supreme Court has held that the trial court acts as a "gatekeeper" under FRE 702 to "'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (Kumho Tire) (quoting Daubert v. Merrell Dow Pharms. Inc., 509 U.S. 579, 597 (1993)). The trial court's gatekeeping duty extends to all expert testimony, whether it be scientific, technical, or another type of specialized knowledge. Kumho Tire, 526 U.S. at 147. The rationale underlying the gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152.

In Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993), the Supreme Court presented a two-prong test for the admissibility of expert evidence. The first prong assesses the reliability of the underlying principles and methodologies. Daubert, 509 U.S. at 592-93. Factors suggested by the Court to consider when making this assessment

include: whether methodologies can be and have been tested; whether theories have been peer-reviewed and published; any known or potential rate of error; and acceptance of methodologies within the relevant scientific or technical community. Id. at 593-94. However, that list is not exhaustive, and the trial court may scrutinize the portions of an expert's testimony that is based upon the expert's skill or experience. Kumho Tire, 526 U.S. at 151. "[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Id. at 152. The second prong inquires whether the testimony is relevant to the facts at issue. Daubert, 509 U.S. at 591-92. According to the Court, "relevance" requires that a "fit" exists between the proffered testimony and the issue to be resolved by trial. Id. at 591.

Having reviewed the applicable standards of review, the court now turns to the parties' specific arguments.

## III. Discussion

### A. Rule 26(a)(2)(B)

Plaintiffs seek to strike Dr. Nairn's report under Rule 26(a)(2)(B) of the Rules of the Court of Federal Claims (RCFC). That rule specifies that an expert's testimony must be accompanied by a written report that discloses, among other matters, "the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions." RCFC 26(a)(2)(B). If a party fails to comply with the provisions set forth by Rule 26(a)(2)(B), any other party may move to compel and seek appropriate sanctions pursuant to Rule 37(a)(2)(A) and Rule 37(c)(1). RCFC 37(a)(2)(A) (stating that "[i]f a party fails to make a disclosure required by RCFC 26(a), any other party may move to compel disclosure and for appropriate sanctions"); RCFC 37(c)(1) (stating that "[a] party without substantial justification fails to disclose information required by RCFC 26(a) . . . , is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed"). The sanctions available for a Rule 26 violation may include striking an expert's testimony. See Smith v. Botsford Gen. Hosp., 419 F.3d 513, 516-17 (6th Cir. 2005) (holding that the trial court did not abuse its discretion when it struck an expert's testimony when the expert failed to disclose information required under Rule 26 in a timely manner).

Different courts apply different tests when determining whether the failure to disclose required information pursuant to Rule 26(a)(2)(B) is substantially justified or harmless. The First Circuit considers "the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the

opponent's ability to overcome its adverse effects." Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este, 456 F.3d 272, 276-77 (1st Cir. 2006) (citation omitted). The Third, Seventh, and Tenth Circuits consider four factors: 1) the prejudice or surprise of the party against whom the evidence would have been admitted; 2) the ability of the party to cure that prejudice; 3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and 4) bad faith or willfulness in failing to comply with a court order or discovery obligation. Nicholas v. Penn. State Univ., 227 F.3d 133, 148 (3rd Cir. 2000); see also Westefer v. Snyder, 422 F.3d, 570, 584 (2005); Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999). The Fourth Circuit looks at five factors: 1) the surprise to the party against whom the witness was to have testified; 2) the ability of the party to cure that surprise; 3) the extent to which allowing the testimony would disrupt the trial; 4) the explanation for the party's failure to name the witness before trial; and 5) the importance of the testimony. S. States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

Plaintiffs argue that defendant violated Rule 26(a)(2)(B) by not making available to plaintiffs a complete statement of the basis and reasons for Dr. Nairn's opinions, as well as Dr. Nairn's model's equation and parametric input, thereby thwarting plaintiffs from determining "the correctness or accuracy of [Dr.] Nairn's quantitative numerical conclusions." Pls.' Mot. 1, 21.

Defendant responds to plaintiffs' allegations by stating that "Dr. Nairn candidly acknowledges that his report does not provide all of the voluminous computer modeling data" because "two of his colleagues failed to list the input data used in some of the models." Def.'s Resp. 30. Defendant states that it has worked with plaintiffs' counsel to rectify this situation by working together to determine the extent of information sought so that disclosure and production could be completed. Id. at 31. Defendant also states that it would not object to re-opening Dr. Nairn's deposition if plaintiffs deem it necessary in order to understand his methodologies and to answer their questions. Id.

Of the three tests presented by various circuit courts, the court chooses to follow the approach chosen by the Third, Seventh, and Tenth Circuits. The court favors this approach over the Fourth Circuit's test because a fifth factor in that test, regarding a party's failure to name a witness before trial, is not applicable in the circumstances of this case. The court also prefers the approach taken by the Third, Seventh, and Tenth Circuits over that of the First Circuit because the former provides clear benchmarks with which to measure whether or not a party's failure to disclose information under Rule 26(a)(2)(B) is harmless. The court now applies the four-factor test to the facts in this case.

The first factor for determining whether or not a failure to disclose required information pursuant to Rule 26(a)(2)(B) is harmless requires an inquiry into the prejudice to or surprise of the party against whom the evidence would have been admitted. Nicholas, 227 F.3d at 148. Plaintiffs received a copy of Dr. Nairn's report on May 24, 2006. Transcript of Oral Argument on Jan. 19, 2007 (Tr.) at 19:4. Plaintiffs were not surprised by defendant's retaining Dr. Nairn as an expert nor by the production of his report. On the contrary, plaintiffs have known for several months that Dr. Nairn planned to testify on behalf of the defendant. Plaintiffs also do not present evidence of having been prejudiced by defendant's failure to reveal all of the data underlying Dr. Nairn's report beyond the direct difficulty of evaluating the report itself. The court determines that Dr. Nairn's report did not cause any surprise or prejudice to plaintiffs.

The second factor examines the ability of the party at fault to cure any prejudice caused by its actions or inactions. Nicholas, 227 F.3d at 148. Plaintiffs do not present evidence of having been prejudiced by defendant's failure to disclose all of the data that underlies Dr. Nairn's report beyond the direct difficulty of evaluating the report itself. Furthermore, defendant has attempted to clarify plaintiffs' confusion surrounding Dr. Nairn's report by offering another deposition of Mr. Nairn. See Def.'s Resp. 1, 32. The court therefor determines that plaintiffs failed to meet their burden to demonstrate that they have been prejudiced by defendant's failure to disclose all of the underlying data.

The third factor explores the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court. Nicholas, 227 F.3d at 148. Plaintiffs do not present any evidence that demonstrates that admitting Dr. Nairn's report into evidence would disrupt the trial of this case or other cases. The court does not foresee any such disruption and, thus, determines that allowing the report does not trigger any disruption or delay.

Finally, the fourth factor looks at a party's bad faith or willfulness in failing to comply with a discovery obligation. Plaintiffs do not allege or present evidence of any bad-faith or improper conduct by defendant. On the contrary, defendant has exchanged letters with plaintiffs in which it provides additional information about Dr. Nairn's methodologies and offers additional help in order to clarify any lingering confusion. See generally Joint Record (JR) 1283-1313. The court has reviewed defendant's efforts to communicate with plaintiffs about Dr. Nairn's report and simply does not perceive any facts or circumstances that could form the basis for a claim of bad faith.

Considering the four factors suggested by the tests used in the Third, Seventh, and Tenth Circuits, the court believes that it would be unreasonable to strike Dr. Nairn's report under Rule 26(a)(2)(B). With regard to Dr. Nairn's failure to disclose all of the underlying

data to his computer modeling, the court can only conclude that Dr. Nairn's failure was indeed an inadvertent error. Defendant claims that it has spoken with plaintiffs' counsel in an effort to remedy any error and that it is willing to re-open Dr. Nairn's deposition in order for plaintiffs to receive all of the information that they require. Def.'s Resp. 1, 32. The court determines that the parties must continue these efforts to ensure that plaintiffs receive all of the information to which they are entitled under RCFC 26(a)(2)(B) but declines to strike Dr. Nairn's report on the basis of a violation of Rule 26(a)(2)(B).

The court now examines whether Dr. Nairn's report is admissible under FRE 702, Daubert, and Kumho Tire, or, as plaintiffs urge, see generally Pls.' Mot., must be stricken under those authorities.

B. Whether Dr. Nairn Qualifies as an Expert

In order to determine admissibility under Fed. R. Evid. 702, the court must first determine whether Dr. Nairn qualifies as an expert in coastal engineering. See Fed. R. Evid. 702 (". . . a witness qualified as an expert by knowledge, skill experience, training or education . . . may testify"). Plaintiffs do not challenge Dr. Nairn's qualifications as an expert generally, but they do question portions of his report in which they believe he improperly interprets law and relies upon geology. See Pls.' Mot. 1-2; 22-23. Before addressing plaintiffs' specific allegations regarding law and geology, the court examines Dr. Nairn's qualifications as an expert in coastal engineering.

FRE 702 states that a witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. With regard to education, Dr. Nairn holds three academic degrees, including a doctorate in Coastal Processes and Engineering from the Imperial College of Science, Technology and Medicine in London, England. JR 442. With regard to experience, he has practiced for twenty-four years in the fields of hydrodynamics, sediment transport and scour processes in rivers, estuaries, lakes, coasts, and oceans. Id.; Def.'s Resp. 20. Dr. Nairn has conducted a number of coastal engineering investigations, created numerical and physical modeling and design projects, and directed coastal zone management projects. JR 442-48. Dr. Nairn has worked throughout North, Central, and South America; Africa; the Middle East; Asia; and Europe. Id. Dr. Nairn has authored at least sixty-five articles published in peer-reviewed publications, "many of which relate to coastal processes involved in this litigation." Def.'s Resp. 20. He has been qualified to offer and has provided expert testimony in one other federal trial in the past. JR 453. He has never failed to qualify as an expert. Id.

Based upon Dr. Nairn's curriculum vitae, JR 442-53, the court concludes that defendant has made a showing that Dr. Nairn is an expert in coastal engineering sufficient

to defeat a motion in limine to strike on the basis that Dr. Nairn is without expertise. The court now explores whether Dr. Nairn's report meets the reliability and relevance tests as required by FRE 702, Daubert, and Kumho Tire.

C. Whether Dr. Nairn's Report is Reliable

FRE 702 requires that evidence proffered by a scientific or technical expert meet the following three criteria: "1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. In Daubert, the Supreme Court suggested four factors to consider when assessing whether expert evidence meets the reliability requirement under FRE 702: 1) whether the methodologies can be and have been tested; 2) whether the theories have been peer-reviewed and published; 3) any known or potential rate of error; and 4) acceptance of the methodologies within the relevant scientific or technical community. Daubert, 509 U.S. at 593-94. In Kumho Tire, the Supreme Court held that the list it presented in Daubert is not exhaustive and that courts have leeway to consider additional factors when making a reliability determination. Kumho Tire, 526 U.S. at 151-52.

The first factor in assessing the reliability of expert evidence, as set forth by the Supreme Court, concerns whether the methodologies can be and have been tested. Daubert, 509 U.S. at 593. Plaintiffs do not make any arguments explicitly addressed to this factor, but they do claim that Dr. Nairn's results are not consistent over time and that his "method cannot stand testing" in Lake Michigan because of the size of the lake and its conditions. Pls.' 2d Reply 3, 6. Defendant asserts that Dr. Nairn's "methodology and use of a sediment budget in conjunction with computer modeling to assess various erosion processes . . . is well-settled." Def.'s 2d Resp. 3. Defendant points to Dr. Nairn's declaration, in which he claims numerous times that his methods are "accepted as standard practice within the field of coastal engineering and science," Def.'s Resp., Ex. 6 at 2; see also Def.'s Resp., Ex. 6 at 11, 15, 22, and plaintiffs' own experts' depositions, Def.'s Resp. 3, in which plaintiffs' experts agree "with Dr. Nairn's use of a sediment budget, methodology of calculating long shore transport rate and recession rates, and the use of computer modeling," Def.'s 2d Resp. 3 (citations omitted). With regard to plaintiffs' claims about consistency of results over time and the details about Lake Michigan, defendant points to Dr. Nairn's explanations in his report and declaration. Def.'s 2d Resp. 4-5.

It appears to the court that plaintiffs are arguing facts and not law. Rather than argue that Dr. Nairn's report does not satisfy the requirements for admitting expert testimony, plaintiffs appear to be arguing that Dr. Nairn's methods and results are

inaccurate. The court believes that such arguments should be presented during trial when the parties will have a full opportunity to explore the credibility (including the consistency of viewpoints) of Dr. Nairn and other witnesses and the reliability of particular conclusions supported in the parties' expert reports. The court finds that, based on plaintiffs' lack of argument and evidence for this factor, plaintiffs have failed to meet their burden of proof to demonstrate that Dr. Nairn's report is not reliable because his methods cannot or have not been tested. On the contrary, plaintiffs' own experts appear familiar with and have even expressed agreement with at least some of Dr. Nairn's methodologies. See Def.'s Resp., Ex. 4 at 30:8-31:6, 31:23-32:6, 119:23-120:12, 163:21-165:19; Def.'s Resp., Ex. 5, 46:21-47:14, 64:10-19, 65:3-15, 88:10-18, 90:19-23, 93:18-25. Although plaintiffs may disagree with Dr. Nairn's results, that is not the court's concern at this juncture. The court presently is concerned with whether or not Dr. Nairn's report meets the Daubert test, and the court determines that it does meet the requirements of the first factor.

The second factor in the Daubert test inquires whether the expert's methodology has been subjected to peer review and publication. Daubert, 509 U.S. at 593. Plaintiffs correctly state that "[t]here has been no peer review because there has been no publishing of [Dr. Nairn's] report." Pls.' 2d Reply 4. Defendant responds by stating, "Plaintiffs completely miss the mark and cite no case law supporting the proposition that an expert report must be published in order to meet Daubert scrutiny." Def.'s 2d Resp. 6. Defendant also asserts that the methodologies used by Dr. Nairn "have been subjected to ample peer review and publication." Id.

The court agrees with defendant that the report itself does not need to be published in order to meet the second factor in the Daubert test. Dr. Nairn prepared this report for the sole purpose of the present litigation. Therefore, it has not been published, and the court would not expect it to be published. A report that is not published does not lead to the conclusion that it is not reliable. It appears to the court that the report can be reviewed and challenged during trial, particularly during plaintiffs' cross-examination of Dr. Nairn.

The third factor that a court must consider, as delineated by Daubert, is any known or potential rate of error. Daubert, 509 U.S. at 594. Dr. Nairn explains in his declaration that a +/-25 percent is the expected accuracy of his determination of the long shore transport rate by computer modeling prior to verification. Def.'s Resp., Ex. 6 at 21. Plaintiffs argue that the percentage of accuracy "could be much worse than [twice] the actual [long shore transport rate]" and that "there is no established method for determining the actual [long shore transport rate]." Pls.' 2d Reply 5. Defendant counters by stating that the report "not only considered and approximated a rate of error for the methodologies employed in [Dr. Nairn's] calculation of a long shore transport rate of 40,000-50,000 cubic

yards/year, but he used no fewer than five different approaches or methods to calculate it." Def.'s 2d Resp. 6-7.

The court has reviewed Dr. Nairn's explanation of his calculated potential rate of error for the report, and the court is satisfied that the third factor of the Daubert test has been met. The potential rate of error need not be completely accurate, and, without determining whether or not Dr. Nairn's +/- 25 percent rate will be, at trial, found accurate, the court finds that the parties' Joint Record presents sufficient evidence to quash a motion in limine to strike on the basis that Dr. Nairn's report is unreliable under the third factor of Daubert. Plaintiffs' disagreement with Dr. Nairn's calculations of a potential rate of error may be raised during trial and presented during cross-examination.

The fourth factor of the Daubert test requires that the methodologies be accepted within the relevant scientific or technical community. Daubert, 509 U.S. at 594. Plaintiffs first state that Dr. Nairn's report fails this factor because "there is no relevant scientific community" and that his models "are always wrong." Pls.' 2d Reply 3,5. However, plaintiffs concede that "[t]here is no question that there are a large number of Nairn models sold and used by government or beach communities." Id. at 5. Defendant responds by pointing to its previous discussions about "the peer-reviewed confirmation of Dr. Nairn's methodologies and supporting corroboration by plaintiffs' experts." Def.'s 2d Resp. 9.

The court is persuaded that Dr. Nairn's methodologies are sufficiently accepted within the relevant scientific community because both of plaintiffs' experts, Dr. Chrzastowski and Dr. Meadows, have praised Dr. Nairn's ability as a coastal engineer. Dr. Chrzastowski considers Dr. Nairn to be one of the top coastal engineers in the country. Def.'s Resp., Ex. 4 at 83:1-4. Dr. Meadows could not name anyone whom he would rate above Dr. Nairn in the Great Lakes area for his professional expertise as a coastal engineer. Def.'s Resp., Ex. 5 at 85:2-12. Dr. Meadows also stated that Dr. Nairn "probably is the top modeler in the Great Lakes region" and that he could not "think offhand of anyone in the near shore sediment dynamics area who has done more or accomplished more." Id. at 84:17-21. Furthermore, plaintiffs do not challenge Dr. Nairn's expertise generally; rather, they freely concede that "a large number of Nairn models [are] sold and used by government or beach communities." Pls.' 2d Reply 5. The prevalence of Dr. Nairn's models and the respect accorded to Dr. Nairn by plaintiffs' own experts persuades the court that his methodologies are sufficiently accepted within the coastal engineering community to defeat a motion to strike on the basis of lack of scientific acceptance.

Defendant has made a showing sufficient to defeat a motion in limine to strike on

the basis that Dr. Nairn's report is unreliable under Daubert. While there is no evidence that Dr. Nairn's methodologies, as applied to the circumstances in this case, have been tested previously, that circumstance is to be expected. It appears to the court that Dr. Nairn's methodologies can and will be tested at trial, especially given that all of the data inputs and equations are being provided to plaintiffs. While the particular theories advanced on behalf of defendant do not appear to have been peer-reviewed and published, the court recognizes that Dr. Nairn's research in cognate areas has been widely published and peer-reviewed. Dr. Nairn did include a known or potential rate of error in his findings. Defendant has sufficiently supported its position that Dr. Nairn's methodologies appear to be valid to Dr. Nairn's scientific and technical community, based on the acknowledgments of both of plaintiffs' experts.

D. Whether Dr. Nairn's Report is Relevant

FRE 702 also requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The Supreme Court has held that this portion of the rule speaks to the relevance of the evidence. Daubert, 509 U.S. at 591. FRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Plaintiff does not appear to address any of its arguments to the possible objection that Dr. Nairn's report is not relevant to the case. Defendant argues that the opinions in the report are relevant to the facts at issue because Dr. Nairn's "opinions go directly [to], or 'fit,' the issues to be resolved at trial." Def.'s Resp. 26 (quoting Daubert, 509 U.S. at 592).

The court notes that Dr. Nairn's report directly addresses the causes of erosion in the vicinity of St. Joseph Harbor, Michigan. JR 1. Dr. Nairn prepared the report in response to plaintiffs' filing suit against defendant. Id. at 2. The report presents the results of Dr. Nairn's investigation of the role of the jetties constructed by defendant in St. Joseph Harbor in the erosion of the adjacent shoreline of Lake Michigan. Id. Although plaintiffs may disagree with Dr. Nairn's methodologies or outcomes, it is clear to the court that the report is relevant because it speaks directly to the issues contested in this case. Because the report contains information, which, whether credited or not credited by the court after trial, would have the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable," the court determines that Dr. Nairn's report is relevant.

E. Whether Dr. Nairn's Report Improperly Interprets Law or Relies Upon Geology

Plaintiffs state that Dr. Nairn's report should be struck because he "is not a [l]awyer, but his report interprets [Section 111 of the River and Harbor Act of 1968 (Act)]." Pls.' Mot. 22. Defendant responds by stating that Dr. Nairn does not testify as a lawyer nor comment about legal interpretations of the Act. Def.'s Resp. 28. Rather, defendant asserts, Dr. Nairn "is offering opinions about the causes of erosion in the vicinity of the St. Joseph Harbor and the adequacy of the [U.S. Army Corps of Engineers'] efforts to mitigate the interruption of littoral drift by the harbor jetties and its operations." Id.

FRE 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Fed. R. Evid. 703. RCFC 26(a)(2)(B) requires the following disclosure with respect to expert testimony:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

RCFC 26(a)(2)(B). The advisory committee's note to Rule 26, the analogous provision in the Federal Rules of Civil Procedure, states that expert reports must be "detailed and complete . . . stating the testimony the witness is expected to present during direct

examination, together with the reasons therefor." Fed. R. Civ. P. 26 advisory committee's note on 1993 amendments. A detailed and complete expert report includes the "how" and "why" the expert has reached a particular result. See Robert Matthew Lovein, Note, A Practitioner's Guide: Federal Rule of Civil Procedure 26(a)-Automatic Disclosure, 47 Syracuse L. Rev. 225, 257 (1996) ("[T]he [expert] report must contain all information relating to 'how' and 'why' the expert reached the conclusions and opinions contained within the report."). Such a report assists the court in determining whether an expert satisfies the standard articulated in Daubert that proffered expert testimony is admissible only if it is both relevant and reliable. See Daubert, 509 U.S. at 589 ("[U]nder the Rules[,] the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."); see also Kumho Tire, 526 U.S. at 149 (stating "that Daubert's general principles apply to the expert matters described in [FRE] 702").

In this circumstance, Dr. Nairn's report does not support a finding that he improperly offers information outside his areas of expertise. Plaintiffs fail to point to specific passages in Dr. Nairn's report in which they believe that he improperly interprets the law. The court's review of the report does not lead it to the conclusion that Dr. Nairn is attempting to displace the court from its role as the interpreter of the law applicable to plaintiffs' claim. On the contrary, the few references to Section 111 refer to the calculation of the target for annual beach nourishment. JR 76-78. Dr. Nairn does not offer legal analysis within the report, and he does not comment about legal interpretations of the Act.

Plaintiffs state that Dr. Nairn "is not a geologist bu[t] readily relies on the geological findings of well[-]diggers passed on through a geologist." Pls.' Mot. 23. Defendant interprets this to mean that plaintiffs "allege that Dr. Nairn has offered unqualified opinions about geology," Def.'s Resp. 28, and responds that Dr. Nairn "merely relied upon and incorporated [a geologist's] expert report," id. at 29, a practice that defendant claims "is not unusual," id.

The court does not find improper Dr. Nairn's reliance upon information presented by a geologist in order to interpret and compute his own findings. As Dr. Nairn expresses in his declaration, "There is overlap between the scientific realms of the coastal geologist, the coastal geomorphologist, the coastal scientist, and engineer," Def.'s Resp. Ex. 6 at 31, and "Discerning the root causes of erosion requires first an understanding of the geology of the sediment above and below water, and second, the way in which wave action and other forces have shaped this geology must be interpreted," id. The geologist's report provides the first level of knowledge, and Dr. Nairn presents himself as an expert in the second level. Id. Dr. Nairn's use of a geologist's report does not appear unreasonable because the report assists him in his own research and findings; Dr. Nairn does not purport

to conduct the geological examination himself, something that he acknowledges he is unable to do. Id.

Based on the foregoing, the court declines to strike Dr. Nairn's report because of its reliance on information provided by an expert in a different but related field. FRE 703 allows experts to rely on otherwise inadmissable facts or data "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703; see United States v. Smith, 869 F.2d 348, 355 (7th Cir. 1989) ("[I]t is well settled that expert witnesses may rely on material commonly used by others in the field, even if those materials were prepared by others.")

## IV. Conclusion

For the foregoing reasons, plaintiffs' motion is DENIED.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge