# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 99-4451 L
c/w 04-277 L, 05-1353 L, 05-1381 L, 06-72 L

| | | |
|---|---|---|
| JOHN H. BANKS, MARY E. BANKS, et. al.<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | ) | NO. 99-4451 L<br>Judge Emily C. Hewitt |
| STONE ERROL L. & SUSAN H.<br>as trustees of the Susan H. Stone Trust,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 04-277 L<br><br>Consolidated |
| EUGENE J. FRETT, Individually and as Trustee of the Victor J. Horvath and Frances B. Horvath Trust,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 05-1353 L<br><br>Consolidated |

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION

FOR PROTECTIVE ORDER

NOW COME plaintiffs (all) by their attorney, John B. Ehret, and for their RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER state as follows:

1. Defendant produced the so called Nairn Report dated May 2006. There were no provisions for the Report to be held secret or confidential even though it was represented to contain the model(s) which formed the basis fo Dr. Nairn's opinions.

2. After numerous letters and phone calls, defendant insisted that the formulae used to calculate the long shore sand transport rate (LST) are set forth in Appendix A to Nairn's 2006 Report. Rather than argue the point, plaintiffs' attorney requested that defendant copy the page from the Appendix A and mark the formula to which they refer. (Please see Ehret's September 23, 2006 letter, JR1308)(EXHIBIT 1 hereto).

3. In their September 28, 2006 letter, the defendant referred Ehret to pages 32 through 37 of Appendix A. (Please see September 28, 2006 DOJ letter, JR1309)(EXHIBIT 2 hereto).

4. In Ehret's letter of October 2, 2006, he clearly refuted the assertion that the May 2006 Report had the necessary formulae (JR1310 & JR1311)(EXHIBIT 3 hereto).

5. Ehret's letter of October 7, 2007 not only continues his earlier refutation that the model formulae were included, but he provided a correct, very simple model equation for littoral sand cover and river sand (JR1314) (EXHIBIT 4 hereto).

ARGUMENT

6. Plaintiffs insist that the above chain of correspondence was nothing more than misrepresentations on defendant's part.

7. If the defendant really believed the model equations were in the May 2006 Report by Dr. Nairn, then they were not considered proprietary or confidential because the Report made no assertion of any kind to that effect.

8. Defendant's Motion for Protective Order now states at page 2 that "Defendant is in the process of producing to plaintiffs the models that were used by Dr. Nairn" (THIS IS AN ADMISSION THAT THE MODEL EQUATIONS WERE NEVER THERE IN THE FIRST PLACE!!).

9. So, the models were never in the May 2006 Report and all that time and correspondence was a waste.

10. In addition, defendant's offers of assistance were disingenuous ie BAD FAITH.

MDEQ - February 26, 2007
MEETING

11. The Michigan Department of Environmental

QUALITY (MDEQ) notice of meetings by Shorelands Section Chief Martin Jannereth, states new set-back requirements of 200 feet in the Shoreham area where we have many plaintiffs and where downcutting was hoped to be arrested by the lake bottom paving in the Detroit District Corps project of 1995.

12. Nairn's 2006 Report model is the latest effort by the Corps to quantify LST. It needs to be brought out for discussion at that meeting.

13. The imposition of such set-backs by the MDEQ can only mean prospectively that all plaintiffs will lose all their property. It is just a matter of time.

14. While businessmen may reasonably contract in the expectation of specific confidentiality, the use of public money for secret model equations to determine LST rates associated with 5th Amendment private property rights, does not fit with the per se obligation for just compensation where the government appropriates sand from the natural littoral/river system in order to make their dredging task easier at St. Joseph.

CONCLUSION

Defendant's Motion for Protective Order should be denied as BAD FAITH and obstructive to transparency in the achievement of 5th Amendment Constitutional Rights to Just Compansation.

Respectfully submitted,

Dated: February 20, 2007

s/John B. Ehret
Plaintiffs Attorney

20860 Greenwood Drive
Olympia Fields, IL 60461
708-748-8975
FAX 708-748=7661
Email: jbehret@covad.net

EXHIBIT LIST

| Exhibit Number | NOMENCLATURE | PAGE USED |
| --- | --- | --- |
| 1. | September 23, 2006 Letter from Ehret to Petrie | 2 |
| 2. | September 28, 2006 Letter from Petrie to Ehret | 2 |
| 3. | October 2, 2006 Letter from Ehret to Petrie (2 pages) | 2 |
| 4. | October 7, 2006 Letter from Ehret to Petrie | 3 |
| 5. | February 9, 2006 Letter from Michigan Dept. of Environmental Quality to specific shore-line residents (some plaintiffs here) (6 pages). | 3 |

# EXHIBIT 1

**JOHN B. EHRET**
**20860 GREENWOOD DRIVE**
**OLYMPIA FIELDS, IL 60461**
**PHONE: 708-748-8975**
**FAX: 708-748-7661**

SPRING
**SUMMER**
FALL
**5986 DUNHAM AVE.**
**STEVENSVILLE, MI 49127**
P. 269-465-5857
F. 269-465-3736

Saturday
Date: September 23, 2006

Attorney Terry M. Petrie
Environment & Natural Resources Division
U. S. Department of Justice
1961 Stout Street 8th Floor
Denver, CO 80294
P. 303-844-1369
F. 303-844-1350

Subject: Banks et al v. U. S. A. No. 99-4451L
Reference your September 22, 2006

Dear Attorney Petrie:

In paragraph 2a. you insist that the formuls used to calculate the LST, while the same for CHL-97-15 and 2006, are set forth in Appendix A to Nairn's 2006 report. Rather than argue the point, I would request that you copy the page from Appendix A and mark the formula to which you refer.

Once I have that formula I will be able to address the rest of your 9-22-06 letter.

On the 26th, 27th and 28th (Tuesday, Wednesday and Thursday) of next week, I will not be here. You could leave a phone message if you need me and I will get back to you as promptly as possible.

Thank you for your assistance!

John B. Ehret
Plaintiffs Attorney

cc: Drew Marrocco

JR-00001308

6.

EXHIBIT
1

# EXHIBIT 2

U.S. Department of Justice

Environment and Natural Resources Division

*Terry M. Petrie, Attorney*
*Denver Field Office*
*1961 Stout Street, 8th Floor*
*Denver, CO 80294*

*Telephone (303) 844-1369*
*Facsimile (303) 844-1350*

September 28, 2006

**BY FACSIMILE**

John Ehret, Esq.
5986 Dunham
Stevensville, MI 49127

RE: Banks, et al. v. United States, No. 99-4451 L; Stone, et al. v. United States, No. 04-277 L; Frett, et al. v. United States, No. 05-1351 L

Dear John:

You asked in your September 23, 2006, letter that I provide you a copy of those page[s] from Appendix A to Dr. Nairn's May 2006 report that set forth the formulas he used in the COSMOS model to calculate the LST rate. These formulas are the primary ones used in both the May 2006 report as well as for Dr. Nairn's work in conjunction with the Corps' CHL-97-15 report. Instead of providing you copies of the pages in question, I will simply refer you to pages 32 through 37 of Appendix A. The primary formulas, or equations, along with the accompanying descriptions are set forth on these pages.

Sincerely,

Terry M. Petrie

Terry M. Petrie
Trial Attorney

cc: Drew Marrocco
Dr. Nairn

JR-00001309

(7)

EXHIBIT 2

# EXHIBIT 3

**JOHN B. EHRET**
**20860 GREENWOOD DRIVE**
**OLYMPIA FIELDS, IL 60461**
**PHONE: 708-748-8975**
**FAX: 708-748-7661**

SPRING
**SUMMER**
FALL
**5986 DUNHAM AVE.**
**STEVENSVILLE, MI 49127**
P. 269-465-5857
F. 269-465-3736

Date: October 2, 2006
Monday

Attorney Terry M. Petrie
Environment & Natural Resources Division
U. S. Department of Justice
1961 Stout Street 8th Floor
Denver, CO 80294
P. 303-844-1369
F. 303-844-1350

Subject: Banks et al v. U. S. A. No. 99-4451L
Reference Nairn's 2006 Report & Your 9-28-06 ltr.

Dear Attorney Petrie:

I have your September 28, 2006 letter leading me to pages 32 through 37 of Appendix A of Nairn's Report. "The primary formulasor equations" are supposed to be set forth on those pages. I do find a cross-shore equation on page 36.

$$q_x = \frac{i}{(\rho_s - \rho) g N}$$

where $q_x$ = volumetric cross-shore transport rate ($m^3/s$)
$\rho_s$ = density of sediment ($Kg/m^3$)
$\rho$ = density of water ($Kg/m^3$)
$g$ = acceleration of gravity ($m/s^2$)
$N$ = porosity (p.66) or volume concentration of solids in situ (in their original place) (page 36). Use 0.6.
$i$ = total immersed weight transport including bed load and suspended load.

Not only are there no long shore transport (LST) symbols inside those pages, but the entire Part 2 paper by Nairn/Southgate starting at page 31 concentrates on cross-shore modeling not LST. Other faults I find:

Fall velocity of sediment grains appears to be a constant ie it doesn't vary with temperature. Wrong!

Grain size numerical quantities are not provided for. LST is changed by change in grain size.

Volume concentration of solids is assumed to be 0.6 (N). Nairn needs to justify or support this.

Assumption that suspended load dominates bed load. Also, there is no support.

Model "cannot not consider" impact of dunes? p65.



JR-00001310

(8)

EXHIBIT
3
2 PAGES

Understanding of wave impact processes required to define input of sediment to surfzone processes.

I think that the problem here is partly due to the fact that fluid flow, slurry transport, friction coefficients and asymmetric orbital velocity are really in the mechanical engineering domain.

Not one symbol on page 66, 7 refers to LST.

Not one equation solves for LST.

LST and $q_x$ (cross-shore sediment transport) are perpendicular to each other - they aren't components of each other. They are not vecterally related.

Rip tides don't carry lakeward beyond closure depth. Sand always returns after storms (if there is any).

Net LST is wrong - not scientifically honest. Nairns simulation models must look at gross LST, otherwise they don't even attempt to be simulations of actuality. Gross LST gives three times net LST where wave energy from the north is two times the wave energy from the south. The situation here.

Tidal forces? Single wave tidal conditions? This is Lake Michigan, not the Atlantic Ocean.

All the above, plus Nairn's detachment from data collection make his report unreliable.

"Two stations near the south end of Lake Michigan." BWH-no page number Appendix A. Now you say 3 stations, South Haven, St. Joseph and New Buffalo Para. 2(b)(1) - Your 9-22-06. St. Joseph has no weather station.

"...there are several instances where a parameter has more than one definition or where a definition has more than one parameter." Page 66 Appendix A Nairn's 2006 report. What does that mean? Please be specific.

In short, I can't use pages 32-37 of Nairns paper, much less relate COSMOS 1996 with Nairn 1992 or Nairn 2006. Nor can the entire report be used without numerical values for parameters used in equations for Southeastern Lake Michigan.

Very truly yours,

John B. Ehret
John B. Ehret
Plaintiffs' Attorney

cc: Marrocco & Frett

# EXHIBIT 4

JOHN B. EHRET
20660 GREENWOOD DRIVE
OLYMPIA FIELDS, IL 60461
PHONE: 708-748-8975
FAX: 708-748-7661

SPRING
SUMMER
FALL
5986 DUNHAM AVE.
STEVENSVILLE, MI 49127
P. 269-465-5857
F. 269-465-3736

Saturday
Date: 10-7-06

Attorney Terry M. Petrie
Environment & Natural Resources Division
U. S. Department of Justice
1961 Stout Street 8th Floor
Denver, CO 80294
P. 303-844-1369
F. 303-844-1350

Subject: Banks et al v. U. S. A. No. 99-4451L
Reference Your 10-5-06 letter

Dear Attorney Petrie:

You overestimate the complexity of modeling and underestimate my experience and ability to add and subtract. Perhaps you think that we have a calculus problem here. No, we only have addition and subtraction, with multiplication being a form of addition and subtraction being a formof division.

Example of a model: At St. Joseph the energy from the south bound waves ($S_b$) is two times the energy from the north bound waves ($N_b$). Therefore the model is expressed in the equation $S_b = 2N_b$. The total sand removed from the littoral system (Gross littoral drift or GLD or GLST) is the sum of the $S_b$ and $N_b$ drift. Since the actual net littoral drift as determined from direct survey measurement is 110,000 cy/yr then the model is $S_b - N_b$ = 110,000 cy/yr. Substituting $2N_b$ for $S_b$ gives $2N_b - N_b$ = 110,000 cy/yr. and therefore $N_b$ equals 110,000 cy/yr. and $S_b$ equals 220,000 cy/yr. and GLST equals 330,000 cy/yr.

This is how the 30% loss by interruption of the piers, although correct as a "net LST", is in actuality a 3 to 1 mistake. The piers are interrupting (or better - trapping) 90% of the littoral drift. This means that beach nourishment must "not only reinstate the historic sediment supply rate (net LST), but also replenish the sand cover to its historic level". This is per Nairn, Zusek, Morang and Parson 1997 , REX. 24.

Of course, the loss of river sediment as measured by direct or actual information (as opposed to computer inference or simulation) is of the order of 90,000cy/yr making the total loss to the natural system equal to 420,000 cy/yr. This is all simple absolute math and it can't be honestly denied.

You would help if you could explain the double negative - "cannot not" consider the impact of the dunes. Does he or doesn't he? consider the impact of the dunes.

Very truly yours,

John B. Ehret
John B. Ehret
Attorney

EXHIBIT
4

cc: Marrocco

JR-00001314
(10)

# EXHIBIT 5

STATE OF MICHIGAN
DEPARTMENT OF ENVIRONMENTAL QUALITY
LANSING

DEQ

JENNIFER M. GRANHOLM
GOVERNOR

STEVEN E. CHESTER
DIRECTOR

February 9, 2007

ROGER B & ANN C WILSCHKE
3140 S LAKESHORE DR
ST. JOSEPH, MI 49085

Dear Property Owner:

SUBJECT: Property Tax Number: 11-43-0003-0026-02-4
Township: VILLAGE OF SHOREHAM
Sequence Number: 27
HREA Status: IL

The Michigan Department of Environmental Quality (MDEQ) is planning meetings with those persons owning property along Lake Michigan, in Berrien County, identified as being located within a high-risk erosion area (HREA) pursuant to Part 323, Shorelands Protection and Management, of the Natural Resources and Environmental Protection Act, 1994 PA 451, as amended. The meetings will be held at the St. Joseph High School, St. Joseph, Michigan. This will provide an opportunity to explain the HREA Program and give you an opportunity to ask questions and make comments regarding the program.

Enclosed is a brief summary of the regulations; a map to the high school, and the date and times of the meetings.

Part 323 directs the MDEQ to identify and designate HREAs and regulate new construction activities to minimize future damage to buildings and septic systems. HREAs were originally designated in 1980 in Berrien County. The MDEQ updated the original erosion studies and has determined that changes in the boundaries and setbacks of the HREAs are necessary. In addition to the updated erosion studies, 1992 amendments to the Great Lakes Shorelands Rules changed the original regulations pertaining to the calculations of HREA setbacks. The combination of these changes caused the 30-year projected recession distance to increase from 100 feet to 105feet, and the 60-year projected recession distance to increase from 190 feet to 195 feet on the property referenced above.



(11)
EX. 5
1

EXHIBIT
5
5 PAGES

STATE OF MICHIGAN
DEPARTMENT OF ENVIRONMENTAL QUALITY
LANSING

JENNIFER M. GRANHOLM
GOVERNOR

DEQ

STEVEN E. CHESTER
DIRECTOR

Please note: Each property was separately addressed. Set-backs were separately tailored to the individual property. JBE

February 9, 2007

THOMAS F & SHARON AUSTIN
2714 AUSTIN TR
ST JOSEPH, MI 49085

Dear Property Owner:

SUBJECT: Property Tax Number: 11-43-4800-0012-00-5
Township: VILLAGE OF SHOREHAM
Sequence Number: 46.2
HREA Status: IL

The Michigan Department of Environmental Quality (MDEQ) is planning meetings with those persons owning property along Lake Michigan, in Berrien County, identified as being located within a high-risk erosion area (HREA) pursuant to Part 323, Shorelands Protection and Management, of the Natural Resources and Environmental Protection Act, 1994 PA 451, as amended. The meetings will be held at the St. Joseph High School, St. Joseph, Michigan. This will provide an opportunity to explain the HREA Program and give you an opportunity to ask questions and make comments regarding the program.

Enclosed is a brief summary of the regulations; a map to the high school, and the date and times of the meetings.

Part 323 directs the MDEQ to identify and designate HREAs and regulate new construction activities to minimize future damage to buildings and septic systems. HREAs were originally designated in 1980 in Berrien County. The MDEQ updated the original erosion studies and has determined that changes in the boundaries and setbacks of the HREAs are necessary. In addition to the updated erosion studies, 1992 amendments to the Great Lakes Shorelands Rules changed the original regulations pertaining to the calculations of HREA setbacks. The combination of these changes caused the 30-year projected recession distance to increase from 100 feet to 110feet, and the 60-year projected recession distance to increase from 190 feet to 200 feet on the property referenced above.



(12)

EX. 5
2

January 31, 2007

**ACTIVITIES REGULATED IN HIGH-RISK EROSION AREAS**

| **Activity** | |
|---|---|
| New buildings | Yes |
| Additions (1st floor)* | Yes |
| Second-story addition to an existing house* | Yes |
| Change in pitch of roof | Yes |
| Driveway | No |
| Well | No |
| Septic tank or field | Yes |
| New detached garage | Yes |
| New attached garage | Yes |
| Swimming pool | No, if unenclosed/no roof. |
| New deck on wood posts - no roof or walls | No |
| Extension of deck on wood posts - no roof or walls | No |
| Porch with roof and walls | Yes |
| Porch with roof and no walls | Yes |
| Enclose existing porch | Yes |
| Appurtenant structures -- e.g., storage sheds/gazebos | No, if under 225 square feet and on posts. |
| Sand removal | No |
| New stairs to lake | No |
| Routine maintenance | No, if cost is under 60 percent of replacement value of home. |

*Includes additions which are cantilevered in part or entirely



(13.)

Ex 5
3

January 31, 2007

| Activity | |
|---|---|
| Major restoration of home with no additions | Yes, if repair cost is over 60 percent of replacement value of home. |
| Major restoration of home with additions | Yes, if cost of entire project is over 50 percent of replacement value of home prior to restoration. |
| Convert garage to living space | Yes |
| Utility lines | No |
| Subdivision/ site condominium | Yes |
| Vegetation removal | No |
| Tree trimming | No |
| Contour changes | No |
| Retaining walls | No |
| Seawall/revetment | No |
| Demolition | No |

This is a partial list of regulated activities. If you have any questions, please contact the Michigan Department of Environmental Quality at 517-241-1515.



14
EX 5
4

If you attend one of these meetings, please bring this letter to assist MDEQ staff in addressing your specific questions. If you have questions but cannot attend one of the meetings, please contact Ms. Penny Holt, at 517-373-1952 or holtp@michigan.gov; or Mr. Matthew Warner, at 517-335-4209 or warnermt@michigan.gov by March 26, 2007

Sincerely,

Martin R. Jannereth

Martin Jannereth, Chief
Lakes, Streams, and Shorelands Section
Land and Water Management Division

Enclosures

cc: Ms. Carol Linteau, Legislative Liaison, MDEQ
Mr. Kameron Jordon, MDEQ
Mr. James Milne, MDEQ
Ms. Penny Holt, MDEQ — 2/15/07
Mr. Matthew Warner, MDEQ

15

EX 5
6

A. St Joseph **High School**
2521 Stadium Dr, St Joseph, MI
(269) 926-3200 - 1 review



**BERRIEN COUNTY PUBLIC MEETINGS**

LOCATION:
St Joseph High School Auditorium
2521 Stadium Drive
St Joseph, Michigan

DATE:
Monday, February 26, 2007

TIMES:
4:00 pm and 7:00 pm. The same information will be presented and available at each meeting.

## CERTIFICATE OF SERVICE

I, John B. Ehret, an attorney, hereby certify that on February 20, 2007, I electronically filed **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following persons listed below:

Terry M. Petrie, Esq.
Environmental and Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80202
**Attorney for the United States of America**

Drew W. Marrocco, Esq.
Sonnenschein Nath & Rosenthal, LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
**Attorney for the Stone Plaintiffs**

/s/ John B. Ehret
John B. Ehret