**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **JOHN H. and MARY E. BANKS, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 99-4451 L**<br>**Judge Emily C. Hewitt** |
| **STONE, ERROL L. & SUSAN H., In their own right and as Trustees of the Susan H. Stone Trust and the Errol L. Stone Trust,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 04-277 L**<br>**Judge Emily C. Hewitt** |
| **EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and**<br><br>**DONNA P. FRETT,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | **No. 05-1353L**<br>**Judge Emily C. Hewitt** |

**MOTION TO PARTIALLY DISMISS**
**AND MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

MEMORANDUM OF LAW . . . . . . . . . . 1

I. BACKGROUND . . . . . . . . . . 2

II. FACTS . . . . . . . . . . 5

III. LAW . . . . . . . . . . 5

A. This Court's Jurisdiction Is Extremely Limited . . . . . . . . . . 6

B. Law of the Case Doctrine . . . . . . . . . . 8

C. Accrual of a Gradual Taking . . . . . . . . . . 10

IV. ARGUMENT . . . . . . . . . . 11

A. Summary of the Argument . . . . . . . . . . 11

B. Law of the Case Doctrine Should Not Be Applied . . . . . . . . . . 14

C. No Justifiable Uncertainty Exists . . . . . . . . . . 14

D. Complaints by Plaintiffs Bodnar and Okonski are Also Time Barred . . . . . . . . 19

(1) Bodnar Plaintiffs . . . . . . . . . . 19

(2) Okonski Plaintiffs . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . 23

## TABLE OF AUTHORITIES

CASES

AFG Industries, Inc., v. Cardinal IG Co., Inc., 375 F.3d 1367 (Fed. Cir. 2004) . . . . . . . . . . . . . . 9

Agostini v. Felton, 521 U.S. 203 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Alaska v. United States, 32 Fed. Cl. 689 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Alder Terrace, Inc. v. United States, 161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 8

Applegate v. United States, 25 F.3d 1579 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . passim

Banks v. United States, 314 F.3d 1304 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . passim

Banks v. United States, 49 Fed. Cl. 806 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Beauchamp v. United States, 6 Cl. Ct. 400 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Benchmark Resources Corp. v. United States, 64 Fed. Cl. 526 (2005) . . . . . . . . . . . . . . . . . . . . 19

Benchmark Resources Corp. v. United States, 74 Fed. Cl. 458 (2006) . . . . . . . . . . . . . . . . . 18, 19

Boling v. United States, 220 F.3d 1365 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . passim

Booth v. United States, 990 F.2d 617 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Catellus Development Corp. v. United States, 31 Fed. Cl. 399 (1994) . . . . . . . . . . . . . . . . . . . . . 8

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988) . . . . . . . . . . . . . . . . . . . . . . . 8

Coastal Petroleum Co. v. United States, 228 Ct.Cl. 864 (1981) . . . . . . . . . . . . . . . . . . . . . 20, 22

Consolidation Coal v. United States, 351 F.3d 1374 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 7

Fallini v. United States, 56 F.3d 1378 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

Florida Power & Light v. United States, 66 Fed.Cl. 93 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Gould, Inc. v. United States, 67 F.3d 925, 930 (Fed. Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Hamlet v. United States, 873 F.2d 1414 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Henke v. United States, 60 F.3d 795 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264 (1981) . . . . . . . . . 17

Independence Park Apts. v. United States, 61 Fed. Cl. 692 (2004) . . . . . . . . . . . . . . . . . . . . . . . 8

Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879 (Fed. Cir. 1985) . . . . . . . . . . . . . . 8

Intergraph Corp. v. Intel Corp., 253 F.3d 695 (Fed. Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

International Electronics Corp. v. United States, 222 Ct. Cl. 570 (1983) . . . . . . . . . . . . . . . . . . 13

Jamesbury Corp. v. Litton Indus. Prods., Inc., 839 F.2d 1544 (Fed. Cir. 1988) . . . . . . . . . . . . . . 9

Land v. Dollar, 330 U.S. 731 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Martinez v. United States, 48 Fed. Cl. 851 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

McNutt v. General Motors Acceptance Corp., 298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . 7

Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365 (1978) . . . . . . . . . . . . . . . . . . . . . . . . 6

Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . 7, 8

Scheuer v. Rhodes, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Seldovia Native Ass'n, Inc. v. United States, 144 F.3d 769 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . 7

Shelleman v. United States, 9 Cl. Ct. 452 455 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Dickinson, 331 U.S. 745 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 16

United States v. Finley, 835 F.2d 134 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. King, 395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Mitchell, 445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Newport News Shipbuilding & Dry Dock Co., 933 F.2d 996 (Fed. Cir. 1991) . 7

United States v. Sherwood, 312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Testan, 424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. U.S. Smelting Refining & Mining Co., 339 U.S. 186 (1950) . . . . . . . . . . . . . 8, 9

STATUTES

28 U.S.C. § 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

30 U.S.C. § 1201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

30 U.S.C. § 1211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

30 U.S.C. § 1256 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

30 U.S.C. § 1268 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

30 U.S.C. § 1271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

30 U.S.C. § 1276 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

30 U.S.C. §§ 1201-1328 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

River and Harbor Act of 1968, Pub. L. No. 90-483, 82 Stat. 731 (1968) . . . . . . . . . . . . . . . . . . . 5

Defendant United States respectfully moves to dismiss 17 of the claims brought by the plaintiffs for failure to file complaints timely before this Court as required under 28 U.S.C. § 2501.[1/] This Court and the U.S. Court of Appeals for the Federal Circuit earlier ruled upon a motion by the United States raising the statute of limitations, with the Federal Circuit reversing this Court's dismissal. However, since that time further discovery conducted by the United States reveals new and different facts that warrant a new look at the issue of claim accrual in this case. When applied to the Federal Circuit's reasoning, these facts can only lead to the conclusion that plaintiffs' claims are time-barred and, therefore, must be dismissed. In support of this motion, we rely upon the following memorandum of law with attachments.

**MEMORANDUM OF LAW**

Defendant United States respectfully requests dismissal of the lawsuits brought by 17 of the plaintiffs in this consolidated matter[2/] for failure to file complaints timely before this Court as required under 28 U.S.C. § 2501.[3/] This Court and the U.S. Court of Appeals for the Federal Circuit earlier ruled upon a motion by the United States raising the statute of limitations, with the

---

[1/] Those plaintiffs for whom we seek dismissal of their cases are listed at Exhibit 1 to the following Memorandum of Law.

[2/] See order filed March 15, 2005 (docket no. 63 for case no. 99-4451L), consolidating the related case of Stone v. United States, No. 04-277 L, for liability purposes only into Banks v. United States, 99-4451 L. See also orders filed March 17, 2006 (docket no. 7 for case no. 05-1353 L), May 2, 2006 (docket no. 12 for case no. 05-1381 L), and May 2, 2006 (docket no. 12 for case no. 06-72 L), consolidating Frett v. United States, No. 05-1353 L; Bodnar v. United States, No. 05-1381 L; and Okonski v. United States, No. 06-72 L, respectively, into Banks v. United States, No. 99-4451 L.

[3/] The individual plaintiffs and their cases (along with their respective docket numbers) for which we seek dismissal are set forth in Exhibit 1. Reference to "plaintiffs" in this filing means those listed on Exhibit 1 unless otherwise indicated.

Federal Circuit overturning this Court's dismissal.[4] Discovery conducted by the United States after the Federal Circuit's ruling, however, discloses new and different facts that provide good and substantive reason for a fresh look at the issue of claim accrual in this case. As defendant demonstrates herein, these newly-discovered facts when applied to the Circuit's reasoning can only lead to the conclusion that plaintiffs' claims are time-barred and, therefore, must be dismissed.

## I. BACKGROUND

Sixteen plaintiffs initially filed suit in July, 1999. Banks I, 49 Fed. Cl. at 807. By February, 2000, the plaintiffs numbered thirty-seven.[5] Id. at 808. In February, 2001, the United States moved to dismiss, contending plaintiffs' actions were time-barred under 28 U.S.C. § 2501. This Court agreed and dismissed plaintiffs' cases in July, 2001. Id. at 826. Through a detailed review of the evidence (id. at 813-25) and finding that plaintiffs were on inquiry notice of their potential takings claims (id. at 825), this Court determined that plaintiffs' takings claims accrued no later than 1989 and found that the "gradual process of shoreline erosion set into motion by the government had resulted in a permanent taking and the extent of the damage had become reasonably foreseeable." Id. at 825 (citing Boling v. United States, 220 F.3d 1365, 1370-71 (Fed. Cir. 2000)).

Upon appeal, however, the United States Court of Appeals for the Federal Circuit reversed and remanded. Banks v. United States, 314 F.3d 1304 (Fed. Cir. 2003) (Banks II).

---

[4] See Banks v. United States, 49 Fed. Cl. 806 (2001) (Banks I), and Banks v. United States, 314 F.3d 1304 (Fed. Cir. 2003) (Banks II).

[5] At present there are 38 plaintiffs in these consolidated actions.

With the exception of the legal import of the Corps' mitigation efforts, the Federal Circuit did not disagree with this Court's factual findings. Instead, the Federal Circuit believed this Court and defendant to have misread the decision in Applegate v. United States, 25 F.3d 1579 (Fed. Cir. 1994). Banks II at 1309.

In Applegate, the Corps constructed a deep-water harbor with jetties along the east coast of Florida. Applegate, 25 F.3d at 1580. The project interrupted the littoral flow of sand which caused the shoreline of plaintiffs' property to erode. Id. While this was happening, the government made a number of promises to the property owners to mitigate their loss of land by, among other things, building a sand transfer plant. Id. The plant would have allowed the littoral flow of sand to resume and begun restoring the lost beaches. Id. The construction of the plant was delayed for many years and the plaintiffs eventually filed suit. Id. The Federal Circuit denied the government's motion to dismiss on statute-of-limitations grounds, holding that the alleged taking did not stabilize more than six years before plaintiffs filed where "[t]he gradual character of the natural erosion process set in motion by the Corps, compounded by the Government's promises of a sand transfer plant, have indeed made accrual of the landowner's claim uncertain." Applegate, 25 F.3d at 1582. Underscoring this point, the Federal Circuit later stated in Boling that the "critical element that delayed stabilization in Applegate [is] the justifiable uncertainty about the permanency of the taking." Boling, 220 F.3d at 1372.

In reversing the Court here, the Federal Circuit held that Applegate did not require the presence of a legally binding promise or duty or a matter requiring a congressional appropriation. Banks II, 314 F. 3d at 1309. Instead, the Federal Circuit stated that it would apply the "principles" of Applegate by asking whether the " 'predictability [and permanence] of

the extent of damage to the [plaintiffs'] land' was made justifiably uncertain by the Corps' mitigation efforts." Banks II, 314 F.3d at 1309 (quoting Applegate, 25 F.3d at 1583). The Federal Circuit viewed the Corps' mitigation efforts as sufficient to cause justifiable uncertainty about the permanency of the taking. On that basis the Federal Circuit held that plaintiffs' claims did not accrue until after issuance of the last of the Corps' three technical reports. In the Federal Circuit's estimation, the three reports (1996, 1997, and 1999) "collectively indicated that [the shoreline] erosion was permanent and irreversible," and brought to an end plaintiffs' "justifiable uncertainty" which had been created by the Corps' mitigation efforts about the permanency of erosion. Banks II, 314 F.3d at 1310. Thus, the statute of limitations, under this reasoning, did not begin to run until the three reports were issued. Id. Because the reports were issued less than six years before plaintiffs filed their complaints, the Federal Circuit viewed each complaint as timely. Id.

After remand of the case to this Court, the parties conducted additional discovery. Depositions taken by defendant of individual plaintiffs serve as the evidentiary basis for this motion. No discovery had previously been conducted that delved into the "justifiable uncertainty" feature of the Federal Circuit's Banks II opinion.[6] These depositions disclosed that some plaintiffs had no knowledge whatsoever of the Corps' efforts to nourish the shoreline south of St. Joseph Harbor, while others, although aware of the Corps' efforts, did not believe it would benefit their property. Thus, as we explain infra, there was no "justifiable uncertainty" that

---

[6] Prior to the Banks I decision, defendant had propounded a total of eleven interrogatories and three individual requests for documents. Of this discovery, defendant had asked three interrogatories, each related to expert witnesses, before filing the motion to dismiss in February, 2001.

would delay the running of the statute of limitations for these plaintiffs.

## II. FACTS

The St. Joseph River enters Lake Michigan between St. Joseph, Michigan, and Benton Harbor, Michigan. In the 1830s, the U.S. Army Corps of Engineers re-constructed the mouth of the St. Joseph River so that it opened into Lake Michigan at a more east-west direction instead of the formerly more northwestern to southwestern approach. At the same approximate time the Corps began construction on a pair of jetties that jutted generally westward into Lake Michigan. Banks II, 314 F.3d at 1306. The purpose for the construction upon the river mouth and the jetties was to accommodate commercial shipping traversing the St. Joseph River into Lake Michigan.

Subsequent years saw the Corps periodically extend the length of the jetties. The jetties reached their present-day length in 1903. Banks II, 314 F.3d at 1306. In the early 1950s, the Corps began a project in which they encased the jetties incrementally in steel; that project concluded in 1989. Id. Since the mid-1970s, "[t]he Corps has 'acknowledged the longstanding and significant exacerbation of erosion caused by its harbor jetties.'" Banks II, 314 F.3d at 1306 (quoting Banks I, 49 Fed. Cl. at 817).

In the 1970s, the Corps instituted a beach nourishment program.[7] The purpose was to mitigate the effects of the harbor jetties. Banks II, 314 F.3d at 1306. The Corps has provided fine sand nourishment for more than 15 years on feeder beaches, deposited coarser sediments along the shoreline at least five times between 1986 and 1993, and placed barge-loads of large

[7] The Corps implemented the program under the auspices of Section 111 of the River and Harbor Act of 1968, Pub. L. No. 90-483, § 111, 82 Stat. 731, 735 (1968). Banks, 314 F.3d at 1306.

rocks into Lake Michigan in 1995. Id. at 1307 (citations omitted). The Corps also issued three technical reports in 1996, 1997, and 1999. Id. The reports addressed the Corps' mitigation efforts and collectively concluded that the erosion was permanent and irreversible. Id.

Presently, thirty-eight separate parties are plaintiffs to this action. Plaintiffs own property located within an approximate four and one-half mile stretch upon the eastern shore of Lake Michigan south of the St. Joseph Harbor. Banks II, 314 F.3d at 1306. Plaintiffs claim the Corps' construction and maintenance of the St. Joseph Harbor jetties from 1950 until 1989 caused erosion of their shoreline property. Id.

## III. LAW

### A. This Court's Jurisdiction Is Extremely Limited

"It is a fundamental precept that federal courts are courts of limited jurisdiction." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). More particularly, "the Claims Court is a court of exceedingly limited statutory jurisdiction." Shelleman v. United States, 9 Cl. Ct. 452, 455 (1986). Because all claims brought before it are against the United States, there must be a specific, unequivocally expressed waiver of sovereign immunity in order for jurisdiction to exist. See, e.g., United States v. Testan, 424 U.S. 392, 399 (1976); United States v. King, 395 U.S. 1, 4 (1969); United States v. Sherwood, 312 U.S. 584, 586 (1941). Any grant of jurisdiction must be strictly construed, and all conditions placed upon the grant must be satisfied before the Court may exercise jurisdiction. E.g., United States v. Mitchell, 445 U.S. 535, 538 (1980); Sherwood, 312 U.S. at 586. Consequently, this Court "must exercise not only the traditional reluctance of federal courts to act absent specific statutory authorization . . ., but an additional measure of restraint growing from the principle that waivers of sovereign immunity

must be narrowly construed." Beauchamp v. United States, 6 Cl. Ct. 400, 405 (1984) (quoting Connolly v. United States, 1 Cl. Ct. 312, 314 (1982), aff'd in relevant part, 716 F.2d 882 (Fed. Cir. 1983), cert. denied, 465 U.S. 1065 (1984)).

Subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, or on appeal. Consolidation Coal Co. v. United States, 351 F.3d 1374, 1378 (Fed. Cir. 2003) ("[U]nder federal rules any court at any stage in the proceedings may address jurisdictional issues"); Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993); United States v. Newport News Shipbuilding & Dry Dock Co., 933 F.2d 996, 998 n.1 (Fed. Cir. 1991). The statute of limitations applicable to the instant case, 28 U.S.C. § 2501, is jurisdictional. Seldovia Native Association, Inc. v. United States, 144 F.3d 769, 774 (Fed. Cir. 1998).

Once jurisdiction is raised by the Court or challenged by a defending party, the plaintiff bears the burden of establishing jurisdiction. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995).

When deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989). If a defendant challenges jurisdiction, however, the plaintiff cannot merely rely upon allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt, 298 U.S. at 189; see also Land v. Dollar, 330

U.S. 731, 735 (1947); Reynolds, 846 F.2d at 747; Catellus Development Corp. v. United States, 31 Fed. Cl. 399, 404-05 (1994). This Court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).

Plaintiffs bear the burden of establishing by a preponderance of the evidence that they filed suit within six years of the accrual of their claims. Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377-78 (Fed. Cir. 1998) (citing McNutt v. General Motors Acceptance Corp. of Ind., 298 U.S. 178 (1936) ("jurisdictional timeliness"); Reynolds, 846 F.2d 746 at 748; Martinez v. United States, 48 Fed. Cl. 851, 857 (2001).

**B. Law of the Case Doctrine**

" 'The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts.' " Gould, Inc. v. United States, 67 F.3d 925, 930 (Fed.Cir.1995) (quoting Jamesbury Corp. v. Litton Indus. Prods., Inc., 839 F.2d 1544, 1550 (Fed.Cir.1988), overruled on other grounds, A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed.Cir.1992)); see United States v. U.S. Smelting Refining & Mining Co., 339 U.S. 186, 198-99 (1950). The law of the case doctrine protects the parties' settled expectations and enables cases to develop in an orderly manner. Independence Park Apts. v. United States, 61 Fed.Cl. 692, 699 (2004), rev'd on other grounds, 449 F.3d 1235 (Fed.Cir.2006).

The law of the case doctrine, however, is not absolute in application. Rather, the doctrine "'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817

(1988) (quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912)). It only acts to discourage "a court [from] . . . reopen[ing] issues decided in earlier stages of the same litigation." Agostini v. Felton, 521 U.S. 203, 236 (1997) (citing Messenger v. Anderson, 225 U.S. 436, 444 (1912)). The law of the case doctrine at the trial court level is "little more than a management practice to permit logical progression toward judgment." Jamesbury Corp. v. Litton Indus. Prods., Inc., 839 F.2d 1544, 1550 (Fed. Cir. 1988), overruled on other grounds, A.C. Aukerman Co. V. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992).

In general, the law of the case doctrine permits a court to "'reconsider its decisions until a judgment is entered,'" Florida Power & Light Co. v. United States, 66 Fed.Cl. 93, 98 (2005) (quoting Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir.1991)); see United States v. U.S. Smelting Refining and Mining Co., 339 U.S. 186, 198-99 (1950), and to change "incorrect legal conclusion[s]." Florida Power & Light, 66 Fed.Cl. at 98. Courts may reconsider prior determinations when (1) new and different evidence is discovered, (2) there is a contradictory ruling by controlling authority, or (3) the prior determination was "clearly incorrect" and "preservation [of the prior ruling] would work a manifest injustice." Intergraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001) (citing Smith Int'l, Inc. v. Hughes Tool Co., 759 F.2d 1572, 1576 (Fed. Cir.1985).

These three criteria for reconsidering a prior determination apply as well to a trial court when acting upon a mandate received from an appellate court which has remanded a case and, in so doing, established the law of the case for an issue. See, e.g., AFG Industries, Inc., v. Cardinal IG Co., Inc., 375 F.3d 1367, 1372 n.2 (Fed. Cir. 2004) (commenting that a trial court could under appropriate circumstances refine an issue addressed earlier in the litigation by the Federal

Circuit), citing Utah Med. Prods., Inc. v. Graphic Controls Corp., 350 F.3d 1376, 1381-83 (Fed. Cir. 2003); see also Intergraph Corp. v. Intel Corp., 253 F.3d at 697-98, citing, inter alia, and quoting DeLong Equipment Co. V. Washington Mills Electro Minerals Corp., 990 F.2d 1186, 1196 (11th Cir. 1993) ("'the general rule is that "an appellate court's decision of issues must be followed in all subsequent trial or intermediate appellate proceedings in the same case" except when there are "the most cogent of reasons"'") and quoting Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16, 19-20 (5th Cir. 1974) (district court on remand should generally follow the appellate court's decision); and Gould, Inc. v. United States, 67 F.3d 925, 930 (Fed. Cir. 1995) (setting forth essentially the same criteria).

### C. Accrual of a Gradual Taking

For a taking of land by a gradual process of physical events such as in this litigation, the Supreme Court in United States v. Dickinson, 331 U.S. 745, 749 (1947), held that a plaintiffs' cause of action does not accrue until "the situation becomes stabilized." The Federal Circuit has elaborated further upon the accrual principles as they relate to the Dickinson "stabilization" precept.

First, in Boling v. United States, 220 F.3d 1365, 1371 (Fed. Cir. 2000), the Federal Circuit appreciated that Dickinson recognizes that gradual, continual takings present special difficulties and "represent an application of general accrual principles, rather than a broad exception to them." More specifically, the Federal Circuit stated that "stabilization occurs when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined." Boling, 220 F.3d at 1370-71.

Through its opinions in Applegate and Banks II, the Federal Circuit, in commenting further upon the "permanence" element of a "stabilized" gradual claim, has introduced the notion of "justifiable uncertainty." That is, a gradual taking claim does not reach a stabilized condition, and hence the claim has not accrued, if the property owner has "justifiable uncertainty" about whether his or her loss is permanent or irreversible. In Applegate, that "justifiable uncertainty" arose by the government's promises to build a sand tranfer plant (Applegate, 25 F.3d at 1582) and, in Banks II, by virtue of the Corps mitigation efforts to nourish the shoreline along Lake Michigan (Banks II, 314 F.3d at 1309-10). See Boling, 220 F.3d at 1372 ("critical element that delayed stabilization in Applegate [is] the justifiable uncertainty about the permanency of the taking.")

## IV. ARGUMENT

### A. Summary of the Argument

Applying the reasoning of the Federal Circuit in Banks v. United States, 314 F.3d 1304 (Fed. Cir. 2003), and Applegate v. United States, 25 F.3d 1579 (Fed. Cir. 1994), to the facts recently obtained through discovery, plaintiffs are time-barred under 28 U.S.C. § 2501. In those two opinions, while expounding upon the United States Supreme Court's decision in Dickinson v. United States, 331 U.S. 745 (1947), the Federal Circuit concludes that a promise or activity by the United States can cause justifiable uncertainty to a landowner regarding the permanence of incurred erosion sufficient to delay the accrual of a claim and delay the onset of the statute of limitations. Applegate, 25 F.3d at 1582; Banks II, 314 F.3d at 1309-10.

The facts demonstrate plaintiffs cannot avail themselves of the Federal Circuit's reasoning. The plaintiffs for whom we move to dismiss on the basis of statute of limitations

were already found by this Court to have experienced erosion on their properties[8] that was permanent and the extent of the damage reasonably foreseeable and to have been placed on inquiry notice. Banks I, 49 Fed. Cl. at 825. See Rule 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of witnesses.") Discovery taken through depositions subsequent to the Federal Circuit's Banks II decision shows plaintiffs had no justifiable uncertainty regarding the erosion to their property. These plaintiffs had one of two views or understandings about the Corps' efforts to nourish the shoreline south of St. Joseph Harbor. Some plaintiffs had no knowledge whatsoever of the Corps' efforts. Their lack of knowledge, on its face, renders the Banks and Applegate refinements or nuance to the Dickinson stabilization precept inapplicable factually. Others, while aware of the Corps' efforts, did not believe it would benefit their property. This belief contradicts the core factual premise of the Federal Circuit's reasoning – that a plaintiff is justifiably uncertain about the permanence of erosion because he or she thinks a governmental-based course of action or promise will alleviate the loss of property. See Applegate, 25 F.3d at 1582 ("With promises of a sand transfer plant renewed as recently as 1988, the landowners did not know when or if their land would be permanently destroyed."). However, these plaintiffs did not postpone filing suit in reliance upon the Corps' beach nourishment program since they either were unaware of it, or did not believe it would provide any benefit. Cf., Applegate v. United States, 25 F.3d at 1582 (plaintiffs postponed filing based on the Corps' promises to build a sand transfer plant).

---

[8] However, no determination has been made as to the extent of the United States's involvement in that erosion, or the extent of the erosion on each individual's property.

**B. Law of the Case Doctrine Should Not Be Applied**

Defendant requests the Court revisit the statute of limitations issue based upon facts not known when the issue was first addressed by this Court and the Federal Circuit. The facts, now fully known, show the absence of jurisdiction over claims asserted untimely under the statute of limitations. The Federal Circuit expressly held that causes of action against the Corps had not accrued because "justifiable uncertainty" existed regarding the stabilization of plaintiffs' claims of erosion. Banks II, 314 F.3d at 1309-10. When the Federal Circuit issued its opinion in this case, crucial facts regarding individual plaintiffs' knowledge about the existence of the Corps' beach nourishment program were not known. Discovery conducted since then discloses relevant material evidence directly germane to the statue of limitations issue, the basis upon which the Federal Circuit ruled, and, hence, the Court's jurisdiction. As discussed below, these facts show that many of the plaintiffs harbored no "justifiable uncertainty" about the stabilization of their erosion claims because they either were unaware of the Corps beach nourishment program or, if they were aware, they did not think or believe the program would benefit their property. These facts were not considered by either this Court or the Federal Circuit in the earlier litigation and they bear directly upon the viability of the Federal Circuit's 2003 opinion. Once this evidence is applied to the Circuit's holding, it is clear that plaintiffs' claims are time-barred and must be dismissed.

The circumstances here do not resemble even remotely those in which a party attempts to relitigate issues under the "hope that the passage of time or changes in the composition of a court will lead to more favorable results." International Electronics Corp. v. United States, 2 Cl. Ct. 570, 574 (1983). Because the circumstances show new, substantial information not considered

by the Federal Circuit, and the underlying issue relates to the Court's proper exercise of jurisdiction, the law of the case doctrine cannot stand as a barrier to revisiting the statute of limitations issue.

**C. No Justifiable Uncertainty Exists**

The plaintiffs for whom we have moved to dismiss did not have justifiable uncertainty about the gradual taking of their property because they either were unaware of the Corps' beach nourishment program or, if they were aware, they did not believe the program would benefit their property. The chart below denotes those plaintiffs which fall into each category. The chart also includes a citation to the pertinent excerpts from their deposition testimony.

| **Plaintiff** | **Unaware of Corps' beach nourishment program** | **Aware of Corps' beach nourishment program but did not believe it would benefit their property** | **Deposition Testimony** |
|---|---|---|---|
| Anderson | x | | Exh. 2 at pages 35-36 |
| Bunker | | x | Exh. 3 at pages 42-44 |
| Chapman | | x | Exh. 4 at pages 65-68 |
| Concklin | x | | Exh. 5 at pages 31-32 |
| Country Day, LLC | | x | Exh. 6 at pages 43-44 |
| Cunat | x | | Exh. 7 at pages 34-35 |
| Del Mariani | | x | Exh. 8 at pages 74-80 |
| Kane | x | | Exh. 9 at pages 44-46 |
| Lahr | | x | Exh. 10 at pages 43, 65-68 |
| Marzke | | x | Exh. 11 at pages 21-22 |

| | | | |
|---|---|---|---|
| Miller | x | | Exh. 12 at pages 49-50 |
| Morvis | x | | Exh. 13 at pages 36-37 |
| Renner | x | | Exh.14 at pages 53-55 |
| Smith | x | | Exh.15 at pages 34-37 |
| Wilschke | | x | Exh.16 at pages 36-38 |

In Boling, the Federal Circuit stated that the "critical element that delayed stabilization in Applegate [is] the justifiable uncertainty about the permanency of the taking." Boling, 220 F.3d at 1372. A key feature to the Federal Circuit's decisions in Applegate and Banks II turned on finding that landowners had "justifiable uncertainty" in determining whether the gradual taking of their property had stabilized. In reaching that conclusion, the Federal Circuit in both cases relied upon the fact that the landowners were aware of the Government's activity to find justifiable uncertainty existed. See Applegate, 25 F.3d at 1582; Banks II, 314 F.3d at 1307 (citing Banks I, 49 Fed. Cl. at 812 (plaintiffs contend they had uncertainty because, inter alia, "[of] promise of mitigation of the injury through sand transfer measures authorized and partially implemented by the Defendant")). In the case before this Court, the facts now known show that essential fact is missing.

In determining whether justifiable uncertainty exists, the Federal Circuit's decision in Boling highlights the importance of knowledge by the landowners of the Government's activity. The Federal Circuit expressly found no justifiable uncertainty existed when the Government activity (which arguably would have delayed the stabilization of the gradual taking of property

because of the uncertainty created by the activity about the permanence of the taking) was unknown to the property owners. Boling, 220 F.3d at 1372. In Boling, in order to make a continuous navigable channel out of a natural waterway that runs along a portion of the east coast of the United States, the Government dug a canal which eroded the waterway banks of property owners. Boling, 220 F.3d at 1368. For a number of years, the Corps had a policy which apparently authorized it to construct revetments that would have protected the property of the Boling plaintiffs from erosion. Id. at 1372. The Boling plaintiffs, however, were not aware of these plans until after they filed suit. Id. at 1372. Because they were unaware, the Federal Circuit held that justifiable uncertainty "is simply not present" and specifically contrasted that state of knowledge with that of the Applegate plaintiffs who were aware of the Government activity. Id. at 1372. That precise situation now exists in this case for some of the plaintiffs whom we seek dismissal of their complaints.

The same result in Boling should also apply for other plaintiffs who had an awareness of the Corps' beach nourishment program but did not think the program would benefit their property. Each of these plaintiffs cannot be said to have had justifiable uncertainty if they believed the program would not benefit them. Per se, their belief that the Corps' program would not benefit their property is irreconcilably inconsistent with the belief of a land owner who harbors an uncertainty about the permanence of the erosion because of the Corps' nourishment efforts. Their complaints must be dismissed for failure to file timely. To hold otherwise allows plaintiffs, who otherwise met the Dickinson stability doctrine requirements as of 1989 as determined by this Court in Banks I, to invoke the doctrine of justifiable uncertainty when they had none, and thereby evade the statute of limitations.

This consequence does not change when we consider the statutory scheme addressing knowledge by parties and assessment of penalties under the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201-1328.[9/] SMCRA is a "comprehensive statute designed to 'establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations.'" Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc., 452 U.S. 264, 268 (1981) quoting 30 U.S.C. § 1202(a). See also generally, 30 U.S.C. § 1201. The SMCRA provides a structure by which the United States, through the oversight of the Secretary of Interior has implemented programs to regulate surface coal mining. The SMCRA empowers the Secretary, acting through the Office of Surface Mining Reclamation and Enforcement ("OSM"), to administer the programs for controlling surface coal mining operations set forth in the Act. 30 U.S.C. §§ 1211(a), (c).

SMCRA requires a permit be issued before any person or company may engage in surface coal mining operations. See 30 U.S.C. § 1256. That permit must require the surface coal mining operation to satisfy certain environmental protection performance standards. The Secretary may elect to address violations (30 U.S.C. § 1271) through civil penalties (30 U.S.C. § 1268) with a process that includes notice and hearings on the alleged violations (see 30 U.S.C. §§ 1271(a)(5), 1268(b) and (c)) with judicial review ultimately available (30 U.S.C. § 1276). The Sixth Circuit in United States v. Finley, 835 F.2d 134, 135-36 (6th Cir. 1987), described the administrative process for enforcement. We respectfully refer the Court to pages 135-36 of that

---

[9/] When advised in a status conference call of the defendant's intention to file this motion, the Court asked the parties to consider what case law addressing the SMCRA scheme of penalties and knowledge by the affected party might contribute to the issue of knowledge by the plaintiffs in this case of the Corps' beach nourishment program.

opinion for a detailed overview of the SMCRA program.

Pursuant to the Court's direction we have closely examined the SMCRA provisions. We do not believe, however, that the essence of its requirements apply in this particular factual situation. First, the Federal Circuit in Boling has already addressed the specific situation here. In Boling the property owners were unaware of the Government activity which ostensibly may have permitted them to have had justifiable uncertainty about the permanence of the erosion to their property. Boling, 220 F.3d at 1372. Under these facts, the Boling court held that justifiable uncertainty "is simply not present." Id. Additionally, no commonality sufficiently exists to draw meaningful comparisons when the factual situations between the plaintiffs here and a SMCRA violator are juxtaposed with each other. In the takings context with an issue of justifiable uncertainty, knowledge by a party on a matter (Government activity) inures to his or her benefit if they are aware of it. This scenario contrasts with and is the obverse of the SMCRA situation. In that context, the knowledge by a party about a matter (Government notice of an alleged violation) inures to the party's disadvantage.

Nor does the recent decision in Benchmark Resources Corp. v. United States, 74 Fed. Cl. 458 (2006), provide insight or reason for a different outcome to the factual situation present in this case and which was addressed specifically by the Federal Circuit's decision in Boling. In Benchmark, plaintiffs alleged a taking occurred when the Department of the Interior's Office of Surface Mining Reclamation and Enforcement designated part of the property as unsuitable for surface mining. The United States moved to dismiss the case of one of the several plaintiffs for failure to file their complaint within the six-year statute of limitations. Alternatively, the United States moved for summary judgment contending that all plaintiffs could not present a

compensable property interest under the Fifth Amendment. Benchmark, 74 Fed. Cl. at 459. In finding that the plaintiff had filed suit untimely, Judge Miller assessed the evidence and determined that the plaintiff had received a statutorily-required notice of OSM's decision that the property was unsuitable for surface mining which served to accrue the alleged regulatory-taking claim for purposes of the statute of limitations. Id. at 469-72.[10]

The Benchmark decisions do not apply for two reasons. One, the decisions are inapposite. Unlike the facts here before this Court, Benchmark involved a statutory-required notice to plaintiffs. No such requirement exists here. Two, the Federal Circuit's decision in Boling – involving the same salient facts as here – controls.

### D. Complaints by Plaintiffs Bodnar and Okonski are Also Time Barred

The complaints filed by plaintiffs Bodnar and Okonski should also be time barred under 28 U.S.C. § 2501. Neither plaintiff had filed their complaint before the Federal Circuit's 2003 ruling in Banks II. Alleging the same factual basis to their takings claim against the United States as other plaintiffs in this consolidated proceeding, plaintiffs Bodnar filed their complaint on December 28, 2005, and plaintiffs Okonski filed their complaint on January 27, 2006.

#### (1) Bodnar Plaintiffs

The Bodnar plaintiffs purchased their property in December 1988 (Bodnar Complaint, Exhibit A) or 1989 (Exh. 17, Deposition testimony of Andrew Bodnar at 6:7-19; 42:7-14). Mr.

---

[10] In doing so, Judge Miller was relying upon her reasoning in a prior decision in the case that OSM's failure to provide the notice required by 30 C.F.R. § 764.19 (b) ("The regulatory authority shall simultaneously send the decision [of unsuitability for surface mining] by certified mail to the petitioner and intervenors and by regular mail to all other persons involved in the proceeding.") defeated the United States's statute of limitations argument for two different plaintiffs. See Benchmark Resources Corp. v. United States, 64 Fed. Cl. 526, 531-36 (2005).

Bodnar knew erosion was an "issue and somewhat of a problem" before he purchased the property. Exh. 17 at 8:13-9:25. By the spring of 1997, his sea wall which had been fully intact when he purchased the property (id. at 13:10-23) had progressively deteriorated until it was at the point of collapsing when the "erosion really chomped in" and his property lost a bluff. Id. at 19:14-24. He estimated that the shortest point from his house to the edge of the bluff when he bought the property was approximately 100-105 feet. Id. at 19:14-19. After his property lost the bluff, he placed the distance between the shortest point from his house to the edge at about 20-30 feet, commenting that he had "lost a large amount quickly." Id. at 19:20-24. By this time in the spring of 1997 after losing the bluff, after having lost approximately 70 feet of property in the span of 8 to 9 years, Mr. Bodnar can fairly be said to have been on inquiry notice of his claims. See Fallini v. United States, 56 F.3d 1378, 1380 (Fed. Cir. 1995); Coastal Petroleum Co. v. United States, 228 Ct. Cl. 864, 867 (1981). He did not file suit until almost nine years later even though he apparently received a letter from Mr. Ehret in about December 1998 discussing a possible lawsuit. Exh. 17 at 26:12-23. He had already been on notice by attending a meeting at Lake Michigan College – within a year before or after spring 1997 (id. at 22:15-22) – at which the Corps acknowledged causing erosion from the jetties located at the St. Joseph harbor. Id. at 14:14-15:12; 17:13-24; 18:16-19:1.[11/]

To explain why he did not file suit after having received Mr. Ehret's letter, Mr. Bodnar cited his business activity, and subsequent comments by others that he was too late. Id. at 27:4-

---

[11/] Though Mr. Bodnar does not remember Dr. Okonski attending the meeting with him (id. at 28:14-17), Dr. Okonski testified that he remembered the two of them attending the meeting. See Exh. 18, Deposition testimony of Dr. Okonski at 27:18-28:13). He also placed the meeting as occurring perhaps in 1996. Id. at 28:3-7.

21. At bottom, Mr. Bodnar possessed no justifiable uncertainty about the permanence of his property's loss to erosion. He cited nothing about waiting to see the results of the Corps' beach nourishment program to determine whether his property loss was permanent. Instead, Mr. Bodnar said he did not pay attention to the beach nourishment program, that it "didn't really correlate" with him at that time whether there was any benefit from it, that he thought the Corps was working with dredging the river and that he "didn't think there was any point or goal or aiding in the lake restoration." Id. at 25:13-17; 26:4-11. Today, looking back in retrospect, he sees the logical merit to the Corps' program as explained earlier to him by Mr. Ehret. Id. at 25:17-25. See generally id. at 23:23-26:11. His claims, however, are untimely and barred under 28 U.S.C. § 2501.

**(2) Okonski Plaintiffs**

The Okonski plaintiffs purchased their property in June 1986. (Okonski Complaint, Exhibit A). Dr. Okonski, like Mr. Bodnar, was aware that his property had experienced loss to erosion at the time of purchase. Exh. 18, Deposition testimony of Dr. Craig Okonski at 9:21-12:1 (loss of a portion of an abandoned home on the property that fell into the lake). Since that time he testified that the Okonski property has experienced further erosion: a seawall has deteriorated to the point only 10 percent of it remains in place (id. at 16:7-16); the remaining portion of a foundation of the abandoned home fell down the bluff (id. at 17:6-11); the loss of 20 to 25 feet of property after a storm 12 years ago (id. at 16:17-17:5); and the loss of another 5 to 8 feet of property since the storm (id. at 17:6-18:3). Between being aware of the history of erosion to his property before he purchased it, the continuing deterioration to the property's seawall, the further shifting of a remnant of a foundation of an abandoned home on the property, and the loss

of 20-25 feet of property after a storm, Dr. Okonski was placed on inquiry notice no later than 12 years ago (approximately 1994). See Fallini, 56 F.3d at 1380; Coastal Petroleum Co., 228 Ct. Cl. at 867. Dr. Okonski testified at his deposition that he viewed the loss of property as permanent. Id. at 19:13-17. Further, consistent with being placed on inquiry notice, he testified that from about the time of the storm 12 years ago, and a bluff preservation project that he undertook with Mr. Bodnar in about 1995 (id. at 20:15-21:3), that he had a heightened awareness about what was causing the erosion. Id. at 23:7-25:6. He also received a letter dated December 1, 1998, from Mr. Ehret informing him that a lawsuit was being prepared against the Corps for the erosion caused by the jetties at St. Joseph harbor. Id. at 33:12-35:19. Dr. Okonski mistakenly believed that he responded to Mr. Ehret's letter with an intention to join the lawsuit at that time. Id. at 35:20-37:21. Between hearing nothing and becoming increasingly involved in plans to build a home on the property and newly married, Dr. Okonski was not sure if a lawsuit had been filed. Id. at 36:20-37:24. Later, in 2003, Dr. Okonski considered filing a lawsuit but again nothing came of it. Id. at 37:25-40:3. Though he also had an awareness of the Corps' dredging sand and placing it in the Silver Beach area, Dr. Okonski thought the efforts probably did not benefit his property and, in fact, thought they might be detrimental. Id. at 42:8-43:10. Rather, by implication showing what he thought might assist his property, he hoped that there might be a federal grant that would result in a bluff preservation project. Id. at 43:11-20. Because he was placed on inquiry notice no later than 1995 about the erosion damage to his property and did not have justifiable uncertainty about the permanence of the damage, Dr. Okonski's claims are untimely and barred by 28 U.S.C. § 2501.

## CONCLUSION

For the reasons stated above, we respectfully request the Court dismiss the lawsuits brought by the 17 plaintiffs that this motion addresses in this consolidated matter for failure to file complaints timely as required under 28 U.S.C. § 2501.

Dated: February 26, 2007

Respectfully submitted,

MATTHEW McKEOWN
Acting Assistant Attorney General
Environment and Natural Resources Division

*s/Terry M. Petrie*
TERRY M. PETRIE
Environment and Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294
Tele: 303-844-1369
Fax: 303-844-1350
Terry.Petrie@usdoj.gov

HEIDE L. HERRMANN
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: 202-305-3315
Facsimile: 202-305-0274
Heide.Herrmann@usdoj.gov

Attorneys for Defendant

OF COUNSEL

Gary W. Segrest, Esq.
Office of Counsel
U.S. Army Corps of Engineers
477 Michigan Avenue, Room 659
Detroit, MI 48226

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the "**DEFENDANT'S MOTION TO PARTIALLY DISMISS AND MEMORANDUM IN SUPPORT THEREOF**" by electronic filing with the Unites States Court of Federal Claims on the 26th day of February, 2007 on:

John Ehret, Esq.
20860 Greenwood Drive
Olympia Fields, IL 60461

Counsel for *Banks* Plaintiffs

****************

Drew Marrocco, Esq.
Sonnenschein Nath & Rosenthal LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005

Counsel for *Stone* Plaintiffs

****************

Eugene J. Frett, Esq.
Sperling & Slater, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603

Counsel for *Frett* Plaintiffs

****************

*s/Terry M. Petrie*
TERRY M. PETRIE

# LIST OF EXHIBITS

1. List of Plaintiffs for Whom Defendant Moves to Dismiss
2. Excerpt of Deposition of Janice Anderson
3. Excerpt of Deposition of Frank Bunker
4. Excerpt of Deposition of Gail L. Chapman
5. Excerpt of Deposition of J. Thomas Concklin
6. Excerpt of Deposition of Carol Scallan
7. Excerpt of Deposition of Marilyn J. Cunat
8. Excerpt of Deposition of Marc Del Mariani
9. Excerpt of Deposition of Robert Kane
10. Excerpt of Deposition of Frank Lahr
11. Excerpt of Deposition of Richard Marzke
12. Excerpt of Deposition of Donald Miller
13. Excerpt of Deposition of George Morvis
14. Excerpt of Deposition of Elmer Renner
15. Excerpt of Deposition of Leonard Smith
16. Excerpt of Deposition of Roger Wilschke
17. Excerpt of Deposition of Andrew Bodnar
18. Excerpt of Deposition of Craig D. Okonski