Page 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JOHN H. and MARY E. BANKS, )
ERROL L. and SUSAN H. STONE, )
as Trustees of the SUSAN H. )
STONE TRUST, et al., )
Plaintiffs, ) No. 99-4451
vs. ) Consolidated with
UNITED STATES OF AMERICA, ) No. 04-277L
Defendant. )

The deposition of ROBERT KANE, called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before NICOLE SCOLA, CSR No. 084-004524, a Notary Public within and for the County of DuPage, State of Illinois, and a Certified Shorthand Reporter of said state, 10th Floor, 155 North Wacker Drive, Chicago, Illinois, on the 3rd day of March, A.D. 2006, at 12:34 p.m.

Page 2

PRESENT:

MR. JOHN B. EHRET,
(20860 Greenwood Drive,
Olympia Fields, Illinois 60461,
708-748-8975),
appeared on behalf of the Plaintiffs John H. and Mary E. Banks and the Deponent;

Page 3

PRESENT: (Continued)

UNITED STATES DEPARTMENT OF JUSTICE,
ENVIRONMENT & NATURAL RESOURCES DIVISION,
GENERAL LITIGATION SECTION,
(999 18th Street,
Suite 945, North Tower,
Denver, Colorado 80202,
303-312-7327), by:
MR. TERRY M. PETRIE,
-and-
U.S. ARMY CORPS OF ENGINEERS,
(477 Michigan Avenue, Room 659,
Detroit, Michigan 48231-1027,
313-226-2215), by:
MR. GARY W. SEGREST,
Assistant District Counsel -
Detroit District,
appeared on behalf of the Defendant.

REPORTED BY: NICOLE M. SCOLA, CSR, RPR,
C.S.R. Certificate No. 84-4524.

Page 4

(WHEREUPON, the witness was duly sworn.)

ROBERT KANE,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. PETRIE:
Q. Good afternoon, sir. How are you?
A. Just fine. Thank you.
Q. Good. Again, I appreciate you taking the time to come here today.
A. My pleasure.
Q. Have you ever been deposed before?
A. No, I have not.
Q. Okay. Baptism, I guess, of sorts then.
A. Yes.
Q. Let me give you a couple of thoughts to consider during the course of it. One is that if you don't understand the question that I ask, let me know. I'll try to rephrase it, restate it so that, hopefully, it makes sense to you.
A. Uh-huh.
Q. The second thought for you is, like all of us, a lot of times when we engage in





EXHIBIT 9

time when the wave breaker was installed?
A. I have some photos of my neighbors.
MR. EHRET: Why don't you write a little note on there with an arrow.
BY MR. PETRIE:
Q. Do you have a picture of your wind -- or, your wave break?
A. Partial in 1989.
Q. Okay. Sir, is this the one in the lower left-hand corner?
A. Yes. This is my neighbor's, the McKay's at the time, revetment wall. Mine --
Q. You're pointing to the photo immediately to the right --
A. Correct.
Q. Of the one that has the date 8-6-89?
A. Correct.
MR. EHRET: Can I interject a question, Counsel?
MR. PETRIE: Let's go off the record.
(WHEREUPON, discussion was had off the record.)
BY MR. PETRIE:
Q. Sir, we have marked, or will have



marked as Exhibit 48, this page that has four photos on it, and we've been looking at two photos on that page, one with the handwritten date 8-6-89 beneath it, which depicts what you call a wave breaker, which is in the background of the photograph behind two young children.
Your kids perhaps?
A. My daughter.
Q. Okay. Your daughter, the one on the right then.
Then the photograph to the right, which also depicts a wave breaker, is this on the McKay property?
A. Yes, it would be. McKay's have three lots, if you will, three basic lots.
Q. So, apparently, at least as of August 1989, you had the wave breaker in place? Do you recall --
A. Not. Obviously, it's not the whole wave breaker because it was removed --
Q. Yes. Some of it was removed?
A. Yes.
Q. And I was wanting to ask, if you could tell with seeing this photograph, how much



before -- how much longer in time before this was the wave breaker installed, if that refreshes your memory?
A. I would say the wave breaker probably was installed in '88 then.
Q. Approximately?
A. Uh-huh, yes.
Q. And the reminisce of whatever is left of it, is it -- is that -- it went by the boards here four years ago or is that the third revetment wall that you lost four years ago?
A. You're saying two different things. I think --
Q. Yes, sir.
A. The one wave breaker --
Q. Yes, sir.
A. The wave breaker was the first to go.
Q. Okay.
A. Okay. Then the revetment wall went.
Q. Which of the four revetment walls then went after the wave breaker?
A. Probably the second one.
Q. Could you give me some sense in time when the wave breaker wall --



A. Went?
Q. Yes, sir.
A. Probably 1988 or '89.
Q. The fourth revetment wall, when did it -- it's still in place?
A. Yes.
Q. When did you install it approximately?
A. Two to three years ago.
Wasn't it?
MR. EHRET: I can't help you.
BY THE WITNESS:
A. I'm thinking two to three years ago because we had to do an enormous amount of construction once again for a deck, stairs, another deck.
BY MR. PETRIE:
Q. Yes, sir.
I'm going to ask this question focussing on two different periods of time. I'm going to ask you first as it relates to the period of time before you bought your property in 1978.
What I'm wanting to know is whether or not you have had any kind of an awareness of the Corps undertaking efforts to address the erosion

problem for property owners in the shoreline that they reside along there south of the St. Joseph Harbor?
A. Was I aware of any --
Q. Yes, sir.
A. -- that the Corps came to --
Q. Made any kind of efforts to --
A. I'm not aware of any.
Q. -- address erosion in that stretch of the shoreline south of St. Joseph Harbor?
A. I'm not aware of any.
Q. Same question focussing on that point in time when you bought your property up through the present: Have you had any kind of an awareness of the Corps having any kind of a program or efforts to address the erosion there along the shoreline south of the harbor? And I'm talking that stretch of the shoreline down through where the property owners such as yourself live.
A. None. You're asking me if I was ever contacted by the Corps or --
Q. Not if you were contacted, just simply if you had any kind of an awareness --
A. No.



Q. -- of that kind of a program?
A. No.
Q. Or efforts to address that kind of erosion?
A. No.
MR. PETRIE: I'd like to take a break, if I could, please.
THE WITNESS: Absolutely.
MR. PETRIE: Thank you.
(WHEREUPON, a short recess was had.)
BY MR. PETRIE:
Q. Just one last point to clarify, and this is from Exhibit 45.
Sir, this is the one that had the two photographs, 1976 and 1978.
A. Uh-huh.
Q. And I'm wanting to focus more on the one that's dated 1976 because I know that you did rent property out there before you bought the property in 1978.
So I was trying to determine whether or not that photograph that has the date of 1976, was it indeed taken in 1976 at which point in time you



folks were down there on the beach taking photographs while you rented property?
A. It might have been when we rented property. We had, you know, homeowners up there with beach access. So this is my wife and my mother-in-law walking along the beach (indicating). So it was probably before we bought our property, obviously.
Q. Property in 1978. Okay. That's the only clarification I needed to follow up on.
Thank you.
MR. PETRIE: No other questions for Mr. Kane.
THE WITNESS: I'm free?
MR. PETRIE: Not quite, sir.
EXAMINATION
BY MR. EHRET:
Q. I have two pictures I've shown you previously, and they're dated in April 1975, and one of them shows your house at the left side with the word Kane 18 at the bottom left-hand corner.
The second one shows your house in the bottom right-hand side, but without your name on it. The nearest name is McKay's name, but it's the same date?



MR. EHRET: Could we mark these.
(WHEREUPON, certain documents were marked Deposition Exhibit Nos. 49-50, for identification, as of 3-03-06.)
BY MR. EHRET:
Q. Looking at the exhibit that's been numbered 49 with your house identified in the left-hand side. There's a wall that I can see there. Now, is that the fourth wall that you referred to in your discussion?
A. Yes.
Q. So that has survived so far?
A. Yes.
Q. And is that a stairway I see that goes up and over that wall?
A. Yes. There's stairs here (indicating). There's a deck, a lower deck here, and then stairs leading up to the -- what used to be a cement patio is now a deck patio because half of that is lost.
Q. Maybe because of the shadows, I could see in Exhibit 50 that lower deck and the upper patio more clearly; is that correct?