IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JOHN H. and MARY E. BANKS, )
ERROL L. and SUSAN H. STONE, )
as Trustees of the SUSAN H. )
STONE TRUST, et al., )
Plaintiffs, )
-vs- )No. 99-4451
UNITED STATES OF AMERICA, )Consolidated with
Defendant. )No. 04-277L

The deposition of ELMER RENNER, called for examination, taken before ZONA B. MILLER, a Notary Public within and for the County of Lake, State of Illinois, and a Certified Shorthand Reporter of said state, 10th Floor, 155 North Wacker Drive, Chicago, Illinois, on the 28th day of February, A.D. 2006, at 1:00 p.m.



PRESENT:
MR. JOHN B. EHRET,
(20860 Greenwood Drive,
Olympia Fields, Illinois 60461,
708-748-8975),
appeared on behalf of the Plaintiffs
John H. and Mary E. Banks and the
Deponent.

SONNENSCHEIN, NATH & ROSENTHAL,
(1301 K Street N.W.,
Washington, D.C. 20005,
202-408-6387), by:
MR. DREW W. MARROCCO,
appeared telephonically on behalf of
the Plaintiffs, Errol L. and
Susan H. Stone, as Trustees of the
Susan H. Stone Trust;



PRESENT: (Continued)
UNITED STATES DEPARTMENT of JUSTICE,
Environment & Natural Resources Division,
General Litigation Section,
(999 18th Street,
Suite 945, North Tower,
Denver, Colorado 80202,
303-312-7327,) by:
MR. TERRY M. PETRIE,
-and-
U.S. ARMY CORPS OF ENGINEERS,
(477 Michigan Avenue, Room 659,
Detroit, Michigan 48231-1027,
313-226-2215), by:
MR. GARY W. SEGREST,
Assistant District Counsel - Detroit District,
appeared on behalf of the Defendant.

REPORTED BY: ZONA B. MILLER, CSR No. 84-0428.



(WHEREUPON, the witness was duly sworn.)

ELMER RENNER,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

EXAMINATION

BY MR. PETRIE:

Q. Good afternoon, Mr. Renner. How are you?
A. Fine. Thank you.
Q. As I understand it, you have had the opportunity to be deposed before?
A. Yes, I have.
Q. How many times would you estimate?
A. Eight or ten times.
Q. And can you give us a general sense of the subject matter for what you were deposed about?
A. Surely. I was employed by a manufacturer of bulk material handling equipment. So most of my depositions given were relative to product liability in that field or in personal injury suits involving those products that we manufactured or our competitors manufactured. I





EXHIBIT 14

Page 53

Q. You can go ahead and answer.
MR. EHRET: The Court has already ruled on that subject.
BY MR. PETRIE:
Q. And you can still answer the question.
A. I don't know. Ask that question once more.
Q. Certainly. What I'm trying to ask you is, is the various -- using some of the various forms of shore protection that you've described that you placed on your property. What I was trying to understand was whether or not you know or have any understanding about whether or not that in turn increases erosion to the property owners south of you?
A. I have no knowledge of that.
Q. Do you know, sir, whether or not the Corps of Engineers has ever attempted to address the erosion problem there in the area where you live?
MR. EHRET: If you know.
BY THE WITNESS:
A. I don't know of any. I have to -- I attended a meeting one time. I don't know if it

Page 54

was put on by the Corps, but they were talking about -- somebody was talking about installing a, a, um, offshore, way out in the lake, a big pier -- a big pile of rocks or something to create a -- I don't think that was the Corps of Engineers. I don't know who did that.
BY MR. PETRIE:
Q. Sir, I got another question in the same regard, I guess.
If I understand your testimony here correctly, you became aware of a problem with erosion sometime in the '70s, early '70s, is that right?
A. Yes.
Q. And this lawsuit that was brought by you as part of -- along with a number of other property owners here in what, 2000, I think, or 1999. Was he part of the original group set in place in 1999 when this lawsuit was filed? That's the span of like 20-odd-some years. What led you to ultimately sue the Corps of Engineers?
A. I was losing my property, and I didn't do anything to be causing the loss.
Q. A couple of questions then. What made

Page 55

you think that the Corps of Engineers is who you should be suing?
A. I had no idea of who was responsible for it.
Q. And then I guess the second question is, why did you wait 20-some years to decide to sue the Corps?
A. I was approached by Mr. Ehret as a possibility.
Q. Was there anything happening in those 20 years to cause you to hold off from bringing the lawsuit?
A. No.
MR. PETRIE: Take a break. We've been going a good while. I appreciate it.
Go off the record.
(WHEREUPON, discussion was had off the record.)
(WHEREUPON, a recess was had.)
BY MR. PETRIE:
Q. Mr. Renner, towards the close of the questioning there, before we took a break, you were describing some of your understandings about what causes the erosion, and you referred to the

Page 56

high water level as part of the erosion, you mentioned the littoral flow from north to south, didn't know anything about the natural erosion. Is there any other causes, from your understanding, as to what might be causing the erosion to your property?
A. To my property?
Q. Yes, sir?
A. I have no idea.
Q. We took a break. During the course of that break, did you and Mr. Ehret have the opportunity to discuss the substantive nature of your testimony?
MR. EHRET: Objection.
BY MR. PETRIE:
Q. Can you answer the question?
MR. EHRET: You can answer.
BY THE WITNESS:
A. No.
MR. PETRIE: No other questions.
EXAMINATION
BY MR. EHRET:
Q. I have some documents here which -- this is John Ehret -- which are marked, and I