**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JOHN H. and MARY E. BANKS, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | ) | **No. 99-4451 L**<br>**Judge Emily C. Hewitt** |
| **STONE, ERROL L. & SUSAN H.,**<br>**In their own right and as Trustees of the Susan H. Stone Trust and the Errol L. Stone Trust,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | ) | **No. 04-277 L**<br>**Judge Emily C. Hewitt** |
| **EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and**<br><br>**DONNA P. FRETT,**<br><br>**Plaintiffs,**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | ) | **No. 05-1353L**<br>**Judge Emily C. Hewitt** |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF TWENTY-THREE OF PLAINTIFFS' FORTY-NINE WITNESSES**

TERRY M. PETRIE
Environment and Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294
Tele: 303-844-1369
Fax: 303-844-1350
Terry.Petrie@usdoj.gov

HEIDE L. HERRMANN
Environment and Natural Resources Division
Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
202-305-3315 (phone)
202-305-0274 (fax)
Heide.Herrmann@usdoj.gov

Dated: April 25, 2007

# TABLE OF CONTENTS


I. Introduction . . . . . . . . . . 1

II. Argument . . . . . . . . . . 3

A. The expected testimony of certain witnesses is irrelevant . . . . . . . . . . 3

1. Stephen P. Blumer . . . . . . . . . . 4

2. R.J. Burkholz . . . . . . . . . . 5

3. Bruce A. Ebersole . . . . . . . . . . 5

4. Larry LaValley . . . . . . . . . . 6

5. Gary R. Mannesto . . . . . . . . . . 6

6. Tom O'Bryan . . . . . . . . . . 7

7. Carl Platz . . . . . . . . . . 7

8. Wayne Schloop . . . . . . . . . . 8

9. David L. Schweiger . . . . . . . . . . 8

10. Gary W. Segrest . . . . . . . . . . 10

11. Congressman Fred S. Upton . . . . . . . . . . 11

12. Richard P. Wolf . . . . . . . . . . 12

B. The expected testimony of certain witnesses constitutes expert testimony . . . . . 12

1. Don Ames . . . . . . . . . . 13

2. Stephen E. Davis . . . . . . . . . . 13

3. David W. Folger . . . . . . . . . . 14

4. David S. Foster . . . . . . . . . . 15

5. James R. Houston . . . . . . . . . . 16

6. Martin R. Jannereth . . . . . . . . . . 16

7. Kevin A. Kasischke . . . . . . . . . . 16

8. Larry E. Parson . . . . . . . . . . 17

9. Randall Schaetzl . . . . . . . . . . 18

10. Charles W. Shabica, Ph.D. . . . . . . . . . . 18

11. Richard A. Voss . . . . . . . . . . 18

III. Conclusion . . . . . . . . . . 19

# TABLE OF AUTHORITIES

CASES


Boughton v. Cotter Corp., 65 F.3d 823 (10th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dunkin' Donuts. Inc. v. Mandorico. Inc., 181 F.R.D. 208 (D.P.R. 1998) . . . . . . . . . . . . . . . . . . 10

Jennings v. Family Mgmt., 201 F.R.D. 272 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

N.F.A. COT. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83 (M.D.N.C. 1987) . . . . . . . . . . 10

Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 125 F.R.D. 578 (N.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Pandrol USA, LP v. Airboss Ry. Products, Inc., 424 F.3d 1161 (Fed. Cir. 2005) . . . . . . . . . . . 13

Rainbow Investors Groun, Inc. v. Fuji Trucolor Mo., Inc., 168 F.R.D. 34 (W.D. La. 1996) . . . 11

Shelton v. American Motors Corp., 805 F.2d 1323 (8thCir. 1986) . . . . . . . . . . . . . . . . . . . . . . . 11

Theriot v. Parish of Jefferson, 185 F.3d 477 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301 (S.D. Fla. 1990) . . . . . . . . . 11


RULES


RCFC 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

RCFC 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Fed. R. Evid. 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5

Fed. R. Evid. 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

Fed. R. Evid. 602 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

# LIST OF EXHIBITS

| **Exhibit** | **Description** |
|---|---|
| 1 | Letter from Terry M. Petrie to John Ehret, et al. (Mar. 16, 2007) |
| 2 | Banks Plaintiffs' Preliminary Witness List (filed April 4, 2007) |
| 3 | Declaration of Gary Segrest (April 23, 2007) |
| 4 | Banks Plaintiffs' Exhibit List (filed April 4, 2007) |
| 5 | Letter from Terry M. Petrie to John Ehret, et al. (April 2, 2007) |
| 6 | Letter from John Ehret to Terry M. Petrie (July 22, 2006) |

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF TWENTY-THREE OF PLAINTIFFS' FORTY-NINE WITNESSES**

Pursuant to the Court's Order of January 19, 2007, Defendant hereby files this motion in limine to exclude the testimony at trial of twenty-three of the forty-nine witnesses identified by Plaintiffs in their Preliminary Witness List filed April 4, 2007.[1/] As explained in the memorandum that follows this motion, the testimony expected from these witnesses at the trial scheduled to begin on June 4, 2007, is either irrelevant to the issues to be addressed or will constitute expert testimony without the disclosures and reports required by RCFC 26(a)(2). Accordingly, Defendant respectfully moves this Court to exclude the testimony of these witnesses at trial or to limit such testimony to only such matters as are both relevant under Federal Rule of Evidence 401 and do not constitute expert testimony.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**

## I. Introduction

In compliance with the Court's Order of January 19, 2007, the parties met via teleconference on March 14, 2007, to satisfy the requirements of RCFC Appendix A ¶ 13, including the exchange of preliminary witness lists. In the witness list provided to Defendant, the Banks Plaintiffs listed forty-seven witnesses,[2/] twenty-four of whom had not been previously

---

[1/] This motion applies only to the following witnesses listed by Plaintiffs: Stephen P. Blumer, R. J. Burkholz, Bruce A. Ebersole, Larry LaValley, Gary R. Mannesto, Tom O'Bryan, Carl Platz, Wayne Schloop, David L. Schweiger, Gary W. Segrest, Congressman Fred S. Upton, Richard P. Wolf, Don Ames, Stephen E. Davis, Dr. David W. Folger, David S. Foster, James R. Houston, Martin R. Jannereth, Kevin A. Kasischke, Larry E. Parson, Randall Schaetzl, Dr. Charles W. Shabica, and Richard A. Voss.

[2/] The Stone Plaintiffs listed, in addition to the witnesses identified by the Banks Plaintiffs, one of Defendant's experts, Dr. Robert Nairn, and Plaintiff Errol Stone. See Stone Pls.' Mem. of Contentions of Fact and Law (April 4, 2007), Ex. A at 2. This brings the total number of

disclosed. See Letter from Terry M. Petrie to John Ehret, et al. (Mar. 16, 2007), attached hereto as Ex. 1.[3] Because Plaintiffs' notification of new witnesses is untimely (see RCFC 26(a)(1)(A), 26(e) and Order of March 17, 2006), Defendant seeks first to preclude irrelevant or improper testimony. Should the Court allow testimony by these witnesses, Defendant respectfully reserves the right to conduct discovery by deposing these witnesses and by other appropriate means. See RCFC App. A ¶ 13(b).

The witness list provided to Defendant on March 14, 2007, is identical to the one Plaintiffs later filed with the Court. See Banks Pls.' Preliminary Witness List attached hereto as Ex. 2. Although RCFC Appendix A ¶ 13(b) requires a party to "indicate the specific topics to be addressed in the expected testimony," Plaintiffs have provided only vague descriptions of each witness' anticipated testimony, often consisting of nothing more than references to Plaintiffs' trial exhibits. See, e.g., Ex. 2 at 1 (description of anticipated testimony for Stephen E. Davis: "EX 106, EX 129") and at 3 (no description of anticipated testimony for Lee Hendrix). Moreover, Plaintiffs do not specify whether each witness is expected to offer factual testimony or expert testimony on the topics identified.

---

witnesses identified by Plaintiffs to forty-nine.

[3] The twenty-four new witnesses are Stephen Blumer, R. J. Burkholz, Stephen Davis, Bruce Ebersole, Dr. David W. Folger, David Foster, Lee Hendrix, Kevin Kasischke, Dean King, Ross Kittleman, Larry LaValley, Gary Mannesto, Tom O'Bryan, Carl Platz, Phil Ross, Randall Schaetzl, Gary Segrest, Wayne Schloop, James Selegean, Scott Thieme, Congressman Fred S. Upton, Jay K. Wesley, Richard Wolf, and Doug Zande. See Ex. 1 at 2-3. As explained in Section II, Defendant's motion applies to fifteen of the new witnesses: Congressman Upton, Dr. Folger and Messrs. Blumer, Davis, Ebersole, Foster, Kasischke, LaValley, Mannesto, O'Bryan, Platz, Schaetzl, Schloop, Segrest, and Wolf. This motion also applies to ten of the previously disclosed witnesses: Don Ames, James Ellison, James Houston, Martin Jannereth, John Konik, Larry Parson, David Schweiger, Charles Shabica, Charles Thompson, and Richard Voss. See Sec. II.

During the meeting of counsel on March 14, 2007, counsel for the Banks Plaintiffs, John Ehret, stated that none of the twenty-four new witnesses will provide expert testimony and that he had not spoken with many of them. See Ex. 1 at 3. Mr. Ehret also stated that he had no objection to Defendant contacting them for additional information. See id. Accordingly, Defendant contacted by telephone as many of these new witnesses as possible to determine what, if any, relevant information they may have. See Decl. of Gary Segrest at ¶ 3, attached hereto as Ex. 3. As explained below, based on Defendant's interviews and the descriptions of expected testimony provided in Plaintiffs' Witness List, Defendant believes fifteen of the new witnesses, and eight of the previously identified witnesses, should be precluded from testifying at trial either because their expected testimony is irrelevant, and therefore inadmissible, or because it is likely to constitute expert testimony without the early disclosures and reports required by RCFC 26(a)(2).

## II. Argument

### A. The expected testimony of certain witnesses is irrelevant

Many of the witnesses identified by Plaintiffs and discussed below are expected to testify about matters that are not relevant to the issues to be tried–i.e., whether and to what extent the Corps' activities caused erosion of the shoreline and whether and to what extent the Corps' nourishment efforts have ameliorated any such erosion. Thus, their expected testimony would be inadmissible at trial. See Fed. R. Evid. 401, 402. To the extent these witnesses might have marginally relevant testimony to offer, the "probative value of such testimony is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See Fed. R. Evid. 403. Accordingly, these witnesses should be precluded

from testifying at trial or limited only to such testimony which is relevant and would not constitute expert testimony.

**1. Stephen P. Blumer**

Plaintiffs list Stephen P. Blumer, an employee of the United States Department of the Interior, United States Geological Survey, as a witness who will testify regarding “EX. 123-124,” “St. Joseph River Gauge 04101500 @ Niles, Michigan Readings - 1979 to 1995.” See Ex. 2 at 1. Plaintiffs’ Exhibit 123 is a 1991 study authored by Mr. Blumer entitled “St. Joseph River USGS Gage #04101500 - Sediment Transport modeling Study USACE Detroit District.” See Banks Pls.’ Ex. List (April 4, 2007) at 15, attached hereto as Ex. 4. Plaintiffs’ Exhibit 124 consists of Gage #04101500 readings and sediment discharge measurements taken by Mr. Blumer between 1979 and 1995. See id. Standing alone, these descriptions indicate that Blumer’s expected testimony will not be relevant to the issues to be tried.

Since Mr. Blumer was newly identified by Plaintiffs as a trial witness on March 14, 2007, see Ex. 1 at 2, Defendant spoke with Mr. Blumer by telephone on March 26, 2007. See Ex. 3 at ¶ 4.a. Mr. Blumer stated that he had not been contacted by nor heard of Mr. Ehret. Id. He also explained that he is not familiar with the Lake Michigan shoreline and was not aware of Plaintiffs’ lawsuit. Id. Dr. Rober B. Nairn, Defendant’s coastal engineering expert, did use data taken from the St. Joseph River gage (#04101500) at Niles, Michigan, in the course of reaching his expert opinions. Because Mr. Blumer does appear to be knowledgeable about the St. Joseph River and gage readings thereon, see id., he might possibly have some relevant testimony though it is not clear in what respect from Plaintiffs’ limited description of his expected testimony. To the extent, however, Plaintiffs wish Mr. Blumer to express opinions regarding his sediment

transport modeling study (Plaintiffs' Exhibit 123), his testimony will constitute expert testimony. Accordingly, Plaintiffs should not be allowed to have Mr. Blumer testify at trial regarding his modeling study.

**2. R. J. Burkholz**

Plaintiffs expect Mr. Burkholz, an employee of the St. Joseph Harbor Authority, to testify regarding "Federal Harbor Tonnage Requirement," "Harbor Dredging," "Harbor Smoaling,"[4] and "Economics." See Ex. 2 at 1. Plaintiffs first identified Mr. Burkholz as a witness at the March 14, 2007, meeting of counsel, so Defendant has not had an opportunity to depose him. See Ex. 1 at 2. Defendant attempted to reach Mr. Burkholz at the telephone number provided by Plaintiffs, but that number has been disconnected. See Ex. 3 at ¶ 4.b. We asked Plaintiffs' assistance to identify a better number to contact Mr. Burkholz. See Letter from Terry M. Petrie to John Ehret, et al. (April 2, 2007) at 1-2, attached hereto as Ex. 5. Plaintiffs never responded. On the face of it, Mr. Burkholz's proposed testimony on the topics of "Federal Harbor Tonnage Requirement" and "Economics" appear irrelevant under Federal Rule Evidence 401 and he should not be allowed to testify on those matters.

**3. Bruce A. Ebersole**

Plaintiffs list Bruce A. Ebersole, a Corps employee based in Vicksburg, Mississippi, as a witness expected to testify regarding Plaintiffs' Exhibit 11("Barbara G. Troost Summary, Maud Palenske Library") and "LSTF Physical Model." See Ex. 2 at 2; Ex. 4 at 1. When contacted by Defendant, Mr. Ebersole indicated that he had not been contacted by Plaintiffs, has no familiarity

---

[4] We assume "harbor smoaling" is a typographical error and that plaintiffs meant "harbor shoaling."

with the Lake Michigan shoreline, and is not familiar with Plaintiffs' Exhibit 11. See Ex. 3 at ¶ 4.c. Mr. Ebersole is knowledgeable about the large scale physical beach model referenced by Plaintiffs, see id., but it is not apparent how testimony on that subject would be relevant at trial or not constitute expert testimony under Federal Rule of Evidence 702.

**4. Larry LaValley**

Plaintiffs expect Mr. LaValley to testify regarding "Shipping Tonnage," "Federal Harbor," "Qualified," "Dredging." See Ex. 2 at 4. He was first identified as a witness by Plaintiffs on March 14, 2007, see Ex. 1 at 2, so Defendant contacted him. See Ex. 3 at ¶ 4.d. Mr. LaValley informed Defendant that he was not aware he had been designated as a witness by Plaintiffs. See id. Mr. LaValley told Defendant that he is a retired dock worker and had worked in the past for the St. Joseph Harbor authority by obtaining harbor information. See id. Specifically, he would compile information about the tonnage local dock companies were shipping and receiving each year. See id. He does not know what Plaintiffs expect him to testify about regarding "Qualified" and harbor dredging. See id.

"Shipping Tonnage" and "Federal Harbor" status are not relevant to the liability issues to be addressed at trial. Furthermore, Mr. LaValley does not appear competent under Federal Rule of Evidence 602 to testify regarding harbor dredging given his lack of knowledge on these subjects. For these reasons, his testimony should be excluded from trial.

**5. Gary R. Mannesto**

Plaintiffs expect Gary R. Mannesto, a former Corps employee, to testify regarding "Fixed OHWM" and "Taxing Seawalls." See Ex. 2 at 4. Since he was not identified as a witness until March 14, 2007, see Ex. 1 at 2, Defendant contacted Mr. Mannesto and learned that he has had

no contact with Plaintiffs and will be out of town during the scheduled trial. See Ex. 3 at ¶ 4.e. Mr. Mannesto told Defendant that he is "generally aware" of the issues related to shoreline erosion, he has no specific familiarity with the area south of St. Joseph. See id. Regarding "Fixed OHWM," Mr. Mannesto speculated that this may relate to the Corps' administratively set OHWM for each of the Great Lakes. See id. He stated that all he knows of the subject is that the OHWM had been administratively set before his arrival at the Corps and remained unchanged during his tenure. See id. With respect to "Taxing Seawalls," he speculated that this refers to a proposed draft mitigation policy for private shore protection structures that never moved beyond the planning stages. See id. Neither of these subject areas appears relevant to the issues to be addressed at trial.

**6. Tom O'Bryan**

Tom O'Bryan is Chief of Construction for the Corps and was first identified by Plaintiffs as a trial witness on March 14, 2007. See Ex. 1 at 2. Plaintiffs expect him to testify regarding "Dredging," "Contracting," "Southwest Regional Airport - FSL," and "Use of Dredged Material." See Ex. 2 at 5. Mr. O'Bryan may testify for Defendant regarding dredging, so Defendant does not object to the relevancy of that subject. However, with respect to the last three topics identified by Plaintiffs, it is not clear how Mr. O'Bryan's testimony will be relevant. In addition, as explained below in the discussion relating to Carl Platz, Defendant does not dispute that material has been dredged from the inner harbor of St. Joseph and deposited at the local airport.

**7. Carl Platz**

Plaintiffs expect Carl Platz to testify regarding "Plan to take river sand for Inland

Airport." See Ex. 2 at 5. Since he was not identified prior to March 14, 2007, see Ex. 1 at 2, Defendant contacted Mr. Platz and learned that he has never been contacted by Plaintiffs. See Ex. 3 at ¶ 4.f. Mr. Platz is familiar with the disposal of St. Joseph inner harbor dredge material at a local airport. See id. He stated that the sediment in the inner harbor has been designated by the State of Michigan as unsuitable for open water disposal and therefore cannot be used for beach nourishment. See id. Since this information is irrelevant to the liability issues to be addressed at trial, any testimony regarding his knowledge of a plan "to take river sand for Inland Airport" should be excluded.

**8. Wayne Schloop**

Wayne Schloop is the Chief of Operations at the Detroit District Office of the Corps ("DDC") and Plaintiffs expect him to testify regarding "Taking River Sand (inner harbor)." See Ex. 2 at 6. He was first identified as a witness by Plaintiffs on March 14, 2007. See Ex. 1 at 2. He told Defendant he has never been contacted by Plaintiffs and was unaware he might be called as a witness. See Ex. 3 at ¶ 4.g. As with Mr. Platz, discussed above, Mr. Schloop's knowledge related to the Corps' dredging of contaminated material from the inner harbor and subsequent deposition at a local airport is irrelevant to the issues to be addressed at trial.

**9. David L. Schweiger**

Mr. Schweiger is the former Chief of Great Lakes Hydraulics and Hydrology, Detroit District, Corps of Engineers. See Ex. 3 at ¶ 4.n. Plaintiffs expect him to testify regarding "Monitoring Program," Plaintiffs' Exhibit 31 (Section 111 Monitoring Report authored by Mr. Schweiger in 1998), Exhibit 41 ("January 2000 Annual Report of the Section 111 Beach Nourishing Monitoring Program"), Exhibit 60 ("Memorandum for the record, RE: June 8, 1994

Meeting at Shoreham Village Hall"), Exhibit 61,[5] "6-8-94 Shoreham Village Council Meeting," Exhibit 23 (a 1996 technical report regarding beach fill and shoreline stability that was co-authored by Defendant's expert, Dr. Nairn), and Exhibit 24 (a 1997 technical report regarding the effectiveness of beach nourishment on cohesive shores, also co-authored by Dr. Nairn). See Ex. 2 at 6.

Defendant contacted Mr. Schweiger on April 19, 2007, to discuss his knowledge of the matters about which Plaintiffs expect him to testify at trial. See Ex. 3 at ¶ 4.n. With respect to "Monitoring Program," Exhibit 31 (1997 monitoring report), and Exhibit 41 (1999 monitoring report), Mr. Schweiger stated that he supervised Charles S. Thompson, another witness identified by both Plaintiffs and Defendant. Mr. Thompson was in charge of the Section 111 Monitoring Program and would have written the 1997 and 1999 reports. See id. Mr. Schweiger would have merely reviewed and approved these reports. See id. With respect to Exhibit 60 (memorandum of meeting on June 8, 1994), Mr. Schweiger stated that he attended the meeting of the Shoreham Village Council on June 8, 1994, but did not actively participate. See id. Mr. Thompson made a presentation at the meeting regarding shoreline conditions at the time and the placement of stone off of Shoreham Village. See id. With regard to Exhibits 23 and 24 (CERC technical reports), Mr. Schweiger stated that while it is likely he read them at one point, he cannot recall any details. See id. In sum, it does not appear that Mr. Schweiger could testify to any matters not

---

[5] There is no Exhibit 61, per se, listed by Plaintiffs in their exhibit list; they list 61A ("Defendant's Response to Plaintiffs [sic] First Request to Admit. Note 3"), 61B ("Memo from U.S. DOJ Brenner Declarations from Zande, Segrest, Thompson, Selegean, and Thieme" dated October 16, 2000), 61C ("Plaintiffs' Amended Interrogatories" dated September 5, 2000), and 61D ("Defendant USA's Answers to Plaintiffs' Amended Interrogatories" dated October 12, 2000). See Ex. 4 at 6.

better addressed by Mr. Thompson.

**10. Gary W. Segrest**

Plaintiffs identified Mr. Segrest as a witness for the first time on March 14, 2007. See Ex. 1 at 2. As Plaintiffs indicate on their witness list, he is Assistant District Counsel for the Corps' district office in Detroit. See Ex. 2 at 6. He has worked closely with counsel for Defendant in this litigation for several years in gathering relevant information, contacting witnesses, responding to discovery requests, and preparing for trial. See Ex. 3 at ¶¶ 1-3. Among the items Plaintiffs list for his expected testimony is "DDC Training re: 5th Amendment" and Plaintiffs' Exhibit 128 ("Petition for Writ of Certiorari in U.S. Supreme Court - Sec. 111-14 of 83 Projects Funded"). See Ex. 2 at 6; Ex. 4 at 16. There are no relevant facts that must be obtained from Mr. Segrest relevant to this matter.

An additional reason to preclude Mr. Segrest's testimony is that he is a government attorney and attorney testimony is highly disfavored. Indeed, "the mere request to depose a party's attorney constitutes good cause for obtaining a Rule 26(c) . . . protective order unless the party seeking the deposition can show both the propriety and need for the deposition." N.F.A. COT. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83, 85 (M.D.N.C. 1987) (citations omitted); see also Dunkin' Donuts. Inc. v. Mandorico. Inc., 181 F.R.D. 208,210 (D.P.R. 1998) (citations omitted); Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 125 F.R.D. 578, 594 (N.D.N.Y. 1989) (citations omitted).

As the Eighth Circuit has explained, "the increasing practice of taking opposing counsel's deposition [is] a negative development in the area of litigation, and one that should be employed only in limited circumstances." Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th

Cir. 1986); see also Theriot v. Parish of Jefferson, 185 F.3d 477, 491 (5th Cir. 1999) (citation omitted) ("Generally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances."); Rainbow Investors Groun, Inc. **v.** Fuji Trucolor Mo., Inc., 168 F.R.D. 34, 36 (W.D. La. 1996) (citations omitted) ("deposition of opposing counsel is a practice that has long been discouraged as disruptive of the adversarial system"). Accordingly, the party seeking to depose another party's attorney has the burden of establishing that: "(1) no other means exist to obtain the information than to depose opposing counsel . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Shelton, 805 F.2d at 1327 (citation omitted); see also Boughton v. Cotter Corp., 65 F.3d 823, 829 (10th Cir. 1995); Jennings v. Family Mgmt., 201 F.R.D. 272,277 (D.D.C. 2001); West Peninsular Title Co. v. Palm Beach Countv, 132 F.R.D. 301,302-303 (S.D. Fla. 1990) (citations omitted). These principles apply with equal force to trial testimony. Plaintiffs have failed to satisfy any of those three elements with respect to Mr. Segrest.

**11. Congressman Fred S. Upton**

Congressman Fred S. Upton is listed by Plaintiffs as having knowledge of "Sec. 111, Harbor Dredging" and "5th Amendment takings and just compensation" and Plaintiffs state that he is an area resident. See Pls.' Witness List at 7. He was first identified as a witness by Plaintiffs on March 14, 2007. See Ex. 1 at 2. Although Defendant has made contact with the Congressman's office, it is unaware of the extent of his knowledge and whether he resides or has resided near the subject area. In any case, it does not appear that his expected testimony would be relevant with respect to "5th Amendment takings and just compensation." Similarly, without

further elaboration, the topic of "Sec. 111, Harbor Dredging" (unlike other references Plaintiffs have made to witnesses testifying about "dredging") suggests the possibility that the Congressman would testify in some respect to his official legislative duties. If so, we do not see the relevance to the matters before the Court. Defendant does not object to any relevant testimony by the Congressman stemming from his time as a local resident assuming Plaintiffs establish competency under Federal Rule of Evidence 602 and the testimony is not otherwise cumulative. See Fed. R. Evid. 403. However, it should be noted that Defendant does not represent Congressman Upton. In the event he is subpoenaed, his own counsel will respond as appropriate.

**12. Richard P. Wolf**

Plaintiffs expect Richard P. Wolf, an engineer employed by Oselka Construction, to testify regarding "Shoreline protection, Boulders" and "Maintenance, Permanency." See Ex. 2 at 8. Since Plaintiffs did not identify him as a witness until March 14, 2007, see Ex. 1 at 3, Defendant contacted Mr. Wolf, who stated that he was unaware he had been listed as a witness by Plaintiffs. See Ex. 3 at ¶ 4.h. Mr. Wolf's knowledge does not appear to be relevant to the issues to be addressed at trial and his testimony should therefore be precluded. Additionally, the topics listed by Plaintiffs suggest that they may improperly seek to elicit expert testimony from Mr. Wolf.

**B. The expected testimony of certain witnesses constitutes expert testimony**

Some of the witnesses listed by Plaintiffs are expected to testify about what appear to be scientific, technical, or other specialized knowledge. Plaintiffs' presentation of this testimony would first require that these witnesses be qualified as experts. See Fed. R. Evid. 702.

However, Plaintiffs have not identified any of these witnesses as experts nor provided Defendant with written reports as required by RCFC 26(a)(2). A party who fails to disclose information required by RCFC 26(a) without substantial justification is not, unless such failure is harmless, permitted to use at trial any witness or information not so disclosed. See RCFC 37(c)(1); see also Pandrol USA, LP v. Airboss Ry. Products, Inc., 424 F.3d 1161, 1167 (Fed. Cir. 2005) (the testimony of an expert was properly excluded where is report had not been produced prior to trial). In the instant matter, Plaintiffs have not presented Defendant with any "substantial justification" for their failure to disclose these witnesses as experts, nor is this failure harmless. Accordingly, the following witnesses should be precluded from providing expert testimony at trial.

**1. Don Ames**

Plaintiffs indicate that Mr. Ames will testify regarding "AERIAL PHOTOS" by authenticating them and by providing "interpretation" and information regarding "shoaling." See Ex. __ at 1. Defendant is not entirely certain all of which aerial photographs Plaintiffs are referring to, but might be willing to stipulate to their authenticity prior to the beginning of trial. Any testimony by Mr. Ames in which he interprets the photographs or identifies instances of shoaling would constitute expert testimony that should be excluded at trial.

**2. Stephen E. Davis**

Stephen E. Davis works for the Indiana Department of Natural Resources and is identified by Plaintiffs as a "Lake Michigan Specialist." See Ex. 2 at 1. Plaintiffs expect Mr. Davis to testify regarding Plaintiffs' Exhibits 106 (study of the Indiana shoreline) and 129 (a Final Environmental Impact Statement relating to the Indiana shoreline). See Ex. 2 at 1; Ex. 4 at

14, 16. Since Mr. Davis was not identified by Plaintiffs as a witness until March 14, 2007, see Ex. 1 at 2, Defendant contacted Mr. Davis by telephone and learned that he was contacted by Mr. Ehret in 2004 and in early 2007. See Ex. 3 at ¶ 4.i. Mr. Davis explained to Mr. Ehret basic coastal processes such as waves, wind, and sand in Indiana. Id. He also told Defendant that he is not familiar with Plaintiffs' Exhibit 106 (March 1975, Indiana Shoreline study) and that while he is familiar with Exhibit 129 (Final EIS for the Indiana Lake Michigan Coastal Program), that document applies only to conditions in Indiana, not Michigan. See id. Thus, Mr. Davis' knowledge is irrelevant and, to the extent Plaintiffs will ask him to express opinions based upon his knowledge of basic coastal science, his testimony would constitute expert testimony.

**3. David W. Folger**

Plaintiffs first identified Dr. David W. Folger as a witness on March 14, 2007. See Ex. 1 at 2. Plaintiffs expect Dr. Folger, a former employee of the United States Geological Survey, to testify regarding their Exhibit 33 (a 1992 mapping study of Lake Michigan shoreline Dr. Folger co-authored with David S. Foster, discussed below), Exhibit 100 (excerpts of Plaintiffs' Exhibit 33), Exhibit 23 (a 1996 technical report regarding beach fill and shoreline stability that was co-authored by Defendant's expert, Dr. Nairn), and Exhibit 24 (a 1997 technical report regarding the effectiveness of beach nourishment on cohesive shores, also co-authored by Dr. Nairn). See Ex. 2 at 2; Ex. 4 at 3-4, 14. Plaintiffs also expect Dr. Folger to testify regarding "Rate of Downcutting," "GENER substrata," and "(Clay?) Wadsworth." See Ex. 2 at 2.

When contacted by Defendant, Dr. Folger stated that he has never been contacted by Plaintiffs and was not aware he had been listed as a witness. See Ex. 3 at 4.j. In fact, he only learned of this litigation shortly before he was contacted by Defendant. See id. Dr. Folger told

Defendant that he is generally familiar with the St. Joseph shoreline from survey work completed in the early 1990's as part of a study he directed. See id. He stated that since he had not personally conducted the survey work, he could not recall very many details of the St. Joseph shoreline. See id. Regarding the "Rate of Downcutting" described by Plaintiffs, he guessed that this refers to work conducted for his study by the National Oceanic and Atmospheric Administration ("NOAA") rather than by his team. See id. He added that NOAA did a seismic survey rather than depth comparisons as part of the study. See id. Dr. Folger stated that he does not know what Plaintiffs are referring to where they list "GENER substrata" as part of his expected testimony. See id. He also is not sure what "(Clay?) Wadsworth" is meant to refer to. See id. In any event, based on the expected testimony described by Plaintiffs, Dr. Folger appears to be an expert witness rather than a fact witness.

**4. David S. Foster**

David S. Foster works for the United States Geological Survey and is based in Woods Hole, Massachusetts. See Ex. 2 at 2. Plaintiffs expect him to testify regarding their Exhibit 33 (a 1992 mapping study of Lake Michigan shoreline Mr. Foster co-authored), Exhibit 100 (excerpts of Plaintiffs' Exhibit 33), Exhibit 23 (a 1996 technical report regarding beach fill and shoreline stability that was co-authored by Defendant's expert, Dr. Nairn), and Exhibit 24 (a 1997 technical report regarding the effectiveness of beach nourishment on cohesive shores, also co-authored by Dr. Nairn). See Ex. 2 at 2; Ex. 4 at 3-4, 14. Plaintiffs also expect him to testify regarding "Downcutting Glacial Till, Rate of same." See Ex. 2 at 2.

Since Plaintiffs did not identify him as a witness until March 14, 2007, see Ex. 1 at 2, Defendant contacted Mr. Foster by telephone. See Ex. 3 at ¶ 4.k. Mr. Foster stated that he was

unsure whether he had been contacted by Plaintiffs. See id. Based on the expected testimony described by Plaintiffs, Mr. Foster appears to be an expert witness rather than a fact witness.

**5. James R. Houston**

Plaintiffs expect Dr. James R. Houston, Director of the Corps' Coastal Engineering Research Center Waterways Experiment Station ("CERC-WES"), to testify regarding their Exhibit 28 (a coastal engineering technical report regarding "Equilibrium Beach, Sediment Fall Velocity, Depth of Closure"), "EHL Set Back," and "Erosion Hazard Line." See Ex. 2 at 3. Given the topics identified by Plaintiffs, it appears any testimony by Dr. Houston will be expert testimony.

**6. Martin R. Jannereth**

Mr. Jannereth is an employee of the Michigan Department of Environmental Quality that Plaintiffs expect to testify regarding "Ehret Letter 3-6-07 to Jannereth re: Erosion Hazard Line Set Backs, Berrien County, Michigan; Martin R. Jannereth Letter 10-7-05 re: Occasional Papers on Geology of Michigan for 1946." See Ex. 2 at 3. At this time, neither Mr. Jannereth nor Mr. Ehret have provided us the materials Mr. Ehret mentions in his letter to Mr. Jannereth upon which Plaintiffs apparently plan for him to testify about. To the extent these subject areas are relevant, the testimony Plaintiffs seek to elicit from Mr. Jannereth appears to constitute expert testimony.

**7. Kevin A. Kasischke**

Kevin A. Kasischke is an employee of the Berrien County Health Department and is expected to testify regarding "Well Digger Logs, Unified Soils Classification System, Drive Sample Blows, Location of Borings." See Ex. 2 at 3. Since Plaintiffs did not identify him as a

witness until March 14, 2007, Defendant contacted Mr. Kasischke by telephone and learned that he was unsure whether he had been contacted by Plaintiffs. See Ex. 3 at ¶ 4.l. He was born and raised and now lives in St. Joseph and seen erosion first hand that he believes was obviously related to "high water." Id. Mr. Kasischke informed Defendant that he does not know what "drive sample blows" means and that "location of borings" relates to septic fields rather than well logs so he is not sure what significance that information would or would not have in this litigation. Id. To the extent Mr. Kasischke's knowledge is relevant, which Defendant cannot concede without Plaintiffs further elaborating, his expected testimony would appear to constitute expert testimony.

**8. Larry E. Parson**

Plaintiffs expect Larry E. Parson, an employee of the Coastal Hydraulics Laboratory, to testify regarding Plaintiffs' Exhibit 23 (a 1996 technical report regarding beach fill and shoreline stability that was co-authored by one of Defendant's expert, Dr. Nairn), and Exhibit 24 (a 1997 technical report regarding the effectiveness of beach nourishment on cohesive shores, also co-authored by Dr. Nairn), Exhibit 106 ("Indiana Shoreline" from 1975), Exhibit 130 ("St. Clair River Erosion - Decline in Average Lake Level of MH of 2.6'"), Exhibit 110 ("USGS-NOAA Sidescan sonar mosaic showing glacial till exposed at Grand Mere, Michigan" dated May 1992), "Monitoring Completed (3-12-91)," "Coastal Projects - St. Joseph, MI," "Down Drift Benefits - Effect of Coarse Material - Sediment Transfer." See Ex. 2 at 5; Ex. 4 at 3, 14, and 16. Defendants object to Mr. Parson's testimony on the grounds that it will constitute expert testimony.

**9. Randall Schaetzl**

Randall Schaetzl is a professor of geology at Michigan State University and was first identified by Plaintiffs as a witness at the parties' early meeting of counsel on March 14, 2007. See Ex. 2 at 6; Ex 1 at 2. Plaintiffs expect Dr. Schaetzl to testify about an article he co-authored with one of Defendant's experts, Dr. Larson, entitled "Origin/Evolution of the Great Lakes." See Ex. 2 at 6. According to Dr. Schaetzl, the article is a review of the geologic history of the Great Lakes over the last 16,000 years and does not address modern processes or time frames. See Ex. 3 at ¶ 4.m. Dr. Schaetzl has not heard of nor been contacted by Mr. Ehret. Id. Given the topic on which Plaintiffs expect Dr. Schaetzl to testify, his testimony will constitute expert testimony.

**10. Charles W. Shabica, Ph.D.**

Plaintiffs expect Dr. Shabica to testify regarding "Shoreline Walk," "Glacial Till," "Carole Wood," "Headlands - Bay Beach," and "Shore Line [sic] Protection." See Ex. 2 at 7. Dr. Shabica was previously identified as an expert witness by Plaintiffs. Before Defendant finished deposing Dr. Shabica, plaintiffs informed us that he would no longer be offered as an expert. See Letter from John Ehret to Terry M. Petrie (July 22, 2006), attached hereto as Ex. 6. Although Defendant will not oppose lay testimony presented by Dr. Shabica based upon personal knowledge that is otherwise relevant and not cumulative, any expert testimony should be precluded.

**11. Richard A. Voss**

Mr. Voss is a retired real estate appraiser whom Plaintiffs expect to testify regarding "General Effect of, No beach, Rocky Beach, Boulder Revetment, Lake Access, etc. on value %

not $." See Ex. 2 at 7. This description by Plaintiffs of Mr. Voss' expected testimony clearly reveals that they seek his expert opinion on the impact erosion has had on the economic value of Plaintiffs' properties. Further, such testimony appears to relate to damages while the trial is addressing liability only and, thus, is not relevant.

## III. Conclusion

For the reasons given above, Defendant respectfully requests that the Court grant this motion and exclude the testimony of Plaintiffs' witnesses at trial.

Dated: April 25, 2007

Respectfully submitted,

s/ Terry M. Petrie
TERRY M. PETRIE
Environment and Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294
Tele: 303-844-1369
Fax: 303-844-1350
Terry.Petrie@usdoj.gov

HEIDE L. HERRMANN
Environment and Natural Resources Division
Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
202-305-3315 (phone)
202-305-0274 (fax)
Heide.Herrmann@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that I have served a copy of the "**Defendant's Motion in Limine to Exclude the Testimony of Twenty-three of Plaintiffs' Forty-nine Witnesses**" by electronic filing with the Unites States Court of Federal Claims on the 25th day of April, 2007 on:

John Ehret, Esq.
20860 Greenwood Drive
Olympia Fields, IL 60461
Counsel for *Banks* Plaintiffs

****************
Drew Marrocco, Esq.
Sonnenschein Nath & Rosenthal LLP
1301 K Street, NW
Suite 600, East Tower
Washington, DC 20005
Counsel for *Stone* Plaintiffs

****************
Eugene J. Frett, Esq.
Sperling & Slater, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603
Counsel for *Frett* Plaintiffs

****************

*s/Terry M. Petrie*
TERRY M. PETRIE