**U.S. Department of Justice**

Environment and Natural Resources Division

*Terry M. Petrie, Attorney*
*Denver Field Office*
*1961 Stout Street, 8th Floor*
*Denver, CO 80294*

*Telephone (303) 844-1369*
*Facsimile (303) 844-1350*

March 16, 2007

**BY FACSIMILE AND E-MAIL**

John Ehret, Esq.
20860 Greenwood Drive
Olympia Fields, IL 60461

Drew W. Marrocco
Sonnenschein Nath & Rosenthal LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005

Eugene J. Frett, Esq.
Sperling & Slater, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603

RE: Banks, et al. v. United States, No. 99-4451 L; Stone, et al. v. United States, No. 04-277 L; Frett, et al. v. United States, No. 05-1351 L (Appendix A, Paragraph 13 – Meeting of Counsel)

Gentlemen:

Two days ago on March 14 we conducted the Meeting of Counsel pursuant to the Court's Order filed January 19, 2007, and paragraph 13 of Appendix A of the Court's Rules. I write to confirm some of the matters addressed.

1. Witnesses:

A. Not counting individual plaintiffs – of which 7 are listed – Mr. Ehret has listed 40 other witnesses. Of those 40, it appears that approximately 24 of the 40 have not been disclosed before. See Rules 26 (a)(1)(A) and 26(e). That figure does not even include Mr. Jannereth who was disclosed approximately a week before our Meeting of Counsel. Those individuals believed not to have been disclosed before are listed below. If you believe any were previously disclosed, please advise with a reference to the specific communication in which such disclosure

**Exhibit 4**

was made.

(1) Blumer, Stephen

(2) Burkholz, R. J.

(3) Davis, Stephen

(4) Ebersole, Bruce

(5) Folger, Dr. David W.

(6) Foster, David

(7) Hendrix, Lee

(8) Kasischke, Kevin

(9) King, Dean

(10) Kittleman, R.

(11) LaValley, Larry

(12) Mannesto, Gary

(13) O'Bryan, Tom

(14) Platz, Carl

(15) Ross, Phil

(16) Schaetzl, Randall

(17) Segrest, Gary

(18) Schlopp [sic], Wayne

(19) Selegean, James

(20) Thieme, Scott

(21) Upton, Congressman Fred S.

(22) Wesley, Jay K.

(23) Wolf, Richard

(24) Zande, Doug

B. In response to my question, Mr. Ehret stated none of these new witnesses will provide expert testimony.

C. Mr. Ehret stated that he had not spoken with many of these new witnesses and that I was free to speak with any of them.

D. Of these 24 new witnesses, approximately 14 appear to be current or former Government employees. In addition to whatever other requirements that may apply, I advised that plaintiffs would have to comply with the Touhy regulations promulgated by the witness' agency in order to obtain the testimony of the witness.

E. Plaintiffs failed to include a written description of the topics that Mr. Lee Hendrix would address in his expected testimony. See Appendix A, paragraph 13(b). Mr. Ehret advised that Mr. Hendrix's testimony would relate to his experiences with the Glen Lord beach.

2. Exhibits:

A. Both parties expressed the willingness to provide a copy of those exhibits, if any, that the other could not locate.

B. Summary Exhibits

(1) Approximately 80 minutes before our conference call began, Mr. Ehret sent by facsimile a one-page document titled "Appendix A Paragraph 13(a) Summaries per Fed. Rule Evid. 1006." See Attachment. Our conversation at the conference disclosed that no actual "summary exhibit," i.e., "chart, summary, or calculation" (see Fed. R. Evid. 1006) had been prepared.

(A) Instead, Mr. Ehret's view of what would constitutes a "summary" appears to have been the notion of using any or perhaps all of the source documents for the proposed exhibit. And, in some instances – such as the "hundreds" of photos to be presented by Carole E. Ehret (see item number 1 on the attachment) – Mr. Ehret described how he would like to be able to pick and choose at the time of trial which photos he would like to use based on trial

developments.

(B) Another example of Mr. Ehret's view of what constitutes a "summary" related to the seventh item on the attachment, "Group os [sic] NET LITTORAL DRIFT ARROW MAPS BASED on Geomorphics." During our conference call, Mr. Ehret described how there are four of these maps. I received yesterday a facsimile from Mr. Ehret that appears to have been sent sometime the evening before. Consisting of five pages, the facsimile provides five maps for which Mr. Ehret has affixed an exhibit label that states "Exhibit Summaries 7. 3-14-07".

(C) Another proposed summary exhibit is listed simply as "News Articles." Mr. Ehret stated that this "summary" exhibit could include all news articles identified so far in the litigation.

(2) For the purpose of registering our disagreement on this point, I note:

(A) Paragraph 13(a) to Appendix A contemplates that exhibits, including summary exhibits, already exist at the time of the Meeting of Counsel and that a copy be provided if not already exchanged. As Mr. Ehret acknowledged at the time of our conference call, none of his proposed summary exhibits had actually been prepared.

(B) With the exception of possibly item 5 which describes various tables and a "summary of sand loss," Mr. Ehret has instead described groups of documents and photos from which he apparently wants to reserve to himself the discretion to use portions of, and maybe all, as an exhibit at the time of trial itself. We respectfully assert – and we understand that Mr. Ehret disagrees – that this approach does not constitute a description of a proper summary exhibit under Appendix A, paragraph 13. We would have had no issue here if these various documents and photos had been listed as individual exhibits with the required information to identify them adequately that Mr. Ehret proposes to introduce at trial. As it now stands, in the manner described by Mr. Ehret, we would be forced to wait literally until he presented one of these documents or photos in court to see what the exhibit would actually be. We believe – again, respectfully, because Mr. Ehret apparently disagrees – that we are entitled to know exactly what the evidence (other than impeachment) will be offered by plaintiffs <u>before</u> trial, not at the trial itself. The fact that the source documents, in some instances which could include any of

"hundreds," are ones which defendant has seen at some point in time, does not change our entitlement. This past Wednesday's Meeting of Counsel was to accomplish precisely that purpose.

(C) We note that item 5, even if it is legitimately a summary exhibit, has not been provided to defendants.

(D) Plaintiffs have also failed to specify a "time when the source(s) may be examined or audited by the opposing party," or "who prepared each summary." Appendix A, paragraph 13(a).

Sincerely,

Terry M. Petrie

Terry M. Petrie
Trial Attorney

Atch – As Stated

APPENDIX A Paragraph 13(a) Summaries per Fed. Rule Evid. 1006

1. 1928 to present photos by Carole L. Ehret - hundreds (also others by plaintiffs Melcher & Wineberg)

2. Litigation photos by James P. Selegean, Ph.D. of individual properties.

3. September 5, 2005* Ames Aerials - complete flyover from north (Rocky Gap Park) to south (Grand MereNational Natural Landmark State Park). Oblique. Plaintiffs properties identified. Other Ames shoaling at harbor jetties w Corps'. Various other aerials (oblique) and plan view by Clete Brummel, Hahm and Herald-Palladium of St. Joseph, MI.
   * Ames flyover - 4/23/03

4. News Articles.

5. Plaintiffs' Properties
   a. Table of lot depths Arranged North to South
   b. Table of front feet and years owned (later corrected after depositions) arranged north to south
   c. Table of front feet x years owned x 4cy/ft as shoreline protection not property per 1958 Corps Erosion Control Study (Trial Exhibit 132 here)
   d. 2-18-2004 Summary of Sand Loss Claimed provided by Ehret as Answers to Defendant's 2nd Set of Interrogatories & Request for Production with Expanded Answers & Document Appendix. (Please note that monetary sand losses were provided as early as Ehret's letter to Attorney Brenner on March 10, 2000 related to NOTICE OF ADDITIONAL PLAINTIFFS.)

6. Group of Geological Surficial Maps

7. Group os NET LITTORAL DRIFT ARROW MAPS BASED on Geomorphics.

8. Currently (3-14-07) the MDEQ is preparing a summary of about 800 Set Backs determined by aerial photo Erosion Hazard Lines (EHL) for the enyire length of Berrien County which are expected to be available.

3-14-07
TO: T M PETRIE
1 PAGE