# In the United States Court of Federal Claims

No. 99-4451 L
c/w 99-4453L, 99-4454L, 99-4455L, 99-4456L, 99-4457L, 99-4458L, 99-4459L, 99-44510L, 99-44511L, 99-44512L, 00-365L, 00-379L, 00-380L, 00-381L, 00-382L, 00-383L, 00-384L, 00-385L, 00-386L, 00-387L, 00-388L, 00-389L, 00-390L, 00-391L, 00-392L, 00-393L, 00-394L, 00-395L, 00-396L, 00-398L, 00-399L, 00-400L, 00-401L, 04-277L, 05-1353L, 05-1381L, 06-72L

(E-Filed: May 15, 2007)

| | | |
|---|---|---|
| JOHN H. BANKS, ET AL., Plaintiffs, v. THE UNITED STATES, Defendant. | 99-4451 L | Takings; Motion for Partial Dismissal; Statute of Limitations; Whether Action Can Accrue Prior to Issuance of Government Report |
| STONE, ERROL L. and SUSAN H. As Trustees of the Susan H. Stone Trust, Plaintiffs, v. THE UNITED STATES, Defendant. | 04-277 L | |
| EUGENE J. FRETT, Individually and as Trustee of the Victor J. Horvath and Frances B. Horvath Trust, | | |

| | | |
|---|---|---|
| Plaintiff, | ) | 05-1353 L |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _________________________________ | ) | |

John B. Ehret, Olympia Fields, IL, for plaintiffs in Nos. 99-4451 L, 05-1381 L, and 06-72 L. Drew W. Marrocco, Washington, DC, for plaintiffs in No. 04-277 L. Eugene J. Frett, Chicago, IL, pro se in No. 03-1353 L.

Terry M. Petrie, Denver, CO, with whom was Kelly A. Johnson, Acting Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

ORDER

The court has before it defendant's Motion to Partially Dismiss and Memorandum in Support Thereof (Motion or Def.'s Mot.), filed on February 26, 2007, Plaintiffs' Response to Defendant's Motion to Partially Dismiss and Memorandum in Support Thereof (Response or Pls.' Resp.), filed on March 21, 2007, and Defendant's Reply to Plaintiffs' Response to Defendant's Motion to Partially Dismiss (Reply or Def.'s Reply), filed on April 9, 2007. Defendant moved the court to dismiss seventeen "of the claims brought by the plaintiffs for failure to file complaints timely before this [c]ourt as required under 28 U.S.C. § 2501 [(2000)]." Def.'s Mot. 1.

By Order of April 20, 2007, the court directed the parties "to provide the court the date of publication of the 1999 Report" referred to in Banks v. United States (Banks II), 314 F.3d 1304, 1310 (Fed. Cir. 2003) "to facilitate the court's ruling on defendant's Motion." Order of Apr. 20, 2007. On April 27, 2007, the parties filed a Joint Response to Court Order April 20, 2007 RE: Date of 1999 Report (Joint Response or J. Resp.).

The court issued its Opinion on May 3, 2007, ruling on sixteen of plaintiffs' claims subject to defendant's Motion and deferring decision on the claim of the Okonski plaintiffs. Banks v. United States (Banks III), No. 99-4451, 2007 U.S. Claims Lexis 133, at *36 (Fed. Cl. May 3, 2007). On May 7, 2007, the parties filed a Joint Submission Regarding Date of 1999 Report (Joint Submission or J. Sub.). On May 8, 2007, plaintiffs

filed Plaintiffs' Submission Regarding Date of the 1999 Report (Plaintiffs' Submission or Pls.' Sub.). On May 14, 2007, defendant filed Defendant's Response to Plaintiffs' Submission Regarding Date of the 1999 Report (Defendant's Response or Def.'s Resp.).

As presently advised, the court finds it has jurisdiction to hear the Okonski plaintiffs' claims.

I. Background

This action involves the government's construction and maintenance of harbor jetties in Lake Michigan, which allegedly resulted in erosion of plaintiffs' land along approximately four and a half miles of the eastern shore of the lake, south of St. Joseph Harbor. Def.'s Mot. 2, 6; see also Original Complaint of July 9, 1999 (Orig. Compl.), 2. In the 1970s, the United States Army Corps of Engineers (Corps), which managed the harbor jetties, instituted a beach nourishment program to mitigate the erosion along the shoreline south of the jetties. Banks II, 314 F.3d at 1306-07. The Corps wrote three technical reports in 1996, 1997, and 1999 (Reports), which "addressed the Corps' mitigation efforts and collectively concluded that the erosion was permanent and irreversible." Def.'s Mot. 6; Banks II, 314 F.3d at 1307. Beginning in July 1999, plaintiffs initiated their claims, now consolidated for trial of liability, alleging that the federal government unlawfully and without just compensation took their property. Def.'s Mot. 2, 6; see also Orig. Compl. 2; see Order of Jan. 4, 2007; Order of Mar. 15, 2005; Order of Mar. 17, 2006, Frett v. United States, No. 05-1353 (Fed. Cl. filed Dec. 22, 2005).

The United States moved to dismiss in February 2001, claiming that plaintiffs' actions were time-barred under 28 U.S.C. § 2501, which states that claims of which the Court of Federal Claims has jurisdiction must be filed within six years of accrual. Def.'s Mot. 2. The court granted the motion and dismissed plaintiff's claims in July 2001. Banks v. United States (Banks I), 49 Fed. Cl. 806, 826 (2001). The United States Court of Appeals for the Federal Circuit reversed and remanded. Banks II, 314 F.3d at 1305-06. Because a claim cannot accrue while the damages remain justifiably uncertain, the Federal Circuit held that "[w]ith the mitigation efforts underway, the accrual of plaintiffs' claims remained uncertain until the Corps' 1996 Report, 1997 Report, and 1999 Report collectively indicated that erosion was permanent and irreversible." Id. at 1310. These Reports "brought to an end plaintiffs' 'justifiable uncertainty' which had been created by the Corps's mitigation efforts about the permanency of erosion." Def.'s Mot. 4 (quoting Banks II, 314 F.3d at 1310). The statute of limitations began to run only after these Reports had been issued, and "[b]ecause the [R]eports were issued less than six years before plaintiffs filed their complaints, the Federal Circuit viewed each complaint as

timely." Def.'s Mot. 4.[1]

Defendant filed its Motion on February 26, 2007, id. at 1, arguing that the Federal Circuit's decision did not apply to fifteen of the plaintiffs (Banks II plaintiffs) because these plaintiffs "had no justifiable uncertainty regarding the erosion to their property, " id. at 12. Since the Banks II decision, defendant alleged, new evidence had come to light: (1) "Some plaintiffs had no knowledge whatsoever of the Corps' efforts" to mitigate the loss, id., that is, they had no reason to believe that the clearly visible "permanent taking," Banks I, 49 Fed. Cl. at 825, was not permanent, see Banks II, 314 F.3d at 1304; and (2) "Others, while aware of the Corps' efforts, did not believe it would benefit their property," Def.'s Mot. 12, that is, they were not uncertain at all as to the permanency of the damage. Defendant further alleged that plaintiffs Bodnar and Okonski, who filed after the Banks II decision, were barred by the statute of limitations because they were "on inquiry notice" of their claims and failed to file within the six-year limit. Id. at 19, 22.

The court found, in its May 3, 2007, Opinion, that the accrual of a taking claim pursuant to 28 U.S.C. § 2501 was governed by an objective standard. Banks III, 2007 U.S. Claims Lexis 133, at *30-31. Thus plaintiffs' subjective knowledge and interpretations were irrelevant to the question of accrual, and the Federal Circuit's decision that these plaintiffs' claims did not accrue until the issuance of the Reports – and thus, well within the six-year statute of limitations – still applied to the fifteen Banks II plaintiffs. Id. The court further held that "[a]s landowners when the Reports were issued, the Okonski [and the Bodnar] plaintiffs are in the same position with respect to ownership of their property as the other plaintiffs who are subject to this Motion, that is, they purchased their property when the extent of the damage remained 'justifiably uncertain.'" Id. at *33 (citing Banks II, 314 F.3d at 1309). The Bodnar plaintiffs were within the statute of limitations because, having filed on December 28, 2005, they clearly fell within the six-year period of accrual that began with the issuance of the last of the Reports, the so-called "1999 Report," presumably in January of 2000. Id. The court deferred decision on the Okonski plaintiffs' claims because, without a more precise publication date for the 1999 Report, it was uncertain whether the January 27, 2006, filing date of their complaint fell within the six-year statute of limitations. Id. at *33-36.

Trial on the matter of liability is set to begin on Monday, June 4, 2007. Order of Jan. 19, 2007.

---

[1]For additional background, see Banks v. United States (Banks I), 49 Fed. Cl. 806, 807-08 (2001) .

## II. Discussion

In its May 3, 2007, Opinion, the court noted:

> [P]laintiffs bear the burden of proving jurisdiction once jurisdiction is challenged. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936). "Section 2501 constitutes a jurisdictional limit on the authority of the Court of Federal Claims. . . . As such, § 2501 must be strictly construed." Frazer v. United States, 288 F.3d 1347, 1351 (Fed. Cir. 2002).

Banks III, 2007 U.S. Claims Lexis 133, at *34. Plaintiffs must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); see also Def.'s Resp. 1.

The objective standard governing the accrual of takings claims pursuant to 28 U.S.C. § 2501 demands that plaintiffs have had at least constructive notice of the Reports for their claims to accrue. See Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947) ("Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." (citation omitted)); Hunt Constr. Group, Inc. v. United States, 281 F.3d 1369, 1373 (Fed. Cir. 2002) ("[I]t is not unfair to charge [plaintiff] with constructive notice of pertinent regulations published in the Federal Register." (citations omitted)). Although the Federal Circuit did not discuss publication of the Reports, it is this court's view that "[g]iven the objective nature of the determination of the date of accrual of a taking, . . . the Federal Circuit's holding [should be read] . . . to assume some sort of public circulation of the Reports such that plaintiffs could be said to have had constructive notice of them." Banks III, 2007 U.S. Claims Lexis 133, at *35-36.

The Federal Circuit did describe "three technical [R]eports issued by the Corps on the progress of the Corps' mitigation efforts." Banks II, 314 F.3d at 1307 (emphasis added). Plaintiffs "note the derivation of the Federal Circuit's word 'issue' is: Old French issir or eissir - to go out, from the Latine exire, from ex, out of, from + ire to go." Pls.' Sub. 1. The dictionary definition of "issue" is "[t]he act of circulating, distributing, or publishing by an office or official group." American Heritage Dictionary 929 (4th ed. 2000). By highlighting the fact that the Federal Circuit did not discuss the term "issue" in its Opinion, defendant implicitly argues that the mere completion of the 1999 Report suffices for accrual to begin, thereby discounting any possible importance of dissemination and some form of publication. Def.'s Resp. 3. Although the focus of its Opinion is not on the form of distribution of the Reports, the Federal Circuit's use of the

word "issued" lends support to a conclusion consistent with what an objective standard reasonably requires: that accrual of plaintiffs' claims turns on some public availability or dissemination of the Reports.

The evidence that the parties brought forward in their Joint Response and subsequent to this court's Opinion on May 3, 2007, however, indicates that the Reports were not "issued" in any way to the public on or before January 27, 2000. Both parties appear to believe that the so-called 1999 Report was completed some time in January 2000. See J. Resp. 2; J. Sub. 3. Mr. James P. Selegean, a Hydraulic Engineer employed by the Corps, declared that he was "unable to discover anything more than the 'January 2000' which appears on the report cover." J. Resp. Ex. 1. While Mr. Selegean stated that he was unable to find specific information as to the issuance of the 1999 Report, he declared that such reports "in the normal course of business, [are] retained within [the Great Lakes Hydraulic and Hydrology Office (H & H)]." Id.

Mr. Charles Thompson is the author of the 1999 Report and, at the time, was an employee in the Riverine and Coastal Section of the H & H Branch of the Detroit District Office of the Corps. J. Sub. 2. Mr. David Schweiger approved the 1999 Report and, at the time, he was the Chief of the H & H Branch of the Detroit District Office of the Corps. Id. It is Mr. Thompson's and Mr. Schweiger's belief that the 1999 Report was approved in January 2000. Id. at 3. Mr. Schweiger thinks that he could have approved the 1999 Report anytime during January 2000, but based on his recollection of the ordinary course of business, his guess is that "he acted upon the 1999 Report sometime after the first week of January and estimates that he approved it about mid-January 2000." Id. Both Mr. Thompson and Mr. Schweiger agree that "[s]ubsequent to approval of Mr. Schweiger, copies of the 1999 Report were provided to other elements of the Corps' Detroit District Office. The 1999 Report would not normally be distributed outside the Detroit District Office." Id.

In Plaintiffs' Submission, plaintiffs repeat that Mr. Selegean's declaration "states that . . . physical evidence of the JANUARY 2000 REPORT could not be found." Pls.' Sub. 1. A "routing slip" for the 1997 Report exists and was dated February 23, 1998, for internal routing within the Detroit District Corps.[2] Id. at 1-2.

---

[2]While there is some confusion about whether the routing slip has, as plaintiff claims, "been in evidence," see Plaintiffs' Submission Regarding Date of the 1999 Report (Plaintiffs' Submission or Pls.' Sub.), May 8, 2007, at 1, contra Defendant's Response to Plaintiffs' Submission Regarding Date of the 1999 Report (Defendant's Response or Def.'s Resp.), May 14, 2007, at 2 ("Defendant does not believe that this 'routing slip' has been introduced into evidence . . . ."), defendant acknowledges receipt of a copy of the routing slip, Def.'s Resp. 2, and its

Defendant points out that "the only evidence . . . regarding the date of the 1999 Report . . . indicates that it most likely [was issued] sometime in mid-January of 2000." Def.'s Resp. 4. Plaintiffs correctly conclude – and defendant does not dispute – that, at this juncture, "[t]here is no evidence that the JANUARY 2000 MONITORING REPORT would ever be published outside the Detroit District Corps in the normal course of business." Pls.' Sub. 1-2; Def.'s Resp. 3. In fact, the available evidence indicates that the Reports were circulated only within the Detroit District Corps, that is, they were not issued in any manner to the public on or before January 27, 2000. Defendant fails to argue persuasively how a document kept internally within the Detroit District Corps would satisfy the objective standard governing accrual. See Def.'s Resp. 3-5. In these circumstances, the Okonski plaintiffs could not be said to have had constructive notice of the 1999 Report prior to the running of the six-year statute of limitations. Cf. Merrill, 332 U.S. at 384-85 (holding that "all who sought to come within the Federal Crop Insurance Act" were bound by regulations published in the Federal Register regardless of actual knowledge); Hunt Constr. Group, Inc., 281 F.3d at 1373 (charging plaintiff contractor with knowledge of the Federal Regulations even though plaintiff claimed to have no knowledge of any specific provisions). The court finds that plaintiffs have met their burden to prove facts supporting jurisdiction by a preponderance of the evidence. McNutt, 298 U.S. at 189; Reynolds, 846 F.2d at 748.[3]

III. Conclusion

For the foregoing reasons, defendant's Motion as to the Okonski plaintiffs is DENIED. The Okonski plaintiffs' claims are not time-barred and will be allowed to proceed to trial.

IT IS SO ORDERED.

s/ Emily C. Hewitt

existence and authenticity do not appear to be in question, see id.; Pls.' Sub. 1.

[3]Defendant also argues that while "judicial economy and efficiency" may be "a basis for asserting pendent jurisdiction over state-law claims that arise from a common nucleus of operative facts. . . . , jurisdiction cannot be premised simply upon judicial economy and efficiency where jurisdiction does not otherwise exist." Def.'s Resp. 4 (citing, inter alia, United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966); Anziulewicz v. Bluefield Cmty. Hosp., Inc., 531 F. Supp. 49, 53 (S.D. W. Va. 1981)). Although the court suggested during a conference call on May 2, 2007, that the parties examine the role of judicial economy and efficiency in a court's determination of jurisdiction, id., this Order is not premised on that legal principle. The court need not address the merits of defendant's arguments concerning judicial economy and efficiency.

EMILY C. HEWITT
Judge