**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JOHN H. and MARY E. BANKS, et al.<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 99-4451 L<br>Judge Emily C. Hewitt |
| EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and<br><br>DONNA P. FRETT,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA.<br><br>Defendant. | ) | No. 05-1353L |

**PLAINTIFFS' STATUS REPORT**

Pursuant to the Court's December 14, 2007 Order requesting status reports, plaintiffs propose additional proceedings necessary to resolve the remaining issues in this action.

**PLAINTIFFS' DAMAGES OVERVIEW**

1. The defendant be ordered to pay damages for causing plaintiffs to have to construct shore protection to protect their properties in the amount incurred by plaintiffs, plus compound interest from the time of the placement of the protection.

2. The defendant be ordered to pay damages for causing other physical loss to property including, but not limited to, houses, stairs, pump houses, lost rents etc., plus compound interest.

3. The defendant be ordered to pay for causing damages to property measured by the actual loss at the current going prices as established by actual sales north of the piers where shore protection is not needed. Dollar amounts to be determined at the time of payment. On September 27, 2007 the local Multiple Listing Service (MLS) reported that 440 Ridgeway (north of piers – no seawalls) sold for $30,666 per front foot. That property value should be paid to all owners of previously sold (S) or taken (T) properties, less the amounts, if any, previously received for the properties. Those owners included Marzke (S), Neuser (T), Ragins (S), Lahr (S - 11/21/07 with bouldered seawall), McKay Trust (S), Stevens (S), Banks (S), Cunat (T), Gregule (T) and Bunker (S – 70 feet only).

4. The defendant be ordered to pay all other property owners for causing Loss of Access based on the difference in sale value of $30,666/Front Foot received for 440 Ridgeway on 9-27-07 (no seawall), and $15,125/Front Foot paid to Lahr on 11-21-07 (bouldered seawall) – 5750 Dunham Path in Stevensville.

5. The defendant be ordered to pay for causing prospective damages to all plaintiffs who are continuing property owners based on the present value of $30,666/FF for the Ridgeway property (north of piers), which is continuously escalating in value according to the MLS sale figures for that property, having gone from $13,200/FF in October 2001 to $30,666/FF in September 2007. NOTE: This means that from 10-12-01 to 9-27-07 the 440 Ridgeway property escalated at $2,800 per year per front foot. Such

escalation should be based on the Corps' publicly stated policy that lake front owners south of the piers are, in the long run, doomed: … "if in 10 to 20 years you think you are going to give it (your property) to your kids – you better think of something else other than shore protection." (Charles L. Thompson presentation on 7-8-94). NOTE: Projected calculation based on $49,600/FF x 5109 front feet = $253,406,400. $49,600/FF is based on seven years of equal (not compound) amount of $ property value escalation 30,600 – 13,200/6 = 17,400/6 = $2,800/FF. Then 30,600 + (7 x 2800) = $49,600. Present value factor for seven years at 1% = .933. The PV factor for 7 years at 5% = .711.

**LAW**

6. Compound interest is a component of recoverable damages under *Florida Rock Industries v. U.S.*, 23 Cl.Ct. 653, 658 (1991).

7. Property value is to be determined by the actual sales at the time of the payment. *Kirby Forest Industries v. U.S.*, 467 US 1, 17-18 (1994).

8. Dr. Nairn's admission is controlling as to the downcutting (clay) and lowering (sand) being synonymous as to causing steepening damage to the littoral zone. *See,* Nairn trial testimony at Tr. 1217 and 1218 in answer to questions by Attorney Petrie and Fed. Rule of Evid. 801(d)(2).

9. The right to convey property to heirs is one of those sticks in the bundle that make up property rights. *U.S. v. GMC*, 323 US 373, 377-8 (1945).

10. Cost of preventative measures, loss of improvements and cost of placing property in pretaking condition are all acceptable methods for calculating damages in

addition to diminishment in property value. *See*, *Vaizburd v. U.S.*, 384 F.3d 1278, 1285-6 (Fed. Cir. 2004).

**CONCLUSION**

11. The market value approach to calculating future damages results in multimillion dollar losses based on the assumption that the Corps does not do anything to insure protection of plaintiffs' properties, and will in the next 30 years actually divert littoral river sand from the St. Joe's River to the Southwest Regional Airport, in the amount of 50,000 cy/yr, rather than allow the sand to enter the littoral system and supply sand to plaintiffs' properties. Another way to express the problem is that we cannot control what the Corps does.

**LOSS DISCUSSION**

12. Reasonably Foreseeable Losses -- $253,406,400 (¶ 5 above)

(LA) Lost Access -- $15,000/FF based on the difference between the Lahr sale and 440 Ridgeway sale. $15,000/FF times 6,582 FF = $98,730,000

(SL) Sand Loss -- Plaintiffs' Answers to Defendant's 2nd Set of Interrogatories and Requests for Production with Expanded Answers and Document Appendix were filed by Order February 25, 2004. The plaintiffs' sand loss calculations were excerpted therefrom and included as Trial Summary Exhibits 5c and 5d. The $/cy used here is $20/cy. This gives a round number of $10,000,000 subject to compound interest from 1999 (¶ 6).

Cost of Fortification claimed originally (without adjustment for Bodnar, Horvath & O'Konski) was $3,470,399. 6% interest compounded for 22 years from 1986 (when fortifications peaked) to 2008 equals 3.6 or $12,404,712.

Miscellaneous expenses claimed (in 1999) for moving houses, lost rents, houses lost, etc. totaled $1,113,000 plus compound interest at 6% for 8 years (¶ 6) equals $1,773,952.

**TOTALS**

| | | |
|---|---|---|
| Reasonably foreseeables | 5,109 feet | $253,406,400 |
| Lost Access to the Lake | | 98,730,000 |
| Sand Loss | | 16,000,000 |
| Cost of fortifications | | 12,505,712 |
| Misc. | | 1,773,952 |
| Properties sold or destroyed | | 33,978,000 |
| | | $416,394,064 |
| Adjusted for 9-28-07 Court Opinion | | $124,918,219 |

**JOINT STATUS REPORT**

13. The methods of calculating damages discussed above have been reviewed with government attorneys Petrie & Segrest plus the Detroit District real estate expert Don Irwin on October 10, 2007. Further discussion with Petrie & Segrest took place on 10-18-07. I have written about 8 or 9 letters to attorney Petrie since then on the subject. I made a settlement demand at the October 10, 2007 meeting in St. Joseph, Michigan. There has been essentially no response from the government.

14. Plaintiffs believe they have used accepted methodology in their calculations as shown in legal citations. Further discussions aimed at explanation of data would be welcome.

15. Plaintiffs have reviewed numerous available appraisals and find them to be unhelpful in that they use comparables, i.e., other sold properties, which likewise lack unhindered (i.e., no need for shore protection) lake access. Plaintiffs understand that their property value is diminished by having to use shore protection, the long-term viability of which is in doubt, and which causes total or substantial denial of lake access. All properties had lake access when purchased and on average for many years thereafter.

Dated: December 19, 2007

Respectfully submitted,

By: s/John B. Ehret
Attorney for plaintiffs
20860 Greenwood Drive
Olympia Fields, Illinois 60461
(708) 748-8975
(708) 748-7661
jbehret@covad.net

## Cases Cited

**Page #**

1. *Florida Rock Industries v. U.S.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   323 Cl.Ct. 653, 658 (1991)

2. *Kirby Forest Industries v. U.S.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   467 U.S. 1, 17-18 (1994)

3. *U.S. v. GMC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   323 U.S. 373, 377-8 (1945)

4. *Vaizburd v. U.S.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   384 F.3d 1278, 1285-6 (Fed. Cir. 2004)

## Federal Rules of Evidence

1. 801(d)(2) Admission by Party Opponent (A) (B) (C) (D)

## Reference Documents

One. 11-30-07 Herald Palladium – River dredging $3.1 million, 150000 cy, Southwest Regional Airport (2 pages, para. 11)

Two. 1999 Plaintiffs' Lake Accessability, Sand Loss, Fortifications (2 pages, para. 12)

Three. 2-25-04 Motion for Leave to File Answers to Defendant's 2nd Set of Interrogatories and Request for Production with Order Granting (2 pages, para. 12)

Four. Properties Sold or Destroyed (para. 12)

1

HERALD - PALLADIUM

River dredging faces obstacles

By SCOTT AIKEN River dredging faces obstacles
H-P Staff Writer 11-30-07

ST. JOSEPH A proposal to dredge a stretch of the St. Joseph River for recreational boaters before summer is "barely doable but worth trying," Berrien County Administrator Bill Wolf said Wednesday.
"If we don't we're going to have a disastrous season next year," Wolf told the county Board of Public Works.

County officials estimate they have only about four months to complete engineering work for the project, get permits and line up funding and contractors.

One obstacle is determining fair special assessments for about 280 affected properties, including marinas, to pay for the $3.1 million project in St. Joseph, Benton Harbor and St. Joseph Township. "That's a big key to this, how it's divvied up," said county Commissioner Robert Wooley, who serves on the public works board. "The devil will be in the details."

The federal government covers the cost of dredging the St. Joseph River commercial harbor, the area between the twin piers and the Bicentennial Bridge. But no federal or state money is available for areas upstream, affecting several marinas and hundreds of recreational boaters. Near-record low water has turned parts of the river into dry land, making it impassable for boaters. Dredging was last done outside the federal navigation project area in 2001.
With no funding support in sight, county officials decided to put together a plan to help boaters, who pump an estimated $20 million a year into the local economy.

Under the dredging proposal unveiled two weeks ago, a channel 8 feet deep and 75 feet wide would be dredged in the river bottom from the Bicentennial Bridge upstream to Eagle Pointe Marina. The proposed project would cover the cost of dredging to improve navigation and address future dredging needs.

If the project goes forward, the county public works board would sell bonds to pay for it. St. Joseph Township and the cities of St. Joseph and Benton Harbor, the affected local governments, would be required to pledge to repay the bonds. Revenue would be collected through special assessments

ONE

on marinas, slip owners and other property on the river in the three municipalities.
The public works board took no action, but members said they back the plan.

Katie Montoya, assistant director of community development for the county, said state law allows public works departments to sell bonds to pay for dredging projects. The next step, expected within a few weeks, is for the county board to approve spending $75,000 to complete engineering work and acquire permits. The county already has spent $25,000.

The engineering study is to identify the area to be dredged, the chemical composition and volume of the material, and the current and proposed water depth. Work must be done to determine exactly the length of the section of the river to be dredged. Previous estimates put the volume of material to be removed at 150,000 cubic yards.

About half of the money for the proposed $3.1 million project would cover the cost of future dredging and completing a permanent disposal site for dredged material at the Southwest Michigan Regional Airport in Benton Harbor. Having the site available is expected to reduce future dredging costs.

The work would include implementing a Dredge Material Management Plan completed in 2004 by the Army Corps of Engineers office in Detroit. The Corps is responsible for dredging the commercial harbor and completed the plan but has not had money to implement it.

Under the plan, a slurry of dredged material and water would be pumped through pipes from the river to the airport disposal site. The material would be deposited in heavy bags that allow water to run out while the soil is retained.

Officials say the system is more efficient than mechanical dredging in which material is dug from the river bottom and loaded on a barge, then transported by truck to a dewatering site for drying.
Having the permanent disposal site available could cut costs for future inner harbor dredging work done by the Army Corps. The airport site has been used for several years for dredging on an emergency basis.

2

**PLAINTIFFS' LAKE ACCESSABILITY, SAND LOSS, FORTIFICATIONS**
**BANKS, et al v. USA Case Number 99-445L**
**Judge Emily C. Hewitt**

| | LA | SL | FORTI | MISC. |
|---|---|---|---|---|
| Anderson | 100,000 | 75,000 | 60,000 | |
| Banks | 5,000 | 13,000 | 35,000 | 154,000 |
| Bunkers | 250,000 | | 150,000 | |
| BODNAR | 500,000 | 200,000 | 126,000 | 10,000 |
| Bovee | | | | |
| Carter | 100,000 | 70,000 | 40,000 | |
| Chapman | 113,000 | 50,834 | 150,000 | |
| Conklin Trust | | 114,000 | 18,135 | |
| Cosgrove | 100,000 | 50,000 | 95,000 | |
| Country LLC | 300,000 | 400,000 | 150,000 | MOVED HSE |
| Cunat | | 200,000 | | 50,000<br>336,000 |
| Del Mariani | | 400,000 | | |
| Ehret MI Trust | 12,000 | 185,000 | 35,000 | |
| Errant | | 100,000 | 94,000 | |
| Greenbriar, Inc. | | 137,000 | 500,000 | |
| Gregule | | 300,000 | | 50,000<br>336,000 |
| HORVATH | | 15,000 | 80,457 | |
| Jackson | 150,000 | 50,000 | 5,000 | |
| Jyung Trust | | 100,000 | 8,700 | |

000071 TWO

1.

000072 TWO

| | LA | SL | FORTI (FORTIFICATIONS) | MISC. |
|---|---|---|---|---|
| Kane | 66,600 | 120,000 | 45,000 | |
| Lahr | 100,000 | 175,000 | 120,000 | |
| ~~Mack~~ | | | | |
| Marzke | 250,000 | 2,659,000 | 125,000 | 100,000 Moved see 000078/79 |
| McKay | 250,000 | 150,000 | 147,260 | |
| Melcher | 100,000 | 57,000 | 60,000 | |
| Miller | 500,000 | 1,062,258 | 930,000 | |
| Morvis Trust | 112,000 | 50,000 | 50,000 | |
| Neuser | | 1,813,997 | | |
| N.D. Path Assn. | 140,000 | 100,000 | 180,000 | |
| O'KONSKI | 585,000 | 200,000 | 100,000 | |
| Pancoast | 100,000 | 25,000 | 52,556 | |
| Ragins | 118,000 | 54,673 | 193,848 | |
| Renner | 100,000 | 25,000 | 80,000 | |
| Smith | 112,000 | 125,000 | 50,000 | Rentals 37,000 |
| Stevens | 100,000 | 25,000 | 25,000 | |
| Varga | 150,000 | 7,660 | 5,000 | |
| ~~Walsh~~ | ~~66,450~~ | ~~10,000~~ | | |
| Werger | | 20,844 | | |
| Wilschke | | 120,000 | 30,000 | |
| Wineberg | | 469,000 | 35,900 | 40,000 Move house? |
| | $3,395,050 | $9,314,266 | $3,470,399 | $1,113,000 |

TOTAL OF LA + SL + FORTI + MISC = $17,292,715

000072

TWO

3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOHN H. BANKS, MARY E. BANKS, ROBERT CUNAT, EHRET MICHIGAN TRUST, GREENBRIAR DEVELOPMENT, GEORGE J. GREGULE, JR., ROBERT J. KANE, PATRICIA A. KANE, FRANK F. LAHR, CHARLOTTE D. LAHR, NOTRE DAME PATH ASSOCIATION, THELMA MCKAY TRUST, ROBERT E. PANCOAST, PAMELA S. PANCOAST, DOROTHY A. RENNER, YOLANDA P. STEVENS ESTATE, MARCIA A. WINEBERG, RICHARD NEUSER, DONALD R. CHAPMAN, GAIL L. CHAPMAN, FRANK J. BUNKER, M.D., L. RICHARD MARZKE, NANCY A. MARZKE, GREGORY R. BOVEE, CANDACE BOVEE, J. THOMAS CONKLIN TRUST, ELIZABETH S. ERRANT TRUST, MARC DEL MARIANI, MARY DEL MARIANI, RICHARD R. CARTER, M. LYNN CARTER, MICHAEL R. ANDERSON, JANICE ANDERSON, CAROLYNNE K. MORVIS TRUST, DONALD D. MILLER, JUDITH E. MILLER, RUTH COSGROVE TRUST, COUNTRY, L.L.C., LEONARD J. SMITH, HERZL RAGINS, M.D., ROGER B. WILSCHKE, ANN C. WILSCHKE, KENT WERGER, MARGARET WERGER, MICHAEL S. WALSH, KAY F. VARGA aka KAY F. SMITH, VICTORIA JACKSON, aka VICTORIA J. ILLSEN, HYUN S. JYUNG TRUST, ROBERT D. MELCHER, and MARIA MELCHER.<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | NO. 99-4451 L<br>Emily C. Hewitt<br>Judge |

PLAINTIFFS' MOTION FOR LEAVE TO FILE ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION WITH EXPANDED ANSWERS AND DOCUMENT APPENDIX

Plaintiffs' Attorney:
John Broderick Ehret
20860 Greenwood Drive
Olympia Fields, IL 60461
(708) 748-8975
(708) 748-7661 (FAX)

Defendant's Attorney
David W. Spohr U.S. Dept. of Justice
c/o NOAA Damage Assessment
7600 Sand Point Way NE
Seattle, WA 98115-0070
(206) 526-4603 phone
(206) 526-6665 FAX

THREE

# In the United States Court of Federal Claims

No. 99-4451 L

(Filed: February 25, 2004)

| | |
|---|---|
| JOHN H. BANKS, ET AL., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

Before the court is Plaintiffs' Motion for Leave to File Answers to Defendant's Second Set of Interrogatories and Request for Production with Expanded Answers and Document Appendix. The motion is GRANTED.

IT IS SO ORDERED.

Emily Hewitt

EMILY C. HEWITT
Judge

4

PROPERTIES SOLD OR DESTROYED
REASONABLY FORESEEABLE LOSS

| | Name | ADJ | Front Feet | Years | |
|---|---|---|---|---|---|
| 3 690 000 | Marzke(S) | 1M | 246 | 24 | 246 × 15,000 |
| 4 890 000 | Neuser(T) | 0 | 163 | 11 | 163 × 30,000 |
| 3 540 000 | Ragins(S) | 300,000 | 118 | 32/14 (Ave. 23) | 118 × 30,000 |
| 1 680 000 | Lahr (S) | 0 | 112 | 47 | 112 × 15,000 |
| 1 380 000 | Renner(S) | 0 | 92 | 34 | 92 × 15,000 |
| 6 000 000 | McKay (S) | 500,000 | 200 | 69 | 200 × 30,000 |
| 2 778 000 | Stevens(S) | 200,000 | 92.6 | 34 | 92.6 × 30,000 |
| 3 600,000 | Banks (S) | 3,000,000 | 120 | 18 | 120 × 30,000 |
| 4 170 000 | Cunat (T) | 0 | 139 | 26 | 139 × 30,000 |
| 6 750 000 | Gregule(T) | 0 | 225 | 26 | 225 × 30,000 |
| 2 100 000 | Bunker(S) | 1M | 70 | 24 | 70 × 30,000 |
| 36 978 000<br>3,000 000<br>$33,978,000 | | 3M | 1,113 | 336 | ADJ = $ RECEIVED |

FOUR

# CERTIFICATE OF SERVICE

I, John B. Ehret, an attorney, hereby certify that on December 19, 2007, I electronically filed **PLAINTIFFS' STATUS REPORT** with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following persons listed below:

Terry M. Petrie, Esq.
Environmental and Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80202
**Attorney for the United States of America**

s/ John B. Ehret
John B. Ehret