**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **JOHN H. and MARY E. BANKS, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 99-4451 L**<br>**Judge Emily C. Hewitt** |
| **EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and**<br><br>**DONNA P. FRETT,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>**Defendant.** | **No. 05-1353 L**<br>**Judge Emily C. Hewitt** |

**DEFENDANT'S STATUS REPORT**

Defendant respectfully submits this Status Report pursuant to the Court's Order filed December 14, 2007 to propose "[a]dditional proceedings necessary to resolve the remaining issues in this matter." Defendant submitted a draft of a proposed "Joint Status Report" to counsel for plaintiffs on Tuesday, December 18, 2007. Simultaneously, plaintiffs provided a copy to counsel for defendant of what ultimately they filed. Counsel for defendant then undertook a call with plaintiffs' counsel to determine and confirm his sense that a joint report would not be possible in light of the positions taken in the documents exchanged. Plaintiffs' counsel confirmed that the parties could not agree to a joint report.

After the Court issued its September 28, 2007, decision on liability,[1] the parties met in St. Joseph, Michigan, on November 8, 2007, in an effort to discuss issues and share thoughts on how to calculate damages.[2] The Court's decision lays out a host of factors that need to be considered, e.g., plaintiffs' burden to establish ownership; a calibrated approach to determine damages based, in part, on when an individual plaintiff obtained ownership; different formulations based upon whether the damages to the property occurred before 1970 (but not earlier than 1950) or after 1970; whether the shoreline for a plaintiff's property is considered sandy or cohesive for damage that occurred after 1970; an allowance for the United States Army Corps of Engineers' mitigation efforts after 1970; and reasonably foreseeable future loss. Banks, 78 Fed. Cl. at 616, 654-57.

This array of factors becomes more complicated when we consider the need to acquire and apply the evidence to them. The plaintiffs present a variety of different circumstances: for example, some plaintiffs claim to have lost all of their property, some plaintiffs have sold their property since the onset of litigation, and some also claim loss and damage to structures and loss of rental income. Because plaintiffs bear the evidentiary burden of establishing the ordinary

---

[1] Banks v. United States, 78 Fed. Cl. 603 (2007).

[2] Paragraph 13 of "Plaintiffs Status Report" contains three misstatements. One, the meeting between the lawyers for the parties occurred on November 8, 2007, not October 10, 2007. See Exhibit 1, Letter from Terry M. Petrie to John Ehret, dated November 8, 2007. (We have redacted paragraph 2A of Exhibit 1 because it contains information protected under Federal Rule of Evidence 408.) Two, Don Erwin is not a real estate expert. He is an attorney who works in the office of the Detroit District Office of the United States Army Corps of Engineers. Three, counsel for plaintiffs has written six letters (not eight or nine) to counsel for defendant after November 8, 2007. Three of those letters provided only information sought by defendant in direct response to defendant's letter of November 8, 2007 (Exhibit 1). With one exception, the remaining three letters contained plaintiffs' counsel's thoughts about various matters that did not invite comment. The single exception dealt with plaintiffs asking if defendant cared to join in testing of a purported till sample. The query did not warrant further rejoinder because the topic had already been addressed in a previous letter to plaintiff's counsel dated November 19, 2007.

highwater mark (OHWM) for when a plaintiff purchased his/her property, these circumstances illustrate the importance of adducing the evidence that establishes the amount of lost property in light of the Court's liability decision. Banks, 78 Fed. Cl. at 606-07, citing Banks v. United States, 71 Fed. Cl. 501, 506 (2006) (describing the role in which the OHWM plays in determining amount of property lost).[3/]

Applying the Court's liability decision appears to suggest additional evidence is relevant to establish, or assist, in determining the amount of property lost for which a plaintiff can receive just compensation based upon whether it was lost before or after 1970. Conceivably the plaintiff who purchased his/her property before 1970 needs to establish not only the OHWM at the time of purchase but also demonstrate – because a different formulation applies for property lost after 1970 – where the OHWM existed in 1970. Presumably the same evidentiary benchmark applies for when the claims accrued in 2000 (see Banks, 78 Fed. Cl. at 605, 606)[4/] or, alternatively, when a plaintiff sold his/her property. The 2000 iteration of what the OHWM evidence establishes, in turn, will have at least some bearing in determining on how much a plaintiff is entitled to for reasonably foreseeable future losses. The parties need to identify the evidence that established these iterations of the OHWM, defendant through discovery and plaintiffs in order to carry their burden of proof.

This need for discovery, which plaintiff's status report does not address, necessarily also includes that discovery required to obtain the other evidence that supports plaintiffs' claimed

---

[3/] During discovery in the liability phase, defendant attempted to ascertain what evidence plaintiffs may proffer of a OHWM at the time contemporaneous with purchase of their property.

[4/] Uncertainty still remains about the precise date of accrual of plaintiffs' claims. See Banks, 78 Fed. Cl. at 606-07 n.6 .

damages, information that appraisals provide regarding the value of plaintiffs' properties, and remaining questions about ownership of the parcels of property.

The parties' meeting on November 8 also surfaced different thoughts about how to interpret the Court's liability decision. For example, the parties disagree over the portion of the Court's decision regarding whether the shore line is sandy or cohesive. In short, plaintiffs believe that they may introduce additional evidence to establish that the shoreline for any given individual parcel is cohesive. Defendant, by contrast, believes the Court has already ruled upon that issue by considering and adopting the findings of its expert witnesses, Drs. Grahame Larson and Robert Nairn. Other differences of interpretation may well exist.

With the foregoing in mind, defendant respectfully requests the Court issue a scheduling order that includes the following:[5]

1. If the Court desires briefing on the issue of cohesive versus sandy (as described above) or any other issues that the parties believe helpful to facilitate the damages determination, that the parties identify those issues by January 15, 2008, and file opening briefs on January 29, 2008, and responsive briefs on February 7, 2008.[6]

---

[5] We note that "Plaintiffs' Status Report" appears to propose very little by way of "[a]dditional proceedings necessary to resolve the remaining issues in this matter." See Order of December 14, 2007. Aside from suggesting "[f]urther discussions aimed at explanation of data" (paragraph 14 of "Plaintiffs' Status Report"), plaintiffs appear to propose, by implication, only one other "proceeding" or event. Specifically, plaintiffs suggest that defendant pay damages to resolve this litigation. See paragraphs 1-5 of "Plaintiffs' Status Report." Understanding fully the mandate to pay just compensation under the Fifth Amendment for liability as determined by the Court's September 28, 2007 decision in this case, defendant respectfully contends that further proceedings as suggested in Defendant's Status Report are appropriate and wholly warranted.

[6] For the suggested dates here and in the other proposed events below, counsel for defendant asked plaintiffs' counsel if he would like to propose dates. Because plaintiffs' counsel disagrees with the approach suggested here by the United States in this status report, the offer was declined.

2. Fact discovery for damages-related issues be completed by April 30, 2008.

3. Pursuant to Rule 26(a)(2) of the Rules of the United States Court of Federal Claims, the parties exchange expert reports on July 30, 2008 .

4. The parties exchange expert rebuttal reports on August 22, 2008.

5. Expert discovery be completed by September 24, 2008.

6. Counsel for the parties and the experts meet no later than October 8, 2008, to see if the differences in the experts' opinions can be narrowed.

7. Counsel for the parties meet in person to discuss settlement no later than October 16, 2008.

8. The Court conduct a pre-trial conference at a time of its convenience after the parties meet to discuss settlement.

Dated: December 20, 2007

Respectfully submitted,

*s/Terry M. Petrie*

TERRY M. PETRIE
Environment and Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294
Tele: 303-844-1369
Fax: 303-844-1350
Terry.Petrie@usdoj.gov

Attorney for Defendant

OF COUNSEL:

Gary W. Segrest, Esq.
Don Erwin, Esq.
Office of Counsel
U.S. Army Corps of Engineers
477 Michigan Avenue, Room 659
Detroit, MI 48226

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the "**DEFENDANT'S STATUS REPORT**" by Electronic Court Filing on the 20th day of December, 2007 on:

John Ehret, Esq.
20860 Greenwood Drive
Olympia Fields, IL 60461

Counsel for *Banks* Plaintiffs

****************

Eugene J. Frett, Esq.
Sperling & Slater, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603

Counsel for *Frett* Plaintiffs

****************

s/Terry M. Petrie
Terry M. Petrie