**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JOHN H. and MARY E. BANKS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 99-4451 L** |
| **v.** | ) | **Judge Emily C. Hewitt** |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| **EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and** | ) | |
| | ) | |
| **DONNA P. FRETT,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 05-1353 L** |
| **v.** | ) | **Judge Emily C. Hewitt** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**DAMAGES TRIAL MEMORANDUM**

## TABLE OF CONTENTS

I. BACKGROUND . . . . . 2

II. LAW . . . . . 5

A. Bifurcation . . . . . 5

B. Law of the Case Doctrine . . . . . 5

C. Motion to Reconsider . . . . . 7

III. ARGUMENT . . . . . 9

A. The Court Determined the Composition of the Shoreline Upon Which Plaintiffs' Properties Are Located As An Issue Relevant to the Liability Decision . . . . . 9

1. The Composition of the Shoreline was Relevant to the Liability Determination . . . . . 9

2. The Court Determined That The Shoreline for Plaintiffs' Properties was Sandy and Not Cohesive Except for the Northermost Properties . . . . . 9

3. Dr. Nairn's Expert Report Delineated the Boundaries for Where the Shoreline Was Cohesive or Sandy . . . . . 11

B. Plaintiffs' Refuse to Accept the Court's Findings on Shoreline Composition . . . . . 11

C. Plaintiffs Are Not Entitles to Re-Litigate the Issue of the Shoreline Composition . . . . . 13

1. The Geology of the Shoreline Was a Liability Issue . . . . . 14

2. The Geology of the Shoreline is Not a Damages Issue . . . . . 14

3. Plaintiffs' Purported Reasons for a Property-By- Property Analysis Is Not Credible . . . . . 15

4. Plaintiffs' Arguments to Support Their Motion Fail . . . . . 16

5. Plaintiffs Are Barred by the Law of the Case and Fail to Carry Their Burden for the Court to Reconsider The Shoreline Composition Findings . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## CASES


Agostini v. Felton, 521 U.S. 203 (1997) . . . . . . . . . . 6

Ammex, Inc. v. U.S., 52 Fed. Cl. 555 (2002) . . . . . . . . . . 8, 18

Banks v. United States, 314 F.3d 1304 (2003) . . . . . . . . . . 2

Banks v. United States, 49 Fed. Cl. 806 (2001) . . . . . . . . . . 2, 11

Banks v. United States, 78 Fed. Cl. 603 (2007) . . . . . . . . . . passim

Bannum, Inc. v. United States, 59 Fed. Cl. 241 (2003) . . . . . . . . . . 8, 18

Bishop v. United States, 26 Ct. Cl. 281 (1992) . . . . . . . . . . 8, 18

Bosley v. The Chubb Institute, 516 F. Supp. 2d 479 (E.D. Pa. 2007) . . . . . . . . . . 7

Chhaparwal v. West Va. Univ. Hosp., Inc., 2008 WL 27051481
(N.D. W. Va. July 9, 2008) . . . . . . . . . . 8, 18

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988) . . . . . . . . . . 5

Commerce Benefits Group, Inc. v. McKesson Corp., 2008 WL 2390784
(N.D. Ohio June 9, 2008) . . . . . . . . . . 8, 18

Curry v. United States, 81 Fed. Cl. 328 (2008) . . . . . . . . . . 5

Florida Power & Light Co. v. United States, 66 Fed. Cl. 93 (2005) . . . . . . . . . . 6

Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298 (1999) . . . . . . . . . . 7, 17, 18

Gould, Inc. v. United States, 67 F.3d 925 (Fed. Cir.1995) . . . . . . . . . . 5

Henderson County Drainage Dist. No. 3 v. United States, 55 Fed. Cl. 334 (2003) . . . . . . . . . . 7

Independence Park Apts. v. United States, 61 Fed. Cl. 692 (2004) . . . . . . . . . . 5

Int'l Air Response, Inc. v. United States, 81 Fed. Cl. 364 (2008) . . . . . . . . . . 6, 8, 18

Intergraph Corp. v. Intel Corp., 253 F.3d 695 (Fed. Cir. 2001) . . . . . . . . . . 6, 17

Morin v. Trupin, 809 F. Supp. 1081 (S.D.N.Y. 1993) . . . . . . . . . . 6

Prati v. United States, 2008 WL 2627915 (Fed. Cl. July 1, 2008) . . . . . . . . . . . . . . . . . . . . . . . . 7

Seldovia Native Ass'n, Inc. v. United States, 36 Fed. Cl. 593 (1996) . . . . . . . . . . . . . . . . . . . . . . 7

Six v. United States, 80 Fed. Cl. 694 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

Smith Int'l, Inc. v. Hughes Tool Co., 759 F.2d 1572 (Fed Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Turtle Mountain Band of Chippewa Indians, 222 Ct. Cl. 1 (1979) . . . . . . . . . . . 6

United States v. U.S. Smelting Refining & Mining Co., 339 U.S. 186 (1950) . . . . . . . . . . . . . . 5, 6

Yuba Natural Resources Inc. v. U.S., 904 F.2d 1577 (Fed. Cir.1990) . . . . . . . . . . . . . . . . . . . . . . 7

White River Amusement Pub, Inc. v. Town of Hartford, Vt., 2008 WL 2404029 (D. Vt. June 10, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

The Court should reject Plaintiffs' naked efforts to re-litigate a key finding of fact directly relevant to the Court's decision on liability. Plaintiffs take exception to the Court's factual finding that the greater portion of Plaintiffs' properties are located along a sandy shoreline of Lake Michigan and attempt to re-litigate it because they don't like the implication for the damages phase of this case. They contend that they should be entitled to re-visit the composition of the shoreline on a property-by-property basis under the guise that it is necessary in order to determine the amount of damages to which they are entitled. In the alternative, Plaintiffs ask the Court to reconsider its findings and re-open the trial record. Plaintiffs, however, already have theinformation they seek and are also bound by the Court's findings on the geology of the shore under the law of the case doctrine. Nor have they demonstrated adequate cause or reason for the Court to reconsider its earlier findings.

A key issue at the June 2007 trial was whether the Lake Michigan shoreline in the vicinity of Plaintiffs' properties was sandy or cohesive. Plaintiffs argued unsuccessfully that it was cohesive throughout. Defendant established that it was predominantly sandy south of where the northernmost properties of the Plaintiffs are located.

Defendant demonstrates below: that the question of whether the shoreline is cohesive or sandy was a liability issue, not a damages issue; that the Court found that the shoreline was sandy except for the northernmost properties; and that the law of the case doctrine bars Plaintiffs from re-litigating the issue, and they have not provided or established sufficient reason to ask the Court to reconsider its findings.

## I. BACKGROUND

From the first opinion in this litigation, the question of whether Plaintiff's properties are located along a sandy or cohesive stretch of the Lake Michigan shoreline has been before this Court. In 2001, the Court granted Defendant's motion to dismiss on grounds of statute of limitations. Banks v. United States, 49 Fed. Cl. 806 (2001).[1/] In reaching this decision, the Court examined the effect of the jetties located at the St. Joseph Harbor on the erosion of Plaintiffs' shoreline properties. In order to do that, the Court considered, "as a threshold matter, the geological characteristics of plaintiffs' shorefront property." Id. at 813. The Court devoted the better part of a page in its opinion to describing the evidence offered by Plaintiffs – two technical reports prepared by the United States Army Corps of Engineers – for the proposition that the geology along the St. Joseph shoreline was a "'cohesive' shore rather than a sandy shore." Id. at 813-14. Following remand, the Court settled that question, specifically finding after trial on liability that the shoreline or lake bed[2/] was sandy for the shorelines for all of Plaintiffs' properties with the exception of the northernmost properties owned by Plaintiffs.[3/] Banks v. United States, 78 Fed. Cl. 603 (2007).

In the months immediately before trial, the Court conducted a conference call with the

---

[1/] On appeal to the United States Court of Appeals for the Federal Circuit, the dismissal of Plaintiffs' case was reversed and remanded. Banks v. United States, 314 F.3d 1304 (Fed. Cir. 2003).

[2/] Based on use of terms by the parties' experts, the Court noted how the term "shore" was also used to connote the "lake bottom or lake bed close to the edge of Lake Michigan." Banks v. United States, 78 Fed. Cl. 603, 622 n. 32 (2007).

[3/] After remand from the Federal Circuit, the Court had consolidated the claims of all plaintiffs for the limited purpose of a trial of liability. See 78 Fed. Cl. at 605.

parties on January 19, 2007, to discuss, among other items, a proposed pretrial schedule. See Exhibit 1, Excerpt of January 19, 2007 Transcript at 4:16-22; 64:11-16. During that status conference, the Court informed the parties that it expected the parties to provide the evidence of the "big pieces of the theories of the case of Plaintiff and Defendant [so that they] come into pretty clear relief for the Court." Id. at 69:2-16. Regarding the scope of the trial, the Court informed the parties that it was taking a general view of the evidence "across the entire length of the properties that are owned by the individual plaintiffs" (id. at 70:9-15), but that the burden lay with them to address any particular features of individual properties that varied from the otherwise understood general evidence of the shoreline (id. at 70:16-71:4). The Court further specified that the "trial [will] address[ ] the issue of damage generally so that we can then go as crisply as possible if we do have a liability finding in the trial to damages." Id. at 71:19-22. The Court did not address issues of specific property ownership and damages at the liability trial. Banks, 78 Fed. Cl. at 616.

The ultimate question of whether Defendant was liable for a Fifth Amendment taking centered upon whether the Corps' efforts to mitigate sufficiently offset the erosion attributed to the St. Joseph Harbor jetties. The answer to that question depended upon a number of key facts, including the rate of erosion and the amount of sediment supplied by Defendant to the shoreline in carrying out its mitigation program. One of the important variables that determined the rate at which Plaintiffs' properties eroded, and, in turn, how much sediment was needed to offset the erosion, was whether the shoreline was sandy or cohesive.

The question was vigorously contested at trial with testimony from a number of witnesses, including experts, and documentary exhibits. The Court's liability decision decisively

accepted Defendant's position on the question, analyzing the evidence in great detail, and concluding that the shoreline was sandy for a significant number of the properties owned by Plaintiffs but was cohesive for those properties located at the northernmost portion of the Plaintiffs' zone. See 78 Fed. Cl. at 621-28.

In addition to the ultimate question of liability, the importance of the Court's findings about the character of the shoreline is also reflected in the formulation for damages. The Court arrived at a calculus that considers the time of ownership by a Plaintiff, whether the Plaintiff's shoreline is sandy or cohesive, and whether the Corps' mitigation efforts can be considered in arriving at the amount of damages owed to a Plaintiff. See 78 Fed. Cl. at 654-57. Of key interest for the determination of compensation is the Court's ruling that the Corps' mitigation efforts can be taken into consideration beginning in 1970 for those Plaintiffs whose properties are located along a sandy shoreline. Id.

Events since the Court handed down its decision show that Plaintiffs view the Court's findings of fact unfavorably and that they are determined to re-litigate the question on a property-by-property basis. After being apprised of the issue through Defendant's status report filed on December 20, 2007 (Docket #252) and telephonic status conferences on January 22, 2008 (Dkt # 259), and February 19, 2008 (Docket ## 260, 261), the Court directed the parties to brief the questions raised by Plaintiffs' efforts. See Order entered February 19, 2008. Docket #260.

## II. LAW

### A. Bifurcation

RCFC 42(c) provides that "a trial may be limited to the issues of law and fact relating to the right of a party to recover, reserving the determination of the amount of recovery, if any, for further proceedings." Courts use bifurcation as a case management device and "'. . . often bifurcate trials into liability and damages phases, severing common liability questions from individual damages issues.'" See, e.g., Curry v. United States, 81 Fed. Cl. 328, 338 (2008), quoting 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.45(2)(a), 3d ed. 1997.

### B. Law of the Case Doctrine

"'The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts.'" Gould, Inc. v. United States, 67 F.3d 925, 930 (Fed. Cir. 1995) (quoting Jamesbury Corp. v. Litton Indus. Prods., Inc., 839 F.2d 1544, 1550 (Fed. Cir. 1988), overruled on other grounds, A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992)); see United States v. U.S. Smelting Refining & Mining Co., 339 U.S. 186, 198-99 (1950). The law of the case doctrine protects the parties' settled expectations and enables cases to develop in an orderly manner. Independence Park Apts. v. United States, 61 Fed. Cl. 692, 699 (2004), rev'd on other grounds, 449 F.3d 1235 (Fed.Cir.2006).

The law of the case doctrine, however, is not absolute in application. Rather, the doctrine "'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988) (quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912)). It only acts to discourage "a

court [from] . . . reopen[ing] issues decided in earlier stages of the same litigation." Agostini v. Felton, 521 U.S. 203, 236 (1997) (citing Messenger, 225 U.S. at 444).

In general, the law of the case doctrine permits a court to "'reconsider its decisions until a judgment is entered,'" Florida Power & Light Co. v. United States, 66 Fed.Cl. 93, 98 (2005) (quoting Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir.1991)); see U.S. Smelting Refining and Mining Co., 339 U.S. at 198-99 (1950), and to change "incorrect legal conclusion[s]." Florida Power & Light, 66 Fed.Cl. at 98. Courts may reconsider prior determinations when (1) new and different evidence is discovered, (2) there is a contradictory ruling by controlling authority, or (3) the prior determination was "clearly incorrect" and "preservation [of the prior ruling] would work a manifest injustice." Intergraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001) (citing Smith Int'l, Inc. v. Hughes Tool Co., 759 F.2d 1572, 1576 (Fed. Cir.1985)).

There are different facets to the law of the case doctrine that depend on the circumstances involved in the particular case. One of the reasons, as mentioned above, which may warrant departure from the law of the case is the discovery of new and different material. Id. However, the proffered new evidence must satisfy the requirements of RCFC 60(b)(2), see Smith Int'l, Inc. at 1578, and that could not have been discovered by reasonable diligence before trial. See United States v. Turtle Mountain Band of Chippewa Indians, 222 Ct. Cl. 1, 612, 517 F.2d 520 (1979) (case citations omitted). See also, e.g., Morin v. Trupin, 809 F.Supp.1081, 1086 (S.D.N.Y. 1993) (appropriate for the court to use the standard of Rule 60(b)(2) in considering whether the new evidence could have been discovered earlier through due diligence); White River Amusement Pub, Inc. v. Town of Hartford, Vt., 2008 WL 2404029 *2 (D.Vt. June 10,

2008) (court denied new evidence when party had no explanation for why new evidence could not have been obtained earlier with due diligence before discovery closed and before a decision was issued). Compare Bosley v. The Chubb Institute, 516 F.Supp.2d 479, 484-85 (E.D. Pa. 2007) (in applying exception to law of the case doctrine, in the context of res judicata, new evidence must either have been fraudulently concealed or unable to have been discovered through due diligence).

**C. Motion to Reconsider**

RCFC 59(a) provides that this Court may grant a "new trial or rehearing or reconsideration . . . to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States."

The decision whether to grant reconsideration lies within the discretion of the trial court. Yuba Natural Res., Inc. v.. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990); Prati v. United States, 2008 WL 2627915 at *2 (Fed. Cl. July 1, 2008). However, this discretion is bounded by the requirement that a court must address reconsideration motions with "'exceptional care.'" Seldovia Native Ass'n, Inc. v. United States, 36 Fed. Cl. 593, 594 (1996), aff'd, 144 F.3d 769 (Fed. Cir. 1998) (quoting Carter v. United States, 518 F.2d 1199 (Ct.Cl.1975)); and Henderson County Drainage Dist. No. 3 v. United States, 55 Fed. Cl. 334, 337 (2003).

To succeed, a motion for reconsideration must be based "'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 762 (Fed. Cir. 2000) (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)); see also Six v.

United States, 80 Fed. Cl. 694, 697 (2008).

Moreover, the party moving for reconsideration must also show that: (a) an intervening change in the controlling law has occurred; (b) evidence not previously available has become available; or, (c) that the motion is necessary to prevent manifest injustice. See Bishop v. United States, 26 Cl. Ct. 281, 286 (1992) (citing Weyerhaeuser Corp. v. Koppers Co., 771 F.Supp. 1406, 1419 (D.Md.1991)); see also Int'l Air Response, Inc. v. United States, 81 Fed. Cl. 364, 366 (2008); Bannum, Inc. v. United States, 59 Fed. Cl. 241, 243 (2003). "A court, therefore, will not grant a motion for reconsideration if the movant merely reasserts . . . arguments previously made . . . all of which were carefully considered by the court." Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002) (internal quotation marks omitted).

As with the law of the case doctrine, a motion to reconsider based on new evidence will not be permitted unless the movant can demonstrate that the new evidence could not have been obtained with due diligence before the proceedings in question. See, e.g., Chhaparwal v. West Virginia University Hospitals, Inc., 2008 WL 2705148 at *2 (N.D.W.Va., July 9, 2008) (quoting Prudential Securities, Inc. v. LaPlant, 151 F.R.D. 678, 679 (D. Kan. 1993); Commerce Benefits Group, Inc. v. McKesson Corp., 2008 WL 2390784 at *1 (N.D. Ohio, June 9, 2008) ("It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been offered and considered during the initial consideration of the issue.'") (quoting McConocha v. Blue Cross & Blue Shield Mut. of Ohio, 930 F.Supp. 1182, 1184 (N.D. Ohio 1996) (citation omitted)).

## III. ARGUMENT

### A. The Court Determined the Composition of the Shoreline Upon Which Plaintiffs' Properties Are Located As An Issue Relevant to the Liability Decision

#### 1. The Composition of the Shoreline was Relevant to the Liability Determination

In light of the evidence that the St. Joseph jetties caused erosion downdrift of the harbor, the central overarching issue at trial was whether the Corps' mitigation efforts offset any erosion attributed to the Corps. Or, as the Court described it, "[t]he disputed issue in this case, therefore, is whether the government's actions effectively offset the effects of St. Joseph Harbor on plaintiffs' zone such that the erosion in plaintiffs' zone is not attributable to the government." See 78 Fed. Cl. at 616. The Court recognized the key role the geology of the Plaintiffs' shoreline properties would play in addressing that issue, stating "[t]he composition of the lake bed is relevant because the composition affects erosion and mitigation processes." 78 Fed. Cl. at 622. Specifically, the answer to that question, in part, turned on whether the Corps had used nourishment for mitigation purposes suitable for a cohesive or a sandy geology. Id. at 613-14. In short, the issue of the shoreline composition – which Plaintiffs now seek to re-litigate – was fully aired and decided by the Court on the question of liability.

#### 2. The Court Determined That The Shoreline for Plaintiffs' Properties was Sandy and Not Cohesive Except for the Northernmost Properties

The Court carefully, precisely, and, in great detail, analyzed the evidence to determine whether the shoreline for Plaintiffs' properties is sandy or cohesive. 78 Fed. Cl. at 621-28. In sum, the Court found (1) that "[P]laintiffs failed to prove by a preponderance of the credible evidence that plaintiffs' properties are located on a cohesive lake bottom" (id. at 628) and (2)

that, other than those properties that lie in the northernmost portion (and which were identified by Defendant's experts as probably likely to be located along a cohesive shore), the Plaintiffs' properties were located along a sandy shore. Id. Defendant established the composition of the shoreline for Plaintiffs' properties through the testimony and expert reports of Dr. Larson and Dr. Nairn. Id. at 625-28. In commenting upon the evidence, the Court found that Plaintiffs had failed to "refute[ ] the soundness of Dr. Larson's stratigraphic method." Id. at 627. Indeed, the Court determined that the opinion of Plaintiffs' expert, Dr. Chrzastowski, that the lake bed was cohesive was based upon evidence that was credibly refuted by Dr. Larson. Id. at 628.

Though the trial did not focus on individual Plaintiff properties (id. at 628), there was no dispute that Dr. Larson's stratigraphy, upon which Dr. Nairn relied and which the Court examined, was an assessment for the entirety of the shoreline upon which all of Plaintiffs' properties are located. Id. at 621, 625. As the Court concluded, that assessment found that the northernmost part of the zone in which Plaintiffs' properties were located were along a cohesive stretch of the shore and all other properties located to the south were located in a sandy stretch of the shore. Id. at 625, 628.

In the face of this evidence which broke out the shoreline into two zones, one cohesive and one sandy, Plaintiffs elected to hold to their position that the entire shoreline was cohesive and relied principally upon the earlier reports by the Corps, Dr. Chrzastowski's testimony, and a 1992 pilot study conducted by the United States Geologic Survey. 78 Fed. Cl. at 621-28. If they had so chosen, Plaintiffs could have elected to have introduced evidence for the composition of the shoreline for individual or groups of Plaintiffs' properties. In the January 19, 2007, conference, the Court informed the parties that they were free to address any particular features

of individual properties that varied from the otherwise understood general evidence of the shoreline. Defendant's Exhibit 1 at 70:16-71:4. This invitation is a far cry from Plaintiffs' misstatement that the Court "appropriately declined specific evidence regarding each plaintiffs' property." Plaintiffs' Motion at 15. Plaintiffs, however, elected not to do so because it is, and always has been, all or nothing in their belief that the entire shoreline is cohesive.

3. Dr. Nairn's Expert Report Delineated the Boundaries for Where the Shoreline Was Cohesive or Sandy

Dr. Larson created a stratigraphy for the litigation that is found in his expert report. Defendant's Trial Exhibit 3. Dr. Larson's stratigraphy examined and determined those portions of the shoreline in which the Plaintiffs' properties are located that were cohesive or sandy. Id. at 625. Dr. Nairn, in turn, took Dr. Larson's stratigraphy and compared or matched up the boundaries of Plaintiffs' properties against the stratigraphy. Defendant's Trial Exhibit 1 at Figure1.1. Plaintiffs did not question or challenge at trial the alignment of the locations and boundaries of their properties against Dr. Larson's stratigraphy.

**B. Plaintiffs' Refuse to Accept the Court's Findings on Shoreline Composition**

From the earliest stages in this litigation, Plaintiffs have advocated one view and one view only about the character of the geology of the Plaintiffs' shoreline properties. They have steadfastly maintained that the shoreline is a "cohesive" shore. See, e.g., Banks v. United States, 49 Fed. Cl. 806, 813-14 (2001). They advocated that position at trial, adducing testimony from two experts (Dr. Michael Chrzastowski, an expert in coastal geology among other areas, and Dr. Guy Meadows) and other witnesses, and introduced exhibits into evidence to support their theory. 78 Fed. Cl. at 623-24. Now, after an adverse decision, Plaintiffs continue to pursue the issue. Plaintiffs' motive appears to be driven by the fact that most of their properties are located

along a sandy shore which then, under the Court's formulation for damages, allows the effect of the Corps' mitigation to be considered.

Since the Court issued its liability decision on September 28, 2007, Plaintiffs' reasoning about why they should be allowed to re-litigate the shoreline composition has shifted. First, Plaintiffs' counsel misread the Court's liability decision on its face to represent the possibility of re-litigating the question. In a letter dated October 24, 2007, counsel for Plaintiffs took the position that:

> Judge Hewitt's opinion quotes Dr. Larson as saying, "it would always be better to drill" (page 38). At page 39 the court allows for the possibility of further proceedings as to some or all of plaintiffs' properties being cohesive. I propose core drilling in the water along with presentation of lab tests for agreed locations in specific plaintiff properties. We know its till. Maybe this will convince Larson.

See Defendant's Exhibit 2.[4] The Court's opinion, however, stands for no such proposition. Instead, it made clear that "[i]f, in further proceedings, some or all of a plaintiff's property is determined to lie in the northernmost zone characterized by Dr. Nairn and Dr. Larson in their expert reports as not predominantly sandy, the erosion damage to such property will be analyzed as damage to a cohesive shore." Id. at 628. The Court did not open the door for Plaintiffs to re-analyze the shoreline composition. Instead, it was merely a comment that, if a property were determined to be located in the northernmost zone, as determined by Dr. Nairn and Dr. Larson then "the erosion damage to such property will be analyzed as damage to a cohesive shore." Id.

Defendant surfaced the question with the Court in a status report filed December 20,

---

[4] Plaintiffs' reference to passages on pages 38 and 39 of the Court's slip opinion appear to correspond to the Westlaw published opinion at 78 Fed. Cl. at 627 and 628, respectively. Cf., Defendant's Exhibit 3, Excerpt of September 28, 2007 slip opinion.

2007. Docket # 252 at 4. The Court subsequently conducted a status conference on January 22, 2008, based on the information contained in the parties' status reports. At that time, after counsel for Plaintiffs described their intention to proceed with drilling and other tests, the Court explained why it was not overly receptive to re-trying the issue of the shoreline composition. Defendant's Exhibit 4, Excerpt of January 22, 2008 Transcript. The Court noted that Plaintiffs had not persuaded the Court at trial on liability that the shore was predominantly or entirely cohesive; that Defendant had persuaded the Court that most of Plaintiffs' properties were on a sandy shore; that Plaintiffs already had "a bite of the apple, and it's teeth missed the skin for most of the issue;" and that the "softness" in the Court's decision was "really a mapping problem" in juxtaposing Dr. Larson's stratigraphy against the location of properties at the northerly end of Plaintiffs' zone. Defendant's Exhibit 4, Excerpt of January 22, 2008 Transcript at 12:15-13:22.

Although the Court carefully qualified her remarks as being a "little bit of a curbstone view of the papers that [were] in front of [her],"[5/] the status conference apparently led Plaintiffs to adjust their rationale. At a February 19, 2008, status conference, Plaintiffs' counsel advised that they needed to make a property-specific soil exploration of each property in order to foresee what kind of shore protection is going to be necessary as well as for the purpose of driving piles. Defendant's Exhibit 5, Excerpt of February 19, 2008 Transcript at 4:11-5:1.

### C. Plaintiffs Are Not Entitled to Re-Litigate the Issue of the Shoreline Composition

Plaintiffs should not be permitted to re-litigate the issue of the shoreline geological

[5/] Defendant's Exhibit 4, Excerpt of January 22, 2008 Transcript at 11:24-25.

composition for several reasons. Plaintiffs' efforts fail because the issue relates to liability and not damages, and because the law of the case doctrine precludes re-litigating the findings reached by the Court. Further, Plaintiffs have failed to provide any showing to support their motion in the alternative to reconsider and reopen the evidence.

1. The Geology of the Shoreline Was a Liability Issue

As mentioned above, the central issue in the case was whether the Corps' efforts to mitigate were sufficient to offset erosion attributed to the jetties at the St. Joseph Harbor. In light of that issue, the Court's opinion specifically noted how "[t]he composition of the lake bed is relevant because the composition affects erosion and mitigation processes." 78 Fed. Cl. at 622. Certainly the extensive efforts expended at trial underscores how both parties recognized the importance of the geological issue to the liability decision. Plaintiffs' Motion does not appear to take exception. Instead, saddled with an adverse finding and after some shifts in rationale, Plaintiffs appear to contend that they should be permitted to re-visit the issue on a property-by-property basis in order to determine what shore protection to use and for purposes of driving piles.

2. The Geology of the Shoreline is Not a Damages Issue

Aside from helping the Court determine liability, the Court used its findings to determine in what situation the Corps' efforts to mitigate could be considered in arriving at damages. As the opinion delineates, the Corps' mitigation efforts can be considered in calculating damages for only those Plaintiffs whose properties lie along a sandy shoreline for erosion caused after 1970. 78 Fed. Cl. at 656. In other words, the Court has merely incorporated a factual finding reached during the liability phase into the damages calculus as a factual predicate.

### 3. Plaintiffs' Purported Reasons for a Property-By-Property Analysis Is Not Credible

Notwithstanding the stark reality that Plaintiffs had their chance to litigate the shoreline composition at trial and failed to prevail, Plaintiffs have attempted to conjure up a rationale for why re-visiting the issue is appropriate for damages. Plaintiffs claim to believe that doing so will assist them in determining the type of shore protection to employ and for purposes of driving the piles. The argument falters for two reasons.

First, Plaintiffs already have necessarily the very information they seek. The geological condition of the shoreline was established at trial. Plaintiffs simply don't like the findings because it allows the Corps' mitigation efforts to be considered in determining damages for the greater majority of Plaintiffs' properties. That result, however, does not change the reality that they already possess the necessary information.

Second, the attached declarations of David Wolf (Defendant's Exhibit 6) and James Selegean (Defendant's Exhibit 7) reveal two truths that undermine the legitimacy of Plaintiffs' representation for the need to conduct drilling and other tests. Mr. Wolf has worked in constructing shore protection along the shoreline for a number of years in the St. Joseph region. Defendant's Exhibit 7 at 1-2, paragraphs 1-3. Unless the size of the revetment approaches something on the order of a 1000 feet or longer, Mr. Wolf describes how there is no need to conduct soil borings for purposes of determining what kind of shore protection to install. Id. at 5-6, paragraphs 11-12. Indeed, based upon his experience, the better form of shore protection is the placement of boulders, which is something different than what Plaintiffs' reference to driving piles appear to suggest they contemplate installing. Id. at 4, paragraph 10. He also notes that he has never seen residential property owners use soil borings to assist in building shore protection.

Id. at 6, paragraph 12.

Moreover, Mr. Selegean of the Corps conducted a review of 230 permit/permit application files dating back to 1916 for installing shore protection along the St. Joseph shoreline in the area where Plaintiffs properties are located. Defendant's Exhibit 7 at 1-2, paragraphs 1-4. His review disclosed, consistent with Mr. Wolf's experience, that only three of those applications contained evidence of soil borings or an indication that soil borings would be conducted as part of the work or construction along the shoreline. Id. at 2, paragraph 6. Those were files for construction of the Chesapeake and Ohio (C & O) Railroad revetment, the Michigan Department of Transportation revetment, as well as Plaintiffs' counsel's recent application to conduct soil borings on Plaintiffs' shorelines. Id. In short, these declarations expose the Plaintiffs' explanations for the need to re-visit the geology as merely an effort to maneuver around the Court's findings.

4. Plaintiffs' Arguments to Support Their Motion Fail

In an effort to support their motion, Plaintiffs spend considerable energy in making arguments already made at trial. They specifically continue, as they did at trial, to attack Dr. Larson's work, Dr. Nairn's credibility, and to offer Plaintiffs' Trial Exhibit 33, the USGS's 1992 Pilot Study, as support for their position. These arguments avail Plaintiffs nothing. The Court's September 27, 2007 opinion dealt with all of Plaintiffs' arguments and found them lacking. See e.g., 78 Fed. Cl. at 618-19 (credibility of Dr. Nairn); 625-628 (merits of Dr. Larson's work); and 627 ("results-oriented study" of the 1992 USGS Pilot Study). Plaintiffs are trying only to re-hash what has already been considered by the Court.

5. Plaintiffs Are Barred by the Law of the Case and Fail to Carry Their Burden for the Court to Reconsider The Shoreline Composition Findings

For the reasons mentioned above, Plaintiffs' should be precluded from re-litigating the issue of the shoreline composition. Plaintiffs are further precluded under the law of the case doctrine nor have they made an adequate showing for the Court to entertain reconsidering its findings on this issue. The Court's September 27, 2008, findings of fact on the shoreline composition represent the law of the case in this litigation. Plaintiffs have made no showing, whatsoever, to meet the requirements for any exception to the law of the case doctrine. They have made no proffer of new and different evidence – much less that due diligence would not have uncovered any proffered evidence before trial. Nor have they made any effort, aside from re-hashing past arguments, to demonstrate that the Court's findings of fact were "clearly incorrect" or how preserving the prior ruling would work a manifest injustice. Intergraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001) (citing Smith Int'l, Inc. v. Hughes Tool Co., 759 F.2d 1572, 1576 (Fed. Cir.1985)).

The Court can dispense similarly with Plaintiffs' request to treat their motion, in the alternative, as Motion To Reconsider and Reopen the Evidence. Plaintiffs' Motion at 16 footnote 9.[6/] Plaintiffs fail to show or muster any argument that the Court's findings about the shoreline composition were based upon a manifest error of law or mistake of fact. Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 762 (Fed.Cir.2000);

[6/] Because Plaintiffs' Motion, however, contains almost nothing to explain why the Court should reconsider its earlier factual determination about shore composition, Defendant would respectfully ask for further opportunity to respond if Plaintiffs' Reply includes information that ostensibly satisfies the standards of law set forth below.

see also Six v. United States, 80 Fed. Cl. 694 (2008). Nor do they show that: (a) an intervening change in the controlling law has occurred; (b) evidence not previously available has become available; or, (c) that the motion is necessary to prevent manifest injustice. See Bishop v. United States, 26 Ct. Cl. 281, 286 (1992) (citing Weyerhaeuser Corp. v. Koppers Co., 771 F.Supp. 1406, 1419 (D.Md.1991)); see also Int'l Air Response, Inc. v. United States, 81 Fed. Cl. 364, 366 (2008); Bannum, Inc. v. United States, 59 Fed. Cl. 241, 243 (2003).

Further, the arguments Plaintiffs made regarding the work of Drs. Larson and Nairn and Plaintiffs Exhibit 33, the USGS Pilot Study, were arguments made at trial and carefully considered by the Court. Ammex, Inc. v. United States, 52 Fed. Cl. at 557 ("A court, therefore, will not grant a motion for reconsideration if the movant merely reasserts ... arguments previously made ... all of which were carefully considered by the court."). A motion to reconsider is not meant to be a vehicle for parties who want another opportunity to persuade a court to change an earlier opinion. Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 762 (Fed.Cir.2000) ( motion to reconsider is not intended to give an unhappy litigant an additional chance to sway the court).

Plaintiffs have provided the Court no basis to reconsider its findings. Moreover, Plaintiffs have provided no showing that any such basis for the Court to reconsider is material that they were unable to obtain before trial with due diligence. See, e.g., Chhaparwal v. West Virginia University Hospitals, Inc., 2008 WL 2705148 at *2, N.D.W.Va., July 09, 2008 (quoting Prudential Securities, Inc. v. LaPlant, 151 F.R.D. 678, 679 (D. Kan. 1993); Commerce Benefits Group, Inc. v. McKesson Corp., WL 2390784 at *1 , N.D. Ohio, June 9, 2008 ("It is not the function of a motion to reconsider either to renew arguments already considered and rejected by

a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been offered and considered during the initial consideration of the issue.'").

**CONCLUSION**

For the reasons stated above, Defendant respectfully requests the Court deny Plaintiffs' Motion.

Dated: July 15, 2008

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

*s/Terry M. Petrie*
TERRY M. PETRIE
Environment and Natural Resources Division
U.S. Department of Justice
1961 Stout Street, 8th Floor
Denver, CO 80294
Tele: 303-844-1369
Fax: 303-844-1350
Terry.Petrie@usdoj.gov

Attorney for Defendant

OF COUNSEL

Gary W. Segrest, Esq.
Office of Counsel
U.S. Army Corps of Engineers
477 Michigan Avenue, Room 659
Detroit, MI 48226

**CERTIFICATE OF SERVICE**

I certify that I have served a copy of the "**DEFENDANT'S RESPONSE TO PLAINTIFFS' DAMAGES TRIAL MEMORANDUM**" by electronic filing with the United States Court of Federal Claims on the 15th day of July, 2008 on:

John Ehret, Esq.
5986 Dunham Avenue
Stevensville, MI 49127

Eugene J. Frett, Esq.
Sperling & Slater, P.C.
55 West Monroe Street
Suite 3200
Chicago, Illinois 60603

and by first class, postage paid, mail on:

Mark E. Christensen
Christensen & Ehret
Attorney at Law
222 West Adams Street
21st Floor
Chicago, IL 60606

****************

*s/Terry M. Petrie*
TERRY M. PETRIE

# LIST OF EXHIBITS

| Number | Document |
|---|---|
| 1 | Excerpt of January 19, 2007 Transcript (pages 1-4, 64, 68-71) |
| 2 | Letter dated October 24, 2007, from John B. Ehret to Terry M. Petrie (without enclosures) |
| 3 | Excerpt of September 28, 2007 slip opinion in Banks v. United States |
| 4 | Excerpt of January 22, 2008 Transcript (pages 1-2, 11-14) |
| 5 | Excerpt of February 19, 2008 Transcript (pages 1-5) |
| 6 | Declaration of David P. Wolf, dated June 10, 2008 |
| 7 | Declaration of James Selegean, dated July 14, 2008 |