# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOHN H. BANKS, ET AL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 99-4451L |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Chambers, Suite 617
National Courts Building
717 Madison Place NW
Washington, D.C.

Friday,
January 19, 2007

The parties met, pursuant to notice of the Court, at 2:00 p.m.

BEFORE: HONORABLE EMILY C. HEWITT
Judge

APPEARANCES: (Via Telephone)

<u>For the Plaintiff</u>:

JOHN EHRET, Esquire
20860 Greenwood Drive
Olympia Fields, Illinois 60461
(708) 748-8975

<u>Also for the Plaintiff</u>:

DREW MARROCCO, Esquire
Sonnenschein, Nath & Rosenthal, LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, D.C. 20005
(202) 408-6400

APPEARANCES: (Cont'd)

Also for the Plaintiff:

EUGENE FRETT, Esquire
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
(312) 641-3200

For the Defendant:

TERRY PETRIE, Esquire
HEIDE HERRMANN, Esquire
U.S. Department of Justice
Environment and Natural Resources Division
1961 Stout Street, Eighth Floor
Denver, Colorado 80294
(303) 844-1369

For the Army Corps of Engineers:

GARY SEGREST, Esquire

P R O C E E D I N G S

(2:00 p.m.)

THE COURT: Good afternoon. This is Judge Hewitt.

MR. EHRET: Good afternoon, Your Honor.

MR. PETRIE: Good afternoon, Your Honor.

THE COURT: Let me say that we're on the record with Heritage Court Reporting in Chambers. And I'm going to ask people to identify themselves first for the record, and second, at any occasion when they speak. For the Plaintiff?

MR. EHRET: John Ehret speaking.

THE COURT: Thank you. And who is with you?

MR. FRETT: Eugene Frett. I'm on a separate line, Your Honor.

THE COURT: Yes. Thank you, Mr. Frett, and good afternoon. And?

MR. MARROCCO: Drew Marrocco.

THE COURT: Thank you, sir.

MR. MARROCCO: Good afternoon, Your Honor.

THE COURT: Good afternoon. And for the United States?

MR. PETRIE: Good afternoon, Your Honor. This is Terry Petrie. I'm for the United States.

THE COURT: Thank you. And is anyone else

representing the United States on the line?

MS. HERRMANN: Yes, Your Honor. Heide Herrmann with the Department of Justice also.

THE COURT: Thank you.

MR. SEGREST: And Gary Segrest with the U.S. Army Corps of Engineers.

THE COURT: Thank you. The Court has before it the motion to strike Dr. Robert B. Nairn's expert report, Defendant's response to that report, and Plaintiff's reply. And the Court also requested and received briefing concerning a listing of the missing information that Defendant planned to provide to Plaintiffs and Plaintiffs' legal argument for their motion. And both parties have responded to the Court's order and replied to each other's response.

Also before the Court for consideration in the nature of a status conference after argument is an order promulgated by the Court on January 4 which requested that the parties consider a schedule for pretrial activities in the case in the schedule for trial. Are there any other agenda items for this conference call at this time?

MR. EHRET: No, Your Honor. John Ehret.

THE COURT: Thank you for the Plaintiff. And for the United States?

the case that" questions coming in from counsel on cross-examination.

So I don't want this to become a source of difficulty in trial preparation if Dr. Nairn does become listed as a witness. The Plaintiffs remain, as they were at the beginning of the case, the bearers of the burden to show that a taking was caused and the extent of the taking by the United States under their theory of the case, which is the St. Joseph Harbor jetties, interfered with the sand on the beach.

Let me turn then to the status conference portion of this gathering, which is to look at our order filed on January 4, 2007, and learn whether or not the matters that are scheduled there, is that a schedule that's agreeable to the parties, and if not, some other suggestions. Plaintiffs?

MR. EHRET: Judge, counsel Petrie and I have spoken, as you directed, and according to our conference, there's no problem.

THE COURT: Okay.

MR. MARROCCO: Your Honor, this is Drew Marrocco.

THE COURT: Yes.

MR. MARROCCO: My only concern, Your Honor, is that, as I understand the way this argument

preparation for trial, which is in June, could be held either before or after the April 4 date, and if it affected the contentions of fact and law, certainly we could amend.

So I guess based on the representations, I hear Mr. Marrocco but think that I would prefer instead of writing a lot of caveats, if the overall schedule is good, to go ahead and order it, with the recognition that relief in terms of reopening discovery, in terms of the deposition, that the parties could agree on reasonable tweaks to the schedule to accommodate any surprises that result from the review of these documents.

Could I rely on that? And the parties will come to the court if they can't make a reasonable accommodation.

MR. PETRIE: That's acceptable to me, Your Honor.

THE COURT: Mr. Ehret?

MR. EHRET: That's fine, Judge.

THE COURT: Okay. Now I've put a couple things in the order because I want you to be aware, particularly where a trial is so heavily relying on a science that none of us is expert in, that the scenario that I always want to avoid at trial -- and I

have to try many technical matters; I'm expert on basically nothing that comes in front of me -- is that I will be educated by the parties and their witnesses at trial.

And that next-to-last paragraph which is really very important to the Court's education, we have a trial that's not on the paper but with live witnesses, particularly needs technical areas for a reason. And that reason is to try to get on the record the pieces, really the high points of the argument with a person who knows the subject area and with as well-educated an examiner, which the lawyers get themselves up to speed to do, with the assistance of people who are working with them, so that the big pieces of the theories of the case of Plaintiff and Defendant come into pretty clear relief for the Court.

I don't want to be ever at the end of trial kind of wondering what the case was about, nor do I want to be in a situation in which I am sitting with 20, 40 shelf-feet of exhibits and somebody basically writes a posttrial piece of briefing that points to the shelf of exhibits and says, Judge, our winning case is in there somewhere. That's not the way this is going. It can't end up that way.

It's got to end up with me hearing the case

with the percipient witnesses and expert witnesses pointing to these formulas, pointing to the evidence, pointing to the damage that's caused, and helping the Court understand so that I can write in as coherent a fashion as possible an explanation of why I think or do not think that this set of facts and circumstances yields a takings result for the Plaintiff or does not do so under the Fifth Amendment of the Constitution.

I want to say a couple of other things about the scope of this trial. The scope of the trial should leave the Court with a general view, assuming some taking, a general view about the taking, the nature of that taking, across the entire length of the properties that are owned by the individual plaintiffs.

We do not want to get into a situation in which there is a judgment on liability, which is the purpose of this trial, and then that opinion is written. Six months down the road, we get into a situation where we are now speaking about individual property owned by the Horvath Trust and comes some discussion about well, this is special because actually the whole beach works differently in front of Horvath. We don't want to be in that situation.

I mean, it doesn't mean we wouldn't, but

this is our shot to learn what happened along the shorefront. It sounds to me as if Plaintiffs are thinking about that. I just want to make sure everybody is thinking about that.

So this is our liability. We want to end up with principles that treat this phenomenon in a way that will allow us on an assumption of liability to then turn crisply -- and I can only believe the Plaintiff would like to get this done crisply -- but as you know, we will need to deconsolidate or deconsolidate into groups in some fashion.

We would need to deconsolidate the individual plaintiffs because the tradition of jurisprudence in this area is that the individual owner, because of the value of their property and various other reasons, the question of damages is specific to the individual plaintiff, individual property owner.

So I want to get as many general -- this trial addresses the issue of damage generally so that we can then go as crisply as possible if we do have a liability finding in the trial to damages.

Are there any discussion points or questions on those remarks from the Court?

MR. EHRET: John Ehret speaking. Not here,