JOHN B. EHRET
20860 GREENWOOD DRIVE
OLYMPIA FIELDS, IL 60461
PHONE: 708-748-8975
FAX: 708-748-7661

email: jbehret@covad.net

SPRING
SUMMER
FALL

5986 Dunham Ave.
Stevensville, MI 49127
Phone: 269-465-5857
FAX: 269-465-3736

October 24, 2007

Attorney Terry M. Petrie
U. S. Department of Justice
Environment and Natural Resources Div.
1961 Stout Street 8th Floor
Denver, CO 80294

Tel. (303) 844.1369
Fax: (303) 844.1350
emaiil: Terry.Petrie@doj.gov

Subject: Banks v. USA, U. S. Court of Federal Claims 99-4451 1
Opinion of Judge Emily C. Hewitt E-filed 9-28-07 Doc 245
Settlement discussion by phone — Petrie, Segrest & Ehret

Dear Attorney Petrie:

Pursuant to our discussion by phone on 10-18-07 with Attorney Segrest, I have reviewed the condition of the shore front of my clients' homes. Please refer to the attached PX Summary 5b and 5b1 (Encl. 1)

The Plaintiff properties on 5b and 5b1 are arranged north to south, and all lake frontages are under water to Conklin. There is no visible beach all the way south to Country LLC, located 34,770' from St. Joseph. The lake level is at an all time recorded low.

From that point south, the 20 to 30 foot high foredune is gone. There is a gradually widening beach from Conklin's (at 38,870' from St. Joseph) PX Summary 4.0.18 to Bunker (at 42,000' from St. Joseph) PX Summary 4.0.11. At Ehret's, it has been measured as about 200' wide, but only 4 or 5 feet deep at the bottom of the dune bluff or stairs.

The source of this sand has to be from the weaker waves from the south which pick up sand from the Grand Mere State Park and the Warren Dunes.

I have enclosed about seven color PX Summary photos (Encl. 2) from Melcher and Carole Ehret in Grand Mere which show the lake up on our sea walls during the periods 1985, 6, 7 and 1996, 7.

The point made by this is that the NOAA-USGS Report from 1992 was correct when it said that the entire area to the end of the Grand Mere had till with sand cover that was "thin to nonexistent."

In addition to there being no significant foredune depth (or about 30'/5' - 1/6th of its 1946 height), the lake bed is thick with glacial till. This is evidenced by tests done at Testing Service Corporation and forwarded to you by my February 17, 2007 letter (Encl. 3) (additional copy enclosed).

Judge Hewitt's opinion quotes Dr. Larson as saying, "it would always be better to drill" (page 38). At page 39 the court allows for the possibility of further proceedings as to some or all plaintiffs' properties being cohesive. I propose core drilling in the water along with presentation of lab tests for agreed locations in specific plaintiff properties. We know it's till. Maybe this will convince Larson.

The recent highs of 1986 and 1997 (Encl. 5) compared to the 2007 low indicate about a ten to twenty year cycle. Without a continuous sand foredune (at least ten feet high and 50 feet wide) we will not have the protection we need for the next series of highs in five to ten years. The 50-foot berm was the 1958 Berrien County Erosion Control Board Report recommendation, in addition to about 4.35 cubic yards per front foot annual nourishment direct to individual properties (PX 132).

Neuser, Ragins, Cunat and Gregule are entitled to be compensated now for the complete loss of their properties at today's prices, i.e., $15,000 per front foot. That's $1,350,000 at 30% for 300 feet in the case of Cunat and Gregule. The question needs to be asked: Why aren't we entitled to the same current price being gotten north of the piers, i.e., $30,000 per front foot at 440 N. Ridgeway?

## OTHER MATTERS PROSPECTIVES

Property value is skyrocketing here about - $15,000 per front foot for a tear down if there is beach access. This is Gorski's in Grand Mere - right next to Horvath, on the south.

Based on those prices, the Ehret property has tripled since 1995 when our appraisal was for $550,000/FF. That's $1,650,000 and it will triple again in the next 12 years, provided it doesn't wash away.

Corps Section 111 mitigation is not 5th Amendment compensation which needs to replace permanently lost fast land with trees and houses. The location of compensation must be at the location of the damage, not at the Lions Park beach 38,000' away. When developers fill a wetland, they can mitigate by construction of a mitigating wetland in the nearby area, but that is not what the constitution had in mind when it set forth the 5th Amendment.

The Corps has to solve the "effectiveness" problems cited in the 1999 Monitoring Program Report PX-41 page 4. Even if they did scratch the surface of the "effectiveness" problems, they still have not replaced one blade of dune grass, a tree or a house.

Another way to put the problem is they say that putting sand at Lions Park does not compensate above the OHWM, but taking sand below the OHWM does cause erosion above the OHWM.

The Corps must comply with the dictates of Owen at 851 F2d 1412 (1988) that

> It is not the location of the cause of the damage that is relevant, but the location and permanence of the effect of the government action causing the damage that is the proper focus of the taking analysis.

Under Judge Hewitt's ruling, the location of the permanent effect is on the fast land above the OHWM. The Corps has not replaced any fast land, i.e., terrestrial vegetation, trees, structures.

Plaintiffs think (just as the Owen court did at 1412)

> . . . that the permanent washing away of fast land and a house as the result of government construction is well within the scope of the TriState holding, which makes it clear that it is "the permanence of the consequences of the Government act that is controlling . . . " (Tristate Materials v. U.S.A. 550 F2d 1, at 7-8).

PROPERTIES SOLD OR DESTROYED
REASONABLY FORESEEABLE LOSS

| Name | Front Feet | Years | |
|---|---|---|---|
| Marzke | 246 | 24 | |
| Neuser | 163 | 11 | |
| Ragins | 118 | 32/14 (Ave. 23) | |
| Lahr | 112 | 47 | |
| Renner | 92 | 34 | Total $ Claimed |
| McKay | 200 | 69 | 1999 |
| Stevens | 92.6 | 34 | No interest |
| Banks | 120 | 18 | $8,220,778 |
| Cunat | 139 | 26 | |
| Gregule | 225 | 26 | |
| Bunker | 70 | 24 | |
| | 1,113 | 336 | |

a. Shore protection diminishes lake access, so value of properties sold were for too low a price (50% - ?)

b. Neuser (163'), Ragins (118'), Cunat (139'), Gregule (225'), and Bunker (70') totals 715' at $15,000/FF - $10,725,000. 50% increase or $22,500/FF seems reasonable.

c. Interest: 1999 Corps calculation $56,000,000
2007 ?

d. Revise 5b and 5b1 to add Bodnar, O'Konski and Horvath and to subtract Walsh (dropped from the suit). This gives 6,582/FF for total of all plaintiffs. Current sale price plus 50% is estimated at $22,500/FF. 6,582' x $22,500 = $148,095,000.

REASONABLY FORESEEABLE

1. The downcutting or lakebed lowering (same effect) will continue at 3.5" per year or greater based on recent bathymetry. The north-south focus of downcutting or

1. The downcutting or lakebed lowering (same effect) will continue at 3.5" per year or greater based on recent bathymetry. The north-south focus of downcutting or lowering will continue to move south, all-be-it with dwells and reversals. Environment of Canada seems to have the latest lake level graph (Encl. 5).

| | | |
|---|---|---|
| 1986 High 582.7' | see | PXS-Melcher 5, 6, 9, 10 and<br>PXS-Ehret 15, 16, 26, 27, 28 |
| 1997 High 581.4 | | " |
| 2007 Low 577.26* | | ACOE Monthly Bulletin of (Encl. 6)<br>Lake Levels October 2007<br>*Lower by .8 feet for no<br>isostatic rebound. (576.46') |

The present condition of sandy shore in Grand Mere is from the temporary dominance of southerly waves delivering sand by the taking of fast foredune sand from Grand Mere State Park as shown in the 3rd last picture in PXS-4 picture book.

2. The November 1999 Great Lakes Update - Vol. NO. 137 states:

> "While there appears to be more sandy material on the beaches and in the nearshore during low water, the total amount of sand in the system has not increased. When the lake levels are high, storms tend to move sand offshore and deposit it on sandbars. During low water, these sandbars move towards shore and fuse with the beach (if there is one — comment by Ehret), giving the appearance of a more sand rich environment. The circuit of migrating sand from offshore bars to the beach and back is a continual process. The impacts of sedimentation, occurring in both high and low water regimes, is most visible when lake levels recede."

Comment:

When next, dominant energy waves come from the north where there is no source of sand, the northerly properties will be badly beaten and the thin layer of sand on the beach at Grand Mere will disappear. Then the high lake levels which are inevitable in five or ten years will start retaking above the shoreline

I hope this letter gives us a place to start. The most obvious group to work on is the listed properties on page 4 since they have no reasonably foreseeable damages. We should notify the court. Phone conference?

Very truly yours,
John B. Ehret
Plaintiffs' Attorney

Enclosures:

1. Table of Front Feet & Years Owned Revised 10-21-07 for 38 plaintiffs
2. Aerial photos of Melcher 1985,6 and Carole Ehret 1984,5 and 1998,9
3. February 17, 2007 letter to Petrie w/TSC test results
4. 1865 - 2001 Monthly Mean Water Levels for Great Lakes
5. Same with 1986 and 1997 Highs Highlighted
6. October 2007 Corps Bulletin of Lake Levels for Great Lakes
7. February 19, 2004 Chicago Tribune SEAWALL costs $7,125/FF