# UNITED STATES
# COURT OF FEDERAL CLAIMS

JOHN H. and MARY E. BANKS, et al.,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Docket No. 99-4451L

---

EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and

DONNA P. FRETT,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

Docket No. 05-1353L

Pages: 1 through 17

Place: Washington, D.C.

Date: January 22, 2008

**HERITAGE REPORTING CORPORATION**

*Official Reporters*

1220 L Street, N.W., Suite 600

Washington, D.C. 20005-4018

(202) 628-4888

hrc@concentric.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JOHN H. and MARY E. BANKS, et al., Plaintiffs, v. THE UNITED STATES OF AMERICA, Defendant. | Docket No. 99-4451L |
| EUGENE J. FRETT, Individually and as trustee of the Victor J. Horvath and Frances B. Horvath Trust, and DONNA P. FRETT, Plaintiffs, v. THE UNITED STATES, Defendant. | Docket No. 05-1353L |

Room 617, Chambers
National Courts Building
717 Madison Place NW
Washington, D.C.

Tuesday,
January 22, 2008

The parties met, pursuant to the notice of the Court, at 10:59 a.m.

BEFORE: HONORABLE EMILY C. HEWITT
Judge

APPEARANCES: (Via Telephone)

For the Plaintiff:

EUGENE FRETT, Esquire
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
(312) 641-3200

JOHN EHRET, Esquire
20860 Greenwood Drive
Olympia Fields, Illinois 60461
(708) 748-8975

MARK CHRISTENSEN, Esquire
Christensen & Ehret, LLP
222 West Adams Street, Suite 2170
Chicago, Illinois 60606
(312) 634-1014

For the Defendant:

TERRY PETRIE, Esquire
U.S. Department of Justice
Environment & Natural Resources Division
1961 Stout Street, 8th Floor
Denver, Colorado 80294
(303) 844-1369

DON ERWIN, Esquire
GARY SEGREST, Esquire
U.S. Army Corps of Engineers
Office of Counsel
477 Michigan Avenue, Room 659
Detroit, Michigan 48226
(313) 226-2510/(734) 676-9749

would like to make any comments at this point.

THE COURT: I'd be glad to have him address the Court. Mr. Christensen?

MR. CHRISTENSEN: Good morning, Your Honor, I've known John now for probably 20 years, and he has been a partner of mine. I'm very thankful that the Court is giving him the time to find out the prognosis and the course of treatment that he's going to need for this.

In the interim, I will be reviewing much of the material. I have read once your opinion of 85 pages, which is extremely detailed. So it's going to take me a little bit of time to get up to speed.

But I think ultimately the issue would be whether Mr. Petrie has any authority to eventually resolve it, now that the liability finding has been made, and then if not, you know, working with John, identifying a time period for a brief trial on damages, to bring the case to a conclusion.

THE COURT: Thank you, Mr. Christensen. The Court welcomes your participation and support of Mr. Ehret, who has obviously the longest acquaintance of this case of any of us.

Just to give a little bit of a curbstone view of the papers that are now in front of me, none

of which I'm going to be addressing dispositively in any way, as regards the immediate motions is moot. It is a challenge, because of the inclusive aspects of the trial on liability, and particularly on the question of ownership and the location of where we have watermark at different periods, such as acquisition, today, 1970, 1950, in case that's relevant for earlier owning property.

But there is still some factual development to do. There's no reason why whoever is talking between now and the 19th, whether it's Mr. Frett, Mr. Petrie, or Mr. Christensen or Mr. Mr. Ehret, that you can't continue to think about efficiencies in developing that evidence.

The Court, I think, as presently advised, I'd like to talk to you about the whole question of the sandy shore versus the cohesive shore. The Plaintiffs did not persuade the Court at trial on liability that the shore was predominantly or entirely cohesive.

In fact, the United States persuaded the Court, based largely on the examination of the study by Mr. Larson, that it was more likely than not -- and that's the standard -- that most of Plaintiffs' properties were on a sandy shore.

I'm not heading for an argument with someone here. But I'm telling you that it would not be the first desire of the Court, or even down a very long list of desires, to retry an issue that's that important, in which the Plaintiff has already had a bite of the apple, and it's teeth missed the skin for most of the issue.

The softness in that conclusion that's in the opinion -- and this is really a mapping problem, less than anything else -- when you look at Dr. Larson's study, we don't actually have in evidence that was explained to the Court -- although it may be in there somewhere in the paperwork of the case. But we don't have in evidence explained to the Court, whose properties were at the northerly end of the Plaintiff properties, who could have fallen into the area that it shows as cohesive on Dr. Larson's study.

So that is not a question of, now we're going to study the entire shore. That's a question of, what does the grid look like when you put Plaintiff's properties on top of the Larson study. So it's a very much smaller issue.

I don't close the door on a retrial or some reason for miscarriage of justice that that's wrong. But the Plaintiff's have a heavy burden here, because