# In the United States Court of Federal Claims

No. 99-4451 L
c/w 99-4452L, 99-4453L, 99-4454L, 99-4455L, 99-4456L, 99-4457L, 99-4458L, 99-4459L, 99-44510L, 99-44511L, 00-365L, 00-379L, 00-380L, 00-381L, 00-382L, 00-383L, 00-384L, 00-385L, 00-386L, 00-387L, 00-388L, 00-389L, 00-390L, 00-391L, 00-392L, 00-393L, 00-394L, 00-395L, 00-396L, 00-398L, 00-399L, 00-400L, 00-401L, 05-1353L, 05-1381L, 06-72L

(E-Filed: March 30, 2011)

| | | |
|---|---|---|
| _____ | ) | |
| JOHN H. BANKS, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | 99-4451 L |
| | ) | |
| v. | ) | |
| | ) | An Observation by the |
| | ) | Appellate Court in its |
| THE UNITED STATES, | ) | Opinion on a Motion |
| | ) | Under RCFC 12(b)(1) |
| Defendant. | ) | Does Not Constitute the |
| | ) | Law of the Case for |
| | ) | Trial on the Merits |
| _____ | ) | |
| | ) | |
| EUGENE J. FRETT, Individually and | ) | |
| as Trustee of the Victor J. Horvath | ) | |
| and Frances B. Horvath Trust, | ) | |
| | ) | |
| Plaintiff, | ) | 05-1353 L |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Mark E. Christensen, Chicago, IL, with whom was John B. Ehret, Olympia Fields, IL, for plaintiffs in No. 99-4451 L.  Eugene J. Frett, Chicago, IL, pro se in No. 05-1353 L.

Terry M. Petrie, Environment and Natural Resources Division, United States Department of Justice, Denver, CO, with whom were Ignacia S. Moreno, Assistant Attorney General, and Mark S. Barron, Trial Attorney, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.  Gary W. Segrest and Don C. Erwin, Office of Counsel, United States Army Corps of Engineers, Detroit, MI, of counsel.

ORDER

Before the court are Plaintiffs' Motion in Limine to Exclude Evidence of Nearshore Lakebed Composition (plaintiffs' Motion or Pls.' Mot.), Docket Number (Dkt. No.) 434, filed on February 22, 2011; United States' Response in Opposition to Plaintiffs' Motion in Limine to Exclude Evidence of Nearshore Lakebed Composition (defendant's Response or Def.'s Resp.), Dkt. No. 442, filed on March 5, 2011; and Plaintiffs' Reply to United States's [sic] Opposition to Motion in Limine to Exclude Evidence of Nearshore Lakebed Composition, Dkt. No. 447, filed on March 9, 2011.

For the reasons set forth below, plaintiffs' Motion is DENIED.

I.    Background[1]

Plaintiffs are the owners of property along approximately four and a half miles of the eastern shore of Lake Michigan south of St. Joseph Harbor.  Sept. 28, 2007 Opinion, Banks v. United States (Banks (liability)), Dkt. No. 245, 78 Fed. Cl. 603, 604 (2007). Beginning in the 1830s, the United States government, acting through the United States Army Corps of Engineers (defendant or the Corps) re-constructed the mouth of the St. Joseph River and began constructing harbor jetties that jutted into Lake Michigan in order to accommodate commercial shipping vessels exiting the St. Joseph River into Lake Michigan.  Id.  Over time, the Corps lengthened the jetties and encased them in steel.  Id.

---

[1]The following summary of the background and procedural posture of this case contains the details material to Plaintiffs' Motion in Limine to Exclude Evidence of Nearshore Lakebed Composition (plaintiffs' Motion or Pls.' Mot.), Docket Number (Dkt. No.) 434.  A thorough discussion of the history of the case can be found in the court's opinion following trial on liability.  See generally Sept. 28, 2007 Opinion, Banks v. United States, Dkt. No. 245, 78 Fed. Cl. 603, 604-10 (2007).

Plaintiffs claim that the Corps' construction and maintenance of the jetties caused erosion of their shoreline property.  Id.  In 2001 defendant filed a motion to dismiss on the ground that plaintiffs' claims were barred by the six-year statute of limitations applicable to suits brought under the Tucker Act, 28 U.S.C. § 2501 (1994).  July 31, 2001 Opinion and Order, Banks v. United States (Banks (accrual) I), Dkt. No. 3, 49 Fed. Cl. 806, 809 (2001), rev'd, 314 F.3d 1304 (Fed. Cir. 2003).  The court stated that, pursuant to the stabilization doctrine, when the government allows a taking of land to occur by a continuing process of physical events, the landowners' cause of action "does not accrue until 'the situation becomes stabilized.'"  Id. at 810 (quoting United States v. Dickinson, 331 U.S. 745, 749 (1947)).  The court further stated that "'stabilization [within the meaning of Dickinson] occurs when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined.'"  Id. at 811 (bracketed material in original) (quoting Boling v. United States, 220 F.3d 1365, 1370-71 (Fed. Cir. 2000)).

The court concluded that "the erosion situation became 'stabilized' within the meaning of Dickinson" in 1989 because "by 1989, the gradual process of shoreline erosion set into motion by the government had resulted in a permanent taking and the extent of the damage had become reasonably foreseeable."  Id. at 825 (citing Dickinson, 331 U.S. at 749).  The court therefore determined that plaintiffs' claims accrued in 1989 and that "the time for filing suit expired in 1995."  Id. (citing 28 U.S.C. § 2501 (1994)).  The court granted defendant's motion to dismiss.  Id. at 826.

The United States Court of Appeals for the Federal Circuit (Federal Circuit) reversed, stating that "the question is whether the 'predictability [and permanence] of the extent of the damage to the [plaintiffs'] land' was made justifiably uncertain by the Corps'" efforts to mitigate the erosion.  Banks v. United States (Banks (accrual) II), 314 F.3d 1304, 1309 (Fed. Cir. 2003) (bracketed material in original) (quoting Applegate v. United States, 25 F.3d 1579, 1583 (Fed. Cir. 1994)).  Because mitigation efforts "appeared to successfully stave off the damaging effects of the jetties . . . the accrual of plaintiffs' claims remained uncertain" until the Corps published three reports, which "collectively indicated that erosion was permanent and irreversible."  Id. at 1310.  The Federal Circuit further stated that, because the statute of limitations did not begin to run until all three reports had been published, and because "each report was issued less than six years before plaintiffs filed their complaints, each complaint was timely."  Id.

On remand, the court held a trial on the issue of liability, Banks (liability), 78 Fed. Cl. at 608, determining that defendant is liable for a portion of the erosion that has taken place on plaintiffs' properties, id. at 654-57 (discussing defendant's liability as to different types of property during different time periods).  Following the trial on liability, the court scheduled a trial, to begin on April 18, 2011, to determine the measure of damages in this case.  See Aug. 5, 2010 Order, Dkt. No. 422, at 3.

3

In the court's opinion following the trial on liability, the court determined that damages would need to be calculated differently for owners whose properties located in cohesive lakeshore areas than for owners whose properties were located in sandy lakeshore areas. Banks (liability), 78 Fed. Cl. at 654-57. Specifically, the court determined that for properties located in sandy lakeshore areas, defendant is liable for damage after 1970 "that was not effectively mitigated." Id. at 656. For properties located in cohesive lakeshore areas, the Corps' mitigation efforts were irrelevant because "erosion of cohesive material is permanent and irreversible." Id. at 628.

The court stated that "plaintiffs failed to prove by a preponderance of the credible evidence that plaintiffs' properties are located on a cohesive lake bottom." Id. at 628. However, "The trial did not focus on particular properties." Id. Therefore, "If, in further proceedings, some or all of a plaintiff's property is determined to lie in the . . . zone characterized . . . as not predominantly sandy, the erosion damage to such property will be analyzed as damage to a cohesive shore." Id. In the intervening years since the trial on liability, discovery on the issue of lakeshore composition continued. See, e.g., Nov. 16, 2009 Order, Dkt. No. 365, at 4 (ordering defendant, as a result of a motion to compel filed by plaintiffs, to produce "all documents which refer, relate to or mention the composition of the nearshore lakebed . . .").

Plaintiffs now argue, citing the Federal Circuit's analysis of jurisdiction in Banks (accrual) II, that "it is the law of this case that [p]laintiffs' damages are 'permanent and irreversible,'" and that the court must exclude as irrelevant from the upcoming trial all "evidence offered to prove that [p]laintiffs' erosion damages may be reversed and/or mitigated after January 2000." Pls.' Mot. 2.

II.     Legal Standards

"The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts." Gould, Inc. v. United States, 67 F.3d 925, 930 (Fed. Cir. 1995) (quotation omitted). Pursuant to the law of the case doctrine:

> When a case has been once decided by [a superior court,] . . . [t]he [lower court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it . . . .

In re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895). The law of the case doctrine is distinct from the doctrine of stare decisis:

4

> The doctrine of law of the case, like stare decisis, deals with the circumstances that permit reconsideration of issues of law. The difference is that while stare decisis is concerned with the effect of a final judgment as establishing a legal principle that is binding as a precedent in other pending and future cases, the law of the case doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing principle in later stages.

18 James Wm. Moore et al., Moore's Federal Practice § 134.01[2] (3d ed. 2011). "'[T]he law of the case doctrine is not applicable to issues neither presented nor decided in a former proceeding in the case.'" Halpern v. Principi, 384 F.3d 1297, 1301 (Fed. Cir. 2004) (quoting Stearns v. Beckman Instruments, Inc., 737 F.2d 1565, 1568 (Fed. Cir. 1984)); Liquid Dynamics Corp. v. Vaughan Co., 449 F.3d 1209, 1220 (Fed. Cir. 2006).

III.    Analysis

Because the law of the case doctrine applies only to issues presented and decided, the Federal Circuit's decision in Banks (accrual) II does not establish that plaintiffs' properties are located in areas of cohesive lakeshore or that the erosion of their properties is permanent and irreversible.

Plaintiffs argue that the Federal Circuit "expressly found that a permanent taking had occurred after the Corps issued [three reports] that 'collectively indicated that erosion [due to the government's construction of jetties at St. Joseph Harbor] was permanent and irreversible.'" Pls.' Mot. 3-4 (bracketed material in original) (quoting Banks (accrual) II, 314 F.3d at 1310). Plaintiffs contend that, because "the law of the case doctrine applies not only to issues decided explicitly, but also to everything decided by necessary implication," id. at 9 (quotation omitted), the Federal Circuit's finding that the damage to their properties was permanent and irreversible "necessarily includes the finding that all of [p]laintiffs' properties are adjacent to nearshore lakebeds that are cohesive rather than sandy," id. at 10 (arguing that "[i]t is undisputed in this case that erosion of cohesive lakebeds is permanent and irreversible" (citing, inter alia, Banks (liability), 78 Fed. Cl. at 622)). In other words, according to plaintiffs, it is the law of the case that their properties are located in cohesive lakeshore areas and that the damage done to them is "permanent and irreversible." Id. at 11. Plaintiffs argue that, because these findings are the law of the case, they "cannot be relitigated in this [c]ourt at the trial on damages." Id. at 2. Therefore, under Rule 402 of the Federal Rules of Evidence, "any evidence offered by the Corps to show mitigation of [p]laintiffs' damages after January 2000"[2] and "any

---

[2] January 2000 is the date of stabilization of plaintiffs' claims. The United States Court of Appeals for the Federal Circuit "concluded that '[t]he statute of limitations did not begin to run [for plaintiffs' claims] until the Corps issued the [three reports].' Because the last of the three reports . . . was issued in January 2000[,] . . . the effective date of claim accrual for plaintiffs' claims in this case is January 2000." June 23, 2005 Opinion and Order, Banks v. United States,

5

evidence regarding the composition of nearshore lakebeds adjacent to [p]laintiffs' properties is irrelevant, inadmissible and should be excluded at the damages trial." Id. at 12 (citing Fed. R. Evid. 402).

Defendant responds that "[p]laintiff's attempt to invoke the law of the case doctrine in this matter is flawed because it overlooks the procedural posture of this case." Def.'s Resp. 9. Defendant argues that "[t]he Federal Circuit's decision was limited to a determination of when [p]laintiffs should have been aware of the permanency of any alleged taking such that the statute of limitations began to run. The Federal Circuit made no factual findings related to liability and merely remanded the action . . . for further proceedings." Id. (citing Banks (accrual) II, 314 F.3d at 1310).

As the Federal Circuit explained in Halpern, 384 F.3d at 1301, "[T]he law of the case doctrine is not applicable to issues neither presented nor decided in a former proceeding in the case." Halpern, like this case, related to whether the determination of jurisdictional facts creates law of the case that binds the court in later proceedings. In Halpern, the Federal Circuit addressed a second appeal related to an attorney's application for fees under the Equal Access to Justice Act (EAJA). Id. at 1299-1300. In the first appeal, the Federal Circuit reversed the decision of the United States Court of Appeals for Veterans Claims (Veterans' Court) that it did not have jurisdiction and remanded for consideration of the merits of the attorney's claim. Id. at 1300. The Federal Circuit did not consider whether the attorney, Elie Halpern, was "a 'prevailing party' within the meaning of EAJA," a question the court determined was beyond the scope of its jurisdiction to determine in the first instance. Id. at 1301.

"On remand, the Veterans' Court denied Halpern's EAJA application." Id. at 1300 (citation omitted). Halpern brought a second appeal, challenging the denial of his EJEA application. Id. The government argued that "in declining to decide the prevailing party issue, [the Federal Circuit had] adopted Halpern's argument that [the Federal Circuit] did not have jurisdiction to review prevailing party determinations of the Veterans' Court." Id. at 1301. The Federal Circuit disagreed. In the first appeal, the Federal Circuit had concluded that it did not have jurisdiction to determine in the first instance whether Halpern was a prevailing party. Id. In the second appeal, the Federal Circuit was asked to review the determination of the Veterans' Court that Halpern was not a prevailing party. Id. The Federal Circuit explained, "Now that the question has been decided in the first instance by the Veterans' Court, we have jurisdiction over and are required by statute to review all relevant questions of law." Id. (citation omitted). The law of the case doctrine did not require the Federal Circuit to determine that it did not have jurisdiction "because the issue presented in the present appeal is not the same as that presented in the previous appeal." Id. In light of Halpern, the court must determine

---

Dkt. No. 87, 68 Fed. Cl. 524, 528-29 (2005) (some bracketed material in original) (quoting Banks v. United States (Banks (accrual) II), 314 F.3d 1304, 1310 (Fed. Cir. 2003)).

6

if the issue of whether the damage to plaintiffs' properties is permanent and irreversible was presented to and decided by the Federal Circuit. See id.

The question is complicated by the fact that the term "permanent" is used in two distinct ways in this case. Permanence can be used in its popular sense, to discuss the permanence of erosion, or as a legal term of art, to discuss whether a permanent taking has occurred. In its popular usage, the word "permanent" means "[l]asting or remaining without essential change." The American Heritage Dictionary of the English Language 1309 (4th ed. 2000). For example, an expert report admitted into evidence at the trial on liability used "permanence" of erosion in the popular sense by stating that sediments that move into deep water "can no longer be transported to the beach by waves and are therefore permanently lost from the beach system." Banks (liability), 78 Fed. Cl. at 612 (citation omitted).

By contrast, the term "permanent taking" is a legal term of art used in the context of takings that occur through a gradual, physical process. Pursuant to the stabilization doctrine, when a taking occurs through a gradual, physical process, the property owner's claim accrues when "stabilization" occurs, Dickinson, 331 U.S. at 749, that is "when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined," Boling, 220 F.3d at 1370-71. "[D]uring the time when it is uncertain whether the gradual process will result in a permanent taking, the plaintiff need not sue, but once it is clear that the process has resulted in a permanent taking and the extent of the damage is reasonably foreseeable, the claim accrues and the statute of limitations begins to run." Boling, 220 F.3d at 1371. Used in this sense, the term "permanent taking" is employed by courts when examining the period of time during which a cause of action does not accrue for purposes of the statute of limitations because the property owners are "justifiably uncertain about the permanency of the . . . taking." Id. at 1372 (quoting Applegate, 25 F.3d at 1583); see also United States v. Dow, 357 U.S. 17, 27 (1958) (stating the holding of Dickinson to be "that the statute of limitations did not bar an action under the Tucker Act for a taking by flooding when it was uncertain at what stage in the flooding operation the land had become appropriated to public use"); Fallini v. United States, 56 F.3d 1378, 1381 (Fed. Cir. 1995) (stating that, in Dickinson, it was unclear whether an "actual permanent taking" had occurred because the landowners "were uncertain at first how frequently the dam would result in flooding"). The focus is on the plaintiff's justifiable uncertainty as to when any permanent taking accrued, not on the merits question of whether a taking actually did occur.

Plaintiffs' brief on appeal presented to the Federal Circuit the issue of when plaintiffs' justifiable uncertainty as to the permanence of the alleged taking ended. Corrected Pls.' Br. on Appeal passim (plaintiffs' Brief on Appeal or Pls.' Br. on Appeal), Banks (accrual) II, 314 F.3d (Nos. 01-5150 to 01-5185), 2001 WL 34624163 passim. Plaintiffs were appealing the court's determination that their claims were time-barred

7

because under the stabilization doctrine, their claims had accrued more than six years before they brought this action. Banks (accrual) I, 49 Fed. Cl. at 825-26. In the statement of issues plaintiffs presented to the Federal Circuit, plaintiffs' only use of the term "permanent taking" is as a term of art pertinent to when plaintiffs' claim accrued for purposes of the statute of limitations:

> I. WHETHER THE GRADUAL PROCESS BEGUN BY THE STEEL ENCASEMENT OF DEFENDANT'S JETTIES RESULTED IN A PERMANENT TAKING, UNDER DICKINSON V. UNITED STATES, MORE THAN SIX YEARS BEFORE THE COMMENCEMENT OF THIS ACTION?
>
> . . . .
>
> II. WHETHER THE PROMISE OF MITIGATION, ARISING FROM THE SAND TRANSFER OPERATION UNDERTAKEN BY THE ARMY CORPS, DEFERRED THE ACCRUAL OF THE TAKINGS CLAIMS UNDER APPLEGATE V. UNITED STATES?
>
> . . . .
>
> III. WHETHER THE CONDUCT OF THE GOVERNMENT, THROUGH THE ARMY CORPS, CONCEALED FROM PLAINTIFFS THE EXISTENCE OF THEIR TAKINGS CLAIM?

Pls.' Br. on Appeal 2. The first issue presented refers to Dickinson, the case that sets out the stabilization doctrine, and uses the term of art "permanent taking" employed in Boling, 220 F.3d at 1370-71, and Fallini, 56 F.3d 1381-82, when applying the stabilization doctrine. Pls.' Br. on Appeal 2. The second and third issues presented address promises of mitigation and conduct by the Corps that may have concealed the existence of a takings claim, id. at 2, two issues relevant to when a claim accrues under the stabilization doctrine as applied in Applegate, see Banks (accrual) II, 314 F.3d at 1308-1310 (considering, in light of Applegate, the impact of the Corps' conduct and promises of mitigation on the accrual of plaintiffs' claims).

      The Federal Circuit indicated that the issue it was deciding was when the alleged taking became a permanent taking for purposes of the stabilization doctrine. As plaintiffs concede, "The issue squarely addressed by the . . . Federal Circuit was 'whether the predictability [and permanence] of the extent of damage to [plaintiffs'] land was made justifiably uncertain by the Corps' mitigation efforts.'" Pls.' Mot. 3 (bracketed material in original) (quoting Banks (accrual) II, 314 F.3d at 1309) (quotation marks omitted). The Federal Circuit stated that "[t]he issue before this court on appeal is whether the Court of Federal Claims erred in finding that the plaintiffs' claims fell outside the applicable statute of limitations." Banks (accrual) II, 314 F.3d at 1308. Plaintiffs' claims

accrued when stabilization occurred, that is "when it [became] clear that the gradual process set into motion by the government has effected a permanent taking." Id. (quoting Boling, 220 F.3d at 1370-71) (quotation marks omitted).

The Federal Circuit then applied the stabilization doctrine to determine when plaintiffs' claims accrued. Examining the information available to plaintiffs, the court concluded that "[w]ith the mitigation efforts underway, the accrual of plaintiffs' claims remained uncertain until the [three reports] collectively indicated that erosion was permanent and irreversible." Id. at 1310. Stating its holding a second time, the Federal Circuit again explained that "because plaintiffs remained uncertain as to the permanent nature of the taking until the Corps reported[3] that the erosion was permanent and irreversible, we conclude that the claims were not time-barred."[4] Id. Based on the holding the Federal Circuit reached and the analysis it employed, the court concludes that the issue decided by the Federal Circuit was the point at which plaintiffs' justifiable uncertainty "as to the permanent nature of the taking" ended, id., rather than whether erosion of their properties was permanent.[5]

---

[3]The Federal Circuit indicated that its focus was on the information available to property owners rather than the actual permanence of damage by discussing what the reports "indicated" and what the United States Army Corps of Engineers (Corps) had "reported," rather than weighing the evidence contained in the Corps' reports. Banks (accrual) II, 314 F.3d at 1310.

[4]Some of the confusion about what issue the Federal Circuit decided may result from the phrasing of its opinion. Several times, the Federal Circuit referred to the point at which the information available to plaintiffs indicated that erosion was "permanent and irreversible," see, e.g., Banks (accrual) II, 314 F.3d at 1307, rather than merely "permanent," the term ordinarily used in the context of the stabilization doctrine, see, e.g., Boling v. United States, 220 F.3d 1365, 1370-71 (Fed. Cir. 2000). It is not the view of the court--and plaintiffs do not contend--that use of the term "permanent and irreversible" rather than "permanent" to describe the potential taking in this case indicates an additional factual determination about the nature of the erosion to plaintiffs' properties.

[5]Plaintiffs argue that two of the court's orders "acknowledged" and "relied on and applied" the Federal Circuit's finding in Banks (accrual) II. Pls.' Mot. 8 (quoting August 11, 2009 Opinion and Order, Banks v. United States (Banks (law of damages)), Dkt. No. 324, 88 Fed. Cl. 665, 674 (2009); May 3, 2007 Opinion, Banks v. United States (Banks (inquiry notice)), Dkt. No. 200, 76 Fed. Cl. 686, 696 (2007)). Plaintiffs misstate the issue decided by the Federal Circuit and followed by the court. The issue decided by the Federal Circuit was not whether the erosion damage to plaintiffs' properties was permanent in fact, but instead, when a reasonable plaintiff's justifiable uncertainty as to whether any taking was a permanent taking would have ended for purposes of the statute of limitations. The two orders cited by plaintiffs discussed related legal issues, neither of which addressed whether the damage to plaintiffs' properties is permanent. See Banks (law of damages), 88 Fed. Cl. at 673-74 (addressing whether plaintiffs who had sold their properties after the date of stabilization were entitled to just compensation notwithstanding that they no longer owned the affected properties); Banks (inquiry notice), 76

In light of the foregoing, the court concludes that the issue presented to and decided by the Federal Circuit was when a permanent taking, if any, occurred for purposes of the statute of limitations, rather than whether the erosion damage to plaintiffs' properties is, in fact, permanent. It is not the law of the case that any damage to plaintiffs' properties is permanent and irreversible or that plaintiffs' properties are located in cohesive lakeshore areas.[6] Instead, as the court determined following the trial on liability, the composition of the lakebed adjacent to each property must be determined "in further proceedings." Banks (liability), 78 Fed. Cl. at 628.[7]

Plaintiffs argue that, because the motion to dismiss was filed "on the eve of trial, after discovery had been completed and proposed exhibits had been submitted" the Federal Circuit had before it a "well-developed factual record." Pls.' Mot. 3 (emphasis omitted). Regardless of what evidence was available to the Federal Circuit, the court has concluded that the issue the issue presented to and decided by the Federal Circuit was not whether erosion to plaintiffs' properties is permanent. Furthermore, plaintiffs are, in effect, arguing that, in the course of determining whether the court had jurisdiction to hear plaintiffs' claims, the Federal Circuit made an unrelated determination about the measure of damages in this case.

In establishing jurisdictional facts, "a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings . . . ." Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (citing Land v. Dollar, 330 U.S. 731, 735 n.4 (1947)). Plaintiff is correct that the Federal Circuit looked beyond the face

---

Fed. Cl. at 696 (determining that, for purposes of the statute of limitations, an objective standard was to be applied when determining the point at which a "reasonable and diligent" plaintiff would no longer have been "justifiably uncertain" as to whether any taking was a permanent taking). Neither order supports plaintiffs' argument that "there can be no doubt that it is the law of this case that erosion damage to [p]laintiffs' properties was permanent and irreversible as of January 2000." Pls.' Mot. 9.

[6] Because the court determines that the law of the case doctrine is not applicable, the court does not consider the exceptions to the doctrine or the court's discretion to deviate from the law of the case. See Plaintiffs' Reply to United States's Opposition Motion in Limine to Exclude Evidence of Nearshore Lakebed Composition (plaintiffs' Reply or Pls.' Reply), Dkt. No. 447, at 3-4 (arguing that the court's discretion to deviate from the law of the case "is extremely limited").

[7] Plaintiffs argue that "if the Federal Circuit did not determine as a matter of fact, that erosion to [p]laintiffs' property was permanent and irreversible, then its opinion would be rendered merely advisory in light of the United States's new position that it has mitigated all erosion caused by the Corps." Pls.' Reply 7. The Federal Circuit's decision in Banks (accrual) II, 314 F.3d at 1310, did not determine whether damage to plaintiffs' properties is permanent, but rather than being advisory, it determined that plaintiffs brought their claims within the statute of limitations.

10

of the pleadings in order to establish jurisdictional facts, determining that "the accrual of plaintiffs' claims remained uncertain" for purposes of the statute of limitations until the Corps published three reports, which "collectively indicated that erosion was permanent and irreversible." Banks (accrual) II, 314 F.3d at 1310.  However, plaintiffs cite no discussion in Banks (accrual) II indicating that the Federal Circuit determined, not only jurisdictional facts, but a major aspect of damages in this case.  As the Federal Circuit has explained, an appellate court reviewing the disposition of a motion to dismiss does not examine the ultimate merits of the case.  "That is what the trial judge will do on remand. Appellate courts do not do that, even if we had a record on which to do it." Henke v. United States, 60 F.3d 795, 801 n.5 (Fed. Cir. 1995).  The issues of lakebed composition and the permanence of erosion have yet to be determined, despite expert testimony at the trial on the issue of liability held after the Federal Circuit's opinion in Banks (accrual) II. See Banks (liability), 78 Fed. Cl. at 628 (concluding that the issue would be addressed in future proceedings).

IV.     Conclusion

Because the court determined that additional evidence of lakeshore composition is necessary, see id., such evidence is relevant and may be presented at trial, see Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Fed. R. Evid. 402 (stating that, with exceptions not applicable here, "[a]ll relevant evidence is admissible").

Plaintiffs' Motion is DENIED.


IT IS SO ORDERED.

                                                    s/ Emily C. Hewitt
                                                    EMILY C. HEWITT
                                                    Chief Judge