# In the United States Court of Federal Claims

No. 99-4451 L

c/w 99-4452L, 99-4453L, 99-4454L, 99-4455L, 99-4456L, 99-4457L, 99-4458L, 99-4459L, 99-44510L, 99-44511L, 00-365L, 00-379L, 00-380L, 00-381L, 00-382L, 00-383L, 00-384L, 00-385L, 00-386L, 00-387L, 00-388L, 00-389L, 00-390L, 00-391L, 00-392L, 00-393L, 00-394L, 00-395L, 00-396L, 00-398L, 00-399L, 00-400L, 00-401L, 05-1353L, 05-1381L, 06-72L

(E-Filed:  August 9, 2011)

| | | |
|---|---|---|
| _____ | ) | |
| | ) | |
| JOHN H. BANKS, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | 99-4451 L |
| | ) | |
| v. | ) | Takings Claim for Damages for |
| | ) | Erosion Along Eastern Shoreline |
| | ) | of Lake Michigan South of St. Joseph |
| THE UNITED STATES, | ) | Harbor; Whether Trial Evidence |
| | ) | Requires Dismissal of Claims for |
| Defendant. | ) | Lack of Jurisdiction; Post-Trial Briefing |
| | ) | on Jurisdiction Ordered |
| _____ | ) | |
| | ) | |
| EUGENE J. FRETT, Individually and | ) | |
| as Trustee of the Victor J. Horvath | ) | |
| and Frances B. Horvath Trust, | ) | |
| | ) | |
| Plaintiff, | ) | 05-1353 L |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Mark E. Christensen, Chicago, IL, with whom was John B. Ehret, Olympia Fields, IL, and Katherine A. Jones, Chicago, IL, for plaintiffs in No. 99-4451 L.  Eugene J. Frett, Chicago, IL, pro se in No. 05-1353 L.

Terry M. Petrie, Environment and Natural Resources Division, United States Department of Justice, Denver, CO, with whom were Ignacia S. Moreno, Assistant Attorney General, and Mark S. Barron, Trial Attorney, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.  Gary W. Segrest and Don C. Erwin, Office of Counsel, United States Army Corps of Engineers, Detroit, MI, of counsel.

ORDER

The court conducted a trial of damages in this matter from April 18 through April 28, 2011.  The court addresses here a jurisdictional issue that arose in connection with its drafting of the trial opinion.

At the outset of this case, defendant moved for dismissal "on the ground that plaintiffs' claims are time-barred."  Accrual Op. I, 49 Fed. Cl. at 809 (citation omitted).[1] "The applicable statute of limitations for filing suit in the [United States] Court of Federal Claims is six years."  Id. (quoting 28 U.S.C. § 2501 (1994)).  In its order considering defendant's motion to dismiss, the court noted that "the six-year limitations period for actions against the United States 'is a jurisdictional requirement attached by Congress' that must be strictly construed."  Id. (quoting Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988)).

In their original complaint,[2] plaintiffs alleged "that defendant effected a gradual taking of their shorefront property through the construction and maintenance of 'a series

---

[1]The court discusses in this Order the following prior orders and opinions from this case: Banks v. United States (Liability Op.), Docket Number (Dkt. No.) 245, 78 Fed. Cl. 603, 636 (2007); Banks v. United States (Accrual Op. II), Dkt. No. 200, 76 Fed. Cl. 686, 696 (2007); Banks v. United States (Accrual Op. I), Docket Number (Dkt. No.) 3, 49 Fed. Cl. 806 (2001).

[2]After the court denied class certification, the parties filed a notice of additional plaintiffs--identifying 37 plaintiffs--and filed separate complaints for each plaintiff.  Accrual Op. I, 49 Fed. Cl. at 808 (citations omitted).  The individual complaints supplanted the original complaint and were deemed to have been filed on July 9, 1999, the filing date of the original complaint.  Id. at 808 n.2.  Plaintiffs' counsel has represented that the allegations in all of the complaints are the same.  Id.  "Accordingly, for ease of reference and unless otherwise noted, the court [has referred] to the individual complaint filed by the first named plaintiffs, John and Mary Banks, when addressing plaintiffs' claims in this action."  Id.  The court continues in this order its practice of referring to the individual complaint filed by the Banks plaintiffs.

2

of 15 jetties along the 200 miles of the eastern coast of Lake Michigan for over 100 years.'" Id. at 810 (citation omitted). Plaintiffs narrowed their claims in the individual complaints they filed subsequently, focusing on the effect of the jetties at St. Joseph Harbor. Compl., Dkt. No. 1 ¶¶ 4-7. Although the jetties had been in place at their current length since 1903--a fact that may have implicated the six-year statute of limitations for takings claims--plaintiffs alleged that the jetties "continued to exist without harmful interference to the natural littoral flow of sand and river sediment until the [Corps] gradually installed sand-tight steel sheet piling during the period of 1950 to 1989," which installation has "alter[ed] the supply of sand to the lake bed and subaerial visible beach in front of plaintiffs' property." Compl. ¶¶ 6, 7. "When considering a motion to dismiss, the court must presume that well[-]pleaded factual allegations in the complaint are true." Accrual Op. I, 49 Fed. Cl. at 808 (citing, inter alia, Miree v. DeKalb Cnty., 433 U.S. 25, 27 n.2 (1977)).

Defendant, the court and the United States Court of Appeals for the Federal Circuit (Federal Circuit) presumed, in accordance with the Miree case, 433 U.S. at 27 n.2, the truth of plaintiffs' allegation that encasing the jetties in steel sheet piling made them impermeable to sand, interfering with the littoral flow of sand and damaging plaintiffs' properties. Although the jetties reached their current length in 1903, Accrual Op. I, 49 Fed. Cl. at 808, defendant argued "that the takings causes of action accrued, at the latest, in 1989," when the government completed its encasement of the jetties in the steel sheet piling, id. at 811 (citation omitted). The court agreed, concluding that "the time for filing suit expired in 1995."[3] Id. at 825. Because plaintiffs did not file suit until 1999, the court granted defendant's motion to dismiss. Id. at 825-26. Quoting the Banks plaintiffs' complaint, the court stated, "Plaintiffs claim that the jetties did not cause 'harmful interference to the natural littoral flow of sand and river sediment until the Corps

---

[3]Plaintiffs also argued in their opposition to defendant's motion to dismiss that they were unable to bring their claims before the Federal Circuit's decision in Owen v. United States, 851 F.2d 1404 (Fed. Cir. 1988) (en banc). Accrual Op. I, 49 Fed. Cl. at 812 (citation omitted). Owen overturned two Federal Circuit decisions which may have precluded plaintiffs' claims because they barred "recovery for government-caused erosion outside the bed of [a] navigable stream." Owen, 851 F.2d at 1418; see also id. at 1412-15 (discussing the error in Pitman v. United States, 198 Ct. Cl. 82 (1972) and Ballam v. United States, 806 F.2d 1017 (Fed. Cir. 1986)). The earlier of these two cases, however, was decided in 1972. See Pitman, 198 Ct. Cl. at 82. Accordingly, any bar to plaintiffs' claims created by Pitman and Ballam did not exist before 1972. The Federal Circuit explained in Owen that it was "confronted with an anomaly of its own creation." Owen, 851 F.2d at 1418. Under the precedent of the United States Supreme Court (Supreme Court), the plaintiff in Owen could bring her claims, but under the precedent of the Federal Circuit, which was also binding on the trial court, she could not. Id. Before Pitman was decided, no such conflict existed, and the plaintiff would have been able to bring her claims, as would plaintiffs in this case. See id. at 1418 ("If the only relevant precedent was that of the Supreme Court, it is certain that the [plaintiff's] complaint would have withstood the government's motion for a judgment on the pleadings.").

gradually installed sand-tight steel sheet piling during the period of 1950 to 1989.'" Id. at 808 (citation omitted). The Federal Circuit reversed the court's dismissal, finding that, even after the steel sheet piling was installed, mitigation efforts that the government began in 1970 created uncertainty as to whether any erosion damage caused by the jetties was "permanent and irreversible." Banks v. United States, 314 F.3d 1304, 1310 (Fed. Cir. 2003). The Federal Circuit found that plaintiffs' claims accrued with the publication of three Corps reports that concluded that the mitigation was ineffective. Id. The court determined that, because the last of these reports was published no earlier than January of 2000, plaintiffs' claims accrued in January of 2000. Accrual Op. II., 76 Fed. Cl. at 696 (citations omitted).

Following the trial of damages, the court concluded that, contrary to the allegations in plaintiffs' complaints, the jetties were already impermeable to sand before they were encased in steel sheet piling. Liability Op., 78 Fed. Cl. at 636 (stating that "plaintiffs' own expert witness testified that the piers were impermeable even prior to their encasement in steel") (citations omitted). The court discussed the permeability of the jetties in a section of the opinion that examined the proportion of the erosion of plaintiffs' properties caused by the jetties. See id. at 633-36. The court did not discuss the effect on the court's jurisdiction of its finding that the jetties were impermeable before the installation of steel sheet piling. See id. passim. Nor did the court address the possible accrual of plaintiffs' claims upon the publication of the 1958 Study, which "recognized that erosion was attributable to the harbor structures and their maintenance." Id. at 621.

Defendant has not filed a motion addressing either the effect of the court's finding on the impermeability of the jetties from and after 1903 or the effect of the 1958 Study on the court's jurisdiction. However, the court is obligated to raise the issue of its own jurisdiction sua sponte "if a question thereto exists." Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 740 (1976) (citing Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 384 (1884)). The court must consider jurisdictional issues at any point in a case that they arise. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93 (1998) (citations omitted). Plaintiffs bear the burden of establishing subject matter jurisdiction, and the court may determine whether they have met this burden once they have had an opportunity to be heard on the matter. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (citing, inter alia, Local 336, American Federation of Musicians v. Bonatz, 475 F.2d 433, 437 (3d Cir. 1973)). If the court determines that it lacks subject matter jurisdiction, it must dismiss the claim. Steel Co., 523 U.S. at 94; Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); RCFC 12(h)(3).

The court must therefore consider whether, if the installation of steel sheet piling did not change the erosive effect of the jetties, plaintiffs' cause of action accrued in 1903, when the jetties reached their current length, or in 1958, when defendant acknowledged the erosional impact of "harbor structures." The Federal Circuit found that the Corps'

mitigation activities, which "appeared to successfully stave off the damaging effect of the jetties," created "justifiable uncertainty" of the permanence of any taking. Banks, 314 F.3d at 1309-10 (citing Applegate v. United States, 25 F.3d 1579, 1582-83 (Fed. Cir. 1994)). The Corps' mitigation activities, however, did not begin until 1970, Liability Op., 78 Fed. Cl. at 655, more than 60 years after the claims period would have ended if plaintiffs' claims accrued in 1903 and some twelve years after the publication 1958 Study. If the installation of steel sheet piling did not change the erosive effect of the piers--an action that would have started the running of the statute of limitations in 1989 instead of 1903--the justifiable uncertainty created by the Corps' mitigation may be irrelevant to the date of accrual of plaintiffs' claims. See Mildenberger v. United States, 643 F.3d 938, 948 (Fed. Cir. 2011) ("There is no justifiable uncertainty due to the Corps' promises before the 1990s because the Corps neither undertook nor committed itself to any mitigation activities."). Mitigation efforts that begin after the statute of limitations has run cannot "resurrect . . . stale takings claims." Id.

The court therefore directs the parties to brief the following questions:

1.  Given the court's finding after the trial of liability that the jetties were impermeable to sand before they were encased in steel sheet piling, and given the Corps' acknowledgement of the erosional impact of "harbor structures" in the 1958 Study, on what date did plaintiffs' claims accrue? Does the court possess subject matter jurisdiction to hear plaintiffs' claims?

2.  Does the Federal Circuit's determination that plaintiffs' claims accrued with the publication of three Corps reports on mitigation constitute the "law of the case" which may not be disturbed by the court notwithstanding inconsistent factual findings of the court after trial?

The parties shall, in their briefing, take into account the guidance of the Federal Circuit that

the law of the case doctrine is a policy not a command even [sic] respecting a prior appellate decision in the case, and should be applied "as a matter of sound judicial practice, under which a court generally adheres to a decision in a prior appeal in the case unless one of three 'exceptional circumstances' exists: the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice."

Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1582 (Fed. Cir. 1994) (quoting Central Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1580 (Fed. Cir. 1983)); Intergraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001) ("Reasons that may warrant departure from the law of the case . . . include the discovery of new and different material

evidence that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice.") (citing <u>Smith Int'l Inc. v. Hughes Tool Co.</u>, 759 F.2d 1572, 1576 (Fed. Cir. 1985)).  "A departure from law of the case generally requires the discovery of new and material evidence not presented in the prior action or 'an intervening change of controlling legal authority, or [a showing that] the prior decision is clearly incorrect and its preservation would work a manifest injustice.'"  <u>Toro Co. v. White Consol. Indus., Inc.</u>, 383 F.3d 1326, 1336 (Fed. Cir. 2004) (quoting <u>Intergraph</u>, 253 F.3d at 698).  The court has stated that it "will revisit an issue decided by the Federal Circuit only if changed circumstances in law or evidence make the Federal Circuit's decision inapposite."  <u>Accrual Op. II</u>, 76 Fed. Cl. at 696.

The parties shall file opening briefs at or before 5:00 p.m. Eastern Daylight Time (EDT) on Wednesday, September 7, 2011.  The parties shall file responsive briefs at or before 5:00 p.m. EDT on Wednesday, September 21, 2011.

IT IS SO ORDERED.

<u>s/ Emily C. Hewitt</u>
EMILY C. HEWITT
Chief Judge