# In the United States Court of Federal Claims

### No. 99-4451L

(consolidated with, 99-4452 L, 99-4453 L, 99-4454 L, 99-4455 L, 99-4456 L, 99-4457 L, 99-4458 L, 99-4459 L, 99-44510 L, 99-44511 L, 99-44512 L, 00-365 L, 00-379 L, 00-380 L, 00-381 L, 00-382 L, 00-383 L, 00-384 L, 00-385 L, 00-386 L, 00-387 L, 00-388 L, 00-389 L, 00-390 L, 00-391 L, 00-392 L, 00-393 L, 00-394 L, 00-395 L, 00-396 L, 00-398 L, 00-399 L, 00-400 L, 00-401 L, 05-1353 L, 05-1381 L, 06-072 L)

(E-Filed:  January 30, 2015)

| | |
|---|---|
| JOHN H. BANKS, et al., ) | Mandate Interpretation; Claim Accrual Principles in Takings Cases Involving Gradual Physical Processes; "Permanent" Nature of Taking in Determining Claim Accrual; Factual Findings Presented in the Alternative |
| Plaintiffs, ) | |
| v. ) | |
| THE UNITED STATES, ) | |
| Defendant. ) | |

Mark E. Christensen, Chicago, IL, with whom was John B. Ehret, Olympia Fields, IL, for plaintiffs in No. 99-4451L.  Eugene J. Frett, Chicago, IL, pro se in No. 05-1353L.

Terry M. Petrie, Environment & Natural Resources Division, United States Department of Justice, Denver, CO, with whom was Sam Hirsch, Acting Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

### OPINION AND ORDER

CAMPBELL-SMITH, Chief Judge

The purpose of this Opinion and Order is to address and resolve the initial issues raised by plaintiffs in light of the Federal Circuit's mandate in Banks v. United States ("Banks IV"), 741 F.3d 1268, 1283 (Fed. Cir. 2014), Dkt. No. 508, which reversed this court's dismissal of plaintiffs' claims for lack of jurisdiction in Banks v. United States ("Banks III"), 102 Fed. Cl. 115 (2011), Dkt. No. 505, and remanded the case for further proceedings.

I.      Background

A thorough discussion of the history of this case can be found in the court's opinions following trials on liability and damages.  See Banks v. United States ("Liability Opinion"), 78 Fed. Cl. 603, 604–09 (2007), Dkt. No. 245; Banks III, 102 Fed. Cl. at 120–26.  For ease of reference, however, a brief description of the facts and a review of the current procedural posture of the case follows.

This case involves a Fifth Amendment taking by continuous, physical processes. Beginning in the 1830s, the United States government, acting through the United States Army Corps of Engineers ("defendant" or "the Corps") re-constructed the mouth of the St. Joseph River and began constructing two harbor jetties that jutted into Lake Michigan in order to accommodate commercial shipping vessels exiting the St. Joseph River into Lake Michigan.  Liability Opinion, 78 Fed. Cl. at 604.  Over time, the Corps lengthened the jetties and encased them in steel.  Id.  The Corps released a series of reports (collectively, "Corps Reports") over several decades describing the erosion caused by the jetties south of the St. Joseph Harbor, outlining a plan to mitigate the erosion attributable to the jetties, and evaluating the effectiveness of the mitigation program that was eventually implemented.  Id. at 612.

Plaintiffs are landowners along approximately four and a half miles of the eastern shore of Lake Michigan, south of St. Joseph Harbor.  Id. at 604.  Plaintiffs allege that the Corps' construction and maintenance of the jetties caused erosion of their shoreline property.  Id.  "Specifically, plaintiffs claim that the encasement of the jetties in 'sand-tight' steel sheet piling during the period from 1950 to 1989, at the direction of the Corps, interrupted the natural littoral drift of sand to their properties," and effected a shoreline loss for which plaintiffs seek damages.  Banks III, 102 Fed. Cl. at 120–21 (footnote omitted) (citing Banks v. United States, 99 Fed. Cl. 622, 624 (2011), Dkt. No. 499).

On motion to dismiss, the court dismissed plaintiffs' claims as untimely filed. Banks v. United States ("Banks I"), 49 Fed. Cl. 806, 809 (2001), Dkt. No. 3, rev'd, 314 F.3d 1304 (Fed. Cir. 2003).  On appeal, the circuit court reversed and remanded the claims.  Banks v. United States ("Banks II"), 314 F.3d 1304, 1310 (Fed. Cir. 2003), Dkt. No. 6.  On first remand, the court conducted separate trials on liability and damages. Following the trial on damages, a jurisdictional arose as to plaintiffs' claims, and the court again dismissed plaintiffs' claims as time-barred.  Banks III, 102 Fed. Cl. at 119.

The Federal Circuit considered the case for a second time on appeal in Banks IV and found that this court's dismissal decision in Banks III:  (1) violated the mandate rule by redetermining the accrual date of plaintiffs' claims, Banks IV, 741 F.3d at 1276–79; and (2) erred in its analysis of accrual suspension by finding that plaintiffs knew or should have known of their claims before 1952, id. at 1279–82.

The Federal Circuit further held that it lacked jurisdiction to review the merits discussion contained in Banks III.  Id. at 1282–83; see id. at 1282 ("In the absence of anything appealable, this court lacks appellate jurisdiction.  To be final and appealable, a decision must end the litigation on the merits, and the judge must clearly declare her intention in this respect." (internal citations, quotation marks and alterations omitted)).  The Federal Circuit remanded the claims with a mandate that reinforced its earlier mandate in Banks II.  Id. at 1283; cf. Banks v. United States, 68 Fed. Cl. 524, 528–29 (2005), Dkt. No. 87 (finding that "[b]ecause the last of the three reports, the 1999 Report, was issued in January 2000 . . . , the effective date of claim accrual for plaintiffs' claims in this case is January 2000").

Following receipt of the mandate in Banks IV, this court issued a post-remand order, noting that "[a]s the appellate court limited its review to the jurisdictional issue and did not review this court's alternative findings on the merits, this court is inclined to re-enter its merit findings and proceed to a damages analysis."  Order, Apr. 30, 2014, Dkt. No. 512.  Before doing so, the court solicited the parties' perspectives on the proposed approach for moving forward on remand.  Id.

The parties thereafter filed a joint status report in which the plaintiffs posited that there are "substantive legal issues . . . [to] be initially addressed and ruled upon in light of the remand."  Joint Status Report, June 19, 2014, Dkt. No. 519, at 1.  Although defendant disagreed with plaintiffs, id., both parties agreed that at this juncture, the most efficient way to move forward is to resolve the "predicate and necessary" issues identified by plaintiffs, id. at 3, 6.  Thus, to address the issues identified by plaintiffs, the court scheduled post-remand briefing.  Order, July 17, 2014, Dkt. No. 521.

Now pending before the court are the parties' post-remand briefings:  Plaintiffs' Post-Remand Motion for Entry by this Court of Rulings Consistent With and to Enforce the Federal Circuit Court of Appeals' January 28, 2014 Mandate ("Pls.' Mot."), Dkt. No. 523, filed August 12, 2014; United States' Brief on the Federal Circuit's Mandate and This Court's Denial of Plaintiffs' Motion-in-Limine ("Def.'s Br."), Dkt. No. 524, filed August 12, 2014; Plaintiffs' Response to United States' Brief on the Federal Circuit's Mandate and This Court's Denial of Plaintiffs' Motion-in-Limine, Dkt. No. 525, filed August 29, 2014; Eugene Frett's Response to United States' Brief on the Federal Circuit's Mandate and This Court's Denial of Plaintiffs' Motion in Limine, Dkt. No. 528, filed September 22, 2014;[1] United States' Response to Plaintiffs' Post-Remand Motion,

---

[1]    Self-represented plaintiff, Eugene J. Frett, filed a separate response brief, docketed as Dkt. No. 528, in his individual action that was consolidated in 2006 with the other pending claims.  See Order, Mar. 17, 2006, Frett v. United States, Case No. 05-1353, Dkt. No 7 (consolidating Frett v. United States, Case No. 05-1353, with Banks v. United States, Case No. 99-4451); cf. infra note 2 (explaining plaintiffs' improper filing of two reply briefs).

Dkt. No. 529, filed September 22, 2014; Plaintiffs' Reply in Support of Post-Remand Motion for Entry by This Court of Rulings Consistent With and to Enforce the Federal Circuit Court of Appeals' January 28, 2014 Mandate ("Pls.' Reply"), Dkt. No. 531, filed October 6, 2014;[2] and United States' Reply Brief on the Federal Circuit's Mandate, Dkt. No. 532, filed October 6, 2014.

On remand, plaintiffs ask the court to enter a ruling making two factual findings that, plaintiffs claim, are "necessary and predicate" to their offered interpretation of the Federal Circuit's mandate:  first, a finding that the taking of plaintiffs' properties is permanent and irreversible; and second, a finding that the nearshore lakebed adjacent to plaintiffs' properties is cohesive, not sandy.  Pls.' Mot. 38; see also Pls.' Reply 1–2. Plaintiffs also ask the court not to re-enter, but instead to re-open, the alternative merits findings it made after trial because, plaintiffs contend, the trial findings were based on a mistaken understanding of the claims' factual predicate on which plaintiffs now seek a ruling.[3]  Pls.' Mot. 38.  Defendant, on the other hand, urges the court to re-enter the

---

[2]     In contravention of the Rules of the Court of Federal Claims ("RCFC"), plaintiffs' counsel filed, on behalf of all plaintiffs, two separate documents, both identified as reply briefs.  See Order, Jan. 13, 2015, Dkt. No. 535, at 1 (identifying two reply briefs filed respectively by John B. Ehret and Mark E. Christensen).  Based on the representations of plaintiffs' counsel in the two documents filed as statements of clarification regarding the reply briefs, see Dkt. Nos. 536–37, the court deemed the reply brief filed by Mark E. Christensen, docketed as Dkt. No. 531, to be the properly filed post-remand reply briefing on behalf of all plaintiffs, see Order, Jan. 21, 2015, Dkt. No. 538, at 2.  The court struck the other reply brief filed by John B. Ehret, docketed as Dkt. No. 530, and, at plaintiffs' request, the first statement of clarification regarding the reply briefs, docketed as Dkt. No. 536, which was improperly filed by John B. Ehret as a joint motion to schedule an early neutral evaluation.  Id.

[3]     Portions of plaintiffs' post-remand briefing are devoted to discussing the other post-remand relief sought by plaintiffs, to include a request to exclude the testimony, declarations, and report of defendant's expert witness on the ground that such evidence is inconsistent with what the Federal Circuit has mandated.  Pls.' Mot., Dkt. No. 523, at 38; see also Pls.' Reply, Dkt. No. 531, at 1 (contending that the alternative merits findings reflect an improper consideration of evidence that is contrary to plaintiffs' proposed factual findings, the Federal Circuit's mandate, and scientific possibility).  Plaintiffs assert that once the problematic findings in the alternative merits findings are set aside, "the remaining unrebutted evidence [establishes] that the United States is responsible for 70% of the erosion to [p]laintiffs' shoreline properties."  Pls.' Mot. 38.  Further, plaintiffs request that the court enter judgment in the amount of $19,113,621.00 for diminution in value damages for land taken, plus interest, and in the amount of $2,246,197.00, plus interest, for the out-of-pocket shore protection expenses that plaintiffs have incurred.  Id.

alternative merits findings from the damages trial and complete the damages analysis. Def.'s Br. 13.

## II.     Governing Standards

### A.     The Mandate Rule

On remand, the court is bound by the mandate of the Federal Circuit and by its own prior findings—to the extent such findings are not inconsistent with the mandate. As informed by the law-of-the-case doctrine, "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Banks IV, 741 F.3d at 1276 (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815–16 (1988)). "This rule encourages both finality and efficiency in the judicial process by preventing relitigation of already-settled issues." Id.

The mandate rule, which is encompassed by the broader law-of-the case doctrine, provides that "'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" Id. (quoting Briggs v. Pa. R. Co., 334 U.S. 304, 306 (1948)); see also Cent. Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1580 (Fed. Cir. 1983) (explaining that the law-of-the-case doctrine was "judicially created to ensure judicial efficiency and to prevent the possibility of endless litigation"). "Once a question has been considered and decided by an appellate court, the issue may not be reconsidered at any subsequent stage of the litigation, save on appeal." Banks IV, 741 F.3d at 1276.

The mandate rule "is limited to issues 'actually decided, either explicitly or by necessary implication'" in the previous litigation. Id. (quoting Toro Co. v. White Consol. Indus., Inc., 383 F.3d 1326, 1335 (Fed. Cir. 2004)). "In evaluating the scope of the mandate, the actions of the Court of Federal Claims must not be inconsistent with the letter or spirit of the mandate." Id. at 1279 (citing Engel Indus. Inc. v. Lockformer Co., 166 F.3d 1379, 1383 (Fed. Cir. 1999)). "Indeed, 'all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication.'" Id. (quoting Engel Indus., 166 F.3d at 1383).

### B.     Claim Accrual Principles

The Federal Circuit has remanded this action once again for further proceedings based on a determination that plaintiffs' cause of action was not time-barred by claim accrual principles. Claim accrual principles that govern jurisdictional timeliness

─────────────────────

at 38–39. Finally, plaintiffs ask the court to set this matter for hearing on the issue of plaintiffs' future damages. Id. at 39.

determinations for takings actions that arise from gradual physical processes—such as those at work in this case—have been established in the case law.  These principles offer guidance to courts making the difficult determination in these types of cases as to when a claim has become ripe for action.

As first set forth by the Supreme Court in United States v. Dickinson, a plaintiff's cause of action in a takings case involving a gradual physical process does not accrue "until 'the situation becomes stabilized.'"  Banks II, 314 F.3d at 1308 (quoting United States v. Dickinson, 331 U.S. 745, 749 (1947)).  The Federal Circuit has interpreted the guidance provided in Dickinson to mean that "'stabilization occurs when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined.'"  Id. (alteration omitted) (quoting Boling v. United States, 220 F.3d 1365, 1370–71 (Fed. Cir. 2000)).  The Federal Circuit has explained:

> During the time when it is uncertain whether the gradual process will result in a permanent taking, the plaintiff need not sue, but once it is clear that the process has resulted in a permanent taking and the extent of the damage is reasonably foreseeable, the claim accrues and the statute of limitations begins to run.

Boling, 220 F.3d at 1371.  A claim stabilizes—and thus becomes ripe—"when the 'permanent nature' of the taking is evident."  See Banks II, 314 F.3d at 1309 (quoting Fallini v. United States, 56 F.3d 1378, 1382 (Fed. Cir. 1995)).

In Banks IV, the Federal Circuit discussed how the stabilization doctrine, which it had addressed in Banks II, and the accrual suspension doctrine inform a claim accrual determination in a circumstance where the government undertakes mitigation efforts to offset the effects of government-triggered erosion at the same time that the impacts of the natural erosion are ongoing.  The Federal Circuit has counseled against a strict application of claim accrual principles under either doctrine based on the practical difficulties of evaluating the "permanent" nature of a taking involving gradual, continuous processes.  See Banks II, 314 F.3d at 1309 (quoting Boling, 220 F.3d at 1371, for the proposition that the statute of limitations jurisprudence "recognize[s] that gradual takings present special difficulties and 'represent an application of general accrual principles, rather than a broad exception to them'"); Banks IV, 741 F.3d at 1282 (reiterating that the statute of limitations jurisprudence "discourage[s] a strict application of accrual principles in unique cases involving Fifth Amendment takings by continuous physical processes" (citing Applegate v. United States, 25 F.3d 1579, 1582 (Fed. Cir. 1994))).

1.      The "Justifiable Uncertainty of the Permanency of the Taking"

In <u>Banks II</u>, the Federal Circuit determined that the relevant question for claim accrual purposes, under the stabilization doctrine, was "whether the 'predictability [and permanence]' of the extent of damage to the [plaintiffs'] land' was made justifiably uncertain by the Corps' mitigation efforts." <u>Banks II</u>, 314 F.3d at 1309 (alterations in original) (quoting <u>Applegate</u>, 25 F.3d at 1583). Based on the information available to plaintiffs, the Federal Circuit found that "[w]ith . . . mitigation efforts underway, the accrual of plaintiffs' claims remained uncertain until the Corps' 1996 Report, 1997 Report, and 1999 Report collectively indicated that erosion was permanent and irreversible." <u>Id.</u> at 1310. The Federal Circuit held that the claims were not time-barred prior to the issuance of the three reports "because plaintiffs remained uncertain as to the permanent nature of the taking until the Corps reported that the erosion was permanent and irreversible." <u>Id.</u>; <u>see also</u> <u>Boling</u>, 220 F.3d at 1372 ("[I]t is the uncertainty surrounding the permanent nature of the taking, and not the uncertainty surrounding the ultimate extent of the erosion damage, that is critical in determining whether the situation has stabilized." (citing to <u>Applegate</u>, 25 F.3d at 1583)).

2.      The Meaning of the Term "Permanence" When Evaluating the Timeliness Takings Claims Based on Erosion-Related Property Loss

After the Federal Circuit's decision in <u>Banks II</u>, this court, on remand, addressed the "permanence" element of the stabilization doctrine in a pre-trial ruling on plaintiffs' request to exclude certain evidence from trial based on the expansive interpretation of the mandate in <u>Banks II</u> that plaintiffs proposed. <u>Banks v. United States</u> ("<u>Order Denying Mot. in Lim.</u>"), 98 Fed. Cl. 123, 123, 129 (2011), Dkt. No. 452 (denying plaintiffs' motion in limine and concluding that "the issue decided by the Federal Circuit [in <u>Banks II</u>] was the point at which plaintiffs' justifiable uncertainty 'as to the permanent nature of the taking' ended, rather than whether erosion of their properties was permanent" (quoting <u>Banks II</u>, 314 F.3d at 1310)). This court clarified that the term "permanent" is used in two distinct ways in such takings cases: first, "in its popular sense," to discuss the constancy of erosion, and second, "as a legal term of art" in the context of takings claims when describing the lasting impact of a gradual, physical process. <u>Id.</u> at 127.

This court also explained that "the term 'permanent taking' is employed by courts when examining the period of time during which a cause of action does not accrue for purposes of the statute of limitations because the property owners are 'justifiably uncertain about the permanency of the . . . taking.'" <u>Id.</u> at 127–28 (alteration in original) (quoting <u>Boling</u>, 220 F.3d at 1372). In such circumstances, "[t]he focus is on the plaintiff's justifiable uncertainty as to when any permanent taking accrued, not on the merits question of whether a taking actually did occur." <u>Id.</u> at 128.

This court acknowledged that "[s]ome of the confusion about what issue the Federal Circuit decided [in <u>Banks II</u>] may [have] result[ed] from the phrasing of its opinion," and observed that "[s]everal times, the Federal Circuit [had] referred [in Banks II] to the point at which the information available to plaintiffs indicated that erosion was 'permanent and irreversible,' rather than merely "permanent," the term ordinarily used in the context of the stabilization doctrine." <u>Id.</u> at 129 n.4 (internal citation omitted).  The court added:  "It is not the view of the court—and plaintiffs do not contend—that use of the term 'permanent and irreversible' rather than 'permanent' to describe the potential taking in this case indicates an additional factual determination about the nature of the erosion to plaintiffs' properties." <u>Id.</u>

3.      Plaintiffs' Awareness of the "Permanent" Nature of the Erosion

Subsequently, on the second appeal of the case in <u>Banks IV</u>, the Federal Circuit found that the court had erred in its jurisdictional analysis by finding that plaintiffs had waived their accrual suspension arguments.  <u>See</u> <u>Banks IV</u>, 741 F.3d at 1280 (observing that "[t]hough [plaintiffs] did not use the term 'accrual suspension' in making [their] argument, the substance [of their asserted position] is the same as that which [they had] argue[d] before the court," and finding that the "[plaintiffs'] argument 'that as late as 1997 it was not understood that the harbor jetties caused increased erosion in plaintiffs' zone' [was] not waived").

Under the articulated accrual suspension rule, a claim against the United States does not accrue—but rather is suspended for purposes of 28 U.S.C. § 2501—until the claimant knew or should have known that the claim existed.  <u>Id.</u> at 1280–81.  For the accrual suspension rule to apply, either the claimant "must . . . show that the defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." <u>Id.</u> at 1280 (quoting <u>Young v. United States</u>, 529 F.3d 1380, 1384 (Fed. Cir. 2008)).  "The inherently unknowable test 'includes a reasonableness component.'" <u>Id.</u> (quoting <u>Holmes v. United States</u>, 657 F.3d 1303, 1320 (Fed. Cir. 2011)).

The Federal Circuit observed that "when determining when a taking claim accrues, 'the key issue is whether the permanent nature of the taking was evident such that the landowner should have known that the land had suffered erosion damage.'" <u>Id.</u> (quoting <u>Boling</u>, 220 F.3d at 1373).  The circuit court added that "[c]laims are deemed to accrue once the [erosion] damage has 'substantially encroached the parcels at issue and the damages [are] reasonably foreseeable.'" <u>Id.</u> at 1281 (quoting <u>Boling</u>, 220 F.3d at 1373).  To assist courts in making such determinations regarding "permanence," the Federal Circuit identified the following factors for consideration:  "the uncertainties of the terrain, the difficulty in determining the location of the government's easement, and the irregular

process of erosion." Id. (quoting Boling, 220 F.3d at 1373);[4] see also Boling, 220 F.3d at 1373 (observing that "[t]he point at which the erosion damage transitions from 'mere inches' to substantial encroachment is not amenable to precise definition, and will vary from parcel to parcel").

The appellate court noted that other factors specific to plaintiffs' shorelines further complicated the determination of "when [plaintiffs] knew or should have known of their alleged takings claims." Banks IV, 741 F.3d at 1281. While the factually complicated circumstances in this case involving naturally occurring erosion and erosion caused by the government-installed jetties provided "plaintiffs['] . . . [with an] aware[ness] of some erosion[, that awareness was] not sufficient for the claim to accrue."[5]  Id.

As it had expressed earlier in Banks II, the Federal Circuit in Banks IV noted again that "[t]he [g]overnment's mitigation efforts . . . delayed when [plaintiffs] knew or should have known they had a claim."  Id. at 1282.  "Without a basis for imputing knowledge [to plaintiffs] of the effect of the jetty-caused erosion on [their] properties," the Federal Circuit found that "[plaintiffs] could not reasonably have known the damage was 'permanent' until the Corps issued its 1996, 1997, and 1999 Reports showing that its mitigation efforts could not reverse the damage caused by its jetties."  Id. (citing Banks II, 314 F.3d at 1310).  The appellate court also eliminated in Banks IV any confusion that

_____

[4]     The court notes that in its discussion of the accrual suspension rule, the Federal Circuit cites to claim accrual principles that were developed within the context of the stabilization doctrine.  See Banks v. United States ("Banks IV"), 741 F.3d 1268, 1280–81 (Fed. Cir. 2014), Dkt. No. 508 (citing Boling v. United States, 220 F.3d 1365, 1373 (Fed. Cir. 2000)).  The stabilization doctrine evolved to squarely address the complexity of takings cases that result from gradual physical processes, and the accrual suspension rule is a form of equitable tolling with broader application.  In this case, both the stabilization doctrine and accrual suspension rule operate similarly to delay the accrual of claims.  In its earlier decision, the Federal Circuit clarified that the "justifiable uncertainty of the permanency of the taking" that delayed stabilization of plaintiffs' claims was further complicated by the efforts to mitigate the damages.  See Banks v. United States ("Banks II"), 314 F.3d 1304, 1310 (Fed. Cir. 2003), Dkt. No. 6.  Here, in Banks IV, the Federal Circuit examined plaintiffs' awareness of the "permanent" nature of their claims by applying the accrual suspension rule to the same particularized set of facts, while also considering the uncertainties of plaintiffs' shorelines.  See Banks IV, 741 F.3d at 1279–82.

[5]     On at least two occasions, the Federal Circuit refers to plaintiffs' "claim," rather than plaintiffs' "claims."  See Banks IV, 741 F.3d at 1281, 1282.  While the takings claims are individual to the plaintiffs in this consolidated action, the issue addressed by the appellate court was "claim" accrual.

might have arisen from the use of the term "permanent" in its earlier opinion in <u>Banks II</u>, by placing the term within quotation marks and using the term in a manner that is consistent with the claim accrual principles set forth in case law.  <u>See id.</u> (citing <u>Banks II</u>, 314 F.3d at 310).

III.    Discussion

   A.    Issues Before the Federal Circuit in <u>Banks IV</u>

The principal issues on appeal in <u>Banks IV</u> were:  (1) whether the Federal Circuit's opinion in <u>Banks II</u> precluded this court from reconsidering when plaintiffs' claims accrued for the purposes of subject matter jurisdiction; and (2) whether plaintiffs knew or should have known that their claims accrued by 1952.  <u>Banks IV</u>, 741 F.3d at 1275.

      1.    The <u>Banks II</u> Mandate Precluded This Court from Redetermining the
            Claim Accrual Date

In analyzing whether this court violated the mandate rule, the Federal Circuit reiterated its earlier holding in <u>Banks II</u>, stating:  "We are satisfied that the plaintiffs met their jurisdictional burden before the Court of Federal Claims on the basis of the justifiable uncertainty of the permanence of the taking caused by the actual mitigation efforts of the Corps."  <u>Banks IV</u>, 741 F.3d at 1277 (alteration omitted) (quoting <u>Banks II</u>, 314 F.3d at 1310).  Emphasizing that its first decision in "<u>Banks II</u> did not 'leave open the issue of when [p]laintiffs' claims accrued," the appellate court explained that "[n]ecessary and predicate" to the <u>Banks II</u> holding that plaintiffs' claims were not barred by the statute of limitations "was a finding that the mitigation efforts [had] delayed claim accrual."  <u>Id.</u> at 1278.  "Because the <u>Banks II</u> mandate [had] decided the [claim] accrual date," the Federal Circuit turned, in <u>Banks IV</u>, to consider whether an exception to the mandate rule permitted this court to revisit the accrual date—namely, "whether subsequent evidence presented at trial was substantially different from the original evidence" presented to this court in <u>Banks I</u> (and reviewed by the Federal Circuit in <u>Banks II</u>).  <u>Id.</u>

The Federal Circuit found that a "Beach Erosion Control Study" that was released by the Corps in 1958 and admitted into evidence in July 2007 (six years after <u>Banks I</u> and four years after <u>Banks II</u>), <u>id.</u>, "was not 'new' but merely cumulative of evidence before [the trial court] in 2001," <u>id.</u> at 1279.  The appellate court examined the evidentiary record that was before this court in <u>Banks I</u>—in particular, the three Corps Reports from the 1990s, a 1998 newspaper article, and testimony given by plaintiffs' expert—and determined that the developed record at trial "contained information similar to that in the [Beach Erosion Control] Study."  <u>Id.</u>  The Federal Circuit failed to be persuaded "that any 'new' evidence required reexamining [the issue of] jurisdiction that had already been

decided [in its earlier <u>Banks II</u> decision]," and it concluded that without any new evidence to consider, this court was precluded by the mandate rule from redetermining the accrual date of plaintiffs' claims.  <u>Id.</u>  The Federal Circuit accordingly reversed this court's dismissal decision.  <u>Id.</u>

2.      This Court Erred in Its Claim Accrual Suspension Analysis

As discussed in Section II.B.3 above, the Federal Circuit noted the factually complicated circumstances presented in this case, and considered—when performing its claim accrual suspension analysis—whether plaintiffs were aware of the "permanent" nature of their claims.  <u>Banks IV</u>, 741 F.3d at 1279–82.  The circuit court decided that the "plaintiffs['] . . . aware[ness] of some erosion [was] not sufficient for the claim to accrue," <u>id.</u> at 1281, and noted that the "[t]he [g]overnment's mitigation efforts . . . delayed when [plaintiffs] knew or should have known they had a claim," <u>id.</u> at 1282.

Although plaintiffs appear to concede that the appellate court limited its review to the jurisdictional issue of claim accrual, <u>see</u> Pls.' Mot. 25 ("[B]oth the <u>Banks II</u> court and the <u>Banks IV</u> court were deciding on appeal whether, for purposes of the stabilization doctrine, there was justifiable uncertainty about the permanency of the [alleged] taking" (second alteration in original) (internal quotation marks omitted)), plaintiffs contend that the Federal Circuit's jurisdictional determination amounted to a pronouncement on the merits of plaintiffs' takings claims, <u>see</u> Pls.' Reply 8 ("[T]he Federal Circuit's jurisdictional inquiry under the stabilization doctrine—and the Circuit's conclusions that the taking by the United States was permanent, irreversible, and not capable of mitigation—was 'inextricably intertwined' with the merits.").[6]

---

[6]      Citing to the Federal Circuit's decision in <u>Nippon Steel Corp. v. United States</u>, 219 F.3d 1348, 1353 (Fed. Cir. 2000), plaintiffs assert their view that "where (as here) the jurisdictional issue and the merits are factually intertwined, the Federal Circuit <u>necessarily</u> considers and decides the merits when rendering its opinion on the jurisdictional issue."  Pls.' Reply 3.  Plaintiffs' reliance on this case is misplaced.  Both the "unusual" factual and procedural circumstances in <u>Nippon Steel</u> are distinguishable from the case at hand.  <u>Nippon Steel Corp.</u>, 219 F.3d at 1353.  Because the Court of International Trade's jurisdiction turned on whether the initiation by the Department of Commerce of an anticircumvention inquiry contravened the scope of the agency's authority, the Federal Circuit in <u>Nippon Steel</u> concluded that "both the merits and the jurisdictional inquiry turn, at least in part, upon the same question:  Did Commerce act within its authority in initiating its inquiry?"  <u>Id.</u>

By turning to <u>Nippon Steel</u>, plaintiffs ignore persuasive jurisprudential teaching that questions on the merits in takings cases are not resolved per se by a factually interrelated jurisdictional inquiry.  <u>See Hansen v. United States</u>, 65 Fed. Cl. 76, 129 (2005).

Given the fact-intensive nature of both claim accrual determinations and takings claim considerations, the same facts might inform both inquiries.  Examination of the same facts within the context of both inquiries, however, does not make the facts informing a claim accrual question fully dispositive of the merits issues.

As this court observed in Hansen v. United States, "the accrual of takings claim is not the same thing as [a determination of] takings liability."  Hansen v. United States, 65 Fed. Cl. 76, 129 (2005).  After a determination on claim accrual, which solely relates to the period of time during which a cause of action does not accrue for statute of limitations purposes, a "plaintiff will of course have to prove the elements of a takings claim; this limited issue of claim accrual does not establish defendant's liability."  Id.

In the instant case, the court conducted trials on liability and damages further to the first remand, but dismissed plaintiffs' claims for timeliness.  See Banks III, 341 F.3d at 119.  In the alternative, the court made detailed liability and damages findings.  See id. at 150–215.

B.     The Alternative Merits Discussion in Banks III is Not a Final, Appealable Decision

On appeal in Banks IV, the Federal Circuit held that the "alternative merits discussion" contained in Banks III did not constitute "a final and appealable decision over which [it had] jurisdiction."  Banks IV, 741 F.3d at 1283; see also id. at 1282 ("In the absence of anything appealable, this court lacks appellate jurisdiction.  To be final and appealable, a decision must end the litigation on the merits, and the judge must clearly declare her intention in this respect." (internal citations, quotation marks, and alterations omitted)).

The Federal Circuit observed that this court had presented its findings from the trial on damages "in the alternative" for purposes of judicial efficiency in the event that the jurisdictional threshold had been met.  See id. at 1275 (noting that this court "additionally presented findings 'in the alternative' on the merits of the case, stating if 'any appeal should disagree with the court's view of its jurisdiction, and to avoid the possibility . . . of a repetitive trial, the court also presents here its findings from the trial'" (alteration in original) (quoting Banks III, 102 Fed. Cl. at 120)).  The circuit court recognized that most of the fact finding from the trial on damages had been completed, except for a final determination of damages with respect to plaintiffs' shoreline protection expenses.  See id. (observing that the trial court explained that "'if the reviewing court does not agree with the court's determination that it lacks jurisdiction to address plaintiffs' claims,' it would direct the parties to file either a stipulation or briefing" in order to make such a determination (alteration omitted) (quoting Banks III, 102 Fed. Cl. at 212)).

12

With a narrow determination of damages yet to be made, the Federal Circuit acknowledged the prematurity of any review on appeal of the alternative merits findings. Id. at 1282–83. Contrary to plaintiffs' contention, the Federal Circuit's acknowledgement that shoreline protection expenses have not yet been finalized does not amount to an invitation to re-litigate and reargue the merits of this case.[7]

C.     Implementing the Federal Circuit's Mandate in Banks IV

Plaintiffs make their post-remand requests based on their interpretation of the Federal Circuit's mandate. To properly evaluate these various requests, the court first must ascertain for itself the scope of the directive contained in the Federal Circuit's mandate in Banks IV. As discussed in Section II.A above, the court is bound by the mandate, and by its own prior findings—to the extent such findings are not inconsistent with the mandate.

The Federal Circuit set forth the following mandate in Banks IV:

The Court of Federal Claims' alternative merits discussion is not a final and appealable decision over which this court has jurisdiction. On remand, the Court of Federal Claims may reconsider any merits rulings that were rendered at a time it mistakenly believed it lacked jurisdiction. In light of the Court of Federal Claims' clearly erroneous fact finding on claim accrual, it is appropriate that there be no law-of-the-case or comparable obstacle preventing it from reconsidering its earlier, related findings on the

---

[7]     The issue of shoreline composition has been litigated extensively in this case. Nonetheless plaintiffs seek to visit this issue yet again. See Pls.' Mot. 38 (asking the court to make a factual "finding that the nearshore lakebed adjacent to [p]laintiffs' properties is cohesive, not sandy"). Following the trial on liability, the court addressed the evidence presented at trial and issued findings regarding the composition of the shoreline adjacent to plaintiffs' properties. Banks v. United States, 78 Fed. Cl. 603, 621–28 (2007), Dkt. No. 245. "Plaintiffs had the opportunity during [the] trial [on liability] to present evidence regarding the composition of the nearshore lakebed of plaintiffs' zone," but the court nevertheless allowed plaintiffs to present additional evidence at the trial on damages "in order to avoid possible inefficiency and delay in resolving plaintiffs' claims." Banks v. United States, 84 Fed. Cl. 288, 297–98 (2008), Dkt. No. 276. Despite plaintiffs' attempt to exclude this evidence, see, generally, Banks v. United States, 98 Fed. Cl. 123 (2011), Dkt. No. 452, the court again addressed the evidence presented at the trial on damages and made findings, see Banks III, 102 Fed. Cl. at 150–80. Because the issue of shoreline composition has been litigated fully, it need not be treated—as plaintiffs contend—as if it had not been so considered.

merits.  This court's prior mandate—that the claims did not accrue until the 1999 Report—is still law-of-the-case, binding below.

Banks IV, 741 F.3d at 1283.

Because the Federal Circuit carefully limited its appellate review to the jurisdictional issue of claim accrual in Banks IV, the scope of what is contemplated by the mandate is very narrow.  The Federal Circuit resolved decisively the issue of claim accrual, affirming its earlier holding that plaintiffs' claims accrued upon publication of the 1999 Report.  Id. at 1282.  Consistent with the mandate rule, the matter of plaintiffs' claims accrual is settled and cannot be adjudicated further.  See Engel Indus., 166 F.3d at 1383.

The Federal Circuit allowed, however, that certain of the trial court's fact finding might warrant reconsideration on remand, but advised that such reconsideration is limited to only the factual findings that were premised on evidence that was considered purely to support the court's erroneous determination that it lacked jurisdiction in Banks III.  See Banks IV, 741 F.3d at 1283.  Accordingly, further proceedings by this court on remand must be narrowly tailored to evaluating whether any of the alternative merits findings on damages were calculated based on any time-sensitive parameters that are inconsistent with the January 2000 claim accrual date.[8]

The factual findings plaintiffs now ask the court to make by far exceed the scope of both the Federal Circuit's mandate and the extensive findings made after the two trials held on liability and damages, respectively.  Counter to plaintiffs' arguments, the Federal Circuit did not direct the court to engage in an unrestricted effort to reconsider all of the merits findings presented in the alternative in Banks III, which were based on the evidence heard and considered during the two trials.

Plaintiffs also misapprehend the Federal Circuit's use of the term "permanent" in the context of ascertaining the date of claim accrual; the appellate court considered it only as a pertinent factor in determining whether plaintiffs' claims were timely filed.  The circuit court adverted to the alternative merit findings in Banks III, and indicated that it could not evaluate the substantial but incomplete findings because no final decision had yet issued.  Nonetheless, plaintiffs ask this court to disregard, on remand, the entirety of

---

[8]     In accordance with the Federal Circuit's earlier mandate, see Banks II, 314 F.3d at 1310 (concluding that the statute of limitations did not begin to run for plaintiffs' claims until the Corps issued the 1996, 1997, and 1999 Reports), on remand, the court determined that "[b]ecause the last of the three reports, the 1999 Report, was issued in January 2000 . . . , the effective date of claim accrual for plaintiffs' claims in this case is January 2000," Banks v. United States, 68 Fed. Cl. 524, 528–29 (2005), Dkt. No. 87.

the evidence presented by defendant at trial and to render—on the remaining record—a decision that would be much more favorable to plaintiffs.

Although styled as plaintiffs' request to "enforce the mandate," plaintiffs effectively endeavor to re-litigate matters that have been fully litigated, but not yet concluded. Plaintiffs offer no compelling reason for doing so, other than their own insistence. Plaintiffs have misconstrued the circuit court's timeliness of filing determination to be a finding that defendant is liable for damages of an amount that comports with plaintiffs' views exclusively about their alleged losses. But plaintiffs' alleged interpretation obtains no support from the plain language of the mandate and proposes to unduly extend this already protracted litigation.

IV.     Conclusion

Accordingly, based on the foregoing, Plaintiffs' Post-Remand Motion for Entry by this Court of Rulings Consistent With and to Enforce the Federal Circuit Court of Appeals' January 28, 2014 Mandate is **DENIED**.  By separate order, the court will address further proceedings in light of this ruling.

IT IS SO ORDERED.

 s/ Patricia Campbell-Smith
PATRICIA CAMPBELL-SMITH
Chief Judge